IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BANK OF AMERICA, N.A.                            :
                                                 :
                        Plaintiff,               :
                                                 :
            v.                                   :      C.A. No. 07-159-GMS
                                                 :
S.I.P. ASSETS, LLC and                           :
EVERY PENNY COUNTS, INC.                         :
                                                 :
                        Defendants.              :

## DEFENDANT S.I.P. ASSETS, LLC'S
## ANSWER TO FIRST AMENDED COMPLAINT

Defendant S.I.P. Assets, LLC ("SIP"), by and through its undersigned counsel, as and for

its Answer to the numbered paragraphs of the First Amended Complaint, alleges as follows:

1.      Admitted, on information and belief.

2.      Admitted that SIP is a limited liability company incorporated under the laws of

the State of Delaware and with an office in New York.  In all other respects, denied.

3.      Admitted, on information and belief.

4.      Denied that this is a case of actual controversy between plaintiff and SIP because

SIP does not currently have any license or ownership rights to the '191 patent and SIP does not

intend to assert any claims against plaintiff regarding the '191 patent.  Admitted that plaintiff

purports to seek the relief stated in this paragraph.  To the extent that this paragraph states legal

conclusions, no response is required.  SIP lacks knowledge or information sufficient to form a

belief as to the allegations of this paragraph regarding Every Penny Counts, Inc. ("EPC").  In all

other respects, denied.

5.    Admitted that SIP is a Delaware limited liability company that was incorporated under the laws of the State of Delaware.  To the extent that this paragraph states legal conclusions, no response is required.

6.    SIP lacks knowledge or information sufficient to form a belief as to the allegations of this paragraph.  To the extent that this paragraph states legal conclusions, no response is required.

7.    This paragraph states legal conclusions, to which no response is required.

8.    SIP lacks knowledge or information sufficient to form a belief as to the allegations of this paragraph.  To the extent that the allegations of this paragraph differ in substance or context from the terms of the '191 patent and the assignment records, same are denied, and SIP respectfully refers this Court to the '191 patent and the assignment records for an accurate statement of their terms.

9.    Admitted that SIP approached plaintiff in the fall of 2004 regarding the '191 patent and that SIP prepared a presentation for plaintiff.  To the extent that the allegations of this paragraph differ in substance or context from the contents of the referenced SIP presentation, same are denied, and SIP respectfully refers the Court to the SIP presentation for an accurate statement of its contents.  To the extent that this paragraph alleges wrongdoing on the part of SIP, denied.  By way of further answer, SIP does not currently and never has held ownership of any kind in the '191 patent.  On April 20, 2004, SIP and EPC entered into a License Agreement (Exhibit A hereto), pursuant to which EPC granted SIP an exclusive license to certain patents, including the '191 patent, for a specified "Field of Use" as stated in the License Agreement.  On June 8, 2005, SIP received a written notice from EPC indicating that the License Agreement was

terminated (Exhibit B hereto), and as a result, SIP claims no current license rights with respect to the '191 patent.

10.     The allegations of the first and second sentences of this paragraph are admitted, on information and belief.  To the extent that the allegations of this paragraph differ in substance or context from the contents of the Complaint in the Florida Action and the SIP presentation, same are denied, and SIP respectfully refers this Court to the Complaint in the Florida Action and the SIP presentation for an accurate statement of their contents.  In all other respects, denied.

11.     SIP lacks knowledge or information sufficient to form a belief as to the allegations of this paragraph.   To the extent that the allegations of this paragraph differ in substance or context from the contents of the Complaint in the Florida Action, same are denied, and SIP respectfully refers this Court to the Complaint in the Florida Action for an accurate statement of its contents.  To the extent that this paragraph states legal conclusions, no response is required.

12.     SIP lacks knowledge or information sufficient to form a belief as to the allegations of this paragraph.

13.     Denied that SIP is a real party in interest because it does not currently have any license or ownership rights to the '191 patent;  SIP does not intend to assert any claims against plaintiff regarding the '191 patent; SIP is not affiliated with EPC; and SIP has no current contractual or business relationship with EPC.  SIP lacks knowledge or information sufficient to form a belief as to the allegations regarding communications and discussions that EPC had with plaintiff or to plaintiff's understanding regarding these communications and discussions.  To the extent that the allegations of this paragraph differ in substance or context from the contents of the Complaint in the Florida Action and the SIP presentation, same are denied, and SIP respectfully

refers this Court to the Complaint in the Florida Action and the SIP presentation for an accurate statement of their contents.  To the extent that this paragraph states legal conclusions, no response is required.  In all other respects, denied.

## Count I
### (Declaratory Relief for Non-Infringement)

14.     SIP repeats and realleges the foregoing allegations as if fully set forth herein.

15.     Denied that a case or controversy exists to which SIP is a real party in interest because it does not currently have any license or ownership rights to the '191 patent and SIP does not intend to assert any claims against plaintiff regarding the '191 patent.  To the extent that the allegations of this paragraph state a legal conclusion, no response is required.

16.     The allegations of this paragraph state a legal conclusion, to which no response is required.

## Count II
### (Declaratory Relief for Patent Invalidity)

17.     SIP repeats and realleges the foregoing allegations as if fully set forth herein.

18.     Denied that a case or controversy exists to which SIP is a real party in interest because it does not currently have any license or ownership rights to the '191 patent and SIP does not intend to assert any claims against plaintiff regarding the '191 patent.  To the extent that the allegations of this paragraph state a legal conclusion, no response is required.

19.     The allegations of this paragraph state a legal conclusion, to which no response is required.

## Count III
### (Declaration of Patent Ownership)

20.    SIP repeats and realleges the foregoing allegations as if fully set forth herein.

21.    The allegations of this paragraph state a legal conclusion, to which no response is required.

22.    Denied that plaintiff is entitled to a judgment against SIP because it does not currently have any license or ownership rights to the '191 patent and SIP does not intend to assert any claims against plaintiff regarding the '191 patent.  To the extent that the allegations of this paragraph state a legal conclusion, no response is required.

### AFFIRMATIVE DEFENSES

A.    The First Amended Complaint fails to state a claim upon which relief can be granted.

B.    The Court lacks subject matter jurisdiction because there is no justiciable case or controversy between SIP and plaintiff.  SIP does not currently have any license or ownership rights to the '191 patent, and it does not intend to assert any claims against plaintiff regarding the '191 patent.

C.    Plaintiff's claims against SIP are barred to the extent that any alleged wrongdoing was committed by EPC.

WHEREFORE, Defendant S.I.P. Assets, LLC respectfully requests that the Court enter an Order:

1.    dismissing the First Amended Complaint in its entirety;

2.    entering judgment in favor of Defendant S.I.P. Assets, LLC;

3.    awarding Defendant S.I.P. Assets, LLC the costs of this action, including

reasonable attorneys' fees and expenses; and

4.    awarding such other relief as the Court deems just and proper.

PROCTOR HEYMAN LLP

*/s/ Kurt M. Heyman*
Kurt M. Heyman (# 3054)
Email: kheyman@proctorheyman.com
Patricia L. Enerio (# 3728)
Email: penerio@proctorheyman.com
1116 West Street
Wilmington, DE 19801
(302) 472-7300

Attorneys for Defendant S.I.P. Assets, LLC

DATED:   April 26, 2007

## CERTIFICATE OF SERVICE

Kurt M. Heyman, Esquire, hereby certifies that on April 26, 2007, copies of the foregoing Defendant S.I.P. Assets, LLC's Answer to First Amended Complaint were served electronically on the parties listed below:

Richard L. Horowitz, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19801

David L. Finger, Esquire
Finger & Slanina, LLC
Once Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801

*/s/ Kurt M. Heyman*
Kurt M. Heyman (# 3054)

# EXHIBIT A

**To Defendant S.I.P. Assets, LLC's Answer to First Amended Complaint**

CONFIDENTIAL

## LICENSE AGREEMENT

This License Agreement ("**Agreement**") is effective this 20th day of April, 2004 (the "**Effective Date**"), by and between Every Penny Counts, Inc., having a principal place of business at 34 Navesink Drive, Monmouth Beach, New Jersey 07550 ("EPC"), and S.I.P. Assets LLC, having a principal place of business at 4741 Central Avenue, #230 Kansas City, MO 64112 ("SIP").

**WHEREAS,** EPC wishes to grant, and SIP wishes to accept, a license under certain patents and patent applications owned by EPC on the terms and conditions set forth herein; and

**WHEREAS,** SIP wishes to grant, and EPC wishes to accept, a license under certain patents and patent applications owned by SIP on the terms and conditions set forth herein;

**NOW, THEREFORE,** in consideration of the payments set forth in Section 5 of this Agreement and the other rights, covenants and obligations set forth herein, EPC and SIP hereby agree as follows:

1.   **DEFINITIONS**

Unless otherwise stated, all references to "Section" or "Sections" shall mean the section(s) of this Agreement.

1.1    "**Confidential Information**" means any information of a confidential nature included in the EPC Licensed Patents or SIP Licensed Patents, the financial information subject to review pursuant to Section 6, and the terms and conditions of this Agreement.

1.2    "**EPC Licensed Patents**" means (i) U.S. Patent No. 6,112,191, (ii) the patents issuing on the corresponding active foreign applications (existing on the Effective Date) that arose from PCT Application No. PCT 96/06055, and (iii) the patent, and any continuation (excluding continuations-in-part) or divisional patent, issuing from U.S. Patent Application Serial No. 09/611905, and any reissue or re-examination of such patent.

1.3    "**Field of Use**" means use by holders of a debit card linked to a demand deposit account or an ATM card linked to a demand deposit account, to apportion all or selective amounts from the balances of said account into a pre-selected investment vehicle by making directed, programmed, periodic and rounding instructions to the bank managing such account, at points of sale or by using remote terminals connected to a bank manager.  For the avoidance of doubt, "Field of Use" shall not include (a) the rounding up of debit or ATM transactions for the purposes of making contributions to a nonprofit organization, (b) the use of paper check drafts for any purpose, and (c) the loading of money into an account at a merchant point

of sale terminal, mall terminal, or a remote terminal, other than depositing money into a demand deposit account.

1.4 **"SIP Licensed Patents"** means U.S. Patent Application Serial No. US2003/0149629A1 and all divisions, continuations, continuations-in-part, reissues, re-exams, and all foreign counterparts of such patent or patent application and each patent issuing thereon.

1.5 **"SIP Program"** means SIP's program for consumer conduit services as substantially described in the SIP business plan dated March 31, 2004.

## 2.    LICENSES

2.1 *License Grant to SIP.* EPC hereby grants to SIP a license under the EPC Licensed Patents to operate within the SIP Program within the Field of Use. For the avoidance of doubt, cards not enabled in the SIP Program are excluded from this license. This license does not include the right to grant sublicenses under the EPC Licensed Patents to any third party except pursuant to a written agreement provided to Licensor for review and subject to receipt of written approval from EPC. Subject to Section 5.4 below, the license to the EPC Licensed Patents shall be exclusive within the Field of Use. For the avoidance of doubt, unless and until the license granted under this Section is either terminated or becomes non-exclusive, EPC shall not use the EPC Licensed Patents within the Field of Use or grant a license within the scope of the exclusive license granted herein. In all instances, SIP shall not use the EPC Licensed Patents outside of the Field of Use.



2.2 *License Grant to EPC.* SIP hereby grants to EPC a royalty-free, fully paid-up, non-exclusive, world-wide license under the SIP Licensed Patents for all fields of use other than the Field of Use, for the life of each such patent or patent application.

2.3 *Reservation of Rights; Prosecution; Maintenance; Enforcement.* EPC reserves for itself all rights not explicitly granted to SIP under this Agreement. SIP reserves for itself all rights not explicitly granted to EPC under this Agreement. EPC reserves for itself all rights of enforcement, rights of maintenance and rights of prosecution with respect to the EPC Licensed Patents and SIP reserves for itself all rights of enforcement, rights of maintenance and rights of prosecution with respect to the SIP Licensed Patents. Nothing in this Agreement shall be construed as an obligation for either party to seek, maintain or extend patent protection. If at any time during the Term, any claim of any of the patents or patent applications licensed hereunder is not allowed or is held invalid, neither party shall have a damage claim or a claim for refund or reimbursement against the other.

2

2.4    *Obligations to Notify of Third-Party Infringement.*  During the period of time in which SIP maintains an exclusive license pursuant to Section 5.4, the parties agree to promptly notify one another of any material infringement or alleged material infringement in the Field of Use of which it is or becomes aware with respect to the EPC Licensed Patents.  SIP agrees to join in any suit as may be required for EPC to enforce any of the EPC Licensed Patents and SIP agrees to cooperate and provide reasonable assistance and any documentation as may be reasonably requested by EPC in connection with any such suit.

## 3.    CONFIDENTIAL INFORMATION

3.1    *Confidential Information.*  Neither party to this Agreement shall disclose any Confidential Information of the other party to any person or entity, except its employees and permitted sublicensees having a need to know and under written obligations of confidentiality.  Each party shall use the Confidential Information of the other party only as permitted under this Agreement.  Each party agrees to protect the Confidential Information of the other party with the same standard of care and procedures that it uses to protect its own highly sensitive trade secrets and proprietary information, but in no event shall this standard of care be less than reasonable care.  Each party shall promptly notify the other party of any unauthorized disclosure or use of the Confidential Information of which it becomes aware.  Each party agrees to cooperate and assist the other party in preventing any such unauthorized use or disclosure.

3.2    *Equitable Relief.*  The parties understand and acknowledge that violations of obligations under this Section 3 will cause irreparable harm and damage, which may not be recovered by any remedy available in law.  The parties agree that remedies for breach of the confidentiality provisions of this Section 3 may include injunctive relief and any other relief available, whether in law or in equity.

3.3    *Return of Materials.*  Each party agrees that upon termination of this Agreement or any license granted to it hereunder, at the request of the other party, it shall return or destroy all tangible embodiments of the other party's Confidential Information as specified by the other party.  EPC may retain all audit reports and Payment Reports.

3.4    *Exceptions.*  Notwithstanding the other provisions of this Section 3, these obligations of confidentiality shall not extend to the party that wishes or is required to disclose or use the Confidential Information of the other party (such first mentioned party hereinafter referred to as the **"Recipient Party"**), which Confidential Information (i) through no fault of the Recipient Party, becomes generally available or known to the public, (ii) is not otherwise the subject of obligations of confidentiality to the other party or to any third party, and was already in the possession of the Recipient Party prior to having obtained the

information from such other party or such third party, (iii) is independently developed by the Recipient Party, or (iv) is required to be disclosed by subpoena, law or other directive of a court, administrative agency or arbitration panel (in which event the Recipient Party agrees to provide the other party prompt notice of such request or requirement in order to enable the other party to (a) seek an appropriate protective order or other remedy, (b) consult with the Recipient Party with respect to taking steps to resist or narrow the scope of such request or requirement, or (c) waive compliance, in whole or in part, with the terms of this Section 3). EPC shall be permitted to disclose the terms of this Agreement, under terms of a non-disclosure agreement, to a prospective assignee or a purchaser of EPC's business to which this Agreement pertains.

4.     **MARKINGS**

In connection with any SIP controlled advertising, promotion and press release undertaken by any participating financial institution and/or SIP in regard to the SIP Program, at a minimum, "Every Penny Counts, Inc." must be described as the licensor, and SIP must show a listing of "www.everypennycounts.com". Each such form of advertisement, promotion or press release must receive the prior written approval of EPC. SIP shall mark, and shall require the marking of, the patent numbers of each EPC Licensed Patent issued before or after the Effective Date, as reasonably necessary for EPC to obtain the benefits of patent marking.

5.     **PAYMENTS**

5.1     *Signing Payment.*  SIP shall pay to EPC an initial non-refundable fee of $50,000 on the Effective Date.

5.2     *Payment Upon Equity Funding.*  Within 30 days of the closing of cumulative equity operational funding by SIP, SIP shall pay to EPC the non-refundable amount of $750,000.  This amount shall represent an advancement of royalty payments to be made pursuant to Section 5.3 below, and shall be credited against such royalty payments commencing with the first dollar of royalty payments so due.  In the event that SIP does not pay the non-refundable amount of $750,000 prior to September 30, 2004 (regardless of whether the closing of cumulative equity operational funding occurred), this Agreement shall expire by its terms, all rights to the EPC Licensed Patents conveyed to SIP shall expire and EPC shall be free thereafter to use the EPC Licensed Patents in the Field of Use to its absolute discretion and without any obligation on the part of EPC to SIP.

5.3     *Royalty Payments.*  Commencing on the Effective Date and until the last to expire of the EPC Licensed Patents, SIP shall pay to EPC a royalty as follows:

5.3.1    with respect to program arrangements between SIP and Citigroup, SIP shall pay to EPC a fee of $.25 per month per debit card and ATM card as long as such card is in the SIP Program; and

5.3.2    other than with respect to the arrangements of Section 5.3.1 above, SIP shall pay to EPC a fee of $.50 per month per debit card and ATM card as long as such card is in the SIP Program. Without limiting the foregoing, the royalty obligation under this Section 5.3.2 shall apply regardless of whether SIP or a third party issues such debit cards or ATM cards.

5.4    *Payments to Maintain License.* In order for SIP to retain the exclusive license provided under Section 2.1, SIP must satisfy each of the following minimum royalty payment amounts at the times specified below and in accordance with Section 6.2:

5.4.1    For each quarter during year 2 of this Agreement, the minimal royalty fees paid to EPC shall be $250,000;

5.4.2    For each quarter during year 3 of this Agreement, the minimal royalty fees paid to EPC shall be $500,000;

5.4.3    For each quarter during year 4 of this Agreement, the minimal royalty fees paid to EPC shall be $1,000,000;

5.4.4    For each quarter during year 5 of this Agreement, the minimal royalty fees paid to EPC shall be $1,250,000;

5.4.5    For each quarter during year 6 of this Agreement, the minimal royalty fees paid to EPC shall be $1,750,000; and

5.4.6    For each quarter during year 7 of this Agreement, and for each consecutive quarter thereafter in subsequent years, until the last to expire of the EPC Licensed Patents, the minimal royalty fees paid to EPC for each such quarter shall be $2,000,000.

At the discretion of SIP, or if SIP fails to make full and timely payment of each minimum amount set forth above, the license grant of Section 2.1 shall become non-exclusive in the Field of Use. However, if SIP fails to make a payment as specified in Sections 5.4.1-5.4.6 above, and SIP also fails to make full and timely payment as specified below (and in accordance with Section 6), EPC may terminate this Agreement in accordance with Section 9.2.

5.4.7    For each quarter during year 2 of this Agreement, and for each consecutive quarter thereafter in subsequent years, until the last to expire of the EPC

5

Licensed Patents, the minimal royalty fees paid to EPC for each such quarter shall be $250,000.

If EPC chooses to terminate this Agreement, SIP shall cooperate with EPC to execute all such documents and take all such actions necessary to effect such termination.

6.     **RECORDS AND REPORTS**

6.1     *Quarterly Reports and Payments.*  Within thirty (30) days after the close of each quarter during the Term, SIP shall submit to EPC a written report with respect to the preceding quarter ("**Payment Report**") setting forth (i) the amount of royalties owed pursuant to Section 5.3.1 above, providing a copy of the Citigroup report of information used by SIP to calculate such amount, and (ii) the amount of royalties owed pursuant to Section 5.3.2 above, providing copies of SIP's, and each respective institution's report of, information used to calculate such amount.  Full payment for the quarter covered by the Payment Report shall be made with the required submission of the Payment Report.

6.2     For purposes of payments to be made pursuant to Section 5 and Section 6.1, references to "quarter" refer to each three (3) month period of time, commencing upon the close of the calendar quarter in which the $750,000 payment of Section 5.2 is made.  Year 1 of this Agreement shall refer to the one (1) year period of time commencing upon the close of the calendar quarter in which the $750,000 payment of Section 5.2 is made.  In the event that royalties are owed pursuant to Section 5.3 prior to the commencement of year 1 of this Agreement, such royalties shall be reported and paid in accordance with Section 6.1 at the time of the first Payment Report.

6.3     *Maintenance of Records; Audits.*  SIP shall maintain at its principal office the proper books of account and records showing its actions under this Agreement. Upon reasonable notice, such books and records shall be open to inspection and copying by an independent auditor, during usual business hours, for three (3) years after the closing of the quarter to which they pertain, for purposes of verifying the accuracy of the reports and amounts paid by SIP under this Agreement.  SIP shall permit such an independent auditor to conduct such inspection at least once every three months, but no more than four times per year.  In the event that royalties due for any time period are determined by the independent auditor to be at least five percent (5%) greater than the royalties paid for that time period, SIP shall pay the difference plus prime-rate interest and shall reimburse EPC for the reasonable costs of the audit within twenty (20) days of receiving the auditor's report.

6

7.   **REPRESENTATION AND DISCLAIMERS**

7.1   As of the Effective Date, EPC has not received notice from a third party asserting invalidity or unenforceability of U.S. Patent No. 6,112,191.

7.2   EXCEPT AS SET FORTH IN SECTION 7.1, EPC MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND RELATING TO THE EPC LICENSED PATENTS, AND SIP MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND RELATING TO THE SIP LICENSED PATENTS, INCLUDING ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, OR NON-INFRINGEMENT.

8.   **LIMITATIONS OF LIABILITY**

NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING LOSS OF PROFITS, WHETHER UNDER THIS AGREEMENT OR OTHERWISE, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9.   **TERM; TERMINATION**

9.1   *Term.* The term of this Agreement shall be from the Effective Date until the last to expire of the EPC Licensed Patents and the SIP Licensed Patents, unless earlier terminated in accordance with the terms of this Agreement ("**Term**").

9.2   *Breach.* Either party may terminate this Agreement if the other party materially breaches any provision of this Agreement and fails to correct the breach within twenty (20) days following receipt of written notice of the breach. Without limiting that which may be considered a material breach, SIP's failure to make reports and payments in full and in accordance with Sections 5.1, 5.2, 5.3, and 6 shall be deemed a material breach.

9.3   *Unauthorized Transfer.* Except as permitted in Section 10, if SIP attempts to assign, license, sublicense or otherwise convey any rights under this Agreement, EPC may immediately terminate this Agreement by providing written notice to SIP.

9.4   *Insolvency.* EPC may immediately terminate this Agreement if SIP should commit any act of bankruptcy, become insolvent, file a petition under any bankruptcy or insolvency act or have any such petition filed against it, make a general assignment for the benefit of creditors, and/or a receiver is appointed to take charge of all or part of SIP's property.

7

9.5    *Invalidity.* In the event that each of the claims of the EPC Licensed Patents are held in a non-appealable order from a court of competent jurisdiction to be invalid, SIP may terminate this Agreement upon thirty (30) days written notice to EPC, subject to satisfaction of outstanding payment obligations incurred prior to such termination.

9.6    *Effects of Termination.* Any termination of this Agreement shall automatically terminate all permitted sublicenses granted hereunder.

9.7    Nothing in this Section 9 shall limit any other remedy that EPC or SIP may have for default by the other party under this Agreement.

## 10.   ASSIGNMENT

This Agreement and the rights and obligations of SIP hereunder are personal to SIP and shall not be assigned or otherwise transferred by SIP, whether by merger, acquisition, consolidation or otherwise, without the prior written consent of EPC; *provided, however,* that SIP may transfer this Agreement in its entirety in connection with an internal reorganization of SIP, subject to EPC's prior written consent which shall not be unreasonably withheld; *provided further* that a change of control of SIP shall not in itself be deemed an assignment or other transfer by SIP. Except for the provisions of Section 2.2, this Agreement and EPC's rights and obligations herein may be freely assigned or otherwise transferred by EPC. Any attempted assignment, sublicense, transfer or other conveyance by SIP of this Agreement or any of SIP's rights, liabilities, covenants or obligations under this Agreement in derogation of this Section shall be void *ab initio.*

## 11.   NOTICES

All notices under this Agreement shall be in writing and may be sent via facsimile with required confirmation by United States Postal Service, Certified Mail, Return Receipt Requested, postage prepaid or other receipt verifiable delivery, and addressed as follows:

| To EPC: | To SIP: |
|---|---|
| 34 Navesink Drive | 4741 Central Avenue, #230 |
| Monmouth Beach, New Jersey, 07550 | Kansas City, Missouri, 64112 |
| | |
| Fax: 732-483-0139 | Fax: 916-404-7138 |
| Attn: Bertram V. Burke | Attn: Ray Edwards |

8

12.   **GENERAL**

12.1   *Disclosure of Transaction.* EPC and SIP and their respective officers, directors, employees, agents and affiliates shall not make any public announcement or issue any press release or other publicity in respect of this transaction without the prior written consent of both parties.

12.2   *No Waiver.* The parties agree that either party's failure to insist upon the performance of any provision of this Agreement or to exercise any right or privilege granted hereunder shall not be construed as waiving any such provision, and the same shall continue in force.

12.3   *Entire Agreement.* This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all prior understandings, communications, and agreements, whether verbal or written. No amendment to or modification of this Agreement shall be valid or binding unless in writing and executed by authorized representatives of the parties.

12.4   *Binding Agreement.* This Agreement shall be binding upon and inure solely to the benefit of each of the parties hereto and their permitted successors and assigns, and no other person or entity shall be a beneficiary hereunder or have any right to enforce any part of this Agreement.

12.5   *Severability.* If any provision of this Agreement is unenforceable, such provision will be changed and interpreted to accomplish the objectives of such provision to the greatest extent possible under applicable law and the remaining provisions will continue in full force and effect.

12.6   *Governing Law.* This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law principles.

12.7   *Section Headings.* The headings of all Sections of this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

12.8   *Survival.* The provisions of Sections 2.3, 3, 6, 7.2, 8 and 9.6 shall survive the expiration or termination of this Agreement for any reason.

**IN WITNESS WHEREOF,** the persons signing below warrant that they are duly authorized to sign for and on behalf of, the respective parties.  This Agreement has been executed in duplicate originals.

**AGREED AND ACCEPTED AS ABOVE:**

Every Penny Counts, Inc.
By:

Bertram V. Burke
Chairman & CEO

4-20-04
Date

S.I.P. Assets LLC
By:

Ray Edwards
President

4/20/04
Date

10

# EXHIBIT B

**To Defendant S.I.P. Assets, LLC's Answer to First Amended Complaint**



*"Provides banks, merchants and nonprofits - with U.S. and foreign patented technology - to grow and maintain passionate customers!"*

June 8, 2005

Sent by email.

Mr. Thierry Wizman
SIP Assets, LLC

Dear Mr. Wizman:

On Monday, I received a telephone call from Ms. Candace DeBarger of Master Card International.

Ms. DeBarger asked if SIP was currently a licensee of EPC. I told her that SIP defaulted on the EPC/SIP agreement on May 5, 2005 and therefore, SIP did not have any protection afforded by EPC's patents.

For the record, please be advised that SIP should not make any claims to any EPC patent in its marketing presentations, business plans, licensing agreements, and/or letters of intent.

Also, please be advised that EPC is now completing a licensing deal with another entity, regarding customers investing or saving while using a demand deposit account; i.e. via transactions using checks or debit cards.

Sincerely yours,


Bertram V. Burke, CEO


**1434 SW 51st Lane • Cape Coral, FL 33914 • Tel: (239) 540-1069**
**www.EveryPennyCounts.com • e-mail corporate@ EveryPennyCounts.com**