## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **BANK OF AMERICA, N.A.** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **C.A. NO. 07-159 GMS** |
| | ) | |
| **SIP ASSETS, LLC AND** | ) | |
| **EVERY PENNY COUNTS, INC.** | ) | |
| **Defendants** | ) | |

### COMPENDIUM OF EXHIBITS

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE  19801-1155
(302) 884-6766

**Attorney for Defendant**
**Every Penny Counts, Inc.**

and

PHELPS DUNBAR LLP
Harvey S. Kauget (FL Bar ID #116254)
Karl J. Brandes (FL Bar ID #0329797)
Brent B. Barriere (LA Bar ID #2818)
David L. Patron (LA Bar ID #22566)
Harry M. Barton (LA Bar ID #29751)
100 South Ashley Drive
Suite 1900
Tampa, Florida 33602-5311
(813) 472-7550

Of Counsel for Defendant
Every Penny Counts, Inc.

DATED:  May 10, 2007

# INDEX

Every Penny Counts, Inc.'s Complaint…...………………….…..Exhibit 1

Every Penny Counts, Inc.'s First Amended Complaint ……....…Exhibit 2

Case Management and Scheduling Order………………………Exhibit 3

Press Release Introducing the Keep the Change Program……....Exhibit 4

Every Penny Counts Affidavit…………………………………Exhibit 5

Federal Deposit Insurance Corporation Report: Top 50
      Domestic Banks and Savings Institutions by
      Total Domestic Deposits………...…………………...Exhibit 6

Federal Deposit Insurance Corporation Financial Report
      Bank of America, N.A…………………………………..Exhibit 7

Federal Deposit Insurance Corporation Report: Top 50
      Bank Holding Companies by Total Domestic Deposits...Exhibit 8

Federal Deposit Insurance Corporation Financial Report
      Bank of America Corporation………………………….Exhibit 9

Bank of America Press Release of January 23, 2007…………...Exhibit 10

Excerpt from Bank of America 2006 Annual Report…………...Exhibit 11

Business Information Reports for Bank of America
      Corporation……………………………………………. Exhibit 12

Business Information Reports for Bank of America, N.A……...Exhibit 13

http://www.bankofamerica.com/promos/jump/ktc3
      (last visited May 1, 2007)……………………………Exhibit 14

Bank of America Corporation and Bank of America, N.A.'s
      Motion to Dismiss……………………………………Exhibit 15

Every Penny Counts 2006 Financial Statement………………...Exhibit 16

Bank of America Florida Corporate Registration...……………Exhibit 17

Federal Deposit Insurance Corporation Summary of Bank
      of America, N.A. Offices……………………………Exhibit 18

Federal Deposit Insurance Corporation Deposit Market
      Share Report, Florida…………………………………Exhibit 19

Federal Deposit Insurance Corporation Deposit Market
      Share Report, Delaware………………………………Exhibit 20

Summary of Locations of Bank of America, N.A. Witnesses
      Identified in Initial Disclosures…………………………Exhibit 21

Bank of America, N.A.'s Initial Disclosures……………………Exhibit 22

Exhibit 1

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

FILED

07 JAN 25 PM 2:26

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS, FLORIDA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | | |
|---|---|---|
| **EVERY PENNY COUNTS, INC.** | ) | **CASE NO:** |
| **Plaintiff** | ) | 2: 07 -CV- 42 -FtM-99SPC |
| | ) | **DIVISION:** |
| **v.** | ) | |
| | ) | **MAG. SECTION:** |
| **BANK OF AMERICA CORPORATION** | ) | |
| **AND VISA U.S.A., INC.** | ) | |
| **Defendant** | ) | **JURY TRIAL DEMANDED** |
| | ) | |

## COMPLAINT SEEKING DAMAGES AND
## PERMANENT INJUNCTIVE RELIEF FOR PATENT INFRINGEMENT

NOW INTO COURT, through undersigned counsel, come Plaintiff, Every Penny Counts,

Inc., and for its complaint seeking damages and permanent injunctive relief against Defendants,

Bank of America Corporation and VISA U.S.A., Inc. respectfully represents as follows:

## I. INTRODUCTION.

This is an action seeking the recovery of the significant damages sustained by Plaintiff,

Every Penny Counts, Inc. ("EPC") as a direct result of the knowing and willful infringement of

its patent by Defendants, Bank of America Corporation and VISA USA, Inc. As more fully

detailed below, EPC is holder of United States Patent Number 6,112,191 commonly known as

the "Rounder Patent." For a period of several years, Defendants were approached by EPC, or its

predecessor in interest, concerning licensing agreement for the Rounder Patent. Defendants

obtained information concerning the Rounder Patent, and its potential, now realized, for

**EXHIBIT**

tabbies

generating significant new accounts and profits for Defendants.  Rather than entering into a

licensing agreement, Defendants knowingly and intentionally infringed upon the Rounder Patent

causing significant damage to EPC.  EPC now seeks recovery of those damages together with

treble damages, attorney's fees and permanent injunctive relief.

## II. PARTIES, THE COURT'S JURISDICTION AND VENUE.

1.

Plaintiff, EPC, a corporation organized and existing under the laws of the State of

Delaware, with its principal place of business in Cape Coral, Lee County, Florida.

2.

Defendant, Bank of America Corporation ("BOA") is a corporation organized and

existing under the laws of the State of Delaware, with its principal place of business in Charlotte,

North Carolina.  BOA maintains one or more offices within this judicial district, and engages in

systematic activities in this judicial district.

3.

Defendant, VISA, U.S.A., Inc. is a corporation organized and existing under the laws of

the State of Delaware, with its principal place of business in San Francisco, California.

4.

VISA engaged in systematic activities within this judicial district.  This Court enjoys

subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws

of the United States.  This Court also enjoys jurisdiction pursuant to 28 U.S.C. § 1338(a).

5.

This Court has venue pursuant to 28 U.S.C. § 1391(b) as both BOA and VISA are subject

to personal jurisdiction in this judicial district.  Alternatively, venue is proper pursuant to 28

U.S.C. § 1400(b) because both of the Defendants have committed acts of infringement within this judicial district and have regular and established places of business within this judicial district.

## III. STATEMENT OF GROUNDS FOR RELIEF.

1.

In August of 2000, United States Patent Number 6,112,191 (the "Rounder Patent") was duly and regularly issued to Every Penny Counts, Inc., a corporation formed under the laws of the State of New Jersey ("OLD EPC"). A copy of the patent is attached hereto and made a part hereof as Exhibit "A."

2.

On September 2, 2004, OLD EPC reformed as EPC, the Plaintiff in this action.

3.

On June 29, 2005, EPC became the sole owner of the Rounder Patent all as more fully set forth in Exhibit "B" attached hereto and made a part hereof.

4.

At least as early as December 2001, OLD EPC contacted BOA to describe the Rounder Patent and to inquire of BOA's interest in entering into a licensing agreement.

5.

In or about November 2004, and for several months thereafter, EPC had written communications and discussions with BOA about the Rounder Patent and a possible licensing agreement.

6.

At least as early as February 2001, OLD EPC contacted VISA about the Rounder Patent.

7.

In June 2004, EPC contacted VISA concerning the Rounder Patent and proposed a licensing agreement for other business arrangements between VISA and EPC.

8.

Discussions between EPC and BOA concerning the Rounder Patent and a possible licensing agreement continued into the Spring of 2005. BOA ceased further communications at that time. It apparently did so upon concluding that rather than entering into a licensing agreement with EPC, BOA would establish its own program modeled on the Rounder Patent, but without compensation to EPC. Consistent with that strategy, in or about October, 2005, BOA launched the "Keep the Change Program."

9.

The "Keep the Change Program" utilizes systems that falls within the scope of at least one claim of the Rounder Patent.

10.

Upon information and belief, prior to institution of the "Keep the Change Program," both BOA and VISA were aware of the Rounder Patent, knew that EPC is the lawful owner of the Rounder Patent and knew or should have known that the "Keep the Change Program" would infringe on the Rounder Patent.

11.

As the "Keep the Change Program" employs systems that fall within the scope of the Rounder Patent, the Defendants' actions constituted an infringement on the Rounder Patent.

12.

BOA and VISA willfully infringed, and continue to infringe willfully, knowingly and intentionally, upon EPC's Rounder Patent.

13.

As a result of the infringing acts committed by the Defendants, EPC has suffered and continues to suffer damages which will continue unless this Court enjoins such acts of infringement.

14.

EPC demands a trial by jury.

WHEREFORE, Every Penny Counts, Inc. respectfully prays that, after due proceedings, there be judgment in its favor and against Defendants, Bank of America Corporation and VISA, U.S.A., Inc. and that Every Penny Counts be granted the following relief:

(a)    permanent injunctive relief prohibiting the Defendants, their agents, employees, officers, directors, licensees and all of those in privity with either Defendants from continuing to engage in acts of infringement of the Rounder Patent;

(b)    an award of all damages recoverable under the United States Patent laws;

(c)    an award of treble damages for the Defendants' willful infringement;

(d)    an award of interest, costs and reasonable attorneys' fees; and

(e)    such other relief as may be just and equitable.

Respectfully submitted,

PHELPS DUNBAR LLP

HARVEY S. KAUGET (#116254)
KARL J. BRANDES (#0329797)
100 South Ashley Drive, Suite 1900
Tampa, Florida 33602-5311
Telephone: (813) 472-7550
Telecopy: (813) 472-7570
E-mail: kaugeth@phelps.com
E-mail: brandesk@phelps.com

and

PHELPS DUNBAR LLP
Brent B. Barriere (#2818)
David L. Patron (#22566)
Harry M. Barton (#29751)
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 566-1311
Telecopy:   (504) 568-9130
E-mail: barrierb@phelps.com
E-mail: patrond@phelps.com
E-mail: bartonh@phelps.com

COUNSEL FOR EVERY PENNY COUNTS, INC.

Exhibit 2

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | | |
|---|---|---|
| EVERY PENNY COUNTS, INC. | ) | |
|     **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CASE NO: 2:07-CV-42-FTM-29SPC** |
| | ) | |
| BANK OF AMERICA CORPORATION, | ) | |
| BANK OF AMERICA, N.A., | ) | |
| AND VISA U.S.A., INC. | ) | |
|     **Defendants** | ) | |
| | ) | **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT SEEKING DAMAGES AND
PERMANENT INJUNCTIVE RELIEF FOR PATENT INFRINGEMENT**

NOW INTO COURT, through undersigned counsel, come Plaintiff, Every Penny Counts,

Inc., and for its first amended complaint seeking damages and permanent injunctive relief against

Defendants, Bank of America Corporation, Bank of America, N.A., and VISA U.S.A., Inc.

respectfully represents as follows:

**I. INTRODUCTION.**

This is an action seeking the recovery of the significant damages sustained by Plaintiff,

Every Penny Counts, Inc. ("EPC") as a direct result of the knowing and willful infringement of

its patent by Defendants, Bank of America Corporation, Bank of America, N.A., and VISA

USA, Inc. As more fully detailed below, EPC is holder of United States Patent Number

6,112,191 commonly known as the "Rounder Patent." For a period of several years, Defendants

TA.156136.1

**EXHIBIT**

_____

were approached by EPC, or its predecessor in interest, concerning licensing agreement for the
Rounder Patent. Defendants obtained information concerning the Rounder Patent, and its
potential, now realized, for generating significant new accounts and profits for Defendants.
Rather than entering into a licensing agreement, Defendants knowingly and intentionally
infringed upon the Rounder Patent causing significant damage to EPC. EPC now seeks recovery
of those damages together with treble damages, attorney's fees and permanent injunctive relief.

## II. PARTIES, THE COURT'S JURISDICTION AND VENUE.

1.

Plaintiff, EPC, a corporation organized and existing under the laws of the State of
Delaware, with its principal place of business in Cape Coral, Lee County, Florida.

2.

Defendant, Bank of America Corporation ("BOA") is a corporation organized and
existing under the laws of the State of Delaware, with its principal place of business in Charlotte,
North Carolina. BOA maintains one or more offices within this judicial district, and engages in
systematic activities in this judicial district.

3.

Defendant, Bank of America, N.A. ("BOA, N.A.") is a corporation organized and
existing under the laws of the State of Delaware, with its principal place of business in Charlotte,
North Carolina. BOA, N.A. maintains one or more offices within this judicial district, and
engages in systematic activities in this judicial district.

4.

Defendant, VISA, U.S.A., Inc. is a corporation organized and existing under the laws of

the State of Delaware, with its principal place of business in San Francisco, California.

5.

VISA engaged in systematic activities within this judicial district.  This Court enjoys

subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws

of the United States.  This Court also enjoys jurisdiction pursuant to 28 U.S.C. § 1338(a).

6.

This Court has venue pursuant to 28 U.S.C. § 1391(b) as BOA, BOA, N.A., and VISA

are subject to personal jurisdiction in this judicial district.  Alternatively, venue is proper

pursuant to 28 U.S.C. § 1400(b) because all of the Defendants have committed acts of

infringement within this judicial district and have regular and established places of business

within this judicial district.

## III. STATEMENT OF GROUNDS FOR RELIEF.

1.

In August of 2000, United States Patent Number 6,112,191 (the "Rounder Patent") was

duly and regularly issued to Every Penny Counts, Inc., a corporation formed under the laws of

the State of New Jersey ("OLD EPC").  A copy of the patent is attached hereto and made a part

hereof as Exhibit "A."

2.

On September 2, 2004, OLD EPC reformed as EPC, the Plaintiff in this action.

3.

On June 29, 2005, EPC became the sole owner of the Rounder Patent all as more fully set forth in Exhibit "B" attached hereto and made a part hereof.

4.

At least as early as December 2001, OLD EPC contacted BOA to describe the Rounder Patent and to inquire of BOA's interest in entering into a licensing agreement.

5.

In or about November 2004, and for several months thereafter, EPC had written communications and discussions with BOA about the Rounder Patent and a possible licensing agreement.

6.

At least as early as February 2001, OLD EPC contacted VISA about the Rounder Patent.

7.

In June 2004, EPC contacted VISA concerning the Rounder Patent and proposed a licensing agreement for other business arrangements between VISA and EPC.

8.

Discussions between EPC and BOA concerning the Rounder Patent and a possible licensing agreement continued into the Spring of 2005. BOA ceased further communications at that time. It apparently did so upon concluding that rather than entering into a licensing agreement with EPC, BOA would establish its own program modeled on the Rounder Patent, but without compensation to EPC. Consistent with that strategy, in or about October, 2005, BOA launched the "Keep the Change Program."

9.

The "Keep the Change Program" utilizes systems that falls within the scope of at least one claim of the Rounder Patent.

10.

Upon information and belief, prior to institution of the "Keep the Change Program," BOA was aware of the Rounder Patent, knew that EPC is the lawful owner of the Rounder Patent, and knew or should have known that the "Keep the Change Program" would infringe on the Rounder Patent.

11.

Upon information and belief, prior to institution of the "Keep the Change Program," BOA, N.A. was aware of the Rounder Patent, knew that EPC is the lawful owner of the Rounder Patent, and knew or should have known that the "Keep the Change Program" would infringe on the Rounder Patent.

12.

Upon information and belief, prior to institution of the "Keep the Change Program," VISA was aware of the Rounder Patent, knew that EPC is the lawful owner of the Rounder Patent, and knew or should have known that the "Keep the Change Program" would infringe on the Rounder Patent.

13.

On August 2, 2005, United States Patent Application Number 11/161,418, "Automatic Savings Program," was filed with the United States Patent and Trademark Office.

14.

On August 10, 2005, the 11/161,418 applicant submitted to the United States Patent and

Trademark Office an Information Disclosure Statement disclosing the Rounder patent as relevant

prior art. A copy of this Information Disclosure Statement is attached hereto and made a part

hereof as Exhibit "C."

15.

On February 8, 2007, the 11/161,418 application was published as Publication Number

US 2007/0033134 A1. On the face of this publication, BOA was named as assignee. A copy of

this publication is attached hereto and made a part hereof as Exhibit "D."

16.

As the "Keep the Change Program" employs systems that fall within the scope of the

Rounder Patent, BOA's actions constituted an infringement on the Rounder Patent.

17.

As the "Keep the Change Program" employs systems that fall within the scope of the

Rounder Patent, BOA, N.A.'s actions constituted an infringement on the Rounder Patent.

18.

As the "Keep the Change Program" employs systems that fall within the scope of the

Rounder Patent, VISA's actions constituted an infringement on the Rounder Patent.

19.

BOA willfully infringed, and continues to infringe willfully, knowingly and intentionally,

upon EPC's Rounder Patent.

20.

BOA, N.A. willfully infringed, and continues to infringe willfully, knowingly and intentionally, upon EPC's Rounder Patent.

21.

VISA willfully infringed, and continues to infringe willfully, knowingly and intentionally, upon EPC's Rounder Patent.

22.

As a result of the infringing acts committed by BOA, EPC has suffered and continues to suffer damages which will continue unless this Court enjoins such acts of infringement.

23.

As a result of the infringing acts committed by BOA, N.A., EPC has suffered and continues to suffer damages which will continue unless this Court enjoins such acts of infringement.

24.

As a result of the infringing acts committed by VISA, EPC has suffered and continues to suffer damages which will continue unless this Court enjoins such acts of infringement.

25.

EPC demands a trial by jury.

WHEREFORE, Every Penny Counts, Inc. respectfully prays that, after due proceedings, there be judgment in its favor and against Defendants, Bank of America Corporation, Bank of America, N.A., and VISA, U.S.A., Inc. and that Every Penny Counts be granted the following relief:

    (a)    permanent injunctive relief prohibiting the Defendants, their agents, employees, officers, directors, licensees and all of those in privity with either Defendants from continuing to engage in acts of infringement of the Rounder Patent;

    (b)    an award of all damages recoverable under the United States Patent laws;

    (c)    an award of treble damages for the Defendants' willful infringement;

    (d)    an award of interest, costs and reasonable attorneys' fees; and

    (e)    such other relief as may be just and equitable.

Respectfully submitted,

PHELPS DUNBAR LLP

_____

HARVEY S. KAUGET (#116254)
KARL J. BRANDES (#0329797)
100 South Ashley Drive, Suite 1900
Tampa, Florida 33602-5311
Telephone: (813) 472-7550
Telecopy: (813) 472-7570
E-mail: kaugeth@phelps.com
E-mail: brandesk@phelps.com

and

PHELPS DUNBAR LLP
Brent B. Barriere (#2818)
David L. Patron (#22566)
Harry M. Barton (#29751)
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 566-1311
Telecopy:  (504) 568-9130
E-mail: barrierb@phelps.com
E-mail: patrond@phelps.com
E-mail: bartonh@phelps.com

COUNSEL FOR EVERY PENNY COUNTS, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of March, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record. In addition, the First Amended Complaint will be properly served on Defendant Bank of America, N.A.

_____
Harvey S. Kauget

Exhibit 3

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

**EVERY PENNY COUNTS, INC.,**

        **Plaintiff,**

-vs-                                **Case No. 2:07-cv-42-FtM-29SPC**

**BANK OF AMERICA CORPORATION; VISA USA, INC.,**

        **Defendants.**

_____

## CASE MANAGEMENT AND SCHEDULING ORDER

    Having considered the case management report prepared by the parties, *see* Fed.R.Civ.P. 26(f) and Local Rule 3.05(c), the Court enters this case management and scheduling order based on standard scheduling procedures:

| | |
|---|---|
| **Mandatory Initial Disclosures (pursuant to Fed.R.Civ.P. 26(a)(1) as amended effective December 1, 2000)** | **APRIL 30, 2007** |
| **Certificate of Interested Persons and Corporate Disclosure Statement by all parties who have not previously filed** | **IMMEDIATELY** |
| **Motions to Add Parties or to Amend Pleadings** | **MAY 30, 2007** |
| **Disclosure of Expert Reports**       **Plaintiff:**<br>**Defendant:**<br>**Rebuttal:** | **NOVEMBER 1, 2007**<br>**DECEMBER 3, 2007** |
| **Discovery Deadline** | **DECEMBER 31, 2007** |
| **Mediation**       **Deadline:**<br>**Mediator:**<br>**Address:**<br><br>**Telephone:**<br><br>**IF NO MEDIATOR IS DESIGNATED HEREIN:**<br>**The parties shall file a stipulation selecting a mediator within eleven days of the date of this Order.** | **APRIL 1, 2008** |
| **Dispositive Motions, *Daubert*, and *Markman* Motions** | **JANUARY 31, 2008** |



| Meeting *In Person* to Prepare Joint Final Pretrial Statement | **APRIL 4, 2008** |
|---|---|
| Joint Final Pretrial Statement (*Including* a Single Set of Jointly Proposed Jury Instructions and Verdict Form (With diskette), Voir Dire Questions, Witnesses Lists, Exhibit Lists on Approved Form | **APRIL 15, 2008** |
| All Other Motions Including Motions *In Limine*, Trial Briefs | **MAY 6, 2008** |
| Final Pretrial Conference                                Date:<br>Time:<br>Judge: | **MAY 27, 2008**<br>**9:00 A.M.**<br>**John E. Steele** |
| Trial Term Begins<br>   [Trials Before Magistrate Judges Begin on Date Certain] | **JUNE 2, 2008**<br>**9:00 A.M.** |
| Estimated Length of Trial | **5 days** |
| Jury/Non Jury | **Jury** |

The purpose of this order is to discourage wasteful pretrial activities, and to secure the just, speedy, and inexpensive determination of the action. *See* Fed.R.Civ.P. 1; Local Rule 1.01(b). This order controls the subsequent course of this proceeding. Fed.R.Civ.P. 16(b), (e). Counsel and all parties (both represented and *pro se*) shall comply with this order, with the Federal Rules of Civil Procedure, and with the Local Rules of the United States District Court for the Middle District of Florida. Counsel shall also comply with the *Ideals and Goals of Professionalism* adopted by the Board of Governors of the Florida Bar on May 16, 1990. *See* 73 FLORIDA BAR JOURNAL 711- 13 (September 1999); Local Rule 2.04(g).

## I.    DISCOVERY

A.    **Certificate of Interested Persons and Corporate Disclosure Statement** – This Court has previously ordered each party, governmental party, intervenor, non-party movant, and Rule 69 garnishee to file and serve a Certificate of Interested Persons and Corporate Disclosure Statement using a mandatory form. No party may seek discovery from any source before filing and serving a Certificate of Interested Persons and Corporate Disclosure Statement. A motion, memorandum, response, or other paper – including emergency motion – may be denied or stricken unless the filing party has previously filed and served its Certificate of Interested Persons

and Corporate Disclosure Statement. Any party who has not already filed and served the required certificate shall do so within **eleven** days of the date of this order or sanctions will be imposed.

B.    **Discovery Not Filed** – The parties shall not file discovery materials with the Clerk except as provided in Local Rule 3.03. The Court encourages the exchange of discovery requests on diskette. *See* Local Rule 3.03(f). A copy of the Local Rules may be viewed at http://www.flmd.uscourts.gov.

C.    **Limits on Discovery** – Absent leave of Court, the parties may take no more than ten depositions per side (not per party). Fed.R.Civ.P. 30(a)(2)(A); Fed.R.Civ.P. 31(a)(2)(A); Local Rule 3.02(b). Absent leave of Court, the parties may serve no more than twenty-five interrogatories, including sub-parts. Fed.R.Civ.P. 33(a); Local Rule 3.03(a). Absent leave of the Court or stipulation by the parties, each deposition is limited to one day of seven hours. Fed.R.Civ.P. 30(d)(2) (as amended eff. Dec. 1, 2000). The parties may agree by stipulation on other limits on discovery within the context of the limits and deadlines established by this case management and scheduling order, but the parties may not alter the terms of this order without leave of Court. Fed.R.Civ.P. 29.

D.    **Discovery Deadline** – Each party shall timely serve discovery requests so that the rules

allow for a response prior to the discovery deadline. The Court may deny as untimely all motions to compel filed after the discovery deadline.

E.    **Disclosure of Expert Testimony** – On or before the date set forth in the above table for the disclosure of expert reports, the party shall fully comply with Fed.R.Civ.P. 26(a)(2) and 26(e). Expert testimony on direct examination at trial will be limited to the opinions, basis, reasons, data, and other information disclosed in the written expert report disclosed pursuant to this order. Failure to disclose such information may result in the exclusion of all or part of the testimony of the expert witness.

F.    **Confidentiality Agreements** – The parties may reach their own agreement regarding the designation of materials as "confidential." There is no need for the Court to endorse the confidentiality agreement. The Court discourages unnecessary stipulated motions for a protective order. The Court will enforce stipulated and signed confidentiality agreements. *See* Local Rule 4.15. Each confidentiality agreement or order shall provide, or shall be deemed to provide, that "no party shall file a document under seal without first having obtained an order granting leave to file under seal on a showing of particularized need." *See also* "Motions to File Under Seal" below.

## II.    MOTIONS

A.    **Certificate of Good Faith Conference** – *Before filing any motion in a civil case, the moving party shall* **confer** *with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion, and shall file with the motion a statement certifying that the moving party has* **conferred** *with opposing counsel, and that counsel have been unable to agree on the resolution of the motion.* Local Rule 3.01(g); Fed.R.Civ.P. 26(c). No certificate is required in a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, or to involuntarily dismiss an action. Local Rule 3.01(g). Nevertheless, the Court

expects that a party alleging that a pleading fails to state a claim will confer with counsel for the opposing party before moving to dismiss, and will agree to an order permitting the filing of a curative amended pleading. Fed.R.Civ.P. 10, 15. The term "confer" in Rule 3.01(g) requires a substantive conversation *in person or by telephone* in a good faith effort to resolve the motion without court action, and does not envision an exchange of ultimatums by fax or letter. Counsel who merely "attempt" to confer have not "conferred." Counsel must respond promptly to inquiries and communications from opposing counsel. Board of Governors of the Florida Bar, *Ideals and Goals of Professionalism*, 73 Florida Bar Journal 712 - 13 ¶ 6.10 and *Creed of Professionalism* ¶ 8 (adopted May 16, 1990). The Court will deny motions that fail to include an appropriate, complete Rule 3.01(g) certificate.

B.    **Extension of Deadlines**

1.    **Dispositive Motions Deadline and Trial Not Extended** – Motions to extend the dispositive motions deadline or to continue the trial are generally denied. *See* Local Rule 3.05(c)(2)(E). The Court will grant an exception only when necessary to prevent manifest injustice. A motion for a continuance of the trial is subject to denial if it fails to comply with Local Rule 3.09. The Court cannot extend a dispositive motion deadline to the eve of trial. In light of the district court's heavy felony trial calender, at least four months are required before trial to receive memoranda in opposition to a motion for summary judgment, and to research and resolve the dispositive motion sufficiently in advance of trial.

2.    **Extensions of Other Deadlines Disfavored** – Motions for an extension of other deadlines established in this order, including motions for an extension of the discovery period, are disfavored. The deadline will not be extended absent a showing of good cause. Fed.R.Civ.P. 16(b); Local Rule 3.09(a). Failure to complete discovery within the time established by this order shall not constitute cause for continuance unless brought to the attention of the Court at least sixty days in advance of the beginning of the scheduled trial term. The movant must show that the failure

to complete discovery is not the result of lack of diligence in pursuing discovery. Local Rule 3.09(b). A motion to extend an established deadline normally will be denied if the motion fails to recite that: 1) the motion is joint or unopposed; 2) the additional discovery is necessary for specified reasons; 3) all parties agree that the extension will not affect the dispositive motions deadline and trial date; 4) all parties agree that any discovery conducted after the dispositive motions date established in this scheduling order will not be available for summary judgment purposes; and 5) no party will use the granting of the extension in support of a motion to extend another date or deadline. The filing of a motion for extension of time does not toll the time for compliance with deadlines established by rule or order.

C. **Motions to Compel and for Protective Order** – Motions to compel and motions for a protective order will be denied unless the motion fully complies with Local Rule 3.04, requiring the motion to quote in full each interrogatory, question, or request; to quote in full opposing party's objection and grounds, or response which is asserted to be insufficient; and to state the reasons the motion should be granted.

D. **Motions to File Under Seal** – Whether documents filed in a case may be filed under seal is a separate issue from whether the parties may agree that produced documents are confidential. Motions to file under seal are disfavored. The Court will permit the parties to file documents under seal only upon a finding of extraordinary circumstances and particularized need. *See Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013 (11th Cir. 1992); *Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985). A party seeking to file a document under seal must file a motion to file under seal requesting such Court action, together with a memorandum of law in support. The motion, whether granted or denied, will remain in the public record.

E. **Memoranda in Opposition** – Each party opposing any written motion shall file and serve,

within **eleven** days[1] after being served with such motion, a legal memorandum with citation of authorities in opposition to the relief requested. Local Rule 3.01(b). Where no memorandum in opposition has been filed, the Court routinely grants the motion as unopposed. Motions titled as "unopposed" or "agreed" normally come to the Court's attention prior to the deadline for response. If the parties are in agreement, counsel should consider whether an unfiled stipulation is sufficient in lieu of a motion seeking a Court order.

F. **Emergency Motions** – The Court may consider and determine emergency motions at any time. Local Rule 3.01(e). Counsel should be aware that the designation "emergency" may cause a judge to abandon other pending matters in order to immediately address the "emergency." The Court will sanction any counsel or party who designates a motion as "emergency" under circumstances that are not true emergencies. It is not an emergency when counsel has delayed discovery until the end of the discovery period.

G. **Twenty Page Limit** – No party shall file a brief or memorandum in excess of twenty pages. Local Rule 3.01(c). The Clerk will return oversized memoranda. Motions for relief from page limitations are disfavored and will not be granted without a specific showing of good cause.

H. **Motions for Summary Judgment**

1. **Required Materials** – A motion for summary judgment shall be accompanied by a memorandum of law, necessary affidavits, and a concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each party opposing a motion for

---

[1] Counsel will note that this order modifies Local Rule 3.01(b) (allowing opposition to a motion within 10 days) in this case. Intermediate Saturdays, Sundays, and specified legal holidays are *in*cluded in the computation of periods of eleven days or more. *See* Fed.R.Civ.P. 6(a); Local Rule 4.20. If the motion was served by mail, add three days to the prescribed period. Fed.R.Civ.P. 6(e); Local Rule 4.20(a)(2). Service by facsimile constitutes a method of hand delivery for the purpose of computing the time within which any response is required. Local Rule 1.07(c).

summary judgment shall file and serve, within **fourteen** days after being served with such motion, a legal memorandum with citation of authorities in opposition to the relief requested as required by Local Rule 3.01(b), and shall include necessary affidavits and a concise statement of the material facts as to which the opposing party contends there exists a genuine issue for trial. Both the movant and the party opposing summary judgment shall provide pinpoint citations to the pages and lines of record supporting each material fact. General references to a deposition are inadequate. Material facts set forth in the statement required to be served by the moving party will be deemed admitted for the purposes of the motion unless controverted by the opposing party's statement.

2.    **Under Advisement** – The Court takes a motion for summary judgment under advisement **twenty** days from the date it is served, unless the Court orders a different date. Until that date, the party opposing summary judgment may file additional affidavits and exhibits within the purview of Fed.R.Civ.P. 56 in opposition to the motion, but not additional memoranda. Fed.R.Civ.P. 6(d) and 56(c); Local Rule 3.01(b). Unless specifically ordered, the Court will not hold a hearing on the motion. Failure to oppose any motion for summary judgment may result in the entry of a judgment for the movant without further proceedings. *See Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984); *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*); Fed.R.Civ.P. 56(e). All requirements in this order apply to *pro se* litigants as well as to parties represented by counsel.

I.    ***Daubert* and *Markman* Motions** – On or before the date established in the above table for the filing of motions for summary judgment, any party seeking a ruling pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (admissibility of expert opinions) or pursuant to *Markman v. Westview Instruments, Inc.*, 116 S.Ct. 1384 (1996) (interpretation of a patent claim) shall file and serve an appropriate motion. The parties shall prepare a glossary of technical or scientific terms where appropriate for the Court, court reporter, and trier of fact at any hearing or trial.

J.    **All Other Motions Including Motions *In Limine*** – On or before the date established above, the parties shall file and serve all other motions including motions *in limine*. Local Rule 3.01(g) applies, and the parties shall confer to define and limit the issues in dispute.

III.    **JOINT FINAL PRETRIAL STATEMENT**

A.    **Meeting *In Person*** – On or before the date established in the above table, **lead trial counsel** for all parties and any **unrepresented parties** shall meet together *in person* pursuant to Local Rule 3.06(b) in a good faith effort to:

1.    settle the case; the parties shall thoroughly and exhaustively discuss settlement of the action before undertaking the extensive efforts needed to conduct final preparation of the case for trial and to comply with the requirements of this order;

2.    stipulate to as many facts and issues as possible; in order to assist the Court, the parties shall make an active and substantial effort to stipulate at length and in detail as to agreed facts and law, and to limit, narrow, and simplify the issues of fact and law that remain contested; as a rule, parties who have complied with this requirement in good faith will file a Joint Final Pretrial Statement listing far more agreed facts and principles of law than those that remain for determination at trial;

3.    tag, mark, identify, examine, copy, and list all original trial exhibits (including actual document exhibits) that any party will offer in evidence or otherwise tender to any witness during trial [Local Rule 3.06(b)(3) and 3.07(a)]; prepare and exchange a final exhibit list on the Clerk's approved form (attached to this order) bearing a description identifying each exhibit and sponsoring witness [Local Rule 3.07(b)]; it is anticipated that counsel will agree to the admission of the bulk of the opposing parties' exhibits without objection, and shall designate on the exhibit list the exhibits which the Court may admit without objection at trial. Absent good cause, the Court will **not** receive in evidence over objection any exhibits – including charts,

diagrams, and demonstrative evidence – not presented to opposing counsel or unrepresented parties for inspection and copying at the required meeting, or not listed in the joint final pretrial statement. Photographs of sensitive exhibits (*i.e.*, guns, drugs, valuables) and of non-documentary evidence, and reductions of documentary exhibits larger than 8 ½" by 14" to be substituted for original exhibits after conclusion of the trial, must be presented to opposing counsel for examination at the meeting to prepare the Joint Final Pretrial Statement. Objections to such photographs or reductions of exhibits must be listed in the Joint Final Pretrial Statement. The parties are advised that the design of certain courtrooms may preclude the use of large exhibits and posters in a jury trial. The parties are directed to contact the trial judge's courtroom deputy to discuss exhibits and equipment to be used during trial;

4.    exchange the names and addresses of all witnesses, and state whether they will likely be called; and

5.    prepare a Joint Final Pretrial Statement strictly in conformance with Local Rule 3.06(c) and this order.

B.    **The Joint Final Pretrial Statement**

1.    **Form of Joint Final Pretrial Statement** – On or before the date established in the above table, the parties shall file a Joint Final Pretrial Statement that strictly conforms to the requirements of Local Rule 3.06(c) and this order. **This case must be fully ready for trial at the time that the Joint Final Pretrial Statement is due.** Lead trial counsel for **all** parties, or the parties themselves if unrepresented, shall sign the Joint Final Pretrial Statement. The Court will strike pretrial statements that are unilateral, incompletely executed, or otherwise incomplete. Inadequate stipulations of fact and law will be stricken. Sanctions may be imposed for failure to comply, including the striking of pleadings. At the conclusion of the final pretrial conference, all pleadings are deemed to merge into the Joint Final Pretrial Statement, which will control the course of the trial. Local Rule 3.06(e); Fed.R.Civ.P. 16(e).

2.    **Exhibit List** – The exhibit list filed in compliance with Local Rules 3.06(c)(4) and 3.07(b) must be on the Clerk's approved form (attached to this order). Unlisted exhibits will not be received into evidence at trial, except by order of the Court in the furtherance of justice. *See* Local Rule 3.06(e). The Joint Final Pretrial Statement must attach each party's exhibit list on the approved form listing each *specific* objection ("all objections reserved" does *not* suffice) to each numbered exhibit that remains after full discussion and stipulation. Objections not made – or not made with specificity – are waived.

3.    **Witness List** – On the witness list required by Local Rule 3.06(c)(5), the parties and counsel shall designate which witnesses will likely be called, and also designate which witnesses may be called. Absent good cause, the Court will not permit testimony from unlisted witnesses at trial over objection. This restriction does not apply to true rebuttal witnesses (*i.e.,* witnesses whose testimony could not reasonably have been foreseen to be necessary). Records custodians may be listed, but will not likely be called at trial, except in the rare event that authenticity or foundation is contested. For good cause shown in compelling circumstances, the Court may permit presentation of testimony in open court by contemporaneous transmission from a different location. Fed.R.Civ.P. 43(a).

4.    **Depositions** – The Court encourages stipulations of fact to avoid calling unnecessary witnesses. Where a stipulation will not suffice, the Court permits the use of videotaped depositions. At the required meeting, counsel and unrepresented parties shall agree upon and specify in writing in the Joint Final Pretrial Statement the pages and lines of each deposition (except where used solely for impeachment) to be published to the trier of fact. The parties shall include in the Joint Final Pretrial Statement a page-and-line description of any testimony that remains in dispute after an active and substantial effort at resolution, together with argument and authority for each party's position. The parties shall prepare, for submission and consideration at the final pretrial conference or trial, edited and marked copies (as to the portion offered by each party) of any depositions or

deposition excerpts which are to be offered in evidence.

**5.    Joint Jury Instructions, Verdict Form, Voir Dire Questions** – In cases to be tried before a jury, counsel shall attach to the Joint Final Pretrial Statement **a single jointly-proposed set of jury instructions**, together with a single jointly-proposed jury verdict form. Local Rule 5.01(c). The parties should be considerate of their juries, and therefore should submit short, concise special verdict forms. The Court prefers pattern jury instructions approved by the United States Court of Appeals for the Eleventh Circuit. A party may include at the appropriate place in the single set of jointly-proposed jury instructions a contested charge, so designated with the name of the requesting party and bearing at the bottom a citation of authority for its inclusion, together with a summary of the opposing party's objection. The Court will deny outright a proposed instruction that is "slanted" in any way. The Court requests that the parties, where possible, attach to the Joint Final Pretrial Statement **a virus-free computer diskette containing the single set of jury instructions and verdict form, preferably in WordPerfect® 8.0 format**. Each party who wishes for the Court to ask specific questions of the venire during voir dire may also include in the Joint Final Pretrial Statement a single joint list of proposed questions.

**C.    Coordination of Joint Final Pretrial Statement** – All counsel and parties are responsible for filing a Joint Final Pretrial Statement in full compliance with this order. Plaintiff's counsel (or plaintiff if all parties are proceeding *pro se*) shall have the *primary* responsibility to coordinate compliance with the sections of this order that require a meeting of lead trial counsel and unrepresented parties in person, and the filing of a Joint Final Pretrial Statement and related material. *See* Local Rule 3.10 (relating to failure to prosecute). If the plaintiff is proceeding *pro se*, defense counsel shall coordinate compliance. If counsel is unable to coordinate such compliance, counsel shall timely notify the Court by written motion or request for a status conference.

**D.    Trial Briefs and Other Materials**

**1.    Trial Briefs** – In the case of a non-jury trial, on or before the date established above for filing "All Other Motions and Briefs," the parties shall file and serve a trial brief with proposed findings of fact and conclusions of law, together with a computer diskette where possible. The parties may file a trial brief on or before the same date in the case of a jury trial.

**2.    Exhibit Notebook** – On the first day of a jury trial or non-jury trial, the parties shall provide to the Court a bench notebook containing marked copies of all exhibits. The parties may contact the Courtroom Deputy Clerk for the trial judge to determine whether this requirement may be waived.

**IV.    MEDIATION**

**A.    Purpose** – To minimize costly pretrial procedures in a case that may be equitably settled, and to secure the just, speedy, and inexpensive determination of this action, all parties shall participate in good faith in court-annexed mediation. *See* Fed.R.Civ.P. 1; Fed.R.Civ.P. 16(a)(5); Local Rules 1.01(b), 9.01(b). Parties who prefer mediation but have been designated for arbitration may file and serve a joint motion seeking relief from arbitration.

**B.    The Mediator** – This Court prefers to appoint the certified and approved mediator, if any, chosen by the parties in their Case Management Report. If no such mediator has been chosen, the Court designates the default mediator listed in the above table pursuant to Local Rule 9.04. The mediator shall conduct the mediation conference in the conference room of the mediator's law firm or office at a time and date selected by the mediator within the confines of this order.

**C.    Last Date to Mediate** – The parties shall complete the mediation conference on or before the mediation date set forth earlier in the above table. Despite Local Rule 9.05(d), *neither the mediator nor the parties have authority to continue the mediation conference beyond this date* except on express order of the Court. In any

Track Three case, complex case, or case involving multiple parties, the mediator has the authority to conduct the mediation in a series of sessions and in groups of parties so that mediation is complete by the last date to mediate.

D.      **Mediator's Authority** – The mediator shall have all powers and authority to conduct a mediation and to settle this case as are described in Chapter Nine of the Local Rules, except as limited by this order. *The mediation shall continue until adjourned by the mediator.* In order to coordinate the mediation conference, the mediator may set an abbreviated scheduling conference prior to the scheduled mediation. At such time, the mediator may designate one or more coordinating attorneys who shall be responsible for conferring with the mediator regarding the mediation conference. If necessary, the coordinating attorney may coordinate the rescheduling of a mediation conference within the time allowed in this order.

E.      **General Rules Governing Mediation Conference**

1.      **Case Summaries** – Not less than **two days** prior to the mediation conference, each party shall deliver to the mediator a written summary of the facts and issues of the case.

2.      **Identification of Corporate Representative** – As part of the written case summary, counsel for each corporate party shall state the name and general job description of the employee or agent who will *attend and participate with full authority to settle* on behalf of the corporate party.

3.      **Attendance Requirements and Sanctions** – Each attorney acting as lead trial counsel, and each party (and in the case of a corporate party, a corporate representative) with full authority to settle, *shall* attend and participate in the mediation conference. In the case of an insurance company, the term "full authority to settle" means authority to settle for the full value of the claim or policy limit. The Court will impose sanctions upon lead counsel and parties who do not attend and participate in good faith in the mediation conference.

4.      **Authority to Declare Impasse** – Participants shall be prepared to spend as much time as may be necessary to settle the case. No participant may force the early conclusion of a mediation because of travel plans or other engagements. Only the mediator may declare an impasse or end the mediation.

5.      **Restrictions on Offers to Compromise** – Evidence of offers to compromise a claim is not admissible to prove liability for or invalidity of the claim or its amount. Fed. R. Evid. 408 (includes evidence of conduct or statements made in compromise negotiations); Local Rule 9.07(b). All discussion, representations and statements made at the mediation conference are privileged settlement negotiations. Except in a supplemental proceeding to enforce a settlement agreement, nothing related to the mediation conference shall be admitted at trial or be subject to discovery. Local Rule 9.07; Fed. R. Evid. 408. A communication between a party and a mediator during a private caucus is also confidential, unless the party tells the mediator that it is not.

F.      **Rate of Compensation** – The mediator shall be compensated at an hourly rate of $150, Local Rule 9.02(f), or at a rate stipulated by the parties in advance of mediation and borne equally by the parties. Upon motion of the prevailing party, the party's share may be taxed as costs in this action.

G.      **Settlement and Report of Mediator** – A settlement agreement reached between the parties shall be reduced to writing and signed by the parties and their attorneys in the presence of the mediator. *See also* Local Rule 9.06(b) and 3.08. Within **five days** of the conclusion of the mediation conference, the mediator shall file and serve a written mediation report stating whether all required parties were present, whether the case settled, and whether the mediator was forced to declare an impasse. *See* Local Rule 9.06. The mediator may report any conduct of a party or counsel that falls short of a good faith effort to resolve the case by agreement. *See* Local Rule 9.05(e), 9.06(a).

## V.     FINAL PRETRIAL CONFERENCE

A.     **Lead Trial Counsel and Parties** – If this order does not set a final pretrial conference date, the Court may later set a final pretrial conference on notice. **Lead trial counsel and local counsel for each party, together with any unrepresented party, *must* attend the final pretrial conference in person unless previously excused by the Court.** *See* Local Rule 3.06(d); Fed.R.Civ.P. 16(d).

B.     **Substance of Final Pretrial Conference** – This case must be fully ready for trial at the time that the joint final pretrial statement is due. At the final pretrial conference, all counsel and parties must be prepared and authorized to accomplish the purposes set forth in Fed.R.Civ.P. 16 and Local Rule 3.06, including the formulation and simplification of the issues; the elimination of frivolous claims or defenses; admitting facts and documents to avoid unnecessary proof; stipulating to the authenticity of documents; obtaining advance rulings from the Court on the admissibility of evidence; settlement and the use of special procedures to assist in resolving the dispute; disposing of pending motions; establishing a reasonable limit on the time allowed for presenting evidence; and such other matters as may facilitate the just, speedy, and inexpensive disposition of the action. *See* Fed.R.Civ.P. 16(c)-(d).

## VI.     SANCTIONS

The Court will impose sanctions on any party or attorney: 1) who fails to attend and to actively participate in the meeting to prepare the joint pretrial statement, or who refuses to sign and file the joint pretrial statement; 2) who fails to attend the final pretrial conference, or who is substantially unprepared to participate; 3) who fails to attend the mediation and actively participate in good faith, or who attends the mediation without full authority to negotiate a settlement, or who is substantially unprepared to participate in the mediation; or 4) who otherwise fails to comply with this order. Sanctions may include reasonable attorneys fees and costs, the striking of pleadings, the entry of default, the dismissal of the case, and a finding of contempt of

court. *See* Fed.R.Civ.P. 16(f) and 37; Local Rules 9.05(c), (e); 28 U.S.C. § 1927.

## VII.     TRIAL

A.     **Trial Before District Judge** – A case scheduled for trial before a United States District Judge normally will be called for trial on the first day of the trial term indicated in the above table, or as soon after that date as is possible in light of the Court's felony and civil trial calender.[2] Cases not reached for trial will be carried over to the following month, and issued subpoenas will continue in force. Counsel, parties, and witnesses ***shall be available on twenty-four hours notice*** for trial after the beginning of the trial term. A different district judge or visiting judge may try the case. Local Rule 1.03(d). The case may be set for trial in the Orlando Division, Tampa Division, Fort Myers Division, Ocala Division, or Jacksonville Division of the Middle District of Florida. Local Rule 1.02(e). Absent a showing of good cause, any party whose turn it is to provide evidence will be deemed to have rested if, during the hours designated for trial, the party has no further evidence or witnesses available.

B.     **Trial Before Magistrate Judge** – A case scheduled for trial before a United States Magistrate Judge will be called for trial on a date certain. With respect to a civil case that remains pending before a district judge as of the date of this order, the United States District Judges of the Middle District of Florida wish to afford the parties the opportunity to consent to proceed before a magistrate judge. Consent must be unanimous. A United States Magistrate Judge is available pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73(a) to conduct all further proceedings in this case (or specified motions in this case), to conduct a jury or non-jury trial ***beginning on a date certain***, and to enter final

---

[2]This case may be reassigned to a visiting district judge at any time. As stated in paragraph III (B)(1) above, this case should be fully ready for trial at the time that the Joint Final Pretrial Statement is due. In unusual and extraordinary circumstances, the Court may re-notice this case for trial shortly *before* the first day of the trial term if necessary to accommodate the trial schedule of the district judge or a visiting judge.

judgment. A party may appeal a final judgment of a magistrate judge to the United States Court of Appeals for the Eleventh Circuit in the same manner as an appeal from the district court. 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73. A party is free to withhold consent without adverse substantive consequences. 28 U.S.C. § 636(c)(2); Fed.R.Civ.P. 73(b). Consent forms are attached to this scheduling order. Fed.R.Civ.P. 73(b); Local Rule 6.05.

C.     **Settlement** – Counsel shall immediately notify the Court upon settlement of any case. Local Rule 3.08. The parties are jointly and severally liable for jury costs for settlement after jurors have been notified to appear without sufficient time to cancel the appearance. Regardless of the status of settlement negotiations, the parties shall appear for all scheduled hearings, including the final pretrial conference and for trial, absent the filing of a stipulation of dismissal signed by all parties who have appeared in the action (or notice of dismissal if prior to answer and motion for summary judgment). Fed.R.Civ.P. 41(a).

**DONE** and **ORDERED** this   25th   day of April, 2007.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Note: Notice re: Pre-marking of Exhibits with Exhibit List and Tags and a Magistrate Consent form can be found on the Court's website at *http://www.flmd.uscourts.*

Exhibit 4

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

Bank of America | Newsroom - Press Releases

# Bank of America introduces first-ever Keep the Change™ electronic change jar to help consumers save while they spend

October 5, 2005

**Reporters May Contact**
Tara Burke, Bank of America, 212.847.6488
Tara.A.Burke@bankofamerica.com

*Consumers can round-up debit purchases and put the change into savings; Bank matches customer contributions for the first three months*

CHARLOTTE, N.C. – Aiming to help Americans save, Bank of America today announced *Keep the Change*, a unique free savings feature tied to a debit card that will revolutionize the way people collect loose change.

*Keep the Change* is a quick and easy way to start saving immediately. When a customer signs up for *Keep the Change*, the amount of every purchase they make with a Bank of America debit card is automatically rounded up to the nearest whole dollar and transferred from the customer's checking account into their savings account at the end of the day. For example, when purchasing a coffee with a debit card, the difference between the $2.85 cost and $3.00 – or 15 cents – would be transferred electronically. In addition, Bank of America will match 100 percent of the *Keep the Change* transfers for the first three months. After that the bank will contribute five percent a year. The maximum match is $250 annually.

"Our customers told us they want a simple way to save, so we created *Keep the Change*," said Diane Morais, Deposits and Debit Products executive at Bank of America ."It's like an electronic change jar. People can now turn those everyday purchases for groceries, gas and meals into a simple way to save."

*Keep the Change* comes at a time when the personal savings rate is low. The U.S. Department of Commerce reported that personal savings was negative $61.8 billion in August, compared to negative $100.9 billion in July. Personal savings as a percentage of disposable personal income was negative 0.7 percent in August, compared with negative 1.1 percent in July.

EXHIBIT

_____

Bank of America | Newsroom - Press Releases

"*Keep the Change* is a simple way to help you save every day, plus you get a contribution from the bank. This is a great plan to make your savings grow," says financial expert David Bach, #1 best-selling author of *The Automatic* Millionaire. "People should take every opportunity they can to save money, because it really adds up -- and the best way I know to do that is to make your savings automatic!"

Bach offers the following tips to help consumers save:

- Find your Latte Factor ® -- the small ways you spend money on little things like coffee, bottled water, etc. -- and re-evaluate daily purchases.
- Assess how you can redirect spending to personal savings.
- Use a debit card for most purchases. The money comes right out of your checking account.
- Make your savings AUTOMATIC by participating in a program like *Keep the Change* that helps you save while you spend.
- Decide today to pay yourself first!

Available coast-to-coast by the end of October*, new and existing customers can activate *Keep the Change* by visiting one of the bank's more than 5,800 banking centers. Customers will need a Bank of America checking account, savings account and debit card. The bank pays the rewards annually. Customers can watch their savings grow by viewing their accounts within Online Banking at bankofamerica.com. For more information, customers can also go to http://www.bankofamerica.com/ktc.

Bank of America is the largest debit card issuer in the United States, with 27 million cards issued.

*Keep the Change* currently not available in Washington and Idaho.

**Bank of America**
Bank of America is one of the world's largest financial institutions, serving individual consumers, small and middle market businesses and large corporations with a full range of banking, investing, asset management and other financial and risk-management products and services. The company provides unmatched convenience in the United States, serving 33 million consumer relationships with more than 5,800 retail banking offices, more than 16,600 ATMs and award-winning online banking with more than 14 million active users. Bank of America is the No. 1 overall Small Business Administration (SBA) lender in the United States

Bank of America | Newsroom - Press Releases                                        Page 3 of 3

and the No. 1 SBA lender to minority-owned small businesses. The company serves clients in 150 countries and has relationships with 98 percent of the U.S. Fortune 500 companies and 85 percent of the Global Fortune 500. Bank of America Corporation stock (NYSE: BAC) is listed on the New York Stock Exchange.

**David Bach and FinishRich Media**
David Bach is an internationally recognized financial expert, bestselling author and the creator of the The Finish Rich book and seminar series from which millions of people have benefited. Bach has written six consecutive national bestsellers including *The Automatic Millionaire, Start Late, Finish Rich, Smart Women Finish Rich, Smart Couples Finish Rich, The Finish Rich Workbook and The Automatic Millionaire Workbook*.

Bach's breakout book *The Automatic Millionaire* exploded around the world in 2004 and quickly became the number one business book of 2004 reaching #1 on the New York Times, Business Week, Wall Street Journal, and USA Today. With over a million copies in print this simple powerful book has been translated into over 15 languages and has inspired thousands of people around the world to save automatically.

David Bach is the founder of FinishRich Media a company dedicated to teaching people around the world how to live and finish rich. You can read his column *The Automatic Millionaire* bi-weekly at Yahoo, where Bach is a featured contributing editor.

Note: We maintain Bank of America news releases on this site for archival purposes. Our news releases are believed accurate as of the date they are issued; however, they may become outdated over time, and should not be relied on as correct after their issue date.

Exhibit 5

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EVERY PENNY COUNTS, INC.       )     Case No: 2:07-CV-00042-JES-SPC
                      )
v.                        )
                      )
BANK OF AMERICA CORPORATION  )
AND VISA U.S.A., INC.            )
                      )

## AFFIDAVIT OF EVERY PENNY COUNTS, INC.

BEFORE ME, the undersigned notary public came and appeared

**BERTRAM BURKE**

who after first being sworn to an oath of truthfulness stated as follows:

1.     He is an individual of full age of majority competent to testify as to the matters set forth herein.

2.     He has personal knowledge of the matters attested to herein and would so testify in a court of law.

3.     He is the President and sole operator of Every Penny Counts, Inc. (hereinafter referred to as "EPC"). He makes all declarations contained herein in his capacity as representative of EPC and is authorized to bind EPC to the statements and declarations set forth herein.

4.     In October 2004, EPC moved its principal place of business to Cape Coral, Florida. At this time, Mr. Burke also changed his place of residence to Cape Coral, Florida.

5.     After relocating to Cape Coral, Florida, Mr. Burke, on EPC's behalf, met with Brian Sloan - a Vice President at Bank of America, N.A. (hereinafter referred to as "BANA").

**EXHIBIT**

_____

regarding a potential licensing agreement between EPC and BANA for United States Patent No. 6,112,191 (hereinafter referred to as "the '191 Patent").

6.     During these meetings, Mr. Sloan represented that he would, and did, sponsor the idea of a licensing agreement between EPC and BANA for the '191 Patent to corporate management of BANA.

7.     On April 20, 2004, EPC entered into a Licensing Agreement with SIP Assets, LLC (hereinafter referred to as "SIP") for the '191 Patent. A true and correct copy of this Licensing Agreement is attached hereto as Exhibit "A."

8.     At some point during the effective period of the licensing agreement, SIP ceased making the required payments to EPC. This cessation of payments resulted in the termination of this licensing agreement as of May 5, 2005. A true and correct copy of the Letter of Termination of this Licensing Agreement, and a true and correct of the Letter Confirming Termination of this Licensing Agreement are attached hereto as Exhibit "B."

9.     On April 4, 2007, Mr. Burke, on behalf of EPC, received an e-mail from Edward Grau, a member manager of SIP, acknowledging the termination of this Licensing Agreement and that such termination divested SIP of all rights to the '191 Patent. A true and correct copy of this e-mail is attached hereto as Exhibit "C."

BERTRAM BURKE

SWORN TO AND SUBSCRIBED

BEFORE ME THIS _20_ DAY

OF APRIL, 2007.

_Christine B. Queery_
NOTARY PUBLIC



CHRISTINE B. QWEERY
Notary Public - State of Florida
My Commission Expires Feb 21, 2010
Commission # DD 521138
Bonded By National Notary Assn.

TA.162298.1

# EXHIBIT A

CONFIDENTIAL

## LICENSE AGREEMENT

This License Agreement ("**Agreement**") is effective this 20th day of April, 2004 (the "**Effective Date**"), by and between Every Penny Counts, Inc., having a principal place of business at 34 Navesink Drive, Monmouth Beach, New Jersey 07550 ("EPC"), and S.I.P. Assets LLC, having a principal place of business at 4741 Central Avenue, #230 Kansas City, MO 64112 ("SIP").

**WHEREAS,** EPC wishes to grant, and SIP wishes to accept, a license under certain patents and patent applications owned by EPC on the terms and conditions set forth herein; and

**WHEREAS,** SIP wishes to grant, and EPC wishes to accept, a license under certain patents and patent applications owned by SIP on the terms and conditions set forth herein;

**NOW, THEREFORE,** in consideration of the payments set forth in Section 5 of this Agreement and the other rights, covenants and obligations set forth herein, EPC and SIP hereby agree as follows:

1.     **DEFINITIONS**

　　　Unless otherwise stated, all references to "Section" or "Sections" shall mean the section(s) of this Agreement.

　　1.1     "**Confidential Information**" means any information of a confidential nature included in the EPC Licensed Patents or SIP Licensed Patents, the financial information subject to review pursuant to Section 6, and the terms and conditions of this Agreement.

　　1.2     "**EPC Licensed Patents**" means (i) U.S. Patent No. 6,112,191, (ii) the patents issuing on the corresponding active foreign applications (existing on the Effective Date) that arose from PCT Application No. PCT 96/06055, and (iii) the patent, and any continuation (excluding continuations-in-part) or divisional patent, issuing from U.S. Patent Application Serial No. 09/611905, and any reissue or re-examination of such patent.

　　1.3     "**Field of Use**" means use by holders of a debit card linked to a demand deposit account or an ATM card linked to a demand deposit account, to apportion all or selective amounts from the balances of said account into a pre-selected investment vehicle by making directed, programmed, periodic and rounding instructions to the bank managing such account, at points of sale or by using remote terminals connected to a bank manager. For the avoidance of doubt, "Field of Use" shall not include (a) the rounding up of debit or ATM transactions for the purposes of making contributions to a nonprofit organization, (b) the use of paper check drafts for any purpose, and (c) the loading of money into an account at a merchant point

of sale terminal, mall terminal, or a remote terminal, other than depositing money into a demand deposit account.

1.4 **"SIP Licensed Patents"** means U.S. Patent Application Serial No. US2003/0149629A1 and all divisions, continuations, continuations-in-part, reissues, re-exams, and all foreign counterparts of such patent or patent application and each patent issuing thereon.

1.5 **"SIP Program"** means SIP's program for consumer conduit services as substantially described in the SIP business plan dated March 31, 2004.

## 2. LICENSES

2.1 *License Grant to SIP.* EPC hereby grants to SIP a license under the EPC Licensed Patents to operate within the SIP Program within the Field of Use. For the avoidance of doubt, cards not enabled in the SIP Program are excluded from this license. This license does not include the right to grant sublicenses under the EPC Licensed Patents to any third party except pursuant to a written agreement provided to Licensor for review and subject to receipt of written approval from EPC. Subject to Section 5.4 below, the license to the EPC Licensed Patents shall be exclusive within the Field of Use. For the avoidance of doubt, unless and until the license granted under this Section is either terminated or becomes non-exclusive, EPC shall not use the EPC Licensed Patents within the Field of Use or grant a license within the scope of the exclusive license granted herein. In all instances, SIP shall not use the EPC Licensed Patents outside of the Field of Use.

2.2 *License Grant to EPC.* SIP hereby grants to EPC a royalty-free, fully paid-up, non-exclusive, world-wide license under the SIP Licensed Patents for all fields of use other than the Field of Use, for the life of each such patent or patent application.

2.3 *Reservation of Rights; Prosecution; Maintenance; Enforcement.* EPC reserves for itself all rights not explicitly granted to SIP under this Agreement. SIP reserves for itself all rights not explicitly granted to EPC under this Agreement. EPC reserves for itself all rights of enforcement, rights of maintenance and rights of prosecution with respect to the EPC Licensed Patents and SIP reserves for itself all rights of enforcement, rights of maintenance and rights of prosecution with respect to the SIP Licensed Patents. Nothing in this Agreement shall be construed as an obligation for either party to seek, maintain or extend patent protection. If at any time during the Term, any claim of any of the patents or patent applications licensed hereunder is not allowed or is held invalid, neither party shall have a damage claim or a claim for refund or reimbursement against the other.

2

2.4     *Obligations to Notify of Third-Party Infringement.*  During the period of time in which SIP maintains an exclusive license pursuant to Section 5.4, the parties agree to promptly notify one another of any material infringement or alleged material infringement in the Field of Use of which it is or becomes aware with respect to the EPC Licensed Patents.  SIP agrees to join in any suit as may be required for EPC to enforce any of the EPC Licensed Patents and SIP agrees to cooperate and provide reasonable assistance and any documentation as may be reasonably requested by EPC in connection with any such suit.

3.    **CONFIDENTIAL INFORMATION**

3.1     *Confidential Information.*  Neither party to this Agreement shall disclose any Confidential Information of the other party to any person or entity, except its employees and permitted sublicensees having a need to know and under written obligations of confidentiality.  Each party shall use the Confidential Information of the other party only as permitted under this Agreement.  Each party agrees to protect the Confidential Information of the other party with the same standard of care and procedures that it uses to protect its own highly sensitive trade secrets and proprietary information, but in no event shall this standard of care be less than reasonable care.  Each party shall promptly notify the other party of any unauthorized disclosure or use of the Confidential Information of which it becomes aware.  Each party agrees to cooperate and assist the other party in preventing any such unauthorized use or disclosure.

3.2     *Equitable Relief.*  The parties understand and acknowledge that violations of obligations under this Section 3 will cause irreparable harm and damage, which may not be recovered by any remedy available in law.  The parties agree that remedies for breach of the confidentiality provisions of this Section 3 may include injunctive relief and any other relief available, whether in law or in equity.

3.3     *Return of Materials.*  Each party agrees that upon termination of this Agreement or any license granted to it hereunder, at the request of the other party, it shall return or destroy all tangible embodiments of the other party's Confidential Information as specified by the other party.  EPC may retain all audit reports and Payment Reports.

3.4     *Exceptions.*  Notwithstanding the other provisions of this Section 3, these obligations of confidentiality shall not extend to the party that wishes or is required to disclose or use the Confidential Information of the other party (such first mentioned party hereinafter referred to as the "**Recipient Party**"), which Confidential Information (i) through no fault of the Recipient Party, becomes generally available or known to the public, (ii) is not otherwise the subject of obligations of confidentiality to the other party or to any third party, and was already in the possession of the Recipient Party prior to having obtained the

information from such other party or such third party, (iii) is independently developed by the Recipient Party, or (iv) is required to be disclosed by subpoena, law or other directive of a court, administrative agency or arbitration panel (in which event the Recipient Party agrees to provide the other party prompt notice of such request or requirement in order to enable the other party to (a) seek an appropriate protective order or other remedy, (b) consult with the Recipient Party with respect to taking steps to resist or narrow the scope of such request or requirement, or (c) waive compliance, in whole or in part, with the terms of this Section 3). EPC shall be permitted to disclose the terms of this Agreement, under terms of a non-disclosure agreement, to a prospective assignee or a purchaser of EPC's business to which this Agreement pertains.

## 4.    MARKINGS

In connection with any SIP controlled advertising, promotion and press release undertaken by any participating financial institution and/or SIP in regard to the SIP Program, at a minimum, "Every Penny Counts, Inc." must be described as the licensor, and SIP must show a listing of "www.everypennycounts.com". Each such form of advertisement, promotion or press release must receive the prior written approval of EPC. SIP shall mark, and shall require the marking of, the patent numbers of each EPC Licensed Patent issued before or after the Effective Date, as reasonably necessary for EPC to obtain the benefits of patent marking.

## 5.    PAYMENTS

5.1    *Signing Payment.* SIP shall pay to EPC an initial non-refundable fee of $50,000 on the Effective Date.

5.2    *Payment Upon Equity Funding.* Within 30 days of the closing of cumulative equity operational funding by SIP, SIP shall pay to EPC the non-refundable amount of $750,000. This amount shall represent an advancement of royalty payments to be made pursuant to Section 5.3 below, and shall be credited against such royalty payments commencing with the first dollar of royalty payments so due. In the event that SIP does not pay the non-refundable amount of $750,000 prior to September 30, 2004 (regardless of whether the closing of cumulative equity operational funding occurred), this Agreement shall expire by its terms, all rights to the EPC Licensed Patents conveyed to SIP shall expire and EPC shall be free thereafter to use the EPC Licensed Patents in the Field of Use to its absolute discretion and without any obligation on the part of EPC to SIP.

5.3    *Royalty Payments.* Commencing on the Effective Date and until the last to expire of the EPC Licensed Patents, SIP shall pay to EPC a royalty as follows:

4

5.3.1   with respect to program arrangements between SIP and Citigroup, SIP shall pay to EPC a fee of $.25 per month per debit card and ATM card as long as such card is in the SIP Program; and

5.3.2   other than with respect to the arrangements of Section 5.3.1 above, SIP shall pay to EPC a fee of $.50 per month per debit card and ATM card as long as such card is in the SIP Program. Without limiting the foregoing, the royalty obligation under this Section 5.3.2 shall apply regardless of whether SIP or a third party issues such debit cards or ATM cards.

5.4   *Payments to Maintain License.* In order for SIP to retain the exclusive license provided under Section 2.1, SIP must satisfy each of the following minimum royalty payment amounts at the times specified below and in accordance with Section 6.2:

5.4.1   For each quarter during year 2 of this Agreement, the minimal royalty fees paid to EPC shall be $250,000;

5.4.2   For each quarter during year 3 of this Agreement, the minimal royalty fees paid to EPC shall be $500,000;

5.4.3   For each quarter during year 4 of this Agreement, the minimal royalty fees paid to EPC shall be $1,000,000;

5.4.4   For each quarter during year 5 of this Agreement, the minimal royalty fees paid to EPC shall be $1,250,000;

5.4.5   For each quarter during year 6 of this Agreement, the minimal royalty fees paid to EPC shall be $1,750,000; and

5.4.6   For each quarter during year 7 of this Agreement, and for each consecutive quarter thereafter in subsequent years, until the last to expire of the EPC Licensed Patents, the minimal royalty fees paid to EPC for each such quarter shall be $2,000,000.

At the discretion of SIP, or if SIP fails to make full and timely payment of each minimum amount set forth above, the license grant of Section 2.1 shall become non-exclusive in the Field of Use. However, if SIP fails to make a payment as specified in Sections 5.4.1-5.4.6 above, and SIP also fails to make full and timely payment as specified below (and in accordance with Section 6), EPC may terminate this Agreement in accordance with Section 9.2.

5.4.7   For each quarter during year 2 of this Agreement, and for each consecutive quarter thereafter in subsequent years, until the last to expire of the EPC

Licensed Patents, the minimal royalty fees paid to EPC for each such quarter shall be $250,000.

If EPC chooses to terminate this Agreement, SIP shall cooperate with EPC to execute all such documents and take all such actions necessary to effect such termination.

6.    **RECORDS AND REPORTS**

6.1    *Quarterly Reports and Payments.*  Within thirty (30) days after the close of each quarter during the Term, SIP shall submit to EPC a written report with respect to the preceding quarter ("**Payment Report**") setting forth (i) the amount of royalties owed pursuant to Section 5.3.1 above, providing a copy of the Citigroup report of information used by SIP to calculate such amount, and (ii) the amount of royalties owed pursuant to Section 5.3.2 above, providing copies of SIP's, and each respective institution's report of, information used to calculate such amount.  Full payment for the quarter covered by the Payment Report shall be made with the required submission of the Payment Report.

6.2    For purposes of payments to be made pursuant to Section 5 and Section 6.1, references to "quarter" refer to each three (3) month period of time, commencing upon the close of the calendar quarter in which the $750,000 payment of Section 5.2 is made.  Year 1 of this Agreement shall refer to the one (1) year period of time commencing upon the close of the calendar quarter in which the $750,000 payment of Section 5.2 is made.  In the event that royalties are owed pursuant to Section 5.3 prior to the commencement of year 1 of this Agreement, such royalties shall be reported and paid in accordance with Section 6.1 at the time of the first Payment Report.

6.3    *Maintenance of Records; Audits.*  SIP shall maintain at its principal office the proper books of account and records showing its actions under this Agreement.  Upon reasonable notice, such books and records shall be open to inspection and copying by an independent auditor, during usual business hours, for three (3) years after the closing of the quarter to which they pertain, for purposes of verifying the accuracy of the reports and amounts paid by SIP under this Agreement.  SIP shall permit such an independent auditor to conduct such inspection at least once every three months, but no more than four times per year.  In the event that royalties due for any time period are determined by the independent auditor to be at least five percent (5%) greater than the royalties paid for that time period, SIP shall pay the difference plus prime-rate interest and shall reimburse EPC for the reasonable costs of the audit within twenty (20) days of receiving the auditor's report.

7.   **REPRESENTATION AND DISCLAIMERS**

7.1   As of the Effective Date, EPC has not received notice from a third party asserting invalidity or unenforceability of U.S. Patent No. 6,112,191.

7.2   EXCEPT AS SET FORTH IN SECTION 7.1, EPC MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND RELATING TO THE EPC LICENSED PATENTS, AND SIP MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND RELATING TO THE SIP LICENSED PATENTS, INCLUDING ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, OR NON-INFRINGEMENT.

8.   **LIMITATIONS OF LIABILITY**

NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING LOSS OF PROFITS, WHETHER UNDER THIS AGREEMENT OR OTHERWISE, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9.   **TERM; TERMINATION**

9.1   *Term.* The term of this Agreement shall be from the Effective Date until the last to expire of the EPC Licensed Patents and the SIP Licensed Patents, unless earlier terminated in accordance with the terms of this Agreement ("**Term**").

9.2   *Breach.* Either party may terminate this Agreement if the other party materially breaches any provision of this Agreement and fails to correct the breach within twenty (20) days following receipt of written notice of the breach. Without limiting that which may be considered a material breach, SIP's failure to make reports and payments in full and in accordance with Sections 5.1, 5.2, 5.3, and 6 shall be deemed a material breach.

9.3   *Unauthorized Transfer.* Except as permitted in Section 10, if SIP attempts to assign, license, sublicense or otherwise convey any rights under this Agreement, EPC may immediately terminate this Agreement by providing written notice to SIP.

9.4   *Insolvency.* EPC may immediately terminate this Agreement if SIP should commit any act of bankruptcy, become insolvent, file a petition under any bankruptcy or insolvency act or have any such petition filed against it, make a general assignment for the benefit of creditors, and/or a receiver is appointed to take charge of all or part of SIP's property.

9.5    *Invalidity.* In the event that each of the claims of the EPC Licensed Patents are held in a non-appealable order from a court of competent jurisdiction to be invalid, SIP may terminate this Agreement upon thirty (30) days written notice to EPC, subject to satisfaction of outstanding payment obligations incurred prior to such termination.

9.6    *Effects of Termination.* Any termination of this Agreement shall automatically terminate all permitted sublicenses granted hereunder.

9.7    Nothing in this Section 9 shall limit any other remedy that EPC or SIP may have for default by the other party under this Agreement.

## 10.    ASSIGNMENT

This Agreement and the rights and obligations of SIP hereunder are personal to SIP and shall not be assigned or otherwise transferred by SIP, whether by merger, acquisition, consolidation or otherwise, without the prior written consent of EPC; *provided, however,* that SIP may transfer this Agreement in its entirety in connection with an internal reorganization of SIP, subject to EPC's prior written consent which shall not be unreasonably withheld; *provided further* that a change of control of SIP shall not in itself be deemed an assignment or other transfer by SIP. Except for the provisions of Section 2.2, this Agreement and EPC's rights and obligations herein may be freely assigned or otherwise transferred by EPC. Any attempted assignment, sublicense, transfer or other conveyance by SIP of this Agreement or any of SIP's rights, liabilities, covenants or obligations under this Agreement in derogation of this Section shall be void *ab initio.*

## 11.    NOTICES

All notices under this Agreement shall be in writing and may be sent via facsimile with required confirmation by United States Postal Service, Certified Mail, Return Receipt Requested, postage prepaid or other receipt verifiable delivery, and addressed as follows:

To EPC:                                    To SIP:
34 Navesink Drive                          4741 Central Avenue, #230
Monmouth Beach, New Jersey, 07550          Kansas City, Missouri, 64112

Fax: 732-483-0139                          Fax: 916-404-7138
Attn: Bertram V. Burke                     Attn: Ray Edwards

8

## 12.   GENERAL

12.1   *Disclosure of Transaction.*  EPC and SIP and their respective officers, directors, employees, agents and affiliates shall not make any public announcement or issue any press release or other publicity in respect of this transaction without the prior written consent of both parties.

12.2   *No Waiver.*  The parties agree that either party's failure to insist upon the performance of any provision of this Agreement or to exercise any right or privilege granted hereunder shall not be construed as waiving any such provision, and the same shall continue in force.

12.3   *Entire Agreement.*  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all prior understandings, communications, and agreements, whether verbal or written.  No amendment to or modification of this Agreement shall be valid or binding unless in writing and executed by authorized representatives of the parties.

12.4   *Binding Agreement.*  This Agreement shall be binding upon and inure solely to the benefit of each of the parties hereto and their permitted successors and assigns, and no other person or entity shall be a beneficiary hereunder or have any right to enforce any part of this Agreement.

12.5   *Severability.*  If any provision of this Agreement is unenforceable, such provision will be changed and interpreted to accomplish the objectives of such provision to the greatest extent possible under applicable law and the remaining provisions will continue in full force and effect.

12.6   *Governing Law.*  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law principles.

12.7   *Section Headings.*  The headings of all Sections of this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

12.8   *Survival.*  The provisions of Sections 2.3, 3, 6, 7.2, 8 and 9.6 shall survive the expiration or termination of this Agreement for any reason.

**IN WITNESS WHEREOF,** the persons signing below warrant that they are duly authorized to sign for and on behalf of, the respective parties. This Agreement has been executed in duplicate originals.


**AGREED AND ACCEPTED AS ABOVE:**

Every Penny Counts, Inc.                         S.I.P. Assets LLC
By:                                              By:

Bertram V. Burke                                 Ray Edwards
Chairman & CEO                                   President

4-20-04                                          4/20/04
Date                                             Date

10

# EXHIBIT B



*Every Penny Counts*

*"Provides banks, merchants and nonprofits - with U.S. and foreign patented technology - to grow and maintain passionate customers!"*

April 15, 2005

Mr. Ray Edwards, CEO
S.I.P. Assets LLC
4741 Central Avenue
#230
Kansas City, MO 64112

SENT VIA FACSIMILE, EMAIL, and U.S. Postal Service, Certified Mail and Return Receipt Requested.

Dear Mr. Edwards:

Please be advised that as of 2:00 pm today, EPC has not received SIP's required payment of $150,000 per the EPC/SIP agreement of 4-20-04 and amended on 2-18-05.

Accordingly, S.I.P. Assets is in breach of the contract and has twenty days to cure the breach by making a payment of $150,000.

In the event that S.I.P. Assets LLC does not make the payment within the next 20 days, per the contract, this Agreement shall expire by its terms, all rights to the EPC Licensed Patents conveyed to SIP shall expire and EPC shall be free thereafter to use the EPC Licensed Patents in the Field of Use to its absolute discretion and without any obligation on the part of EPC to SIP.

Sincerely yours,

Bertram V. Burke
CEO

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ray Edwards
SIP Assets LLC
4741 Central Ave
#230
Kansas City, MO 64112

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

Scott Chansler    4/18/05

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7004 1350 0000 2156 8859

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1840

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

* Sender: Please print your name, address, and ZIP+4 in this box *

Every Penny Counts
1434 SW 51ST Lane
Cape Coral, FL 33914



**Every Penny Counts**

*"Provides banks, merchants and nonprofits - with U.S. and foreign patented technology - to grow and maintain passionate customers!"*

June 8, 2005

Sent by email.

Mr. Thierry Wizman
SIP Assets, LLC

Dear Mr. Wizman:

On Monday, I received a telephone call from Ms. Candace DeBarger of Master Card International.

Ms. DeBarger asked if SIP was currently a licensee of EPC. I told her that SIP defaulted on the EPC/SIP agreement on May 5, 2005 and therefore, SIP did not have any protection afforded by EPC's patents.

For the record, please be advised that SIP should not make any claims to any EPC patent in its marketing presentations, business plans, licensing agreements, and/or letters of intent.

Also, please be advised that EPC is now completing a licensing deal with another entity, regarding customers investing or saving while using a demand deposit account; i.e. via transactions using checks or debit cards.

Sincerely yours,

Bertram V. Burke, CEO

1434 SW 51ˢᵗ Lane • Cape Coral, FL 33914 • Tel: (239) 540-1069
www.EveryPennyCounts.com • e-mail corporate@ EveryPennyCounts.com

# EXHIBIT C

-----Original Message-----
**From:** Edward Grau [mailto:sipisit@yahoo.com]
**Sent:** Wednesday, April 04, 2007 11:40 AM
**To:** bvburke@everypennycounts.com
**Cc:** Bebert Azran; Thierry Wizman; Howard Jahre; Rich Kronthal
**Subject:** Bank of America, N.A. v. SIP Assets, LLC and Every Penny Counts, Inc., Case No. 07-159

Mr. Burke,

SIP Assets LLC (SIP) was served on March 20, 2007 as a defendant in the District of Delaware case *Bank of America, N.A. v. SIP Assets, LLC and Every Penny Counts, Inc.*, Case No. 07-159 (the Case). The Directors of SIP were notified of the serving by our Corporation Service Company via telephone and courier service on March 30, 2007.

In order to defend itself against the complaints and subsequent relief sought therein, SIP is required to respond to the Plaintiff's Attorney and the Clerk of the United States District Court in the District of Delaware on or before April 9, 2007.

Based on the surviving Confidentiality terms of the License Agreement executed on April 20, 2004 (the Agreement) between SIP and Every Penny Counts, Inc. (EPC), SIP is required to provide EPC with prompt notice of all of the confidential information needed to be disclosed prior to respectfully responding to the complaint of the Plaintiff's Attorney and the Clerk of the United States District Court in the District of Delaware.

In its defense, SIP will disclose the existence and execution date of the Agreement as well as terms contained therein relating to "EPC Licensed Patents" and "Field of Use".

SIP will also disclose that it ceased having protection from, or rights to, any EPC patents in any form as indicated in EPC's written notice termination of the Agreement and all subsequent Amendments to said Agreement.

In the absence of a protective order or other remedy protecting SIP from the complaints and requirements to respond as set forth in the Case, SIP will be filing a response on or before April 9, 2007.

Edward Grau
(646) 662-2366

--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.446 / Virus Database: 268.18.25/745 - Release Date: 4/3/2007 12:48 PM

Exhibit 6

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay




**FEDERAL DEPOSIT INSURANCE CORPORATION**

Advanced Search

| HOME | DEPOSIT INSURANCE | CONSUMER PROTECTION | INDUSTRY ANALYSIS | REGULATION & EXAMINATIONS | ASSET SALES | NEWS & EVENT |

## Summary of Deposits

| SOD Home | Find Office | Market Share Selection | Summary Tables | Charts and Graphs | SOD Publications | Download | Institution Directory | SOD Help |

Printer Friendly Version

Go Back

Deposits of all FDIC-Insured Institutions

# Top 50 Commercial Banks and Savings Institutions by Total Domestic Deposits

Data as of June 30, 2006 ▼

Run Report

(Dollars Amounts In Thousands)

| Institution Name | Cert | State Headquartered | No. of Offices | Total Deposits June 30, 2006 |
|---|---|---|---|---|
| Bank of America, National Association | 3510 | North Carolina | 5,781 | 563,906,844 |
| JPMorgan Chase Bank, National Association | 628 | Ohio | 2,679 | 434,752,000 |
| Wachovia Bank, National Association | 33869 | North Carolina | 3,136 | 306,348,000 |
| Wells Fargo Bank, National Association | 3511 | South Dakota | 3,200 | 298,672,000 |
| Washington Mutual Bank | 32633 | Nevada | 2,167 | 209,927,984 |
| Citibank, National Association | 7213 | New York | 267 | 142,508,000 |
| SunTrust Bank | 867 | Georgia | 1,758 | 117,956,301 |
| U.S. Bank National Association | 6548 | Ohio | 2,525 | 117,337,830 |
| HSBC Bank USA, National Association | 57890 | Delaware | 436 | 75,588,320 |
| World Savings Bank, FSB | 27076 | California | 286 | 61,321,407 |
| PNC Bank, National Association | 6384 | Pennsylvania | 831 | 58,134,805 |
| Keybank National Association | 17534 | Ohio | 957 | 57,327,323 |
| Regions Bank | 12368 | Alabama | 1,397 | 57,231,022 |
| Merrill Lynch Bank USA | 27374 | Utah | 3 | 52,331,967 |
| Branch Banking and Trust Company | 9846 | North Carolina | 918 | 51,246,133 |
| Countrywide Bank, National Association | 33143 | Virginia | 2 | 50,657,812 |
| ING Bank, fsb | 35489 | Delaware | 1 | 46,440,495 |
| Comerica Bank | 983 | Michigan | 387 | 43,081,270 |
| Sovereign Bank | 29950 | Pennsylvania | 661 | 40,829,851 |
| The Bank of New York | 639 | New York | 354 | 40,014,000 |
| Citibank (West), FSB | 57443 | California | 397 | 39,803,729 |
| Union Bank of California, National Association | 22826 | California | 340 | 39,743,303 |
| Fifth Third Bank | 993 | Michigan | 749 | 38,388,498 |
| LaSalle Bank National Association | 15407 | Illinois | 143 | 37,017,497 |
| North Fork Bank | 15985 | New York | 351 | 36,367,675 |
| AmSouth Bank | 26800 | Alabama | 689 | 35,770,424 |
| Manufacturers and Traders Trust Company | 588 | New York | 683 | 35,227,118 |
| Commerce Bank, National Association | 21140 | Pennsylvania | 349 | 34,475,898 |
| Bank of the West | 3514 | California | 667 | 33,179,348 |
| National City Bank | 6557 | Ohio | 416 | 31,138,520 |
| Chase Bank USA, National Association | 23702 | Delaware | 3 | 27,103,494 |
| TD BankNorth, National Association | 18409 | Maine | 616 | 26,754,221 |
| M&I Marshall and Ilsley Bank | 1020 | Wisconsin | 297 | 26,618,783 |
| FIA Card Services, National Association | 33318 | Delaware | 2 | 26,558,684 |
| Fifth Third Bank | 6672 | Ohio | 411 | 26,437,083 |
| Citizens Bank of Pennsylvania | 57282 | Pennsylvania | 410 | 26,349,007 |
| Citizens Bank of Massachusetts | 18562 | Massachusetts | 264 | 26,332,729 |



EXHIBIT

tabbies

| Harris National Association | 16571 | Illinois | 179 | 24,955,312 |
|---|---|---|---|---|
| The Huntington National Bank | 6560 | Ohio | 418 | 24,257,099 |
| Citibank, Federal Savings Bank | 28251 | Virginia | 140 | 23,588,312 |
| LaSalle Bank Midwest National Association | 22488 | Michigan | 268 | 23,405,380 |
| Compass Bank | 19048 | Alabama | 414 | 22,807,921 |
| Charter One Bank, National Association | 28932 | Ohio | 498 | 21,917,543 |
| First Tennessee Bank, National Association | 4977 | Tennessee | 240 | 21,707,376 |
| E*TRADE Bank | 30746 | Virginia | 1 | 21,208,439 |
| Capital One, National Association | 4297 | Louisiana | 315 | 20,954,167 |
| Branch Banking and Trust Company of Virginia | 22584 | Virginia | 402 | 19,411,042 |
| USAA Federal Savings Bank | 32188 | Texas | 1 | 19,019,503 |
| National City Bank of the Midwest | 5029 | Illinois | 425 | 18,983,361 |
| Lehman Brothers Bank, FSB | 30890 | Delaware | 2 | 16,390,744 |

dw05

Questions, Suggestions & Requests

**Home   Contact Us   Search   Help   SiteMap   Forms**
Freedom of Information Act (FOIA) Service Center   Website Policies   USA.gov

Exhibit 7

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay



**EXHIBIT**

_____

# Bank of America, National Association

**101 South Tryon Street**
**Charlotte, NC 28255**

FDIC Certificate #: 3510  **Bank Charter Class:** N

| *Definition* | *Dollar figures in thousands* | Bank of America, National Association Charlotte, NC December 31, 2006 | Bank of America, National Association Charlotte, NC December 31, 2005 |
|---|---|---|---|
| | **All Summary Information** | | |
| | **Assets and Liabilities** | | |
| 1 | Total employees (full-time equivalent) | 164,318 | 161,318 |
| 2 | **Total assets** | **1,196,123,794** | **1,082,250,290** |
| 3 | Cash and due from depository institutions | 50,723,059 | 42,407,071 |
| 4 | Interest-bearing balances | 16,328,212 | 7,620,816 |
| 5 | Securities | 194,155,694 | 221,531,528 |
| 6 | Federal funds sold & reverse repurchase agreements | 90,399,539 | 62,601,203 |
| 7 | Net loans & leases | 634,494,712 | 547,121,048 |
| 8 | Loan loss allowance | 4,066,067 | 4,586,074 |
| 9 | Trading account assets | 105,287,589 | 91,479,043 |
| 10 | Bank premises and fixed assets | 7,279,360 | 6,940,310 |
| 11 | Other real estate owned | 67,606 | 89,027 |
| 12 | Goodwill and other intangibles | 46,632,826 | 45,838,568 |
| 13 | All other assets | 67,083,409 | 64,242,492 |
| 14 | Life insurance assets | 13,883,173 | N/A |
| 15 | **Total liabilities and capital** | 1,196,123,794 | 1,082,250,290 |
| 16 | **Total liabilities** | **1,086,597,390** | **979,827,607** |
| 17 | Total deposits | 759,600,625 | 686,648,523 |
| 18 | Interest-bearing deposits | 571,336,729 | 497,779,355 |
| 19 | Deposits held in domestic offices | 602,019,002 | 565,906,783 |
| 20 | % insured (estimated) | 65.85% | 65.26% |
| 21 | Federal funds purchased & repurchase agreements | 143,189,577 | 151,878,472 |
| 22 | Trading liabilities | 52,424,152 | 39,781,150 |
| 23 | Other borrowed funds | 80,371,603 | 58,743,774 |
| 24 | Subordinated debt | 16,496,369 | 12,449,424 |
| 25 | All other liabilities | 34,515,064 | 30,326,264 |
| 26 | **Equity capital** | 109,526,404 | 102,422,683 |
| 27 | Perpetual preferred stock | 0 | 0 |
| 28 | Common stock | 2,878,894 | 2,836,395 |
| 29 | Surplus | 82,541,076 | 80,017,114 |
| 30 | Undivided profits | 24,106,434 | 19,569,174 |
| | **Memoranda:** | | |
| 31 | Noncurrent loans and leases | 2,115,500 | 1,715,974 |
| 32 | Income earned, not collected on loans | 6,212,609 | 4,785,007 |
| 33 | Earning assets | 1,020,047,859 | 907,826,361 |
| 34 | Long-term assets (5+ years) | 455,025,670 | 423,996,121 |
| 35 | Average Assets, year-to-date | 1,149,714,896 | 959,396,630 |

| | | | |
|---|---|---|---|
| 36 | Average Assets, quarterly | 1,190,852,375 | 1,069,778,472 |
| 37 | Volatile liabilities | 484,820,672 | 404,680,605 |
| 38 | Insider loans | 230,139 | 136,731 |
| 39 | FHLB advances | 2,034,418 | 476,286 |
| 40 | Loans and leases held for sale | 17,949,558 | 12,724,056 |
| 41 | Unused loan commitments | 432,574,336 | 359,351,748 |
| 42 | Tier 1 (core) capital | 75,794,592 | 69,105,568 |
| 43 | Total risk weighted assets | 855,297,069 | 799,194,761 |
| 44 | Total unused commitments | 432,574,336 | 359,351,748 |
| 45 | Restructured Loans and leases | 2,157 | 31,340 |
| 46 | Quarterly mutual fund sales | 0 | 0 |
| 47 | Derivatives | 26,829,607,141 | 21,819,796,778 |
| | Past due and nonaccrual assets | | |
| | Fiduciary and related services | | |
| **Income and Expense** | | *(Year-to-date)* | *(Year-to-date)* |
| 48 | Number of institutions reporting | 1 | 1 |
| 49 | Total interest income | 57,447,190 | 44,853,000 |
| 50 | Total interest expense | 30,571,777 | 18,678,425 |
| 51 | Net interest income | 26,875,413 | 26,174,575 |
| 52 | Provision for loan and lease losses | 194,635 | -397,984 |
| 53 | Total noninterest income | 22,187,793 | 19,286,899 |
| 54 | Fiduciary activities | 1,208,677 | 1,192,089 |
| 55 | Service charges on deposit accounts | 8,567,030 | 7,802,442 |
| 56 | Trading account gains & fees | 2,887,556 | 2,149,855 |
| 57 | Additional noninterest income | 9,524,530 | 8,142,513 |
| 58 | Total noninterest expense | 25,357,714 | 24,334,163 |
| 59 | Salaries and employee benefits | 13,410,158 | 12,221,313 |
| 60 | Premises and equipment expense | 3,660,290 | 3,563,546 |
| 61 | Additional noninterest expense | 8,287,266 | 8,549,304 |
| 62 | Pre-tax net operating income | 23,510,857 | 21,525,295 |
| 63 | Securities gains (losses) | -465,378 | 1,044,474 |
| 64 | Applicable income taxes | 7,820,313 | 7,511,651 |
| 65 | Income before extraordinary items | 15,225,166 | 15,058,118 |
| 66 | Extraordinary gains - net | 0 | 0 |
| 67 | **Net income** | **15,225,166** | **15,058,118** |
| 68 | Net charge-offs | 630,876 | 787,873 |
| 69 | Cash dividends | 10,672,558 | 8,150,000 |
| 70 | Sale, conversion, retirement of capital stock, net | 226,017 | 389,277 |
| 71 | Net operating income | 15,532,315 | 14,358,320 |
| | **Memo:** | | |
| **Performance and Condition Ratios** | | | |
| 72 | % of unprofitable institutions | N/A | N/A |
| 73 | % of institutions with earnings gains | N/A | N/A |
| | **Performance Ratios (%, annualized)** | *(Year-to-date)* | *(Year-to-date)* |
| 74 | Yield on earning assets | 5.92% | 5.54% |
| 75 | Cost of funding earning assets | 3.15% | 2.31% |
| 76 | Net interest margin | 2.77% | 3.23% |

| | | | |
|---|---|---|---|
| 77 | Noninterest income to earning assets | 2.29% | 2.38% |
| 78 | Noninterest expense to earning assets | 2.61% | 3.01% |
| 79 | Net operating income to assets | 1.35% | 1.50% |
| 80 | Return on assets (ROA) | 1.32% | 1.57% |
| 81 | Pretax return on assets | 2.00% | 2.35% |
| 82 | Return on equity (ROE) | 14.30% | 18.10% |
| 83 | Retained earnings to average equity (YTD only) | 4.28% | 8.30% |
| 84 | Net charge-offs to loans | 0.10% | 0.17% |
| 85 | Credit loss provision to net charge-offs | 30.85% | -50.51% |
| 86 | Earnings coverage of net loan charge-offs (x) | 37.58 | 26.82 |
| 87 | Efficiency ratio | 50.40% | 52.07% |
| 88 | Assets per employee ($ millions) | 7.28 | 6.71 |
| 89 | Cash dividends to net income (YTD only) | 70.10% | 54.12% |
| | **Condition Ratios (%)** | | |
| 90 | Loss allowance to loans | 0.64% | 0.83% |
| 91 | Loss allowance to noncurrent loans | 192.20% | 267.26% |
| 92 | Noncurrent assets plus other real estate owned to assets | 0.18% | 0.18% |
| 93 | Noncurrent loans to loans | 0.33% | 0.31% |
| 94 | Net loans and leases to deposits | 83.53% | 79.68% |
| 95 | Net loans and leases to core deposits | 121.25% | 106.69% |
| 96 | Equity capital to assets | 9.16% | 9.46% |
| 97 | Core capital (leverage) ratio | 6.60% | 6.65% |
| 98 | Tier 1 risk-based capital ratio | 8.86% | 8.65% |
| 99 | Total risk-based capital ratio | 11.12% | 10.62% |
| | **Memoranda:** | | |
| 100 | Average assets | 1,149,714,896 | 959,396,630 |
| 101 | Average earning assets | 970,380,012 | 809,289,218 |
| 102 | Average equity | 106,488,876 | 83,194,678 |
| 103 | Average loans | 604,124,126 | 475,331,330 |

| Definition | Demographic Information | May 3, 2007 | December 31, 2006 | December 31, 2005 |
|---|---|---|---|---|
| 1 | Status | Active | Active | Active |
| 2 | Bank Holding Company (Regulatory Top Holder) | See Note! | BANK OF AMERICA CORPORATION | BANK OF AMERICA CORPORATION |
| 3 | Certificate# | 3510 | 3510 | 3510 |
| 4 | Federal Reserve ID Number | 480228 | 480228 | 480228 |
| 5 | Institution Name | Bank of America, National Association | Bank of America, National Association | Bank of America, National Association |
| 6 | City,State,Zip | Charlotte, NC, 28255 | Charlotte, NC, 28255 | Charlotte, NC, 28255 |
| 7 | Number of Domestic Offices | | 5836 | 5887 |
| 8 | Number of Foreign Offices | | 225 | 225 |
| 9 | Interstate Offices | | Yes | Yes |
| | Summary Of | | | |

| 10 | Deposits | | June 30, 2006 | June 30, 2005 |
|----|----------|---|---------------|---------------|
| 11 | Current List of Total Offices | Offices | | |
| 12 | Asset Concentration Hierarchy | All Other Specialization > 1 Billion | All other Over 1 Billion | All other Over 1 Billion |
| 13 | Subchapter S Corporation | | No | No |
| 14 | County | Mecklenburg | Mecklenburg | Mecklenburg |
| 15 | Metropolitan Statistical Area | Charlotte-Gastonia-Concord, NC-SC | Charlotte-Gastonia-Concord, NC-SC | Charlotte-Gastonia-Concord, NC-SC |
| 16 | Established Date | October 17, 1904 | October 17, 1904 | October 17, 1904 |
| 17 | Date of Deposit Insurance | January 1, 1934 | January 1, 1934 | January 1, 1934 |
| 18 | Last Structure Change Process Date | October 10, 2006 | | |
| 19 | Last Structure Change Effective Date | September 22, 2006 | | |
| 20 | Ownership Type | | Stock | Stock |
| 21 | Directly Owned by Another Bank? (CERT) | | No | No |
| 22 | Trust Powers Granted | Yes | Yes | Yes |
| 23 | Bank Charter Class | National Bank | National Bank | National Bank |
| 24 | Regulator | OCC | OCC | OCC |
| 25 | Insurance fund membership | DIF | DIF | BIF |
| 26 | FDIC Quarterly Banking Profile Region | Atlanta | Atlanta | Atlanta |
| 27 | FDIC Geographic Region | Atlanta | Atlanta | Atlanta |
| 28 | FDIC Supervisory Region | Atlanta | ATLANTA | ATLANTA |
| 29 | FDIC Field Office | Charlotte | Charlotte | Charlotte |
| 30 | Federal Reserve District | Richmond | Richmond | Richmond |
| 31 | Office of the Comptroller of the Currency District | SouthWest | SouthWest | SouthWest |
| 32 | Office of Thrift Supervision Region | Southeast | Southeast | Southeast |
| 33 | Primary Web Address | http://www.bankofamerica.com:80/ | NA | NA |

How to save this report

Questions, Suggestions & Requests

Freedom of Information Act (FOIA) Service Center    Website Policies    USA.gov

Exhibit 8

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay



**FDIC** FEDERAL DEPOSIT INSURANCE CORPORATION



Advanced Search

| HOME | DEPOSIT INSURANCE | CONSUMER PROTECTION | INDUSTRY ANALYSIS | REGULATION & EXAMINATIONS | ASSET SALES | NEWS & EVENT |

. Summary of Deposits

| SOD Home | Find Office | Market Share Selection | Summary Tables | Charts and Graphs | SOD Publications | Download | Institution Directory | SOD Help |

Printer Friendly Version                                                                                          Go Back

Deposits of all FDIC-Insured Institutions

# Top 50 Bank Holding Companies
# by Total Domestic Deposits

Data as of June 30, 2006 ▼

Run Report

(Dollars Amounts In Thousands)

| Bank Holding Company Name | BHC ID | State Headquartered | No. of Offices | Total Deposits June 30, 2006 |
|---|---|---|---|---|
| BANK OF AMERICA CORPORATION | 1073757 | North Carolina | 5,789 | 590,619,659 |
| JPMORGAN CHASE & CO. | 1039502 | New York | 2,721 | 462,295,269 |
| WELLS FARGO & COMPANY | 1120754 | California | 3,216 | 308,987,142 |
| WACHOVIA CORPORATION | 1073551 | North Carolina | 3,161 | 308,703,702 |
| CITIGROUP INC. | 1951350 | New York | 934 | 224,597,260 |
| SUNTRUST BANKS, INC. | 1131787 | Georgia | 1,758 | 117,956,301 |
| U.S. BANCORP | 1119794 | Minnesota | 2,526 | 117,363,623 |
| ROYAL BANK OF SCOTLAND GROUP PLC, THE | 1245796 | Foreign * | 1,654 | 107,397,359 |
| BB&T CORPORATION | 1074156 | North Carolina | 1,445 | 78,063,291 |
| NATIONAL CITY CORPORATION | 1069125 | Ohio | 1,335 | 76,214,859 |
| HSBC HOLDINGS PLC | 1857108 | Foreign * | 437 | 75,591,069 |
| FIFTH THIRD BANCORP | 1070345 | Ohio | 1,184 | 65,972,621 |
| PNC FINANCIAL SERVICES GROUP, INC., THE | 1069778 | Pennsylvania | 885 | 60,961,952 |
| ABN AMRO HOLDING N.V. | 1718227 | Foreign * | 411 | 60,422,877 |
| KEYCORP | 1068025 | Ohio | 957 | 57,327,323 |
| REGIONS FINANCIAL CORPORATION | 3242838 | Alabama | 1,397 | 57,231,022 |
| COUNTRYWIDE FINANCIAL CORPORATION | 2549857 | California | 2 | 50,657,812 |
| CAPITAL ONE FINANCIAL CORPORATION | 2277860 | Virginia | 317 | 43,746,799 |
| COMERICA INCORPORATED | 1199844 | Michigan | 388 | 43,081,881 |
| BNP PARIBAS | 1231968 | Foreign * | 729 | 41,829,931 |
| MITSUBISHI UFJ FINANCIAL GROUP, INC. | 2961897 | Foreign * | 342 | 41,143,745 |
| BANK OF NEW YORK COMPANY, INC., THE | 1033470 | New York | 362 | 40,097,256 |
| COMMERCE BANCORP, INC. | 1117679 | New Jersey | 392 | 38,228,057 |
| NORTH FORK BANCORPORATION, INC. | 1048429 | New York | 353 | 37,238,753 |
| TORONTO-DOMINION BANK, THE | 1238565 | Foreign * | 617 | 35,955,596 |
| ALLIED IRISH BANKS, P.L.C. | 1242601 | Foreign * | 684 | 35,864,109 |
| AMSOUTH BANCORPORATION | 1078604 | Alabama | 689 | 35,770,424 |
| ZIONS BANCORPORATION | 1027004 | Utah | 496 | 31,909,119 |
| MARSHALL & ILSLEY CORPORATION | 1199497 | Wisconsin | 320 | 30,545,629 |
| BANK OF MONTREAL | 1231333 | Foreign * | 212 | 25,937,739 |
| HUNTINGTON BANCSHARES INCORPORATED | 1068191 | Ohio | 418 | 24,257,099 |
| POPULAR, INC. | 1129382 | Puerto Rico | 347 | 23,316,014 |
| SYNOVUS FINANCIAL CORP. | 1078846 | Georgia | 305 | 23,063,555 |
| COMPASS BANCSHARES, INC. | 1078529 | Alabama | 415 | 22,811,432 |
| FIRST HORIZON NATIONAL CORPORATION | 1094640 | Tennessee | 240 | 21,707,376 |
| MELLON FINANCIAL CORPORATION | 1068762 | Pennsylvania | 45 | 20,318,795 |
| COLONIAL BANCGROUP, INC., THE | 1080465 | Alabama | 301 | 16,242,689 |



EXHIBIT

| | | | | |
|---|---|---|---|---|
| UBS AG | 1243206 | Foreign * | 1 | 16,029,564 |
| CHARLES SCHWAB CORPORATION, THE | 1026632 | California | 30 | 15,460,291 |
| NEW YORK COMMUNITY BANCORP, INC. | 2132932 | New York | 171 | 13,989,238 |
| ASSOCIATED BANC-CORP | 1199563 | Wisconsin | 328 | 13,669,623 |
| FIRST BANCORP | 2744894 | Puerto Rico | 68 | 13,374,720 |
| NORTHERN TRUST CORPORATION | 1199611 | Illinois | 91 | 13,360,055 |
| MERCANTILE BANKSHARES CORPORATION | 1072442 | Maryland | 238 | 12,957,942 |
| FIRST CITIZENS BANCSHARES, INC. | 1075612 | North Carolina | 390 | 12,895,950 |
| WEBSTER FINANCIAL CORPORATION | 1145476 | Connecticut | 159 | 12,244,048 |
| STATE STREET CORPORATION | 1111435 | Massachusetts | 1 | 12,097,179 |
| CITY NATIONAL CORPORATION | 1027518 | California | 57 | 12,020,641 |
| LAURITZEN CORPORATION | 1066209 | Nebraska | 121 | 11,381,503 |
| DEUTSCHE BANK AKTIENGESELLSCHAFT | 1242423 | Foreign * | 5 | 11,330,676 |

\* Denotes that the institution is chartered in a foreign county.

dw05

Questions, Suggestions & Requests

**Home   Contact Us   Search   Help   SiteMap   Forms**
Freedom of Information Act (FOIA) Service Center   Website Policies   USA.gov

Exhibit 9

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay



EXHIBIT

tabbles®

_____

# BANK OF AMERICA CORPORATION

Charlotte, NC

BHC ID#: 1073757

| Definition | Dollar figures in thousands | BANK OF AMERICA CORPORATION Charlotte, NC December 31, 2006 | BANK OF AMERICA CORPORATION Charlotte, NC December 31, 2005 |
|---|---|---|---|
| 1 | Number of institutions reporting | 6 | 6 |
| | **All Summary Information** | | |
| | **Assets and Liabilities** | | |
| 2 | Total employees (full-time equivalent) | 193,714 | 168,594 |
| 3 | **Total assets** | **1,376,138,773** | **1,170,450,266** |
| 4 | Cash and due from depository institutions | 60,859,894 | 43,698,451 |
| 5 | Interest-bearing balances | 24,778,890 | 8,349,147 |
| 6 | Securities | 194,615,293 | 221,546,143 |
| 7 | Federal funds sold & reverse repurchase agreements | 105,744,949 | 73,591,416 |
| 8 | Net loans & leases | 744,893,857 | 619,058,075 |
| 9 | Loan loss allowance | 8,974,137 | 8,017,971 |
| 10 | Trading account assets | 105,287,589 | 91,479,043 |
| 11 | Bank premises and fixed assets | 7,928,293 | 6,943,339 |
| 12 | Other real estate owned | 67,606 | 89,027 |
| 13 | Goodwill and other intangibles | 74,238,584 | 47,458,475 |
| 14 | All other assets | 82,502,708 | 66,586,297 |
| 15 | Life insurance assets | 14,402,394 | N/A |
| 16 | **Total liabilities and capital** | 1,376,138,772 | 1,170,450,265 |
| 17 | **Total liabilities** | **1,222,439,153** | **1,058,947,685** |
| 18 | Total deposits | 771,064,211 | 686,722,902 |
| 19 | Interest-bearing deposits | 579,522,556 | 497,781,355 |
| 20 | Deposits held in domestic offices | 604,818,479 | 565,981,162 |
| 21 | % insured (estimated) | 65.66% | 65.26% |
| 22 | Federal funds purchased & repurchase agreements | 188,002,115 | 162,459,160 |
| 23 | Trading liabilities | 52,424,152 | 39,781,150 |
| 24 | Other borrowed funds | 149,721,479 | 124,127,861 |
| 25 | Subordinated debt | 18,696,369 | 13,399,424 |
| 26 | All other liabilities | 42,530,827 | 32,457,188 |
| 27 | **Equity capital** | 153,699,619 | 111,502,580 |
| 28 | Perpetual preferred stock | 0 | 0 |
| 29 | Common stock | 4,159,694 | 3,217,195 |
| 30 | Surplus | 121,790,303 | 85,524,714 |
| 31 | Undivided profits | 27,749,622 | 22,760,671 |
| | **Memoranda:** | | |
| 32 | Noncurrent loans and leases | 4,844,046 | 2,986,195 |
| 33 | Income earned, not collected on loans | 7,073,280 | 5,245,095 |
| 34 | Earning assets | 1,154,702,691 | 991,496,547 |
| 35 | Long-term assets (5+ years) | 467,584,689 | 435,552,317 |
| 36 | Average Assets, year-to-date | 1,317,872,569 | 1,041,312,126 |

| | | | |
|---|---|---|---|
| 37 | Average Assets, quarterly | 1,364,761,597 | 1,157,693,615 |
| 38 | Volatile liabilities | 600,956,538 | 479,457,268 |
| 39 | Insider loans | 236,182 | 137,438 |
| 40 | FHLB advances | 27,523,186 | 18,266,842 |
| 41 | Loans and leases held for sale | 17,949,558 | 12,724,056 |
| 42 | Unused loan commitments | 1,305,341,519 | 559,865,264 |
| 43 | Tier 1 (core) capital | 97,698,530 | 77,115,836 |
| 44 | Total risk weighted assets | 1,004,444,316 | 872,064,165 |
| 45 | Total unused commitments | 1,305,341,519 | 559,865,264 |
| 46 | Restructured Loans and leases | 2,157 | 31,340 |
| 47 | Quarterly mutual fund sales | 0 | 0 |
| 48 | Derivatives | 26,836,616,223 | 21,819,796,778 |
| | Past due and nonaccrual assets | | |
| | Fiduciary and related services | | |
| **Income and Expense** | | *(Year-to-date)* | *(Year-to-date)* |
| 49 | Number of institutions reporting | 6 | 6 |
| 50 | Total interest income | 74,227,642 | 53,364,455 |
| 51 | Total interest expense | 36,093,771 | 20,869,085 |
| 52 | Net interest income | 38,133,871 | 32,495,370 |
| 53 | Provision for loan and lease losses | 4,986,554 | 4,031,219 |
| 54 | Total noninterest income | 32,308,536 | 21,519,100 |
| 55 | Fiduciary activities | 1,208,677 | 1,192,089 |
| 56 | Service charges on deposit accounts | 8,567,491 | 7,816,845 |
| 57 | Trading account gains & fees | 2,887,556 | 2,149,855 |
| 58 | Additional noninterest income | 19,644,812 | 10,360,311 |
| 59 | Total noninterest expense | 33,384,312 | 26,272,608 |
| 60 | Salaries and employee benefits | 15,388,531 | 12,438,359 |
| 61 | Premises and equipment expense | 3,958,629 | 3,585,888 |
| 62 | Additional noninterest expense | 14,037,152 | 10,248,361 |
| 63 | Pre-tax net operating income | 32,071,541 | 23,710,643 |
| 64 | Securities gains (losses) | -467,112 | 1,044,474 |
| 65 | Applicable income taxes | 10,875,408 | 8,310,362 |
| 66 | Income before extraordinary items | 20,729,021 | 16,444,755 |
| 67 | Extraordinary gains - net | 0 | 0 |
| 68 | **Net income** | **20,729,021** | **16,444,755** |
| 69 | Net charge-offs | 4,533,397 | 4,548,058 |
| 70 | Cash dividends | 16,222,558 | 10,400,000 |
| 71 | Sale, conversion, retirement of capital stock, net | 226,017 | 1,004,277 |
| 72 | Net operating income | 21,037,280 | 15,744,957 |
| | **Memo:** | | |
| **Performance and Condition Ratios** | | | |
| 73 | % of unprofitable institutions | N/A | N/A |
| 74 | % of institutions with earnings gains | 50.00% | 16.67% |
| | **Performance Ratios (%, annualized)** | *(Year-to-date)* | *(Year-to-date)* |
| 75 | Yield on earning assets | 6.76% | 6.02% |
| 76 | Cost of funding earning assets | 3.29% | 2.35% |
| 77 | Net interest margin | 3.47% | 3.66% |

| | | | |
|---|---|---|---|
| 78 | Noninterest income to earning assets | 2.94% | 2.43% |
| 79 | Noninterest expense to earning assets | 3.04% | 2.96% |
| 80 | Net operating income to assets | 1.60% | 1.51% |
| 81 | Return on assets (ROA) | 1.57% | 1.58% |
| 82 | Pretax return on assets | 2.40% | 2.38% |
| 83 | Return on equity (ROE) | 14.08% | 17.78% |
| 84 | Retained earnings to average equity (YTD only) | 3.06% | 6.54% |
| 85 | Net charge-offs to loans | 0.64% | 0.83% |
| 86 | Credit loss provision to net charge-offs | 110.00% | 88.64% |
| 87 | Earnings coverage of net loan charge-offs (x) | 8.17 | 6.10 |
| 88 | Efficiency ratio | 44.91% | 47.14% |
| 89 | Assets per employee ($ millions) | 7.10 | 6.94 |
| 90 | Cash dividends to net income (YTD only) | 78.26% | 63.24% |
| | **Condition Ratios (%)** | | |
| 91 | Loss allowance to loans | 1.19% | 1.28% |
| 92 | Loss allowance to noncurrent loans | 185.26% | 268.50% |
| 93 | Noncurrent assets plus other real estate owned to assets | 0.36% | 0.27% |
| 94 | Noncurrent loans to loans | 0.64% | 0.48% |
| 95 | Net loans and leases to deposits | 96.61% | 90.15% |
| 96 | Net loans and leases to core deposits | 142.07% | 120.70% |
| 97 | Equity capital to assets | 11.17% | 9.53% |
| 98 | Core capital (leverage) ratio | 7.54% | 6.85% |
| 99 | Tier 1 risk-based capital ratio | 9.73% | 8.84% |
| 100 | Total risk-based capital ratio | 12.06% | 10.86% |
| | **Memoranda:** | | |
| 101 | Average assets | 1,317,872,569 | 1,041,312,126 |
| 102 | Average earning assets | 1,098,025,950 | 887,010,082 |
| 103 | Average equity | 147,226,783 | 92,483,533 |
| 104 | Average loans | 712,314,213 | 546,537,771 |

| BHC ID | Bank Holding Company Name | City | State | Class | Combined Total Domestic Deposits ($000) * | Combined Total Assets ($000) * |
|---|---|---|---|---|---|---|
| 1073757 | BANK OF AMERICA CORPORATION | Charlotte | NC | HC | 604,818,479 | 1,376,138,773 |

**Bank and thrift subsidiaries of the bank holding company:**

| Cert | Institution Name | City | County | State | Class | Total Domestic Deposits ($000) | Total Assets ($000) |
|---|---|---|---|---|---|---|---|
| 57117 | Bank of America Georgia, National Association | Atlanta | Fulton | GA | N | 500 | 798,966 |
| 25178 | Bank of America California, National Association | San Francisco | San Francisco | CA | N | 500 | 8,171,902 |
| 58032 | Bank of America, Rhode Island, National Assocation | Providence | Providence | RI | N | 500 | 9,048,017 |
| 35453 | Bank of America Oregon, National Association | Portland | Multnomah | OR | N | 500 | 14,156,326 |
| 33318 | FIA Card Services, National Association | Wilmington | New Castle | DE | N | 2,797,477 | 147,839,768 |
| 3510 | Bank of America, National Association | Charlotte | Mecklenburg | NC | N | 602,019,002 | 1,196,123,794 |

* Financial data for bank holding companies represent combined amounts for all FDIC-insured bank and thrift subsidiaries, and do **not** reflect nondeposit subsidiaries or parent companies. Account balances have **not** been adjusted for intra-company transactions. Additional holding company information can be found at the website for the Federal Reserve System--National Information Center (NIC).

**EXHIBIT**

tabbies*

Exhibit 10

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

# Bank of America Reports Record 2006 Earnings of $21.13 Billion, or $4.59 Per Share

**Fourth quarter earnings were $5.26 billion or $1.16 per share**

CHARLOTTE, N.C., Jan. 23 /PRNewswire-FirstCall/ -- Bank of America Corporation today reported that 2006 net income rose 28 percent to $21.13 billion from $16.47 billion a year earlier, reflecting both the addition of MBNA at the start of the year and organic growth in most major customer segments.

(Logo: http://www.newscom.com/cgi-bin/prnh/20050720/CLW086LOGO-b )

Per share earnings increased 14 percent to $4.59 per diluted share from $4.04 per share last year. Return on average common equity for the year was 16.27 percent.

Excluding pre-tax merger and restructuring charges of $805 million, or 11 cents per share, Bank of America earned $21.64 billion, or $4.70 per share, for the full year 2006.

In the fourth quarter of 2006, net income was $5.26 billion, or $1.16 per diluted share, compared with $3.57 billion, or $0.88 per share, a year earlier. Excluding pre-tax merger and restructuring charges of $244 million, equal to 3 cents per share, earnings per share were $1.19. For the fourth quarter of 2005, pre-tax merger and restructuring charges were $59 million, or 1 cent per share.

The increase in 2006 earnings was driven by growth in card income, including the addition of MBNA, strong growth in capital markets and investment banking activities reflecting the company's recent investments in those areas, increased equity investment gains, growth in service charges paced by deposit account growth, higher other income and strong expense control. These improvements were partially offset by higher credit costs, again in part because of the addition of MBNA.

For the year, revenue on a fully taxable-equivalent basis increased 30 percent while expenses rose 24 percent. On a pro forma basis (adjusting for the inclusion of MBNA), revenue increased 10 percent while expenses were flat.

"Bank of America had another strong year in 2006," said Kenneth D. Lewis, chairman and chief executive officer. "We created opportunities for our customers and clients through improved service, product innovations such as the $0 Online Equity Trade program and Business 24/7™ for small businesses, new more convenient ATMs and excellent investment performance in our Columbia Funds. Our capital markets groups served more clients than ever before, increasing our market share in important product categories. In short, our associates are proving that when you combine listening to customers to understand their needs with our advantages of scale, innovation and execution, it creates a powerful value proposition that wins in the marketplace."

```
2006 Business Highlights

 - During 2006, the company acquired and successfully integrated MBNA
   Corporation, making Bank of America the largest credit card issuer in
   the U.S. and U.K.

 - In November, Bank of America entered into an agreement to acquire US
   Trust to help bolster its capabilities in serving high net worth
   clients and expand its base of assets under management.

 - Total sales of retail products increased 7 percent in 2006 to 44
   million, driven by record sales in checking, debit and online banking
   products. Online sales increased 44 percent in 2006 across all
   products, representing 16 percent of total retail sales.

 - The company opened a record 2.4 million net new checking accounts
   supported by programs such as Keep the Change™ as well as eCommerce
```



EXHIBIT

tabbies®

accessibility and customer referrals.

- Bank of America began offering $0 Online Equity Trades on Oct. 12 in
  selected markets and in November through most of its franchise,
  contributing to accelerated growth at Banc of America Investments. The
  program rewards customers who keep at least $25,000 in deposit
  balances. In the fourth quarter, the number of self-directed brokerage
  accounts opened was up 54 percent from the third quarter.

- Average aggregate retail deposits and Columbia money market mutual fund
  balances rose 6 percent from 2005. The company takes an integrated view
  of these products, encouraging customers to choose what is best for
  them.

- Debit card revenue increased 23 percent to a record $1.91 billion.

- Average small business loans grew 65 percent (25 percent pro forma with
  MBNA) as the bank focused on deepening its penetration of this segment.

- Credit extended to Business Lending clients grew $15.20 billion to
  $222.91 billion in the year.

- Capital Markets and Advisory Services revenue rose 21 percent in 2006,
  driven by a 38 percent rise in debt underwriting fees and a 21 percent
  increase in fixed income sales and trading as the company invested in
  its capital markets platforms.

- Total assets under management in Global Wealth and Investment
  Management grew 13 percent to more than $542 billion, driving an 11
  percent increase in asset management fees. Seventy-three percent of
  mutual fund assets under management were invested in funds (equity,
  fixed income, and money market funds) where at least one share class
  placed in the top two quartiles of their peer group as of December 31,
  2006. (1)

Fourth Quarter Financial Summary

Revenue

Revenue on a fully taxable-equivalent basis increased 34 percent to $18.82 billion from
$14.05 billion in the fourth quarter of 2005. The previous year's results did not include
MBNA.

Net interest income on a fully taxable-equivalent basis was $8.96 billion, compared with
$8.10 billion a year earlier. Besides the addition of MBNA, the increase was driven by loan
growth and increased benefits from asset and liability management activity, partially
offset by lower core deposit levels. The net interest yield tightened 7 basis points to 2.75
percent.

Noninterest income rose 66 percent to $9.87 billion from $5.95 billion. Besides the
addition of MBNA, which helped boost card income, these results were supported by
equity investment gains, continued strength in service fee income and investment
banking. The sale of Bank of America's Asia Commercial Banking unit resulted in a $165
million gain.

Sales of debt securities resulted in a $21 million gain in the fourth quarter of 2006
compared with a $71 million gain a year earlier.

Efficiency

The efficiency ratio on a fully taxable-equivalent basis for the fourth quarter of 2006 was
48.31 percent (47.02 percent before merger and restructuring charges) driven by
continued positive operating leverage. Noninterest expense increased to $9.09 billion
from $7.32 billion a year ago. Expenses increased primarily because of the addition of
MBNA.

Pre-tax cost savings for the merger in the fourth quarter were approximately $450 million primarily because of personnel reductions, technology savings and marketing synergies.

Credit Quality

Credit quality remained stable. Consumer credit costs rose in the fourth quarter from the third quarter of 2006 reflecting portfolio seasoning and the trend toward more normalized levels post-bankruptcy reform. Compared to the fourth quarter of 2005, consumer net charge-offs decreased primarily due to the impact of bankruptcy reform which accelerated charge-offs into 2005. Provision expense in the fourth quarter was higher than a year ago due to the addition of MBNA, partially offset by lower bankruptcy-related credit costs on the domestic consumer credit card portfolio.

- Provision for credit losses was $1.57 billion, up from $1.17 billion in the third quarter of 2006, and $1.40 billion in the fourth quarter of 2005.

- Net charge-offs were $1.42 billion, or 0.82 percent of total average loans and leases. This compared to $1.28 billion, or 0.75 percent, in the third quarter of 2006 and $1.65 billion, or 1.16 percent, in the fourth quarter of 2005.

- Total managed losses were $2.45 billion, or 1.23 percent of total average managed loans and leases. This compared to $2.20 billion, or 1.11 percent, in the third quarter of 2006 and $1.71 billion, or 1.17 percent, in the fourth quarter of 2005.

- Nonperforming assets were $1.86 billion, or 0.26 percent of total loans, leases and foreclosed properties, at December 31, 2006. This compared to $1.66 billion, or 0.25 percent, at September 30, 2006 and $1.60 billion, or 0.28 percent at December 31, 2005.

- The allowance for loan and lease losses was $9.02 billion, or 1.28 percent of loans and leases, at December 31, 2006. This compared to $8.87 billion, or 1.33 percent at September 30, 2006 and $8.05 billion, or 1.40 percent, at December 31, 2005, which did not include MBNA.

Capital Management

Total shareholders' equity was $135.27 billion at December 31, 2006. Period-end assets were $1.5 trillion. The Tier 1 Capital Ratio increased to 8.64 percent from 8.48 percent at September 30, 2006 and 8.25 percent a year earlier. The issuance of $2.03 billion of non-cumulative preferred stock contributed to the increase during the fourth quarter.

During the quarter, Bank of America paid a cash dividend of $0.56 per share. Additionally, the company issued approximately 20 million common shares primarily related to employee stock options and ownership plans, and repurchased 60 million common shares. Period-ending common shares issued and outstanding were 4.46 billion for the fourth quarter of 2006, compared to 4.50 billion for the third quarter of 2006 and 4.00 billion for the fourth quarter of 2005.

Full-Year 2006 Financial Summary

Revenue

Revenue on a fully taxable-equivalent basis increased 30 percent to $74.25 billion from $56.92 billion from the previous year.

Net interest income on a fully taxable-equivalent basis increased 13 percent to $35.82 billion from $31.57 billion in 2005. The increase was driven by the addition of MBNA, consumer and middle market business loan growth and increases in the benefits from asset liability management activity, partially offset by lower core deposit levels and higher trading-related earning assets. The net interest yield tightened 2 basis points to 2.82 percent.

Noninterest income increased 52 percent to $38.43 billion from $25.35 billion. These results were driven by higher card income, which included MBNA, equity investment gains, increases in investment banking income and trading account profits and an increase in other income related to the sale of the Brazil and Asia Commercial Banking businesses.

Losses on sales of debt securities were $443 million in 2006 compared to gains on sales of debt securities of $1.08 billion in 2005.

Efficiency

The efficiency ratio on a fully taxable-equivalent basis for 2006 was 47.94 percent (46.86 percent excluding merger and restructuring charges). Noninterest expense increased 24 percent to $35.60 billion from $28.68 billion a year ago primarily due to MBNA. Included in expenses for 2006 were $805 million in pre-tax merger and restructuring charges related to the MBNA merger. Full year 2006 cost savings from the merger with MBNA were approximately $1.25 billion, accelerating original projections.

Credit Quality

Provision expense was $5.01 billion in 2006, a 25 percent increase from 2005. The increase in provision expense was driven by the addition of MBNA and 2005 commercial reserve releases, partially offset by lower bankruptcy- related credit costs on the domestic consumer credit card portfolio.

Net charge-offs totaled $4.54 billion, or 0.70 percent of average loans and leases, compared with $4.56 billion, or 0.85 percent of average loans and leases in 2005. The decrease in net charge-offs was due to the impact of bankruptcy reform which accelerated net charge-offs into 2005, partially offset by the addition of MBNA.

Capital Management

For 2006, Bank of America paid $9.64 billion in cash dividends to common shareholders. The company also issued 118.4 million common shares, primarily related to employee stock options and ownership plans, and repurchased 291.1 million common shares for $14.36 billion.

The company also issued 631 million shares of common stock associated with the acquisition of MBNA, resulting in a net increase of 458.4 million common shares outstanding for the year.

2006 Business Segment Results

Global Consumer and Small Business Banking

| (Dollars in millions) | YTD 2006 | YTD 2005 |
|---|---|---|
| Total Revenue (1) | $41,691 | $28,323 |
| Provision for credit losses | 5,172 | 4,243 |
| Noninterest expense | 18,830 | 13,124 |
| Net Income | 11,171 | 7,021 |
| Efficiency ratio | 45.17% | 46.34% |
| Return on average equity | 17.70 | 23.73 |
| Loans and leases (2) | $192,072 | $144,027 |
| Deposits (2) | 330,072 | 306,098 |

(1) Fully taxable-equivalent basis
(2) Balances averaged for period

Net income rose 59 percent to $11.17 billion in 2006 and revenue grew 47 percent to $41.69 billion from the previous year. Results for 2005 did not include MBNA. Net income was driven by higher card income including the MBNA acquisition, higher net interest income, partially offset by higher provision expense primarily due to MBNA. On a pro forma basis (including MBNA's 2005 results), revenue increased 7 percent while net income increased 19 percent.

Sales of consumer financial products increased across-the-board, as the business leveraged its leading franchises in both banking centers and online capabilities. Franchise sales totaled 44 million units, a 7 percent increase compared to 2005, including record performance in checking, debit and online sales.

Average deposit balances increased by $23.97 billion, or 8 percent, driven by the addition of the MBNA deposit portfolio. On a pro forma basis, deposits decreased $3.21 billion in 2006 from a year earlier as the company continued to balance growth and profitability. As part of Bank of America's integrated offerings, customers also chose alternative instruments such as Columbia money market mutual funds.

E-Commerce reported sales of more than 7 million units in the year, driven by checking and credit card sales and supported by enhanced website design and a streamlined application process. Bankofamerica.com now has 21.3 million active users and 11.1 million active bill-payers.

- Deposits revenue increased 13 percent to $17.02 billion from 2005, while net income increased 11 percent to $4.93 billion. On a pro forma basis, deposits revenue increased 12 percent compared with 2005, while net income increased 9 percent.

- Card Services had revenue of $21.49 billion, a 150 percent increase from 2005 and recorded a five-fold increase in net income to $5.64 billion. On a pro forma basis, Card Services recorded an increase in revenue of 14 percent compared with 2005, while net income increased 74 percent.

- Home Equity revenue rose 9 percent to $1.49 billion in 2006 from a year earlier and net income increased 16 percent to $507 million. Pro forma results were comparable for both revenue and net income.

- Mortgage revenue decreased 16 percent to $1.44 billion in 2006 from a year earlier and net income declined 29 percent to $282 million. On a pro forma basis, revenue decreased 17 percent and net income fell 33 percent.

- ALM/Other had revenue of $259 million, down significantly compared to 2005 and net income declined as well to a loss of $186 million. Pro forma results for this segment were comparable for both revenue and net income.

Fourth quarter net income for Global Consumer and Small Business Banking rose 44 percent to $2.53 billion from the year earlier period. Revenue in the period increased 46 percent to $10.63 billion, driven primarily by higher credit card income, including the addition of MBNA, and service charges. On a pro forma basis, net income increased 16 percent during the period and revenue increased 8 percent.

Global Corporate and Investment Banking

| (Dollars in millions) | YTD 2006 | YTD 2005 |
|---|---|---|
| Total Revenue (1) | $22,691 | $20,600 |
| Provision for credit losses | (6) | (291) |
| Noninterest expense | 11,998 | 11,133 |
| Net Income | 6,792 | 6,384 |
| Efficiency ratio | 52.87% | 54.04% |

| | | |
|---|---|---|
| Return on average equity | 16.21 | 15.28 |
| | | |
| Loans and leases (2) | $243,282 | $214,818 |
| Deposits (2) | 205,652 | 189,860 |
| Trading-related assets (2) | 338,364 | 314,568 |

```
   (1) Fully taxable-equivalent basis
   (2) Balances averaged for period
```

Net income increased 6 percent to $6.79 billion in 2006 compared with a year earlier impacted by the $885 million pre-tax gain from the sale of Bank of America's Brazil operations and its Asia Commercial Banking business. Revenue increased 10 percent to $22.69 billion as income from sales and trading, Treasury Services and investment banking increased. Excluding the impact of the Brazil and Asia transactions, revenue rose 6 percent to $21.17 billion from 2005 while net income declined less than 1 percent, including a lower provision benefit.

Capital Markets and Advisory Services benefited from strong sales and trading results and an increase in debt underwriting compared with a year earlier.

```
   - Capital Markets and Advisory Services had net income of $1.69 billion
     in 2006, a 26 percent increase from 2005, as investment banking income
     and sales and trading income rose. Revenue grew 21 percent to $8.20
     billion. Expenses grew 16 percent driven in part due to increases in
     performance-based compensation.

   - Business Lending net income declined 14 percent to $2.23 billion in
     2006 from the year ago period due to spread compression and the cost of
     credit mitigation. Revenue decreased 6 percent to $5.68 billion.
     Average loans and leases rose 12 percent to more than $216 billion.

   - Treasury Services net income grew 18 percent to $2.17 billion from a
     year earlier as revenue rose 11 percent to $6.69 billion and income
     from commercial credit cards and service charges increased.

   - ALM/Other had revenue of $2.12 billion and net income of $702 million,
     an increase of 15 percent primarily due to the sale of Brazil
     operations and the Asia Commercial Banking business.
```

Global Corporate and Investment Banking's fourth quarter net income rose 23 percent to $1.57 billion from the same period a year earlier as income from sales and trading and investment banking increased, reflecting company investments in capital markets platforms and the sale of the Asia business. Revenue rose 9 percent in the quarter to $5.40 billion.

```
Global Wealth and Investment Management
```

| (Dollars in millions) | YTD 2006 | YTD 2005 |
|---|---|---|
| Total Revenue (1) | $7,779 | $7,316 |
| | | |
| Provision for credit losses | (40) | (7) |
| Noninterest expense | 4,005 | 3,710 |
| | | |
| Net Income | 2,403 | 2,316 |
| | | |
| Efficiency ratio | 51.48% | 50.72% |
| Return on average equity | 23.20 | 22.52 |
| | | |
| Loans and leases (2) | $61,497 | $54,102 |
| Deposits (2) | 115,071 | 117,338 |
| | | |
| (in billions) | At 12/31/06 | At 12/31/05 |
| Assets under management | $542.9 | $482.3 |

```
   (1) Fully taxable-equivalent basis
   (2) Balances averaged for period
```

Net income increased 4 percent to $2.40 billion compared with a year earlier. Revenue rose 6 percent, supported by 11 percent growth in asset management fees. Improved spreads on deposits and a 14 percent increase in average loan balances were largely offset by the impact of asset and liability management activity.

Assets Under Management grew $60.58 billion, or 13 percent in 2006, reflecting strong net inflows of $37.87 billion and market appreciation.

- Premier Banking & Investments had revenue of $2.88 billion, a 13 percent increase over 2005 and reported net income of $948 million, a 17 percent increase.

- The Private Bank had revenue of $2.10 billion up 1 percent over last year, and net income of $553 million which declined 1 percent compared with 2005.

- Columbia Management had revenue of $1.54 billion up more than 13 percent and net income of $335 million, up 15 percent when compared with 2005.

- ALM/Other had revenue of $1.27 billion, down 4 percent from 2005 and net income of $567 million, down 13 percent.

For the fourth quarter of 2006, Global Wealth and Investment Management net income declined 1 percent to $602 million from the previous year. Revenue increased 5 percent to $1.99 billion.

All Other

For 2006, All Other reflected $767 million of net income, compared with $744 million a year earlier. In 2005, All Other was negatively affected by the results of the asset liability management process, including the change in the value of derivatives used as economic hedges that did not qualify for SFAS 133. Equity Investment gains were $2.87 billion in 2006 compared with $1.96 billion in 2005 driven by increases in Principal Investing and Corporate and Strategic Investments. For the fourth quarter of 2006, All Other reflected $556 million of net income, compared with a net loss of $63 million for the same period in 2005. Equity Investment gains were $1.03 billion in the fourth quarter of 2006 compared with $493 million a year earlier.

Note: Ken Lewis, chairman and chief executive officer, and Joe Price, chief financial officer, will discuss fourth quarter and full-year 2006 results in a conference call at 9:30 a.m. (Eastern Time) today. The call and accompanying presentation can be accessed via a webcast available on the Bank of America Web site at http://www.bankofamerica.com/investor/.

Bank of America is one of the world's largest financial institutions, serving individual consumers, small and middle market businesses and large corporations with a full range of banking, investing, asset management and other financial and risk-management products and services. The company provides unmatched convenience in the United States, serving more than 55 million consumer and small business relationships with more than 5,700 retail banking offices, through more than 17,000 ATMs and award-winning online banking with more than 21 million active users. Bank of America is the No. 1 overall Small Business Administration (SBA) lender in the United States and the No. 1 SBA lender to minority-owned small businesses. The company serves clients in 175 countries and has relationships with 98 percent of the U.S. Fortune 500 companies and 80 percent of the Global Fortune 500. Bank of America Corporation stock (NYSE: BAC) is listed on the New York Stock Exchange.

Forward-Looking Statements

This press release contains forward-looking statements, including statements about the financial conditions, results of operations and earnings outlook of Bank of America Corporation. The forward-looking statements involve certain risks and uncertainties.

Factors that may cause actual results or earnings to differ materially from such forward-looking statements include, among others, the following: 1) projected business increases following process changes and other investments are lower than expected; 2) competitive pressure among financial services companies increases significantly; 3) general economic conditions are less favorable than expected; 4) political conditions including the threat of future terrorist activity and related actions by the United States abroad may adversely affect the company's businesses and economic conditions as a whole; 5) changes in the interest rate environment reduce interest margins and impact funding sources; 6) changes in foreign exchange rates increases exposure; 7) changes in market rates and prices may adversely impact the value of financial products; 8) legislation or regulatory environments, requirements or changes adversely affect the businesses in which the company is engaged; 9) litigation liabilities, including costs, expenses, settlements and judgments, may adversely affect the company or its businesses; and 10) decisions to downsize, sell or close units or otherwise change the business mix of any of the company. For further information regarding Bank of America Corporation, please read the Bank of America reports filed with the SEC and available at http://www.sec.gov/.

Please consider the investment objectives, risks, charges and expenses of Columbia mutual funds carefully before investing. Contact your financial advisor for a prospectus which contains this and other important information about the fund. Read it carefully before you invest.

(1) Results shown are defined by Columbia Management's calculation of its percentage of assets under management in the top two quartiles of categories based on Morningstar (Equity categories), Lipper (Fixed Income categories) iMoneyNet (Money Market categories). The category percentile rank was calculated by ranking the three year gross return of share classes within the categories stated above. The assets of the number of funds within the top 2 quartile results were added and then divided by Columbia Managements total assets under management. Had fees been included, rankings would have been lower. Past performance is no guarantee of future results. The share class earning the ranking may have limited eligibility and may not be available to all investors.

Columbia Management is the primary investment management division of Bank of America Corporation. Columbia Management entities furnish investment management services and advise institutional and mutual fund portfolios. Columbia Funds are distributed by Columbia Management Distributors, Inc., member NASD, SIPC. Columbia Management Distributors, Inc. is part of Columbia Management and an affiliate of Bank of America Corporation.

http://www.bankofamerica.com/

| Bank of America Selected Financial Data (1) | Three Months Ended December 31 | | Year Ended December 31 | |
|---|---|---|---|---|
| | 2006 | 2005 | 2006 | 2005 |
| (Dollars in millions, except per share data; shares in thousands) | | | | |
| Financial Summary | | | | |
| Earnings | $5,256 | $3,574 | $21,133 | $16,465 |
| Earnings per common share | 1.17 | 0.89 | 4.66 | 4.10 |
| Diluted earnings per common share | 1.16 | 0.88 | 4.59 | 4.04 |
| Dividends paid per common share | 0.56 | 0.50 | 2.12 | 1.90 |
| Closing market price per common share | 53.39 | 46.15 | 53.39 | 46.15 |
| Average common shares issued and outstanding | 4,464,110 | 3,996,024 | 4,526,637 | 4,008,688 |
| Average diluted common shares issued and outstanding | 4,536,696 | 4,053,859 | 4,595,896 | 4,068,140 |

Summary Income Statement

| | | | | |
|---|---|---|---|---|
| Net interest income | $8,599 | $7,859 | $34,591 | $30,737 |
| Total noninterest income | 9,866 | 5,951 | 38,432 | 25,354 |
| Total revenue | 18,465 | 13,810 | 73,023 | 56,091 |
| Provision for credit losses | 1,570 | 1,400 | 5,010 | 4,014 |
| Gains (losses) on sales of debt securities | 21 | 71 | (443) | 1,084 |
| Other noninterest expense | 8,849 | 7,261 | 34,792 | 28,269 |
| Merger and restructuring charges | 244 | 59 | 805 | 412 |
| Income before income taxes | 7,823 | 5,161 | 31,973 | 24,480 |
| Income tax expense | 2,567 | 1,587 | 10,840 | 8,015 |
| Net income | $5,256 | $3,574 | $21,133 | $16,465 |

Summary Average Balance Sheet

| | | | | |
|---|---|---|---|---|
| Total loans and leases | $683,598 | $563,589 | $652,417 | $537,218 |
| Securities | 193,601 | 221,411 | 225,219 | 219,843 |
| Total earning assets | 1,299,461 | 1,145,550 | 1,269,144 | 1,111,994 |
| Total assets | 1,495,150 | 1,305,057 | 1,466,681 | 1,269,892 |
| Total deposits | 680,245 | 628,922 | 672,995 | 632,432 |
| Shareholders' equity | 134,047 | 99,948 | 130,463 | 99,861 |
| Common shareholders' equity | 132,004 | 99,677 | 129,773 | 99,590 |

Performance Ratios

| | | | | |
|---|---|---|---|---|
| Return on average assets | 1.39% | 1.09% | 1.44% | 1.30% |
| Return on average common shareholders' equity | 15.76 | 14.21 | 16.27 | 16.51 |

Credit Quality

| | | | | |
|---|---|---|---|---|
| Net charge-offs | $1,417 | $1,648 | $4,539 | $4,562 |
| Annualized net charge-offs as a % of average loans and leases outstanding | 0.82% | 1.16% | 0.70% | 0.85% |
| Managed credit card net losses as a % of average managed credit card receivables | 4.56 | 9.49 | 3.90 | 6.92 |

| | December 31 | |
|---|---|---|
| | 2006 | 2005 |

Balance Sheet Highlights

| | | |
|---|---|---|
| Loans and leases | $706,490 | $573,791 |
| Total securities | 192,846 | 221,603 |
| Total earning assets | 1,257,274 | 1,133,234 |
| Total assets | 1,459,737 | 1,291,803 |
| Total deposits | 693,497 | 634,670 |
| Total shareholders' equity | 135,272 | 101,533 |
| Common shareholders' equity | 132,421 | 101,262 |
| Book value per share | 29.70 | 25.32 |
| Tangible equity ratio (2) | 4.35 % | 4.26 % |
| Risk-based capital ratios: | | |
| Tier 1 | 8.64 * | 8.25 |
| Total | 11.88 * | 11.08 |
| Leverage ratio | 6.36 * | 5.91 |
| Period-end common shares issued and outstanding | 4,458,151 | 3,999,688 |
| Allowance for credit losses: | | |
| Allowance for loan and lease losses | $9,016 | $8,045 |
| Reserve for unfunded lending commitments | 397 | 395 |

| | | |
|---|---|---|
| Total | $9,413 | $8,440 |
| Allowance for loan and lease losses as a % of total loans and leases | 1.28 % | 1.40 % |
| Allowance for loan and lease losses as a % of total nonperforming loans and leases | 505 | 532 |
| Total nonperforming loans and leases | $1,787 | $1,511 |
| Total nonperforming assets | 1,856 | 1,603 |
| Nonperforming assets as a % of: | | |
|    Total assets | 0.13 % | 0.12 % |
|    Total loans, leases and foreclosed properties | 0.26 | 0.28 |
| Nonperforming loans and leases as a % of total loans and leases | 0.25 | 0.26 |

Other Data

| | | |
|---|---|---|
| Full-time equivalent employees | 203,425 | 176,934 |
| Number of banking centers - domestic | 5,747 | 5,873 |
| Number of branded ATMs - domestic | 17,079 | 16,785 |

* Preliminary data

Information for periods beginning January 1, 2006 includes the MBNA acquisition; prior periods have not been restated.

BUSINESS SEGMENT RESULTS

| | Global Consumer and Small Business Banking | Global Corporate and Investment Banking | Global Wealth and Investment Management | All Other |
|---|---|---|---|---|
| **Three Months Ended December 31, 2006** | | | | |
| Total revenue (FTE) (3) | $10,629 | $5,398 | $1,988 | $806 |
| Net income | 2,527 | 1,571 | 602 | 556 |
| Shareholder value added | 1,192 | 484 | 331 | 177 |
| Return on average equity | 16.27 % | 15.33 % | 22.80 % | n/m |
| Average loans and leases | $200,063 | $246,608 | $64,465 | $172,462 |
| **Three Months Ended December 31, 2005** | | | | |
| Total revenue (FTE) (3) | $7,295 | $4,958 | $1,891 | $(91) |
| Net income | 1,749 | 1,282 | 606 | (63) |
| Shareholder value added | 1,009 | 152 | 322 | (437) |
| Return on average equity | 22.05 % | 11.99 % | 21.97 % | n/m |
| Average loans and leases | $149,251 | $228,999 | $57,187 | $128,152 |
| **Year Ended December 31, 2006** | | | | |
| Total revenue (FTE) (3) | $41,691 | $22,691 | $7,779 | $2,086 |
| Net income | 11,171 | 6,792 | 2,403 | 767 |
| Shareholder value added | 5,738 | 2,349 | 1,340 | (306) |
| Return on average equity | 17.70 % | 16.21 % | 23.20 % | n/m |
| Average loans and leases | $192,072 | $243,282 | $61,497 | $155,566 |
| **Year Ended December 31, 2005** | | | | |
| Total revenue (FTE) (3) | $28,323 | $20,600 | $7,316 | $684 |
| Net income | 7,021 | 6,384 | 2,316 | 744 |
| Shareholder value added | 4,318 | 1,966 | 1,263 | (953) |
| Return on average equity | 23.73 % | 15.28 % | 22.52 % | n/m |
| Average loans and leases | $144,027 | $214,818 | $54,102 | $124,271 |

n/m = not meaningful

| Three Months Ended December 31 | | Year Ended December 31 | |
|---|---|---|---|
| 2006 | 2005 | 2006 | 2005 |

SUPPLEMENTAL FINANCIAL DATA

| Fully taxable-equivalent basis data (3) | | | | |
|---|---|---|---|---|
| Net interest income | $8,955 | $8,102 | $35,815 | $31,569 |
| Total revenue | 18,821 | 14,053 | 74,247 | 56,923 |
| Net interest yield | 2.75 % | 2.82 % | 2.82 % | 2.84 % |
| Efficiency ratio | 48.31 | 52.09 | 47.94 | 50.38 |

| Reconciliation of net income to operating earnings | | | | |
|---|---|---|---|---|
| Net income | $5,256 | $3,574 | $21,133 | $16,465 |
| Merger and restructuring charges | 244 | 59 | 805 | 412 |
| Related income tax benefit | (90) | (19) | (298) | (137) |
| Operating earnings | $5,410 | $3,614 | $21,640 | $16,740 |

| Reconciliation of average shareholders' equity to average tangible shareholders' equity | | | | |
|---|---|---|---|---|
| Average shareholders' equity | $134,047 | $99,948 | $130,463 | $99,861 |
| Average goodwill | (65,766) | (45,305) | (66,040) | (45,331) |
| Average tangible shareholders' equity | $68,281 | $54,643 | $64,423 | $54,530 |

| Operating Basis | | | | |
|---|---|---|---|---|
| Diluted earnings per common share | $1.19 | $0.89 | $4.70 | $4.11 |
| Return on average assets | 1.44 % | 1.10 % | 1.48 % | 1.32 % |
| Return on average common shareholders' equity | 16.22 | 14.36 | 16.66 | 16.79 |
| Return on average tangible shareholders' equity | 31.44 | 26.23 | 33.59 | 30.70 |
| Efficiency ratio (FTE) (3) | 47.02 | 51.66 | 46.86 | 49.66 |

| Reconciliation of net income to shareholder value added | | | | |
|---|---|---|---|---|
| Net income | $5,256 | $3,574 | $21,133 | $16,465 |
| Amortization of intangibles | 433 | 196 | 1,755 | 809 |
| Merger and restructuring charges, net of tax benefit | 154 | 40 | 507 | 275 |
| Capital charge | (3,659) | (2,764) | (14,274) | (10,955) |
| Shareholder value added | $2,184 | $1,046 | $9,121 | $6,594 |

(1) Certain prior period amounts have been reclassified to conform to current period presentation.
(2) Tangible equity ratio equals shareholders' equity less goodwill and intangible assets divided by total assets less goodwill and intangible assets.
(3) Fully taxable-equivalent (FTE) basis is a performance measure used by management in operating the business that management believes provides investors with a more accurate picture of the interest margin for comparative purposes.

Information for periods beginning January 1, 2006 includes the MBNA acquisition; prior periods have not been restated.

Photo: http://www.newscom.com/cgi-bin/prnh/20050720/CLW086LOGO-b
AP Archive: http://photoarchive.ap.org/
PRN Photo Desk, photodesk@prnewswire.com

SOURCE: Bank of America

CONTACT: Investors, Kevin Stitt, +1-704-386-5667, or Lee McEntire,
+1-704-388-6780, or Leyla Pakzad, +1-704-386-2024, or Reporters, Scott
Silvestri, +1-704-388-9921, or scott.silvestri@bankofamerica.com, all of Bank
of America

Web site: http://www.bankofamerica.com/
http://www.bankofamerica.com/investor

Exhibit 11

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

**Bank of America**



# Building
# Opportunities™

EXHIBIT

2006 Annual Report

# About Bank of America Corporation

Bank of America Corporation (NYSE: BAC) is a publicly traded company headquartered in Charlotte, NC, that operates throughout the United States and 44 foreign countries. The corporation provides a diversified range of banking and nonbanking financial services and products domestically and internationally through three business segments: Global Consumer & Small Business Banking, Global Corporate & Investment Banking and Global Wealth & Investment Management.

## Financial Highlights
*(Dollars in millions, except per share information)*

| For the year | Year Ended Dec. 31 2006 | 2005 |
|---|---|---|
| Revenue* | $74,247 | $56,923 |
| Net income | 21,133 | 16,465 |
| Shareholder value added | 9,121 | 6,594 |
| Earnings per common share | 4.66 | 4.10 |
| Diluted earnings per common share | 4.59 | 4.04 |
| Dividends paid per common share | 2.12 | 1.90 |
| Return on average assets | 1.44% | 1.30% |
| Return on average common shareholders' equity | 16.27% | 16.51% |
| Efficiency ratio* | 47.94% | 50.38% |
| Average common shares issued and outstanding (in millions) | 4,527 | 4,009 |

| At year end | 2006 | 2005 |
|---|---|---|
| Total assets | $1,459,737 | $1,291,803 |
| Total loans and leases | 706,490 | 573,791 |
| Total deposits | 693,497 | 634,670 |
| Total shareholders' equity | 135,272 | 101,533 |
| Book value per common share | 29.70 | 25.32 |
| Market price per share of common stock | 53.39 | 46.15 |
| Common shares issued and outstanding (in millions) | 4,458 | 4,000 |

*Fully taxable-equivalent basis
**All Other consists primarily of Equity Investments and Other. For more information, refer to All Other section in the Management's Discussion and Analysis.

### 2006 Revenue*
*(in millions)*



Global Wealth & Investment Management $7,779 10%
All Other** $2,086 3%
Global Corporate & Investment Banking $22,691 31%
Global Consumer & Small Business Banking $41,691 56%

### 2006 Net Income
*(in millions)*



Global Wealth & Investment Management $2,403 11%
All Other** $767 4%
Global Corporate & Investment Banking $6,792 32%
Global Consumer & Small Business Banking $11,171 53%

## Total Cumulative Shareholder Return***



■ Bank of America Corporation
■ S & P 500 CM BANK INDUSTRY
▦ S & P 500 COMP-LTD

## 5-Year Stock Performance



| | 2002 | 2003 | 2004 | 2005 | 2006 |
|---|---|---|---|---|---|
| High | $38.45 | $41.77 | $47.44 | $47.08 | $54.90 |
| Low | 27.08 | 32.82 | 38.96 | 41.57 | 43.09 |
| ▲ Close | 34.79 | 40.22 | 46.99 | 46.15 | 53.39 |

***The graph compares the yearly change in the corporation's cumulative total stockholders' return on its common stock with (i) Standard & Poor's 500 Index and (ii) Standard & Poor's 500 Commercial Banks Index for the years ended 2002 to 2006. The graph assumes an initial investment of $100 at the end of 2001 and the reinvestment of all dividends during the periods indicated.

# Our Lines of Business

## GLOBAL CONSUMER & SMALL BUSINESS BANKING

Global Consumer & Small Business Banking serves approximately 53 million consumer households through checking, savings, credit and debit cards, home equity lending and mortgages. We also serve mass-market small businesses with capital, credit, deposit and payment services.

**BUSINESSES**
Deposits
Card Services
Mortgage
Home Equity



Revenue*



Net Income**

## GLOBAL CORPORATE & INVESTMENT BANKING

Global Corporate & Investment Banking provides comprehensive financial solutions to clients ranging from companies with $2.5 million in revenues to large multinational corporations, governments, institutional investors and hedge funds.

**BUSINESSES**
Business Lending
Capital Markets & Advisory
  Services
Treasury Services



Revenue*



Net Income

## GLOBAL WEALTH & INVESTMENT MANAGEMENT

Global Wealth & Investment Management provides a wide offering of customized banking and investment services for individual and institutional clients.

**BUSINESSES**
The Private Bank
Columbia Management
Premier Banking & Investments™



Revenue*



Net Income

*Fully taxable-equivalent basis   **Reflects net loss in ALM/Other   †ALM=Asset and Liability Management

# Contents

Letter to Shareholders ............................................................ 2
Building Opportunities ......................................................... 10
How We're Growing ............................................................... 16
Helping More People Own Homes ................................... 18
Winning Over Small Businesses ........................................ 20
Managing Monster Cash Flows .......................................... 22
Serving the Needs of Big Investors .................................. 24

Banking and Investing With a Personal Touch ........... 26
Revitalizing Sweet Auburn .................................................. 28
Helping Our Customers in Many Ways ......................... 30
Join Us Online ......................................................................... 32
Financial Review ..................................................................... 33
Executive Officers and Directors .................................. 151
Corporate Information ..................................................... 152



We understand that only by creating opportunities for our customers and clients do we create opportunities for ourselves. Bank of America customers and clients know they can count on us to anticipate their needs, and create the opportunities that enable them to achieve their goals.

—**KENNETH D. LEWIS**, CHAIRMAN, CHIEF EXECUTIVE OFFICER AND PRESIDENT

Exhibit 12

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

D&B Business Information Report: BANK OF AMERICA CORPORATION          Page 1 of 17



Decide with Confidence

## Business Information Report

To save report(s) to your PC, click here for instructions.                 🖨 Print this Report

Copyright 2007 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber 263737613L

ATTN: **ashley**                                        Report Printed: APR 19 2007
                                                         **In Date**

**BUSINESS SUMMARY**

**BANK OF AMERICA CORPORATION**
**100 North Tryon St**
**Bank Of America Corporate Center**
**Charlotte, NC 28255**

Now Included with this Report   NEW!
**D&B's Credit Limit Recommendation**
D&B's industry and risk-based limit guidance
› Learn More                           › View Now

**Payment Trends Profile**
Payment trends and industry benchmarks
› Learn More                           › View Now

Do not confuse with SUBSIDIARIES.
This is a **headquarters** location.
Branch(es) or division(s) exist.

| | |
|---|---|
| Web site: | www.bankofamerica.com |
| Telephone: | 704 386-5861 |
| Fax: | 704 388-6087 |
| Chief executive: | KENNETH D LEWIS, CHB-PRES |
| Stock symbol: | BAC |
| Year started: | 1884 |
| Employs: | 203,425 (1,300 here) |
| Financial statement date: | DEC 31 2006 |
| Sales F: | $117,017,000,000 |
| Net worth F: | $135,272,000,000 |
| History: | CLEAR |
| Financing: | SECURED |
| SIC: | 6021 |
| | 6022 |
| | 6211 |
| | 6091 |
| | 6162 |

**D-U-N-S Number:**       05-516-9452

**D&B Rating:**            ER1

**Number of employees:**  ER1 is **1000 or more** employees.

**D&B PAYDEX®:**

**12-Month D&B PAYDEX:** *77*
When weighted by dollar amount, payments to suppliers average 5 days beyond terms.

  0                          ▽          100

120 days slow    30 days slow    Prompt   Anticipates

Based on trade collected over last 12 months.

*NEW!* Enhanced payment trends and industry benchmarks are available on this business.

**EXHIBIT**

tabbies® _____

D&B Business Information Report: BANK OF AMERICA CORPORATION                    Page 2 of 17

6159

**Line of**          National commercial bank, state
**business:**        commercial bank, security
                     broker/dealer

SPECIAL EVENTS

04/16/2007
**ANNOUNCED SALE OF ASSET:** According to published reports, Columbia Management Advisors, LLC (Rochester, NY), a subsidiary of Bank of America Corporation (Charlotte, NC) announced that it has agreed to sell its Colonial closed-end fund management business to MFS Investment Management (Boston, MA), a subsidiary of Sun Life Financial. The sale includes the business of managing seven closed-end fixed income funds.

**ANNOUNCED PURCHASE OF ASSET:** According to published reports, Sallie Mae, whose formal name is SLM Corp. (Reston, VA) announced that it would be acquired by two private-investments funds J. C. Flowers (New York, NY) and Friedman Fleischer & Lowe (San Francisco, CA) along with JPMorgan Chase & Co. (New York, NY) and Bank of America Corp. (Charlotte, NC). The transaction will require the approval of Sallie Mae's stockholders, is subject to regulatory approval, and is expected to close in late 2007. Sallie Mae will not pay further dividends prior to closing of the deal.

**ANNOUNCED OFFICER CHANGE:** According to published reports, Bank of America announced that Frances Aldrich Sevilla-Sacasa will become President of the Company's new Private Wealth Management unit upon completion of the Bank's acquisition of U.S. Trust Corporation in the third quarter of 2007. Frances Aldrich Sevilla-Sacasa currently serves as Chief Executive Officer of U.S. Trust.

03/23/2007
**ANNOUNCED MERGER/ACQUISITION:** According to published reports on November 20, 2006, Bank of America announced that it has agreed to buy Charles Schwab's U.S. Trust (New York, NY) private-banking arm for $3.3 billion cash. Bank of America expects the deal to close March 31, 2007.

SUMMARY ANALYSIS

**D&B Rating:**          **ER1**
    **Number of employees:** ER1 indicates **1000 or more** employees.

Certain lines of business, primarily banks, insurance companies and government entities, do not lend themselves to classification under the D&B Rating system. Instead, we assign these types of businesses an Employee Range symbol based on the number of people employed. No other significance should be attached to this symbol. The ERN should not be interpreted negatively. It simply means we do not have information indicating how many people are employed at this firm. For more information, see the D&B Rating Key.

Below is an overview of the company's rating history since 01/01/91:

            **D&B Rating**      **Date Applied**
               ER1              01/01/91

The Summary Analysis section reflects information in D&B's file as of April 18, 2007.

| NEW! How does BANK OF AMERICA CORPORATION's payment record compare to its industry?  |
| --- |
| A Payment Trends Profile will show you - View Now |

CUSTOMER SERVICE

If you have questions about this report, please call our Customer Resource Center at 1.800.234.3867 from anywhere within the U.S. If you are outside the U.S. contact your local D&B office.

*** Additional Decision Support Available ***

Additional D&B products, monitoring services and specialized investigations are available to help you evaluate this

D&B Business Information Report: BANK OF AMERICA CORPORATION                    Page 3 of 17

company or its industry. Call Dun & Bradstreet's Customer Resource Center at 1.800.234.3867 from anywhere within the U.S. or visit our website at www.dnb.com.

HISTORY

The following information was reported 04/18/2007:

**Officer(s):**     KENNETH D LEWIS, CHB-PRES-CEO
GENE TAYLOR, V CHB-PRES OF GLOBAL INVEST
AMY WOODS BRINKLEY, GLOBAL RISK OFFICER
BARBARA DESOER, GLOBAL TECH, SVC & FULFILLMENT OFFICER
JOE L PRICE, CFO

**DIRECTOR(S):**     THE OFFICER(S) and William Barnett III, Frank P Bramble Sr, Charles W Coker, John T Collins, Gary L Countryman, Tommy R Franks, Paul Fulton, Charles K Gifford, W Steven Jones, Monica C Lozano, Walter E Massey, Thomas J May, Patricia E Mitchell, Edward L Romero, Thomas M Ryan, O Temple Sloan Jr (Lead Director), Meredith R Spangler, Robert L Tillman, and Jackie M Ward.

**AUTHORIZED CAPITAL STOCK:**
100,000,000 shares of preferred stock, $.01 par value and 7,500,000,000 shares of common stock, $.01 par value.

**OUTSTANDING CAPITAL STOCK:**
As of February 26, 2007, there were 4,472,315,428 shares of Common Stock outstanding.

Business started 1884.

**BUSINESS BACKGROUND:**
NCNB Corporation was formed in 1968 to act as a holding company for various banks and related businesses whose operations date back to 1884.

As part of the 1997 acquisition of Boatmen's Bancshares, the company approved a restated articles of incorporation increasing the number of authorized shares of common stock to 1,250,000,000.

In connection with the Sept 30, 1998 merger of NationsBank Corp and BankAmerica Corporation, a new Delaware corporation was formed as NationsBank(DE) and following the merger, it emerged as the survivor under the name of Bank Of America Corporation.

**STOCK OWNERSHIP:**
This corporation is publicly traded on the New York Stock Exchange under the symbol "BAC" following its merger and name change in Sept, 1998. As of February 26 2007, there were 272,123 record holders of Common Stock.

As of December 31, 2005, beneficial owners of 5% or more of the Company's Series B Stock included Carolyn C. Glassman & Albert Irl Dubinsky, TR UA Apr 8 82, Carolyn Glassman Trust, 26%. There were no beneficial owners of 5% or more of the Company's Common Stock. All directors and executive officers as a group beneficially owned approximately 1.25% of the shares of Common Stock outstanding.

**RECENT EVENTS:**
In December 2006, BoA completed the sale of its retail and commercial business in Hong Kong and Macau (Asia Commercial Banking business) to China Construction Bank (CCB) for $1.25 billion.

On Jan 24, 2006, Bank of America announced that it has acquired Financial Labs, LLC, Cambridge, MA.

On January 1 2006, Bank of America Corporation announced that it has completed its merger with MBNA Corporation (Wilmington, DE). MBNA shareholders received 0.5009 of a share of Bank of America common stock and $4.125 in cash for each share of MBNA common stock that they held immediately prior to the merger.

**OFFICERS BACKGROUND:**

KENNETH D LEWIS born 1947. named Chief Executive Officer in April 2001, President in July 2004 and Chairman in February 2005. From April 2001 to April 2004, he served as Chairman; from January 1999 to April 2004, he served as President; and from October 1999 to April 2001, he served as Chief Operating Officer. He first became an officer in 1971. Mr. Lewis also serves as a director of the Corporation and as Chairman, Chief Executive Officer, President and a director of Bank of America, N.A., MBNA America Bank, N.A., MBNA America (Delaware), N.A. and Bank of America, N.A. (USA).

D&B Business Information Report: BANK OF AMERICA CORPORATION    Page 4 of 17

GENE TAYLOR. Vice Chairman and President, Global Corporate and Investment Banking since July, 2005. From February 2005 to July 2005, he served as President, Global Business and Financial Services; from August 2004 to February 2005, he served as President, Commercial Banking; from June 2000 to August 2004, he served as President, Consumer and Commercial Banking; from February 2000 to June 2000, he served as President, Central Region; and from October 1998 to June 2000, he served as President, West Region. He first became an officer in 1970. He also serves as Vice-Chairman and President, Global Corporate and Investment Banking and a director of Bank of America, N.A., MBNA America Bank, N.A., MBNA America (Delaware), N.A. and Bank of America, N.A. (USA).

AMY WOODS BRINKLEY born 1956. 1979-present active here as officer. Ms. Brinkley was named to her present position in April 2002.

BARBARA DESOER born 1953. 1977-present active here. Ms Desoer was named to her present position in August 2004.

JOE L PRICE. named to his present position in January 2007. From June 2003 to December 2006, he served as GCIB Risk Management Executive; from July 2002 to May 2003 he served as Senior Vice President Corporate Strategy and President, Consumer Special Assets; from November 1999 to July 2002 he served as President, Consumer Finance; from August 1997 to October 1999 he served as Corporate Risk Evaluation Executive and General Auditor; from June 1995 to July 1997 he served as Controller; and from April 1993 to May 1995 he served as Accounting Policy and Finance Executive. He first became an officer in 1993. He also serves as Chief Financial Officer and a director of Bank of America, N.A. and FIA Card Services, N.A.

**OUTSIDE DIRECTORS:**

BARNETT. Chairman, president and CEO of The Barnett Company Inc.

BRAMBLE. Former Executive Officer, MBNA Corporation.

COKER. Chairman of Sonoco Products Company.

COLLINS. Chairman and CEO of The Collins Group Inc.

COUNTRYMAN. Chairman emeritus of Liberty Mutual Insurance Company.

FRANKS. Retired General, United States Army.

FULTON. Chairman of Bassett Furniture Industries Inc.

GIFFORD. Former chairman of the company.

JONES. Dean, Kenan-Flagler Business School University of North Carolina at Chapel Hill.

LOZANO. Publisher and Chief Executive Officer of La Opinion.

MASSEY. President of Morehouse College.

MAY. Chairman, president and CEO of Nstar.

MITCHELL. President and CEO of Public Broadcasting Service.

ROMERO. Former Ambassador to Spain.

RYAN. Chairman, president and CEO of CVS Corporation.

SLOAN. Chairman and CEO of General Parts Inc.

SPANGLER. Trustee of the company.

TILLMAN. Chairman and CEO Emeritus, Lowes Companies, Inc.

WARD. Outside managing director of Intec Telecom Systems plc.

CORPORATE FAMILY

D&B Business Information Report: BANK OF AMERICA CORPORATION          Page 5 of 17

Click below to buy a Business Information Report on that family member.
For an expanded, more current corporate family view, use D&B's Global Family Linkage product.

    ▓▓ Buy Selected Report(s) ▓▓

**Subsidiaries (US):**

| | | |
|---|---|---|
| ☐ A Ashburn Corp | Charlotte, NC | DUNS # 86-959-1875 |
| ☐ A Wickliffe Corporation | Charlotte, NC | DUNS # 86-947-6168 |
| ☐ Ames Asb Plaza Inc | Charlotte, NC | DUNS # 86-959-1784 |
| ☐ Appold Equity Ventures Limited | San Francisco, CA | DUNS # 80-077-1065 |
| ☐ Appold Holdings Limited | San Francisco, CA | DUNS # 84-744-4569 |
| ☐ Appold Leasing, Inc. | San Francisco, CA | DUNS # 80-077-1040 |
| ☐ Asegurar Seguros De Retiro | Boston, MA | DUNS # 83-326-7503 |
| ☐ Ashmere Development Corp | Boston, MA | DUNS # 83-326-7529 |
| ☐ Aswan Village Associates LLC | Opa Locka, FL | DUNS # 06-484-5113 |
| ☐ Ba Insurance Holding Company | San Francisco, CA | DUNS # 80-077-3517 |
| ☐ Bal Global Finance, LLC | Chicago, IL | DUNS # 07-426-1389 |
| ☐ Banc of America Capital Investors Sbic, L.P. | Charlotte, NC | DUNS # 79-130-5662 |
| ☐ Banc of America Finance Services, Inc. | Chicago, IL | DUNS # 10-828-2641 |
| ☐ Banc of America Insurance Services | Cranford, NJ | DUNS # 07-754-9970 |
| ☐ Banc of America Leasing & Capital LLC | Troy, MI | DUNS # 15-416-2861 |
| ☐ Banc of America Mortgage Capital Corp | Charlotte, NC | DUNS # 86-816-8246 |
| ☐ Banc of America Securities LLC | San Francisco, CA | DUNS # 15-848-4795 |
| ☐ Banc of America Vendor Finance | San Diego, CA | DUNS # 14-855-2086 |
| ☐ Bancboston Capital Inc | Boston, MA | DUNS # 36-186-5306 |
| ☐ Bancboston Investments Inc | Boston, MA | DUNS # 36-186-7153 |
| ☐ Bancboston Leasing Services Inc | Boston, MA | DUNS # 80-590-0701 |
| ☐ Bancboston Real Estate Capital Corporation | Boston, MA | DUNS # 03-081-3067 |
| ☐ Bancboston Ventures Inc | Boston, MA | DUNS # 04-942-5440 |
| ☐ Bank of America America Insurance Group, Inc | San Diego, CA | DUNS # 14-739-9612 |
| ☐ Bank of America Capital Management Inc | Charlotte, NC | DUNS # 01-475-9448 |

This list is limited to the first 25 subsidiaries.
For the complete list, use D&B's Global Family Linkage product.

---

**Subsidiaries (International):**

| | | |
|---|---|---|
| ☐ BAL GLOBAL FINANCE (UK) LTD | London, UK (ENGLAND, SCOTLAND, WALES, N.IRELAND) | DUNS # 22-596-5540 |
| ☐ Bal Global Finance Canada Corporation | Toronto, CANADA | DUNS # 25-096-2792 |
| ☐ BANC OF AMERICA SECURITIES (INDIA) PRIVATE LIMITED | MUMBAI, INDIA | DUNS # 91-862-9283 |
| ☐ Bank of America NT&SA Seoul Branch | SEOUL, KOREA, REPUBLIC OF | DUNS # 68-952-5293 |
| ☐ BANK OF AMERICA SECURITIES JAPAN INC. | CHIYODA-KU, JAPAN | DUNS # 69-169-1661 |
| ☐ Bank of America Seoul Branch | SEOUL, KOREA, REPUBLIC OF | DUNS # 68-896-7322 |
| ☐ Bank of America Trust and Banking | | |

D&B Business Information Report: BANK OF AMERICA CORPORATION          Page 6 of 17

| | | |
|---|---|---|
| ☐ Corporation (Cayman) Limited | GEORGE TOWN, CAYMAN ISLANDS | DUNS # 86-399-6302 |
| ☐ BANK OF AMERICA, NATIONAL ASSOCIATION | SYDNEY, AUSTRALIA | DUNS # 75-489-1927 |
| ☐ CIRCULOS OCA S.A. | MONTEVIDEO, URUGUAY | DUNS # 96-600-7929 |
| ☐ Grupo Financiero Bank of América, S.A. de C.V. | CIUDAD DE MEXICO, MEXICO | DUNS # 81-287-1762 |
| ☐ Nation Bank of Texas National Association | CIUDAD DE MEXICO, MEXICO | DUNS # 81-227-1773 |

**Branches (US):**

| | | |
|---|---|---|
| ☐ Bank of America Corporation | Pasadena, CA | DUNS # 00-997-9113 |
| ☐ Bank of America Corporation | Chicago, IL | DUNS # 14-309-6506 |
| ☐ Bank of America Corporation | Charlotte, NC | DUNS # 79-107-6875 |

**Branches (International):**

| | | |
|---|---|---|
| ☐ BANK OF AMERICA NATIONAL ASSOCIATION SUCURSAL EN ESPANA | MADRID, SPAIN | DUNS # 86-288-6855 |
| ☐ BANKBOSTON NATIONAL ASSOCIATION | Ciudad de Buenos Aires, ARGENTINA | DUNS # 97-051-9963 |

Buy Selected Report(s)

BUSINESS REGISTRATION

CORPORATE AND BUSINESS REGISTRATIONS PROVIDED BY MANAGEMENT OR OTHER SOURCE

The Corporate Details provided below may have been submitted by the management of the subject business and may not have been verified with the government agency which records such data.

**Registered Name:**     Bank of America Corporation

| | |
|---|---|
| **Business type:** | CORPORATION |
| **Corporation type:** | PROFIT |
| **Date incorporated:** | JUL 31 1998 |
| **State of incorporation:** | DELAWARE |
| **Filing date:** | JUL 31 1998 |
| **Status:** | ACTIVE |
| **Status attained:** | JUL 31 1998 |

**Where filed:**     SECRETARY OF STATE/CORPORATIONS DIVISION, DOVER, DE

OPERATIONS

04/18/2007

**Description:**     The company is a bank holding company that operates through its bank and finance subsidiaries. Its subsidiaries primarily provide full service banking as national and state banks to both retail and commercial customers, offering a full range of checking, savings, money market and other services. These operations generate the majority of the corporation's revenues.

Other subsidiaries are engaged in discount brokerage services, trust services, securities underwriting and trading, futures, mortgage banking, equipment and other finance leasing, factoring of accounts receivable and other auxiliary activities.

Terms include interest, service charges, fees and commissions. Sells to a wide variety of clientele including individuals, commercial concerns and governmental agencies. Territory : International.

D&B Business Information Report: BANK OF AMERICA CORPORATION    Page 7 of 17

Nonseasonal.

**Employees:** 203,425 which includes officer(s). 1,300 employed here.

**Facilities:** Owns 1,184,000 sq. ft. in a sixty story building. Occupies 637,000 square feet and lease approximately 547,000 square feet.

**Location:** Central business section on main street.

**Branches:** This business has multiple branches, detailed branch/division information is available in D&B's linkage or family tree products.

**Subsidiaries:** This business has multiple subsidiaries, detailed information is available in D&B's linkage or family tree products.

## SIC & NAICS

**SIC:**
Based on information in our file, D&B has assigned this company an extended 8-digit SIC. D&B's use of 8-digit SICs enables us to be more specific to a company's operations than if we use the standard 4-digit code.

The 4-digit SIC numbers link to the description on the Occupational Safety & Health Administration (OSHA) Web site. Links open in a new browser window.

| | |
|---|---|
| 60210000 | National commercial banks |
| 60220000 | State commercial banks |
| 62110102 | Brokers, security |
| 62110207 | Underwriters, security |
| 62110109 | Traders, security |
| 60910000 | Nondeposit trust facilities |
| 61629903 | Mortgage bankers |
| 61590200 | Equipment and vehicle finance leasing companies |

**NAICS:**

| | |
|---|---|
| 522110 | Commercial Banking |
| 522110 | Commercial Banking |
| 523120 | Securities Brokerage |
| 523110 | Investment Banking and Securities Dealing |
| 523999 | Miscellaneous Financial Investment Activities |
| 523991 | Trust, Fiduciary, and Custody Activities |
| 522292 | Real Estate Credit |
| 522220 | Sales Financing nd Leasing |

## D&B PAYDEX

**NEW!** Enhanced payment trends and industry benchmarks are available on this business

The D&B PAYDEX is a unique, dollar weighted indicator of payment performance based on up to 281 payment experiences as reported to D&B by trade references.



**3-Month D&B PAYDEX: 75**
When weighted by dollar amount, payments to suppliers average 8 days beyond terms.

Based on trade collected over last 3 months.



**12-Month D&B PAYDEX: 77**
When weighted by dollar amount, payments to suppliers average 5 days beyond terms.

Based on trade collected over last 12 months.

When dollar amounts are not considered, then approximately 69% of the company's payments are within terms.

## PAYMENT SUMMARY

D&B Business Information Report: BANK OF AMERICA CORPORATION                Page 8 of 17

The Payment Summary section reflects payment information in D&B's file as of the date of this report.

Below is an overview of the company's dollar-weighted payments, segmented by its suppliers' primary industries:

| | Total Rcv'd (#) | Total Dollar Amts ($) | Largest High Credit ($) | Within Terms (%) | Days Slow <31 (%) | 31-60 (%) | 61-90 (%) | 90> (%) |
|---|---|---|---|---|---|---|---|---|
| **Top industries:** | | | | | | | | |
| Telephone communictns | 22 | 817,500 | 800,000 | 100 | - | - | - | - |
| Nonclassified | 18 | 4,094,900 | 3,000,000 | 63 | 37 | - | - | - |
| Misc equipment rental | 10 | 660,000 | 250,000 | 80 | - | 20 | - | - |
| Whol office equipment | 6 | 1,225,850 | 900,000 | 39 | 49 | - | - | 12 |
| Mfg computer terminal | 5 | 31,195,000 | 30,000,000 | 98 | 2 | - | - | - |
| Mfg photograph equip | 5 | 2,010,250 | 2,000,000 | 100 | - | - | - | - |
| Mfg computers | 4 | 15,600,000 | 9,000,000 | 79 | 19 | - | 2 | - |
| Mfg misc office eqpt | 2 | 801,000 | 800,000 | 50 | 50 | - | - | - |
| Lithographic printing | 2 | 600,100 | 600,000 | 50 | - | - | 50 | - |
| Medical scvs plan | 1 | 4,000,000 | 4,000,000 | 100 | - | - | - | - |
| OTHER INDUSTRIES | 194 | 4,105,650 | 600,000 | 68 | 16 | 9 | 4 | 3 |
| **Other payment categories:** | | | | | | | | |
| Cash experiences | 1 | 0 | 0 | | | | | |
| Payment record unknown | 8 | 1,105,700 | 800,000 | | | | | |
| Unfavorable comments | 1 | 1,000 | 1,000 | | | | | |
| **Placed for collections:** | | | | | | | | |
| With D&B | 0 | 0 | | | | | | |
| Other | 2 | N/A | | | | | | |
| Total in D&B's file | 281 | 66,216,950 | 30,000,000 | | | | | |

The highest **Now Owes** on file is $2,000,000

The highest **Past Due** on file is $100,000

Dun & Bradstreet has 281 payment experiences in its file for this company. For your convenience, we have displayed 80 representative experiences in the PAYMENTS section.

**NEW!**  How does BANK OF AMERICA CORPORATION's payment record compare to its industry?

A Payment Trends Profile will show you - View Now

PAYMENT DETAILS

**Detailed Payment History**

| Date Reported (mm/yy) | Paying Record | High Credit ($) | Now Owes ($) | Past Due ($) | Selling Terms | Last Sale Within (months) |
|---|---|---|---|---|---|---|
| 04/07 | Ppt | 2,000,000 | 2,000,000 | | | |
| | Ppt | 7,500 | 5,000 | 0 | | |
| | Ppt | 500 | 250 | 0 | | 1 mo |
| | Ppt | 500 | 50 | 0 | | 1 mo |
| | Ppt | 500 | 250 | 0 | | 1 mo |
| | Slow 30-180 | 7,500 | 0 | | | 6-12 mos |

D&B Business Information Report: BANK OF AMERICA CORPORATION          Page 9 of 17

| | | | | | | |
|---|---|---|---|---|---|---|
| | Slow 30-180 | 1,000 | 0 | | | 6-12 mos |
| | (008) | 500 | 500 | 500 | | |
| | Placed for collection. | | | | | |
| 03/07 | Ppt | | 1,000 | 0 | | 1 mo |
| | Ppt | 200,000 | 200,000 | 0 | N30 | 1 mo |
| | Ppt | 100,000 | 100,000 | 0 | | 1 mo |
| | Ppt | 100,000 | 100,000 | 0 | | 1 mo |
| | Ppt | 45,000 | 0 | 0 | | 2-3 mos |
| | Ppt | 25,000 | 0 | 0 | | 6-12 mos |
| | Ppt | 20,000 | 0 | 0 | | 2-3 mos |
| | Ppt | 15,000 | 15,000 | 0 | | 1 mo |
| | Ppt | 10,000 | 0 | 0 | | 6-12 mos |
| | Ppt | 7,500 | 0 | 0 | | 6-12 mos |
| | Ppt | 5,000 | 250 | 0 | | 1 mo |
| | Ppt | 5,000 | 0 | 0 | | 2-3 mos |
| | Ppt | 5,000 | 0 | 0 | | 4-5 mos |
| | Ppt | 2,500 | 0 | 0 | | 1 mo |
| | Ppt | 2,500 | 0 | 0 | N30 | 6-12 mos |
| | Ppt | 2,500 | 0 | 0 | | 6-12 mos |
| | Ppt | 1,000 | 50 | 0 | | 1 mo |
| | Ppt | 1,000 | 1,000 | 0 | N30 | 1 mo |
| | Ppt | 1,000 | 1,000 | 0 | N30 | 1 mo |
| | Ppt | 1,000 | 1,000 | 0 | N30 | 1 mo |
| | Ppt | 500 | 0 | 0 | N30 | 6-12 mos |
| | Ppt | 250 | 250 | 0 | | 1 mo |
| | Ppt | 100 | 0 | 0 | | 6-12 mos |
| | Ppt | 100 | 0 | 0 | | 6-12 mos |
| | Ppt | 100 | 50 | 0 | | 1 mo |
| | Ppt | 50 | 0 | 0 | | 6-12 mos |
| | Ppt | 50 | 0 | 0 | | 1 mo |
| | Ppt | 50 | 0 | 0 | | 1 mo |
| | Ppt | 50 | 0 | 0 | | 6-12 mos |
| | Ppt | 0 | 0 | 0 | | 1 mo |
| | Ppt-Slow 30 | 35,000 | 35,000 | 25,000 | | 1 mo |
| | Ppt-Slow 30 | 2,500 | 750 | 0 | | 1 mo |
| | Ppt-Slow 30 | 1,000 | 750 | 0 | | 1 mo |
| | Ppt-Slow 30 | 1,000 | 750 | 250 | N30 | 1 mo |
| | Ppt-Slow 30 | 750 | 0 | 0 | N30 | 6-12 mos |
| | Ppt-Slow 30 | 250 | 250 | 50 | | 1 mo |
| | Ppt-Slow 60 | 250,000 | 80,000 | 0 | | 1 mo |
| | Ppt-Slow 60 | 5,000 | 1,000 | 0 | | 1 mo |
| | Ppt-Slow 60 | 750 | 250 | 0 | | 1 mo |
| | Ppt-Slow 60 | 500 | 250 | 0 | | 1 mo |
| | Ppt-Slow 90 | 500,000 | 0 | 0 | | 4-5 mos |
| | Ppt-Slow 90 | 2,500 | 250 | 250 | | 6-12 mos |
| | Slow 30 | 2,500 | 1,000 | 0 | N30 | 1 mo |
| | Slow 30 | 750 | 0 | 0 | N30 | 6-12 mos |
| | Slow 60 | 35,000 | 0 | 0 | | 6-12 mos |
| | Slow 60 | 15,000 | 0 | 0 | N30 | 4-5 mos |
| | Slow 60 | 10,000 | 0 | 0 | | 6-12 mos |

D&B Business Information Report: BANK OF AMERICA CORPORATION       Page 10 of 17

|        |              |         |         |        |                |           |
|--------|--------------|---------|---------|--------|----------------|-----------|
|        | Slow 90      | 25,000  | 0       | 0      | N30            | 4-5 mos   |
|        | Slow 30-90   | 10,000  | 10,000  | 10,000 |                | 1 mo      |
|        | Slow 90      | 100     | 0       | 0      |                | 4-5 mos   |
|        | Slow 30-120  | 2,500   | 0       | 0      | N30            | 2-3 mos   |
|        | Slow 120     | 1,000   | 1,000   | 1,000  |                | 6-12 mos  |
| 02/07  | Ppt          | 15,000  | 15,000  |        |                |           |
|        | Ppt          | 15,000  | 15,000  |        |                |           |
|        | Ppt          | 1,000   | 0       | 0      |                | 1 mo      |
|        | Ppt          | 750     | 750     | 0      |                | 1 mo      |
|        | Ppt          | 750     | 750     | 0      |                | 1 mo      |
|        | Ppt          | 250     | 0       | 0      |                | 2-3 mos   |
|        | Ppt          | 250     | 0       | 0      |                | 6-12 mos  |
|        | Ppt          | 250     | 250     | 0      |                | 1 mo      |
|        | Ppt          | 250     | 100     | 0      |                | 1 mo      |
|        | Ppt          | 250     | 250     | 0      |                | 1 mo      |
|        | Ppt          | 250     | 250     | 0      |                | 1 mo      |
|        | Ppt-Slow 60  | 85,000  | 60,000  | 35,000 |                | 1 mo      |
|        | Slow 30      | 2,500   | 0       | 0      |                | 6-12 mos  |
| 01/07  | Slow 30-60   | 2,500   | 0       | 0      |                | 6-12 mos  |
| 12/06  | Ppt-Slow 120 | 70,000  | 30,000  | 15,000 | N30            | 1 mo      |
|        | Slow 25      | 50,000  | 50,000  | 45,000 |                | 1 mo      |
|        | Slow 55      | 7,500   | 50      | 50     |                | 2-3 mos   |
| 09/06  | Ppt          | 800,000 | 0       | 0      |                | 1 mo      |
| 07/06  | Ppt-Slow 30  | 900,000 | 500,000 | 80,000 | Lease Agreemnt | 1 mo      |
|        | Ppt-Slow 60  | 15,000  | 0       | 0      |                | 6-12 mos  |

Accounts are sometimes placed for collection even though the existence or amount of the debt is disputed.

Payment experiences reflect how bills are met in relation to the terms granted. In some instances payment beyond terms can be the result of disputes over merchandise, skipped invoices etc.

Each experience shown is from a separate supplier. Updated trade experiences replace those previously reported.

**NEW!**    **Have BANK OF AMERICA CORPORATION's payment habits changed over time?**

A Payment Trends Profile will show you - View Now

**FINANCE**

**03/23/2007**

**Three-year statement comparative:**

|               | Fiscal Consolidated Dec 31 2004 (000s omitted) | Fiscal Consolidated Dec 31 2005 (000s omitted) | Fiscal Consolidated Dec 31 2006 (000s omitted) |
|---------------|------------------------------------------------|------------------------------------------------|------------------------------------------------|
| Net Loans     | 513,187,000                                    | 565,746,000                                    | 697,474,000                                    |
| Other Assets  | 597,245,000                                    | 726,057,000                                    | 762,263,000                                    |
| Total Deposits| 618,570,000                                    | 634,670,000                                    | 693,497,000                                    |
| Net Worth     | 100,235,000                                    | 101,533,000                                    | 135,272,000                                    |
| Other Liabs   | 391,627,000                                    | 555,600,000                                    | 630,968,000                                    |
| Interest Income| 42,953,000                                    | 58,626,000                                     | 78,585,000                                     |
| Noninterest Inc| 21,005,000                                    | 25,354,000                                     | 38,432,000                                     |

D&B Business Information Report: BANK OF AMERICA CORPORATION                    Page 11 of 17

| | | | |
|---|---|---|---|
| Loan Loss Prov | 2,769,000 | 4,014,000 | 5,010,000 |
| Net Profit (Loss) | 13,947,000 | 16,465,000 | 21,133,000 |

**Fiscal Consolidated statement dated DEC 31 2006 (in thousands):**

| Assets | | Liabilities | |
|---|---|---|---|
| Cash | 36,429,000 | Deposits | 693,497,000 |
| Federal Funds Sold | 135,478,000 | Accruals | 42,132,000 |
| Trading Account Assets | 153,052,000 | Federal Funds Purchased | 217,527,000 |
| Derivative Assets | 23,439,000 | Trading Account Liabilities | 67,670,000 |
| Debt Securities | 192,846,000 | | |
| Fixt & Equip | 9,255,000 | Long-Term Debt | 146,000,000 |
| Loans & Leases | 697,474,000 | Other Liabilities | 157,639,000 |
| Deposits | 13,952,000 | PREFERRED STOCK | 2,851,000 |
| Mortgage Servicing Rights | 3,045,000 | COMMON STOCK & ADDITIONAL PD-IN CAP | 61,574,000 |
| Goodwill | 65,662,000 | RETAINED EARNINGS | 79,024,000 |
| Intangible Assets | 9,422,000 | ADJUSTMENTS | (8,177,000) |
| Other Assets | 119,683,000 | | |
| **Total Assets** | **$1,459,737,000** | **Total** | **$1,459,737,000** |

Sales $117,017,000,000. Operating expenses $79,591,000,000. Prov for Losses $5,010,000,000. Operating income $32,416,000,000; other expenses $443,000,000; net income before taxes $31,973,000,000; Federal income tax $10,840,000,000. Net income $21,133,000,000. Retained earnings at start $7,552,000,000,000. Net income $21,133,000,000; dividends $9,661,000,000; retained earnings at end $79,024,000,000.

Statement obtained from Securities and Exchange Commission. Prepared from statement(s) by Accountant: PricewaterhouseCoopers LLP, Charlotte, NC.

**ACCOUNTANT'S OPINION**
A review of the accountant's opinion indicates the financial statements meet generally accepted accounting principles and that the audit contains no qualifications.

. ...... BALANCE SHEET EXPLANATIONS ...... .

The net worth of this business includes intangibles.

**OTHER LIABILITIES**
Consists of derivative liabilities, commercial paper and other short-term borrowings.

**LONG TERM DEBT**
Consists primarily of senior notes, subordinated notes, junior subordinated notes and FHLB advances. Scheduled maturities of long-term debt are as follows: $17,194 million in 2007; $26,978 million in 2008; $17,984 million in 2009; $12,690 million in 2010; $8,109 million in 2011; and $146,000 million thereafter.

**RESULTS OF OPERATIONS**
Net interest income on a FTE basis increased $4.2 billion to $35.8 billion in 2006 compared to 2005. The primary drivers of the increase were the impact of the MBNA merger (volumes and spreads), consumer and commercial loan growth, and increases in the benefits from asset and liability management (ALM) activities including higher portfolio balances (primarily residential mortgages) and the impact of changes in spreads across all product categories. these increases were partially offset by a lower contribution from market-based earning assets and the higher costs associated with higher levels of wholesale funding. Non-interest income increased $13.1 billion to $38.4 billion in 2006 compared to 2005. The primary drivers of the increase were card income increased $8.5 billion primarily due to the addition of MBNA, service charges grew $520 million due to increased fees, investment and brokerage services increased $272 million, investment banking income increased $461 million, equity investment gains increased $977 million, trading account profits increased $1.4 billion, other income increased $1.2 billion, this was partially offset by mortgage banking income decreased $264 million. Net income reached $21.1 billion, or $4.59 per diluted common share in 2006, increases of 28 percent and 14 percent from $16.5 billion, or $4.04 per diluted common share in 2005.

**SUMMARY OF CASH FLOWS**
Cash provided by (used in) operating activities was $14,509 million; cash provided by (used in) investing activities was $(68,304) million; and cash provided by (used in) financing activities was $53,133 million. Effect of exchange rate changes on cash and cash equivalents was $92 million. Net increase (decrease) in cash was $(570) million. Cash at beginning of period was $36,999 million. Cash at end of period was $36,429 million.

**ANALYST COMMENTS**
As of Dec 31 2006, Bank of America Corp had total assets of $1,459.7 billion of which net loans and securities were the primary assets. Assets increased by $167.9 billion when compared to 2005. As of Dec 31 2006, the company had a Tier 1 ratio of 8.64%, total risk-based capital ratio of 11.88%, and a leverage ratio of 6.36%. The company maintains capital levels in excess of the minimum capital requirements. The company is classified as well capitalized.

The primary sources of funding for the banking subsidiaries include customer deposits and wholesale market based funding. Primary uses of funds for the banking subsidiaries include growth in the core asset portfolios, including loan demand, and in the ALM portfolio. Use the ALM portfolio primarily to manage interest rate risk and liquidity risk.

The parent company maintains a cushion of excess liquidity that would be sufficient to fully fund holding company and nonbank affiliate operations for an extended period during which funding from normal sources is disrupted.

**BANKING**

> MARCH 2007: Bank of America Corporation and certain other subsidiaries issue commercial paper in order to meet short-term funding needs. Commercial paper outstanding at December 31, 2006 was $41.2 billion.

> Bank of America, N.A. maintains a domestic program to offer up to a maximum of $50.0 billion, at any one time, of bank notes with fixed or floating rates and maturities of at least seven days from the date of issue. Short-term bank notes outstanding under this program totaled $24.5 billion at December 31, 2006.

**PUBLIC FILINGS**

---

The following Public Filing data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

**JUDGMENTS**

| | |
|---|---|
| **Status:** | **Unsatisfied** |
| **CASE NO.:** | 06S00935 |
| **Judgment type:** | Judgment |
| **Against:** | BANK OF AMERICA CORPORATION |
| **In favor of:** | GABRIELIAN, LEO |
| **Where filed:** | LOS ANGELES COUNTY SMALL CLAIMS COURT/GLENDALE, GLENDALE, CA |
| | |
| **Date status attained:** | 07/07/2006 |
| **Date entered:** | 07/07/2006 |
| **Latest Info Received:** | 10/20/2006 |

| | |
|---|---|
| **Status:** | **Unsatisfied** |
| **CASE NO.:** | SC172558 |
| **Judgment type:** | Judgment |
| **Against:** | BANK OF AMERICA CORP. and OTHERS |
| **In favor of:** | JOSIAH GROSS |
| **Where filed:** | SAN DIEGO COUNTY SMALL CLAIMS COURT/SAN DIEGO, SAN DIEGO, CA |
| | |
| **Date status attained:** | 06/20/2006 |
| **Date entered:** | 06/20/2006 |
| **Latest Info Received:** | 07/05/2006 |

| | |
|---|---|
| **Status:** | **Unsatisfied** |
| **CASE NO.:** | 05W01064 |

D&B Business Information Report: BANK OF AMERICA CORPORATION          Page 13 of 17

| | |
|---|---|
| **Judgment type:** | Judgment |
| **Against:** | BANK OF AMERICA CORPORATION |
| **In favor of:** | ANDREWS, NICHOLAS A |
| **Where filed:** | LOS ANGELES COUNTY SMALL CLAIMS COURT/WEST LA, LOS ANGELES, CA |
| | |
| **Date status attained:** | 05/18/2005 |
| **Date entered:** | 05/18/2005 |
| **Latest Info Received:** | 09/22/2005 |

| | |
|---|---|
| **Judgment award:** | **$1,080** |
| **Status:** | **Unsatisfied** |
| **CASE NO.:** | SC157142 |
| **Judgment type:** | Judgment |
| **Against:** | BANK OF AMERICA CORP. and OTHERS |
| **In favor of:** | ZINO BASDAKIS AKA ZISIS BASDAKIS |
| **Where filed:** | SAN DIEGO COUNTY SMALL CLAIMS COURT/SAN DIEGO, SAN DIEGO, CA |
| | |
| **Date status attained:** | 12/03/2004 |
| **Date entered:** | 12/03/2004 |
| **Latest Info Received:** | 12/20/2004 |

| | |
|---|---|
| **Judgment award:** | **$1,049** |
| **Status:** | **Unsatisfied** |
| **DOCKET NO.:** | DC-002953-2001 |
| **Judgment type:** | Judgment |
| **Against:** | BANK OF AMERICA |
| **In favor of:** | WILLIAM BORRE |
| **Where filed:** | MIDDLESEX COUNTY SPECIAL CIVIL/SMALL CLAIMS COURT, EDISON, NJ |
| | |
| **Date status attained:** | 08/06/2001 |
| **Date entered:** | 08/06/2001 |
| **Latest Info Received:** | 04/06/2006 |

SUITS

| | |
|---|---|
| **Suit amount:** | **$400** |
| **Status:** | **Pending** |
| **CASE NO.:** | 820720 |
| **Plaintiff:** | JOHN L. ANDERSON |
| **Defendant:** | BANK OF AMERICA CORP. |
| **Cause:** | UNFAIR BUSINESS PRACTICE |
| **Where filed:** | SAN FANCISCO COUNTY SMALL CLAIMS COURT, SAN FRANCISCO, CA |
| | |
| **Date status attained:** | 03/21/2007 |
| **Date filed:** | 03/21/2007 |
| **Latest Info Received:** | 03/30/2007 |

| | |
|---|---|
| **Suit amount:** | **$7,500** |
| **Status:** | **Pending** |
| **CASE NO.:** | 07M03139 |
| **Plaintiff:** | STRACHAN, IVOR |
| **Defendant:** | BANK OF AMERICA CORPORATION |
| **Where filed:** | LOS ANGELES COUNTY SMALL CLAIMS COURT/LOS ANGELES, LOS ANGELES, CA |
| | |
| **Date status attained:** | 03/07/2007 |
| **Date filed:** | 03/07/2007 |
| **Latest Info Received:** | 04/12/2007 |

| | |
|---|---|
| **Suit amount:** | **$2,500** |
| **Status:** | **Pending** |
| **CASE NO.:** | 07S00230 |
| **Plaintiff:** | LUNDQUIST, MARK |
| **Defendant:** | BANK OF AMERICA CORP. |
| **Where filed:** | LOS ANGELES COUNTY SMALL CLAIMS COURT/WHITTIER, WHITTIER, CA |

D&B Business Information Report: BANK OF AMERICA CORPORATION      Page 14 of 17

| | |
|---|---|
| **Date status attained:** | 02/15/2007 |
| **Date filed:** | 02/15/2007 |
| **Latest Info Received:** | 04/02/2007 |

| | |
|---|---|
| **Suit amount:** | **$685** |
| **Status:** | **Pending** |
| **CASE NO.:** | 820250 |
| **Plaintiff:** | KEVIN COPPS |
| **Defendant:** | BANK OF AMERICA CORP. |
| **Cause:** | UNFAIR BUSINESS PRACTICE |
| **Where filed:** | SAN FANCISCO COUNTY SMALL CLAIMS COURT, SAN FRANCISCO, CA |

| | |
|---|---|
| **Date status attained:** | 02/06/2007 |
| **Date filed:** | 02/06/2007 |
| **Latest Info Received:** | 03/02/2007 |

| | |
|---|---|
| **Status:** | **Pending** |
| **DOCKET NO.:** | 278469 |
| **Plaintiff:** | DAVID SHOBER |
| **Defendant:** | BANK OF AMERICA |
| **Where filed:** | MONTGOMERY COUNTY CIRCUIT COURT, ROCKVILLE, MD |

| | |
|---|---|
| **Date status attained:** | 01/16/2007 |
| **Date filed:** | 01/16/2007 |
| **Latest Info Received:** | 03/20/2007 |

| | |
|---|---|
| **Suit amount:** | **$1,500** |
| **Status:** | **Dismissed** |
| **CASE NO.:** | 06V08458 |
| **Plaintiff:** | GULLISH, MALCOLM |
| **Defendant:** | BANK OF AMERICA CORPORATION |
| **Where filed:** | LOS ANGELES COUNTY SMALL CLAIMS COURT/VAN NUYS BRANCH, VAN NUYS, CA |

| | |
|---|---|
| **Date status attained:** | 03/26/2007 |
| **Date filed:** | 12/21/2006 |
| **Latest Info Received:** | 04/12/2007 |

| | |
|---|---|
| **Suit amount:** | **$3,293** |
| **Status:** | **Pending** |
| **CASE NO.:** | 00000170 |
| **Plaintiff:** | BRIAN BANCALARI |
| **Defendant:** | BANK OF AMERICA CORPORATION |
| **Where filed:** | SAN DIEGO COUNTY SMALL CLAIMS COURT/VISTA, VISTA, CA |

| | |
|---|---|
| **Date status attained:** | 12/11/2006 |
| **Date filed:** | 12/11/2006 |
| **Latest Info Received:** | 12/26/2006 |

| | |
|---|---|
| **Suit amount:** | **$7,500** |
| **Status:** | **Pending** |
| **CASE NO.:** | 819597 |
| **Plaintiff:** | MATTHEW L. SHINNICK |
| **Defendant:** | BANK OF AMERICA |
| **Cause:** | CIVIL RIGHTS |
| **Where filed:** | SAN FANCISCO COUNTY SMALL CLAIMS COURT, SAN FRANCISCO, CA |

| | |
|---|---|
| **Date status attained:** | 12/08/2006 |
| **Date filed:** | 12/08/2006 |
| **Latest Info Received:** | 12/29/2006 |

| | |
|---|---|
| **Status:** | **Pending** |
| **CASE NO.:** | 06118530 |
| **Plaintiff:** | SONDRA J. HATCH |
| **Defendant:** | BANK OF AMERICA |
| **Cause:** | (TYPE NOT SHOWN) |

D&B Business Information Report: BANK OF AMERICA CORPORATION          Page 15 of 17

| | |
|---|---|
| Where filed: | ANNE ARUNDEL COUNTY CIRCUIT COURT, ANNAPOLIS, MD |
| Date status attained: | 11/27/2006 |
| Date filed: | 11/27/2006 |
| Latest Info Received: | 12/12/2006 |

| | |
|---|---|
| Suit amount: | $184 |
| Status: | Pending |
| CASE NO.: | RSC10673 |
| Plaintiff: | ROBERT D. HAWCK |
| Defendant: | BANK OF AMERICA CORP. AND OTHERS |
| Where filed: | PLACER COUNTY SMALL CLAIMS, AUBURN, CA |
| Date status attained: | 10/13/2006 |
| Date filed: | 10/13/2006 |
| Latest Info Received: | 11/10/2006 |

If it is indicated that there are defendants other than the report subject, the lawsuit may be an action to clear title to property and does not necessarily imply a claim for money against the subject.

LIENS

A lienholder can file the same lien in more than one filing location. The appearance of multiple liens filed by the same lienholder against a debtor may be indicative of such an occurrence.

| | |
|---|---|
| Amount: | $1,059 |
| Status: | Open |
| CASE NO.: | 02-052432 |
| Type: | County Tax |
| Filed by: | TAX COLLECTOR |
| Against: | BANK OF AMERICA, CYPRESS, CA |
| Where filed: | VENTURA COUNTY RECORDER, VENTURA, CA |
| Date status attained: | 03/06/2002 |
| Date filed: | 03/06/2002 |
| Latest Info Received: | 05/05/2002 |

UCC FILINGS

| | |
|---|---|
| Collateral: | Negotiable Instruments including proceeds and products |
| Type: | Original |
| Sec. party: | BANC OF AMERICA FUNDING CORPORATION, CHARLOTTE, NC |
| Debtor: | BANK OF AMERICA, NATIONAL ASSOCIATION |
| Filing number: | 2006162558 |
| Filed with: | FINANCE & REVENUE DEPT, WASHINGTON, DC |
| Date filed: | 12/01/2006 |
| Latest Info Received: | 02/12/2007 |

| | |
|---|---|
| Collateral: | Negotiable Instruments including proceeds and products |
| Type: | Original |
| Sec. party: | MORTGAGE EQUITY CONVERSION ASSET CORPORATION, CHARLOTTE, NC |
| Debtor: | BANK OF AMERICA, NATIONAL ASSOCIATION |
| Filing number: | 2006148443 |
| Filed with: | FINANCE & REVENUE DEPT, WASHINGTON, DC |
| Date filed: | 11/01/2006 |
| Latest Info Received: | 01/02/2007 |

| | |
|---|---|
| Collateral: | Negotiable Instruments including proceeds and products |
| Type: | Original |
| Sec. party: | BANC OF AMERICA FUNDING CORPORATION, CHARLOTTE, NC |
| Debtor: | BANK OF AMERICA, NATIONAL ASSOCIATION |
| Filing number: | 20060104595C |
| Filed with: | SECRETARY OF STATE/UCC DIVISION, RALEIGH, NC |

D&B Business Information Report: BANK OF AMERICA CORPORATION            Page 16 of 17

| | |
|---|---|
| **Date filed:** | 10/30/2006 |
| **Latest Info Received:** | 11/14/2006 |

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products - Account(s) including proceeds and products - Assets including proceeds and products - General intangibles(s) including proceeds and products |
| **Type:** | Original |
| **Sec. party:** | BANC OF AMERICA LARGE LOAN, INC, CHARLOTTE, NC LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR BANC OF AMERICA LARGE LOAN, INC., COMMERCIAL MORTGAGE PASS-THROUGH CER, CHICAGO, IL |
| **Debtor:** | BANK OF AMERICA, NATIONAL ASSOCIATION |
| **Filing number:** | 20060104089A |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, RALEIGH, NC |

| | |
|---|---|
| **Date filed:** | 10/27/2006 |
| **Latest Info Received:** | 11/14/2006 |

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products - Account(s) including proceeds and products - General intangibles(s) including proceeds and products |
| **Type:** | Original |
| **Sec. party:** | BANC OF AMERICA COMMERCIAL MORTGAGE INC., CHARLOTTE, NC |
| **Assignee:** | LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR BANC OF AMERICA COMMERCIAL MORTGAGE INC., COMMERCIAL MORTGAGE PASS-THR, CHICAGO, IL |
| **Debtor:** | BANK OF AMERICA, NATIONAL ASSOCIATION |
| **Filing number:** | 2006139977 |
| **Filed with:** | FINANCE & REVENUE DEPT, WASHINGTON, DC |

| | |
|---|---|
| **Date filed:** | 10/13/2006 |
| **Latest Info Received:** | 12/12/2006 |

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products - Account(s) including proceeds and products - General intangibles(s) including proceeds and products |
| **Type:** | Original |
| **Sec. party:** | BANC OF AMERICA COMMERCIAL MORTGAGE INC, CHARLOTTE, NC LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR BANC OF AMERICA COMMERCIAL MORTGAGE INC., COMMERCIAL MORTGAGE PASS-THR, CHICAGO, IL |
| **Debtor:** | BANK OF AMERICA, NATIONAL ASSOCIATION |
| **Filing number:** | 20060099602F |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, RALEIGH, NC |

| | |
|---|---|
| **Date filed:** | 10/13/2006 |
| **Latest Info Received:** | 11/14/2006 |

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products - Contract rights including proceeds and products |
| **Type:** | Original |
| **Sec. party:** | MORTGAGE EQUITY CONVERSION ASSET CORPORATION, CHARLOTTE, NC |
| **Debtor:** | BANK OF AMERICA, NATIONAL ASSOCIATION |
| **Filing number:** | 2006131051 |
| **Filed with:** | FINANCE & REVENUE DEPT, WASHINGTON, DC |

| | |
|---|---|
| **Date filed:** | 09/26/2006 |
| **Latest Info Received:** | 11/29/2006 |

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products |
| **Type:** | Original |
| **Sec. party:** | MORTGAGE EQUITY CONVERSION ASSET CORPORATION, CHARLOTTE, NC |
| **Debtor:** | BANK OF AMERICA, NATIONAL ASSOCIATION |
| **Filing number:** | 2006130803 |
| **Filed with:** | FINANCE & REVENUE DEPT, WASHINGTON, DC |

| | |
|---|---|
| **Date filed:** | 09/26/2006 |
| **Latest Info Received:** | 11/29/2006 |

D&B Business Information Report: BANK OF AMERICA CORPORATION                Page 17 of 17

---

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products - Contract rights including proceeds and products |
| **Type:** | Original |
| **Sec. party:** | MORTGAGE EQUITY CONVERSION ASSET CORPORATION, CHARLOTTE, NC |
| **Debtor:** | BANK OF AMERICA, NATIONAL ASSOCIATION |
| **Filing number:** | 20060092911A |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, RALEIGH, NC |
| **Date filed:** | 09/26/2006 |
| **Latest Info Received:** | 10/23/2006 |

---

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products - Account(s) including proceeds and products - General intangibles(s) including proceeds and products |
| **Type:** | Original |
| **Sec. party:** | BANK OF AMERICA COMMERCIAL MORTGAGE INC., CHARLOTTE, NC |
| **Assignee:** | WELLS FARGO BANK, N.A. AS TRUSTEE FOR BANC OF AMERICA COMMERCIAL MORTGAGE INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFI, COLUMBIA, MD |
| **Debtor:** | BANK OF AMERICA, NATIONAL ASSOCIATION |
| **Filing number:** | 2006120750 |
| **Filed with:** | FINANCE & REVENUE DEPT, WASHINGTON, DC |
| **Date filed:** | 09/06/2006 |
| **Latest Info Received:** | 10/23/2006 |

There are additional UCC's in D&B's file on this company available by contacting 1-800-234-3867.

There are additional suits, liens, or judgments in D&B's file on this company available by contacting 1-800-234-3867.

The public record items contained in this report may have been paid, terminated, vacated or released prior to the date this report was printed.

---

Copyright 2007 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber 263737613L

Exhibit 13

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

Case 1:07-cv-00159-GMS    Document 17-14    Filed 05/10/2007    Page 2 of 19

Case 2:07-cv-00042-JES-SPC    Document 36-4    Filed 04/20/2007    Page 2 of 19
D&B Business Information Report: BANK OF AMERICA NA                               Page 1 of 18

# D&B Business Information Report

Copyright 2007 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber 263737613L

ATTN: **Ashley**                                    Report Printed: APR 13 2007
                                                     **In Date**

BUSINESS SUMMARY

**BANK OF AMERICA NA**
   (SUBSIDIARY OF BANK OF AMERICA CORPORATION, CHARLOTTE, NC)
   BANK OF AMERICA
**101 S Tryon St**
**Charlotte, NC 28202**

This is a **headquarters (subsidiary)** location.          **D-U-N-S Number:**        00-691-1747
Branch(es) or division(s) exist.

| | | |
|---|---|---|
| **Web site:** | www.bofa.com | **D&B Rating:** | **ER1** |
| **Telephone:** | 704 386-5000 | **Number of employees:** | ER1 is **1000 or more** employees. |
| **Chief executive:** | KEN D LEWIS, CHB-PRES | **D&B PAYDEX®:** | |
| **Year started:** | 1904 | | |

**12-Month D&B PAYDEX: 73**
When weighted by dollar amount, payments to
suppliers average 11 days beyond terms.

**Employs:**                164,318 (8,000 here)

**Financial statement date:** DEC 31 2006             Based on trade collected over last 12 months.

**Net worth F:**            $109,526,404,000
**Gross revenue F:**        $79,634,983,000
**History:**                CLEAR
**Financing:**              SECURED
**SIC:**                    6021

**Line of business:**       National commercial bank

SUMMARY ANALYSIS

**D&B Rating:**             **ER1**
   **Number of employees:**  ER1 indicates **1000 or more** employees.

Certain lines of business, primarily banks, insurance companies and government entities, do not lend themselves to
classification under the D&B Rating system. Instead, we assign these types of businesses an Employee Range symbol
based on the number of people employed. No other significance should be attached to this symbol. The ERN should
not be interpreted negatively. It simply means we do not have information indicating how many people are employed
at this firm. For more information, see the D&B Rating Key.

Below is an overview of the company's rating history since 01/01/91:

**D&B Rating**      **Date Applied**
    ER1             01/01/91

The Summary Analysis section reflects information in D&B's file as of April 9, 2007.

**EXHIBIT**

tabbies
_____

CUSTOMER SERVICE

Case 1:07-cv-00159-GMS    Document 17-14    Filed 05/10/2007    Page 3 of 19
Case 2:07-cv-00042-JES-SPC    Document 36-4    Filed 04/20/2007    Page 3 of 19
D&B Business Information Report: BANK OF AMERICA NA                                Page 2 of 18

If you have questions about this report, please call our Customer Resource Center at 1.800.234.3867 from anywhere within the U.S. If you are outside the U.S. contact your local D&B office.

*** Additional Decision Support Available ***

Additional D&B products, monitoring services and specialized investigations are available to help you evaluate this company or its industry. Call Dun & Bradstreet's Customer Resource Center at 1.800.234.3867 from anywhere within the U.S. or visit our website at www.dnb.com.

HISTORY

The following information was reported **03/13/2007**:

**Officer(s):**     KEN D LEWIS, CHB-CEO-PRES

**DIRECTOR(S):**     THE OFFICER(S)

Corporate file #00199760.

Business started 1904 by A P Giannini. 100% of capital stock is owned by parent company.

**Background:**
Established in 1904 as The Bank of Italy by A P Giannini. Present corporate structure organized in 1930 as a consolidation of Bank of America of California and Bank of Italy NT & SA. Subsequently a number of small banks were merged, some of which had been affiliated. In 1968 a bank holding company was formed and subject became a subsidiary of BankAmerica Corporation.

.. ........RECENT EVENTS........ ..

On September12, 2006, Bank of America Corp, Charlotte, NC announced that the company has acquired Healthlogic Systems Corporation, Norcross, GA. Healthlogic Systems Corporation will continue to operate in Norcross as a subsidiary of Bank Of America NA, Charlotte, NC. Bank Of America NA is a direct subsidiary of Bank Of America Corp. The employees and management were retained through this transaction.

In June 2005, Fleet National Bank, Boston, MA, was merged with and into Bank of America NA, Charlotte, NC, with Bank of America being the surviving entity. All locations of Fleet National Bank will operate as branches of Bank of America. The employees were retained. Terms of the deal were not disclosed.

On April 1, 2004, the Corporation completed its merger with FleetBoston Financial Corporation.

.. ........OFFICERS........ ..

KENNETH D LEWIS born 1947. CEO, CHB and President of Bank of America Corporation. Prior to current position, Lewis was president and chief operating officer. Joined NCNB (predecessor to NationsBank and Bank of America) in 1969 as a credit analyst in Charlotte and served as a corporate banking officer and Western Area director in the U.S. Department before being named manager of NCNB's International Banking Corporation in New York in 1977. Lewis was named senior vice president and manager of the bank's U.S. Department in 1979. Named Middle Market Group executive in 1983. He was named president of the company's Florida bank in 1986, and from 1988 to 1990, he served as president of the company's Texas bank. Lewis was president of Consumer and Commercial Banking before being named president and chief operating officer in 1999 and was named chairman, chief executive officer and president of Bank of America in 2001. Bachelor's degree in finance from Georgia State University. He also is a graduate of the Executive Program at Stanford University.

CORPORATE FAMILY

Click below to buy a Business Information Report on that family member.
For an expanded, more current corporate family view, use D&B's Global Family Linkage product.

**Parent:**
Bank Of America Corporation                Charlotte, NC                          DUNS # 05-516-9452

D&B Business Information Report: BANK OF AMERICA NA                                    Page 3 of 18

---

**Subsidiaries (US):**

| | | |
|---|---|---|
| Apl, Inc | Dallas, TX | DUNS # 86-948-2430 |
| Arbor National Holdings Inc | Uniondale, NY | DUNS # 79-520-8602 |
| Austin National Realty Corporation | Dallas, TX | DUNS # 86-948-2497 |
| Ba Atm Inc. | San Francisco, CA | DUNS # 79-885-5011 |
| Ba Interactive Services Holding Company Inc | San Francisco, CA | DUNS # 92-774-0415 |
| Bamerilease, Inc | San Francisco, CA | DUNS # 84-744-3595 |
| Banc of America Investments Services Inc | Charlotte, NC | DUNS # 18-700-3215 |
| Banc of America Leasing & Capital, LLC | San Francisco, CA | DUNS # 08-722-8615 |
| Bank America Illinois Community Development Corp (del) | Chicago, IL | DUNS # 55-745-7371 |
| Bank of America (hawaii) Insurance Agency, Inc | Honolulu, HI | DUNS # 92-757-3048 |
| Bank of America Commercial Finance | Wilton, CT | DUNS # 10-906-6894 |
| Bankamerica Ventures | Foster City, CA | DUNS # 02-074-5725 |
| Bofa Capital Management Inc | Los Angeles, CA | DUNS # 92-748-6977 |
| Capitol Information Networks, Inc | Dallas, TX | DUNS # 86-948-2604 |
| Continental Illinois Venture Corporation | Chicago, IL | DUNS # 07-441-9821 |
| Csi Holdings, Inc. | Wichita, KS | DUNS # 80-939-4422 |
| Designated Appraisers, Inc | Uniondale, NY | DUNS # 92-641-5456 |
| Devon A Corp | Charlotte, NC | DUNS # 86-932-6462 |
| Dpc, Inc | Dallas, TX | DUNS # 87-305-2385 |
| Elwin Company Inc | Charlotte, NC | DUNS # 86-932-6488 |
| Framework, Inc | Tarrytown, NY | DUNS # 78-184-8684 |
| Hatteras Finance Ltd | Charlotte, NC | DUNS # 86-948-2166 |
| Healthlogic Systems Corporation | Norcross, GA | DUNS # 79-927-1002 |
| Lauren Advertising, Inc | Uniondale, NY | DUNS # 92-641-5811 |
| Logan Circle A Corp | Charlotte, NC | DUNS # 86-932-7213 |

This list is limited to the first 25 subsidiaries.
For the complete list, use D&B's Global Family Linkage product.

---

**Subsidiaries (International):**

| | | |
|---|---|---|
| Bank America Nominees (Hong Kong) Ltd | ADMIRALTY, HONG KONG | DUNS # 66-214-5044 |
| BANK OF AMERICA (JERSEY) LTD | Jersey, UK (ENGLAND, SCOTLAND, WALES, N.IRELAND) | DUNS # 21-738-4486 |
| BANK OF AMERICA N.A. - MANILA BRANCH | MAKATI, PHILIPPINES | DUNS # 71-881-7604 |
| BANK OF AMERICA NATIONAL ASSOCIATION | ATHENS, GREECE | DUNS # 72-838-7718 |
| BankBoston Corredora de Seguros Ltd | SANTIAGO, CHILE | DUNS # 98-086-8967 |
| Boston Administradora Fondos Mutuos S.A. | SANTIAGO, CHILE | DUNS # 98-086-9023 |
| Boston Securitizadora S.A. | SANTIAGO, CHILE | DUNS # 98-086-9015 |
| RUBY AIRCRAFT LEASING & TRADING LTD | London, UK (ENGLAND, SCOTLAND, WALES, N.IRELAND) | DUNS # 50-019-7397 |
| SECURITY PACIFIC AUSTRALIAN ASSETS LIMITED (IN VOLUNTARY LIQUIDATION) | SYDNEY, AUSTRALIA | DUNS # 75-249-1407 |

---

**Branches (US):**

| | | |
|---|---|---|
| Bank of America NA | Birmingham, AL | DUNS # 03-045-2200 |
| Bank of America NA | Homer, AK | DUNS # 03-848-9337 |
| Bank of America NA | Juneau, AK | DUNS # 01-571-0007 |
| Bank of America NA | Kenai, AK | DUNS # 00-530-4626 |
| Bank of America NA | Ketchikan, AK | DUNS # 00-756-1038 |
| Bank of America NA | Unalaska, AK | DUNS # 96-928-3373 |
| Bank of America NA | Apache Junction, AZ | DUNS # 14-997-8637 |
| Bank of America NA | Avondale, AZ | DUNS # 13-613-0775 |

D&B Business Information Report: BANK OF AMERICA NA                          Page 4 of 18

| Bank of America NA | Benson, AZ | DUNS # 14-908-7751 |
| Bank of America NA | Bisbee, AZ | DUNS # 03-633-1189 |
| Bank of America NA | Buckeye, AZ | DUNS # 19-651-3092 |
| Bank of America NA | Bullhead City, AZ | DUNS # 14-997-7696 |
| Bank of America NA | Casa Grande, AZ | DUNS # 61-218-9068 |
| Bank of America NA | Cave Creek, AZ | DUNS # 78-508-5452 |
| Bank of America NA | Chandler, AZ | DUNS # 15-241-4801 |
| Bank of America NA | Chandler, AZ | DUNS # 00-157-4776 |
| Bank of America NA | Chandler, AZ | DUNS # 79-617-2138 |
| Bank of America NA | Chandler, AZ | DUNS # 15-255-0802 |
| Bank of America NA | Chandler, AZ | DUNS # 61-692-3558 |
| Bank of America NA | Cottonwood, AZ | DUNS # 00-749-7340 |
| Bank of America NA | Douglas, AZ | DUNS # 03-633-1304 |
| Bank of America NA | Flagstaff, AZ | DUNS # 03-633-1346 |
| Bank of America NA | Flagstaff, AZ | DUNS # 93-241-5029 |
| Bank of America NA | Fort Mohave, AZ | DUNS # 78-508-3358 |
| Bank of America NA | Gilbert, AZ | DUNS # 78-829-8813 |

This list is limited to the first 25 branches.
For the complete list, use D&B's Global Family Linkage product.

**Branches (International):**

| Bank of America Canada Leasing Corporation | Toronto, CANADA | DUNS # 24-828-3103 |
| Bank of America Canada N A Canadian Branch | Toronto, CANADA | DUNS # 20-925-2378 |
| BANK OF AMERICA N.A. | Ciudad de Buenos Aires, ARGENTINA | DUNS # 97-105-2345 |
| BANK OF AMERICA NA | CHIYODA-KU, JAPAN | DUNS # 70-137-0587 |
| Bank of America National Association | Calgary, CANADA | DUNS # 24-298-3914 |
| Bank of America National Association | Calgary, CANADA | DUNS # 20-698-4804 |
| Bank of America National Association | Vancouver, CANADA | DUNS # 20-698-4762 |
| Bank Of America National Association | Toronto, CANADA | DUNS # 25-365-8058 |
| Bank of America National Association | Montréal, CANADA | DUNS # 24-490-2953 |
| BANK OF AMERICA NATIONAL ASSOCIATION | Dublin, IRELAND | DUNS # 98-842-9866 |
| Bank of America National Association Frankfurt Branch/ Filiale Frankfurt am Main | Frankfurt am Main, GERMANY | DUNS # 32-051-8574 |
| BANK OF AMERICA NATIONAL ASSOCIATIONS | Milano, ITALY | DUNS # 51-406-3502 |
| Bank of América National Trust & Saving Association | CIUDAD DE MEXICO, MEXICO | DUNS # 81-230-7197 |
| Bank of America, National Association | QUARRY BAY, HONG KONG | DUNS # 68-606-5657 |
| Bank of America, National Association | Amsterdam, NETHERLANDS | DUNS # 40-672-2744 |
| BANK OF AMERICA, NATIONAL ASSOCIATION | London, UK (ENGLAND, SCOTLAND, WALES, N.IRELAND) | DUNS # 21-002-0947 |
| Bank of America, National Association BUITENL.VEN | Antwerpen, BELGIUM | DUNS # 28-290-6304 |
| Bank of America, National Association, Charlotte, succursale de Genève | GENÈVE, SWITZERLAND | DUNS # 48-022-6369 |
| BANK OF AMERICA, NATIONAL ASSOCIATION, TAIPEI BRANCH | Taipei City, TAIWAN | DUNS # 65-621-2297 |

**Affiliates (US):** *(Affiliated companies share the same parent company as this business.)*

| A Ashburn Corp | Charlotte, NC | DUNS # 86-959-1875 |
| A Wickliffe Corporation | Charlotte, NC | DUNS # 86-947-6168 |
| Ames Asb Plaza Inc | Charlotte, NC | DUNS # 86-959-1784 |
| Appold Equity Ventures Limited | San Francisco, CA | DUNS # 80-077-1065 |
| Appold Holdings Limited | San Francisco, CA | DUNS # 84-744-4569 |

D&B Business Information Report: BANK OF AMERICA NA                                    Page 5 of 18

| | | |
|---|---|---|
| Appold Leasing, Inc. | San Francisco, CA | DUNS # 80-077-1040 |
| Asegurar Seguros De Retiro | Boston, MA | DUNS # 83-326-7503 |
| Ashmere Development Corp | Boston, MA | DUNS # 83-326-7529 |
| Aswan Village Associates LLC | Opa Locka, FL | DUNS # 06-484-5113 |
| Ba Insurance Holding Company | San Francisco, CA | DUNS # 80-077-3517 |
| Bal Global Finance, LLC | Chicago, IL | DUNS # 07-426-1389 |
| Banc of America Capital Investors Sbic, L.P. | Charlotte, NC | DUNS # 79-130-5662 |
| Banc of America Finance Services, Inc. | Chicago, IL | DUNS # 10-828-2641 |
| Banc of America Insurance Services | Cranford, NJ | DUNS # 07-754-9970 |
| Banc of America Mortgage Capital Corp | Charlotte, NC | DUNS # 86-816-8246 |
| Banc of America Securities LLC | San Francisco, CA | DUNS # 15-848-4795 |
| Banc of America Securitization Holding Corporation | Dallas, TX | DUNS # 79-100-2269 |
| Banc of America Vendor Finance | San Diego, CA | DUNS # 14-855-2086 |
| Bancboston Capital Inc | Boston, MA | DUNS # 36-186-5306 |
| Bancboston Investments Inc | Boston, MA | DUNS # 36-186-7153 |
| Bancboston Leasing Services Inc | Boston, MA | DUNS # 80-590-0701 |
| Bancboston Real Estate Capital Corporation | Boston, MA | DUNS # 03-081-3067 |
| Bancboston Ventures Inc | Boston, MA | DUNS # 04-942-5440 |
| Bank of America America Insurance Group, Inc | San Diego, CA | DUNS # 14-739-9612 |
| Bank of America Capital Management Inc | Charlotte, NC | DUNS # 01-475-9448 |

This list is limited to the first 25 affiliates.
For the complete list, use D&B's Global Family Linkage product.

---

**Affiliates (International):***(Affiliated companies share the same parent company as this business.)*

| | | |
|---|---|---|
| BAL GLOBAL FINANCE (UK) LTD | London, UK (ENGLAND, SCOTLAND, WALES, N.IRELAND) | DUNS # 22-596-5540 |
| Bal Global Finance Canada Corporation | Toronto, CANADA | DUNS # 25-096-2792 |
| BANC OF AMERICA SECURITIES (INDIA) PRIVATE LIMITED | MUMBAI, INDIA | DUNS # 91-862-9283 |
| Bank of America NT&SA Seoul Branch | SEOUL, KOREA, REPUBLIC OF | DUNS # 68-952-5293 |
| BANK OF AMERICA SECURITIES JAPAN INC. | CHIYODA-KU, JAPAN | DUNS # 69-169-1661 |
| Bank of America Seoul Branch | SEOUL, KOREA, REPUBLIC OF | DUNS # 68-896-7322 |
| Bank of America Trust and Banking Corporation (Cayman) Limited | GEORGE TOWN, CAYMAN ISLANDS | DUNS # 86-399-6302 |
| BANK OF AMERICA, NATIONAL ASSOCIATION | SYDNEY, AUSTRALIA | DUNS # 75-489-1927 |
| CIRCULOS OCA S.A. | MONTEVIDEO, URUGUAY | DUNS # 96-600-7929 |
| Grupo Financiero Bank of América, S.A. de C.V. | CIUDAD DE MEXICO, MEXICO | DUNS # 81-287-1762 |
| Nation Bank of Texas National Asociation | CIUDAD DE MEXICO, MEXICO | DUNS # 81-227-1773 |

OPERATIONS

03/13/2007

**Description:** Subsidiary of Bank Of America Corporation, Charlotte, NC started 1884 which operates as holding company. Parent company owns 100% of capital stock. Parent company has several other subsidiary (ies).

As noted, this company is a subsidiary of Bank Of America Corporation, DUNS number 055169452, and reference is made to that report for background information on the parent company and its management.

Operates as a national commercial bank (100%).

Terms: Revenues are derived from interest on loans, investments and service charges. Sells to

D&B Business Information Report: BANK OF AMERICA NA                              Page 6 of 18

businesses and general public. Territory : Worldwide.

Nonseasonal.

**Employees:**    164,318 which includes officer(s). 8,000 employed here. The above figures represents full time equivalent employees.

**Facilities:**    Owns 1,000,000 sq. ft. in a 52 story concrete block building. Premises located in the Bank of America Center.

**Location:**    Central business section on main street.

**Branches:**    This business has multiple branches, detailed brnch information is available in D&B's linkage or family tree products.

**Subsidiaries:**    The company had numerous subsidiaries detailed information is available in D&B's linkage or family tree products.

### SIC & NAICS

**SIC:**
Based on information in our file, D&B has assigned this company an extended 8-digit SIC. D&B's use of 8-digit SICs enables us to be more specific to a company's operations than if we use the standard 4-digit code.

The 4-digit SIC numbers link to the description on the Occupational Safety & Health Administration (OSHA) Web site. Links open in a new browser window.

60210000        National commercial banks

**NAICS:**
522110   Commercial Banking

### D&B PAYDEX

The D&B PAYDEX is a unique, dollar weighted indicator of payment performance based on up to 873 payment experiences as reported to D&B by trade references.

**3-Month D&B PAYDEX: 71**
When weighted by dollar amount, payments to suppliers average 14 days beyond terms.

Based on trade collected over last 3 months.

**12-Month D&B PAYDEX: 73**
When weighted by dollar amount, payments to suppliers average 11 days beyond terms.

Based on trade collected over last 12 months.

When dollar amounts are not considered, then approximately 74% of the company's payments are within terms.

### PAYMENT SUMMARY

The Payment Summary section reflects payment information in D&B's file as of the date of this report.

Below is an overview of the company's dollar-weighted payments, segmented by its suppliers' primary industries:

| | Total Rcv'd (#) | Total Dollar Amts ($) | Largest High Credit ($) | Within Terms (%) | Days Slow <31 | 31-60 | 61-90 | 90> (%) |
|---|---|---|---|---|---|---|---|---|
| **Top industries:** | | | | | | | | |
| Telephone communictns | 67 | 3,003,800 | 2,000,000 | 99 | 1 | - | - | - |
| Public finance | 56 | 871,450 | 200,000 | 100 | - | - | - | - |

D&B Business Information Report: BANK OF AMERICA NA

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Whol office equipment | 20 | 1,300,000 | 900,000 | 55 | 39 | - | - | 6 |
| Mfg computers | 10 | 7,225,000 | 2,000,000 | 71 | 15 | 14 | - | - |
| Mfg photograph equip | 10 | 1,629,500 | 600,000 | 94 | - | 3 | - | 3 |
| Mfg misc office eqpt | 8 | 1,554,550 | 800,000 | - | 50 | - | 26 | 24 |
| Mfg computer terminal | 5 | 30,900,000 | 15,000,000 | 87 | 10 | 3 | - | - |
| Mfg manifold forms | 5 | 805,000 | 300,000 | 67 | 31 | 2 | - | - |
| Gravure printing | 3 | 2,850,000 | 2,000,000 | 61 | 35 | - | - | 4 |
| Pulp mill | 2 | 3,600,000 | 3,000,000 | 17 | 83 | - | - | - |
| OTHER INDUSTRIES | 657 | 10,178,450 | 800,000 | 81 | 11 | 4 | 3 | 1 |

**Other payment categories:**

| | | | |
|---|---|---|---|
| Cash experiences | 12 | 12,500 | 10,000 |
| Payment record unknown | 14 | 126,400 | 75,000 |
| Unfavorable comments | 0 | 0 | 0 |

**Placed for collections:**

| | | |
|---|---|---|
| With D&B | 0 | 0 |
| Other | 4 | N/A |
| Total in D&B's file | 873 | 64,056,650 | 15,000,000 |

The highest **Now Owes** on file is $15,000,000

The highest **Past Due** on file is $2,000,000

Dun & Bradstreet has 873 payment experiences in its file for this company. For your convenience, we have displayed 80 representative experiences in the PAYMENTS section.

PAYMENT DETAILS

**Detailed Payment History**

| Date Reported (mm/yy) | Paying Record | High Credit ($) | Now Owes ($) | Past Due ($) | Selling Terms | Last Sale Within (months) |
|---|---|---|---|---|---|---|
| 04/07 | Ppt | 7,500 | 50 | 0 | | 1 mo |
| | Ppt | 50 | 0 | 0 | | 1 mo |
| 03/07 | Ppt | 600,000 | 0 | 0 | N30 | 6-12 mos |
| | Ppt | 300,000 | 0 | 0 | | 6-12 mos |
| | Ppt | 250,000 | 0 | 0 | | 4-5 mos |
| | Ppt | 80,000 | 0 | 0 | N30 | 6-12 mos |
| | Ppt | 70,000 | 20,000 | 0 | N30 | 1 mo |
| | Ppt | 35,000 | 10,000 | 0 | | 1 mo |
| | Ppt | 35,000 | 7,500 | 0 | | 1 mo |
| | Ppt | 20,000 | 0 | 0 | N30 | 6-12 mos |
| | Ppt | 20,000 | 2,500 | 0 | N30 | 1 mo |
| | Ppt | 10,000 | 5,000 | 0 | | 1 mo |
| | Ppt | 10,000 | 0 | 0 | N30 | 2-3 mos |
| | Ppt | 10,000 | 5,000 | 0 | Lease Agreemnt | 1 mo |
| | Ppt | 10,000 | 250 | 0 | | 1 mo |
| | Ppt | 7,500 | 0 | 0 | | 2-3 mos |
| | Ppt | 5,000 | 2,500 | 0 | | 1 mo |
| | Ppt | 5,000 | 2,500 | 0 | | 1 mo |

D&B Business Information Report: BANK OF AMERICA NA

| | | | | | |
|---|---|---|---|---|---|
| Ppt | 2,500 | 1,000 | 0 | | 1 mo |
| Ppt | 2,500 | 2,500 | 0 | | 1 mo |
| Ppt | 2,500 | 1,000 | 0 | | 1 mo |
| Ppt | 2,500 | 500 | 0 | | 1 mo |
| Ppt | 2,500 | 0 | 0 | | 2-3 mos |
| Ppt | 2,500 | 2,500 | 0 | | 1 mo |
| Ppt | 1,000 | 1,000 | 0 | | 1 mo |
| Ppt | 1,000 | 1,000 | 0 | | 1 mo |
| Ppt | 1,000 | 100 | 0 | | 1 mo |
| Ppt | 1,000 | 500 | 0 | | 1 mo |
| Ppt | 1,000 | 0 | 0 | N30 | 4-5 mos |
| Ppt | 1,000 | 1,000 | 0 | | 1 mo |
| Ppt | 1,000 | 0 | 0 | N30 | 4-5 mos |
| Ppt | 1,000 | 0 | 0 | | 2-3 mos |
| Ppt | 1,000 | 1,000 | 0 | | 1 mo |
| Ppt | 1,000 | 0 | 0 | | 2-3 mos |
| Ppt | 1,000 | 500 | 0 | | 1 mo |
| Ppt | 500 | 0 | 0 | 1 10 N30 | 2-3 mos |
| Ppt | 250 | 0 | 0 | | 2-3 mos |
| Ppt | 250 | 0 | 0 | N30 | 6-12 mos |
| Ppt | 250 | 0 | 0 | | 6-12 mos |
| Ppt | 250 | 0 | 0 | | 2-3 mos |
| Ppt | 250 | 0 | 0 | N30 | 2-3 mos |
| Ppt | 250 | 0 | 0 | Regular terms | 6-12 mos |
| Ppt | 250 | 0 | 0 | | 6-12 mos |
| Ppt | 100 | 100 | 0 | | 1 mo |
| Ppt | 100 | 0 | 0 | | 4-5 mos |
| Ppt | 100 | 0 | 0 | | 4-5 mos |
| Ppt | 100 | 0 | 0 | | 1 mo |
| Ppt | 50 | 0 | 0 | | 6-12 mos |
| Ppt | 50 | 0 | 0 | | 2-3 mos |
| Ppt-Slow 15 | 1,000 | 1,000 | 0 | | 1 mo |
| Ppt-Slow 15 | 100 | 0 | 0 | | 6-12 mos |
| Ppt-Slow 30 | 250,000 | 55,000 | 0 | | 1 mo |
| Ppt-Slow 30 | 30,000 | 0 | 0 | N30 | 2-3 mos |
| Ppt-Slow 30 | 5,000 | 100 | 50 | | 1 mo |
| Ppt-Slow 30 | 2,500 | 0 | 0 | | 1 mo |
| Ppt-Slow 30 | 1,000 | 0 | 0 | | 6-12 mos |
| Ppt-Slow 30 | 1,000 | 1,000 | 1,000 | N30 | 1 mo |
| Ppt-Slow 30 | 500 | 100 | 0 | | 1 mo |
| Ppt-Slow 30 | 500 | 0 | 0 | | 2-3 mos |
| Ppt-Slow 30 | 100 | 100 | 100 | | 1 mo |
| Ppt-Slow 60 | 10,000 | 5,000 | 0 | N30 | 1 mo |
| Ppt-Slow 60 | 2,500 | 250 | 0 | N30 | 1 mo |
| Ppt-Slow 90 | 1,000 | 1,000 | 750 | | 1 mo |
| Ppt-Slow 90 | 250 | 250 | 250 | N15 | 2-3 mos |
| Ppt-Slow 150 | 10,000 | 0 | | | 4-5 mos |
| Slow 30 | 10,000 | 0 | 0 | N30 | 2-3 mos |
| Slow 30 | 5,000 | 0 | 0 | | 2-3 mos |
| Slow 30 | 1,000 | 0 | 0 | | 6-12 mos |

D&B Business Information Report: BANK OF AMERICA NA                              Page 9 of 18

| | | | | | |
|---|---|---|---|---|---|
| Slow 30 | 750 | 0 | 0 | | 6-12 mos |
| Slow 30 | 250 | 0 | 0 | | 2-3 mos |
| Slow 60 | 2,500 | 0 | 0 | | 6-12 mos |
| Slow 30-60 | 1,000 | 100 | 100 | | 4-5 mos |
| Slow 60 | 250 | 250 | 250 | | 2-3 mos |
| Slow 60-90 | 7,500 | 0 | 0 | N30 | 6-12 mos |
| Slow 90 | 1,000 | 0 | 0 | N30 | 6-12 mos |
| Slow 30-90 | 1,000 | 0 | 0 | N30 | 6-12 mos |
| Slow 30-90 | 750 | 0 | 0 | N30 | 6-12 mos |
| Slow 30-120 | 1,000 | 1,000 | 1,000 | | 6-12 mos |
| Slow 30-150 | 1,000 | 1,000 | 1,000 | | 4-5 mos |
| 02/07 | (080) | | | Sales COD | 1 mo |

**Payments Detail Key:**   red = 30 or more days beyond terms
Payment experiences reflect how bills are met in relation to the terms granted. In some instances payment beyond terms can be the result of disputes over merchandise, skipped invoices etc.

Each experience shown is from a separate supplier. Updated trade experiences replace those previously reported.

FINANCE

**03/13/2007**

**Three-year statement comparative:**

| | Fiscal Consolidated Dec 31 2004 (000s omitted) | Fiscal Consolidated Dec 31 2005 (000s omitted) | Fiscal Consolidated Dec 31 2006 (000s omitted) |
|---|---|---|---|
| Total Assets | 771,618,758 | 1,082,242,862 | 1,196,123,794 |
| Total Liabilities | 717,916,566 | 979,825,732 | 1,086,597,390 |
| Net Worth | 53,702,193 | 102,417,130 | 109,526,404 |
| Interest Income | 28,093,179 | 44,922,728 | 57,447,190 |
| Non-Interest Income | 18,505,479 | 20,440,352 | 22,187,793 |
| Net Income | 10,299,233 | 15,185,409 | 15,225,166 |

**Fiscal Consolidated statement dated DEC 31 2006 (in thousands):**

| **Assets** | | **Liabilities** | |
|---|---|---|---|
| Cash | 50,723,059 | Deposits | 759,600,625 |
| Securities | 194,155,694 | Federal Funds Purchased | 143,189,577 |
| Federal Funds Sold | 90,399,539 | Demand Notes and Borrowed | 80,371,603 |
| Net Loans | 634,494,712 | | |
| Assets Held in Trading AC | 105,287,589 | | |
| Premises and Fixed Assets | 7,279,360 | Subordinated Debt | 16,496,369 |
| Real Estate | 67,606 | Other Liabilities | 86,939,216 |
| Intangibles Outstanding | 46,632,826 | COMMON STOCK | 2,878,894 |
| Other Assets | 67,083,409 | SURPLUS | 82,541,076 |
| | | RETAINED EARNINGS | 24,106,434 |
| **Total Assets** | **$1,196,123,794** | **Total** | **$1,196,123,794** |

From JAN 01 2006 to DEC 31 2006 annual sales $79,634,983,000. Operating expenses $56,589,504,000. Net income

D&B Business Information Report: BANK OF AMERICA NA                                Page 10 of 18

before taxes $23,045,479,000; Federal income tax $7,820,313,000. Net income $15,225,166,000.

Accountant: Federal Deposit Insurance Corporation.

**ACCOUNTANT'S OPINION**
The financial information has been prepared in accordance with the rules and regulations set by the Federal Deposit Insurance Corporation.

. ...... BALANCE SHEET EXPLANATIONS ...... .

The worth of this company includes intangibles.

Intangible assets consist primarily of core deposit intangibles that are amortized using an estimated range of anticipated lives of 6 to 20 years. Goodwill represents acquisition costs.

Other long term liabilities include the bank's liability on acceptances executed and outstanding, minority interest in consolidated subsidiaries, and other debt.

Increase in total assets and equity primarily related to the acquisitions of Fleet National Bank and MBNA Corporation.

. .... INCOME STATEMENT EXPLANATIONS..... .

Gross revenue in summary includes interest income and non-interest income.

Non-interest income consists of fiduciary activities, service charges on deposit accounts, trading account gains and fees, and additional noninterest income.

Other expense represents non-interest income, which consists of salaries and employee benefits, premises and equipment expenses, and additional noninterest expenses.

**RESULTS OF OPERATIONS**
Interest income for 2006 was $57,447.2 million up $12,524.5 million or 28% compared to $44,922.7 million for 2005. Non-interest income for 2006 was $22,187.8 million up $2,791.9 or 14% compared to $19,395.9 million for 2005. Net income (loss) for 2006 was $15,255.2 million compared to a net income (loss) of $15,185.4 million reported in 2005.

**ANALYST COMMENTS**
As of Dec 31 2006, Bank of America NA had total assets of $1,196,597.4 million of which net loans and securities were the primary assets. Assets increased by $113,873.5 million when compared to 2006. As of Dec 31 2006, the company had a Tier 1 risk based capital ratio of 8.86%, a total risk based capital ratio of 11.12% and a Tier 1 leverage ratio of 6.60%. The company maintains capital levels in excess of the minimum capital requirements. The company is classified as well classified.

A well capitalized institution must have a Tier 1 risk-based capital ratio of at least six percent, a total risk-based capital ratio of at least 10 percent and a Tier 1 leverage ratio of at least 5 percent and not be subject to a capital directive order.

BANKING

| | |
|---|---|
| **03/07** | Account maintained. |
| | (Same bank)Account maintained. |
| | Loans granted to medium 7 figures on a secured basis. Collateral consists of accounts receivable and inventory, fixtures and equipment. Matures in 1 to 5 years. |
| **02/07** | Account(s) averages low 5 figures. Account open over 5 years. |
| | (Same bank)Account(s) averages moderate 4 figures. Account open over 10 years. |
| | (Same bank)Account(s) averages medium 7 figures. Account open over 10 years. |
| | (Same bank)Account(s) averages medium 5 figures. Account open over 5 years. |
| | (Same bank)Account(s) averages low 5 figures. Account open under 1 year. |

D&B Business Information Report: BANK OF AMERICA NA                    Page 11 of 18

PUBLIC FILINGS

The following Public Filing data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

JUDGMENTS

| | |
|---|---|
| **Judgment award:** | **$439** |
| **Status:** | **Unsatisfied** |
| **DOCKET NO.:** | 2007-02209 |
| **Judgment type:** | Judgment |
| **Against:** | BANK OF AMERICA CORP, MORRISVILLE, PA |
| **In favor of:** | MORRISVILLE BOROUGH |
| **Where filed:** | BUCKS COUNTY PROTHONOTARY, DOYLESTOWN, PA |
| **Date status attained:** | 03/21/2007 |
| **Date entered:** | 03/21/2007 |
| **Latest Info Received:** | 04/02/2007 |

---

| | |
|---|---|
| **Status:** | **Unsatisfied** |
| **DOCKET NO.:** | 2006TA101776 |
| **Judgment type:** | Judgment |
| **Against:** | $753 - BANK OF AMERICA NA |
| **In favor of:** | BEXAR COUNTY ET AL |
| **Where filed:** | BEXAR COUNTY CIVIL DISTRICT COURT, SAN ANTONIO, TX |
| **Date status attained:** | 02/27/2007 |
| **Date entered:** | 02/27/2007 |
| **Latest Info Received:** | 03/23/2007 |

---

| | |
|---|---|
| **Status:** | **Unsatisfied** |
| **DOCKET NO.:** | 2006TA100154 |
| **Judgment type:** | Judgment |
| **Against:** | $461 - BANK OF AMERICA NA OTHER PARTY(IES) HAS OTHER OBLIGATION(S) UNDER THIS JUDGMENT |
| **In favor of:** | BEXAR COUNTY ET AL |
| **Where filed:** | BEXAR COUNTY CIVIL DISTRICT COURT, SAN ANTONIO, TX |
| **Date status attained:** | 01/22/2007 |
| **Date entered:** | 01/22/2007 |
| **Latest Info Received:** | 02/09/2007 |

---

| | |
|---|---|
| **Status:** | **Unsatisfied** |
| **DOCKET NO.:** | 2006TA101941 |
| **Judgment type:** | Judgment |
| **Against:** | $514 - BANK OF AMERICA N A |
| **In favor of:** | BEXAR COUNTY ET AL |
| **Where filed:** | BEXAR COUNTY CIVIL DISTRICT COURT, SAN ANTONIO, TX |
| **Date status attained:** | 01/22/2007 |
| **Date entered:** | 01/22/2007 |
| **Latest Info Received:** | 02/09/2007 |

---

| | |
|---|---|
| **Status:** | **Unsatisfied** |
| **DOCKET NO.:** | 2005TA105076 |
| **Judgment type:** | Judgment |
| **Against:** | $443 - BANK OF AMERICA N A |
| **In favor of:** | BEXAR COUNTY |
| **Where filed:** | BEXAR COUNTY CIVIL DISTRICT COURT, SAN ANTONIO, TX |
| **Date status attained:** | 12/21/2006 |
| **Date entered:** | 12/21/2006 |
| **Latest Info Received:** | 01/26/2007 |

D&B Business Information Report: BANK OF AMERICA NA

---

| | |
|---|---|
| Status: | **Unsatisfied** |
| DOCKET NO.: | 2006TA100935 |
| Judgment type: | Judgment |
| Against: | $524 - BANK OF AMERICA NA |
| In favor of: | BEXAR COUNTY ET AL |
| Where filed: | BEXAR COUNTY CIVIL DISTRICT COURT, SAN ANTONIO, TX |
| | |
| Date status attained: | 12/08/2006 |
| Date entered: | 12/08/2006 |
| Latest Info Received: | 12/22/2006 |

---

| | |
|---|---|
| Status: | **Unsatisfied** |
| DOCKET NO.: | 2006CV02354 |
| Judgment type: | Judgment |
| Against: | BANK OF AMERICA, RICHMOND, VA |
| In favor of: | JP MORGAN CHASE |
| Where filed: | MAHONING COUNTY COMMON PLEAS COURT, YOUNGSTOWN, OH |
| | |
| Date status attained: | 12/05/2006 |
| Date entered: | 12/05/2006 |
| Latest Info Received: | 02/27/2007 |

---

| | |
|---|---|
| Status: | **Unsatisfied** |
| DOCKET NO.: | 2006TA101760 |
| Judgment type: | Judgment |
| Against: | $511 - BANK OF AMERICA NA |
| In favor of: | BEXAR COUNTY ET AL |
| Where filed: | BEXAR COUNTY CIVIL DISTRICT COURT, SAN ANTONIO, TX |
| | |
| Date status attained: | 11/29/2006 |
| Date entered: | 11/29/2006 |
| Latest Info Received: | 12/22/2006 |

---

| | |
|---|---|
| Status: | **Unsatisfied** |
| DOCKET NO.: | 2006TA101837 |
| Judgment type: | Judgment |
| Against: | $650 - BANK OF AMERICA NA |
| In favor of: | BEXAR COUNTY ET AL |
| Where filed: | BEXAR COUNTY CIVIL DISTRICT COURT, SAN ANTONIO, TX |
| | |
| Date status attained: | 11/29/2006 |
| Date entered: | 11/29/2006 |
| Latest Info Received: | 12/22/2006 |

---

| | |
|---|---|
| Status: | **Unsatisfied** |
| CASE NO.: | 06M16544 |
| Judgment type: | Judgment |
| Against: | BANK OF AMERICA, NT & SA, LOS ANGELES, CA |
| In favor of: | HORTON, GREGORY D.B.A. DMG/IUN COMPANIES HORTON, GREGORY D.B.A. FSE COMPANY |
| Where filed: | LOS ANGELES COUNTY SMALL CLAIMS COURT/LOS ANGELES, LOS ANGELES, CA |
| | |
| Date status attained: | 11/28/2006 |
| Date entered: | 11/28/2006 |
| Latest Info Received: | 04/02/2007 |

---

SUITS

---

| | |
|---|---|
| Suit amount: | **$7,500** |
| Status: | **Pending** |
| CASE NO.: | 07S00339 |
| Plaintiff: | HASSAN, KHALID |
| Defendant: | BANK OF AMERICA CORP., INGLEWOOD, CA |
| Where filed: | LOS ANGELES COUNTY SMALL CLAIMS COURT/INGLEWOOD, INGLEWOOD, CA |

D&B Business Information Report: BANK OF AMERICA NA                                    Page 13 of 18

| | |
|---|---|
| Date status attained: | 02/26/2007 |
| Date filed: | 02/26/2007 |
| Latest Info Received: | 04/02/2007 |

| | |
|---|---|
| Suit amount: | **$2,500** |
| Status: | **Pending** |
| CASE NO.: | 07S00265 |
| Plaintiff: | DIAZ, MARIA A |
| Defendant: | BANK OF AMERICA, MONTEBELLO, CA AND OTHERS |
| Where filed: | LOS ANGELES COUNTY SMALL CLAIMS COURT/DOWNEY, DOWNEY, CA |

| | |
|---|---|
| Date status attained: | 02/22/2007 |
| Date filed: | 02/22/2007 |
| Latest Info Received: | 04/02/2007 |

| | |
|---|---|
| Suit amount: | **$7,500** |
| Status: | **Pending** |
| CASE NO.: | 00000544 |
| Plaintiff: | RITA D. MERCIER |
| Defendant: | BANK OF AMERICA CORPORATION, ENCINITAS, CA |
| Where filed: | SAN DIEGO COUNTY SMALL CLAIMS COURT/VISTA, VISTA, CA |

| | |
|---|---|
| Date status attained: | 02/16/2007 |
| Date filed: | 02/16/2007 |
| Latest Info Received: | 03/23/2007 |

| | |
|---|---|
| Suit amount: | **$7,500** |
| Status: | **Pending** |
| CASE NO.: | 07M02522 |
| Plaintiff: | BERBERIAN, VAHE |
| Defendant: | BANK OF AMERICA, HOLLYWOOD, CA AND OTHERS |
| Where filed: | LOS ANGELES COUNTY SMALL CLAIMS COURT/LOS ANGELES, LOS ANGELES, CA |

| | |
|---|---|
| Date status attained: | 02/16/2007 |
| Date filed: | 02/16/2007 |
| Latest Info Received: | 04/02/2007 |

| | |
|---|---|
| Suit amount: | **$5,000** |
| Status: | **Pending** |
| CASE NO.: | 07M02504 |
| Plaintiff: | GREGORY, HORTON D.B.A. DMG/IUN COMPANIES GREGORY, HORTON D.B.A. FSE COMPANY |
| Defendant: | BANK OF AMERICA NT & SA, LOS ANGELES, CA AND OTHERS |
| Where filed: | LOS ANGELES COUNTY SMALL CLAIMS COURT/LOS ANGELES, LOS ANGELES, CA |

| | |
|---|---|
| Date status attained: | 02/15/2007 |
| Date filed: | 02/15/2007 |
| Latest Info Received: | 04/02/2007 |

| | |
|---|---|
| Suit amount: | **$1,920** |
| Status: | **Pending** |
| CASE NO.: | 07M01752 |
| Plaintiff: | RUDISON M.D., JOSEPH C. |
| Defendant: | BANK OF AMERICA, LOS ANGELES, CA |
| Where filed: | LOS ANGELES COUNTY SMALL CLAIMS COURT/LOS ANGELES, LOS ANGELES, CA |

| | |
|---|---|
| Date status attained: | 01/31/2007 |
| Date filed: | 01/31/2007 |
| Latest Info Received: | 04/02/2007 |

| | |
|---|---|
| Status: | **Pending** |
| DOCKET NO.: | 07-00576 |
| Plaintiff: | HORIZONS DISPLAY INC |
| Defendant: | BANK OF AMERICA NA |
| Cause: | COMPLAINT - CIVIL ACTION |

D&B Business Information Report: BANK OF AMERICA NA                    Page 14 of 18

| | |
|---|---|
| **Where filed:** | CHESTER COUNTY PROTHONOTARY, WEST CHESTER, PA |
| **Date status attained:** | 01/19/2007 |
| **Date filed:** | 01/19/2007 |
| **Latest Info Received:** | 02/05/2007 |

| | |
|---|---|
| **Status:** | **Pending** |
| **CASE NO.:** | RGU07306609 |
| **Plaintiff:** | MICHAEL D. JONES |
| **Defendant:** | BANK OF AMERICA, OAKLAND, CA AND OTHERS |
| **Cause:** | BREACH OF CONTRACT |
| **Where filed:** | ALAMEDA COUNTY SUPERIOR COURT/ OAKLAND, OAKLAND, CA |
| **Date status attained:** | 01/17/2007 |
| **Date filed:** | 01/17/2007 |
| **Latest Info Received:** | 03/02/2007 |

| | |
|---|---|
| **Suit amount:** | **$15,000** |
| **Status:** | **Pending** |
| **DOCKET NO.:** | DC-001442-2007 |
| **Plaintiff:** | RICHARD SCHURICH |
| **Defendant:** | BANK OF AMERICA, BRICK, NJ |
| **Cause:** | TORT - OTHER |
| **Where filed:** | OCEAN COUNTY SPECIAL CIVIL/SMALL CLAIMS COURT, TOMS RIVER, NJ |
| **Date status attained:** | 01/10/2007 |
| **Date filed:** | 01/10/2007 |
| **Latest Info Received:** | 02/26/2007 |

| | |
|---|---|
| **Suit amount:** | **$5,000** |
| **Status:** | **Pending** |
| **CASE NO.:** | 819900 |
| **Plaintiff:** | MELCHER BUSTAMANTE TRUSTEE |
| **Defendant:** | BANK OF AMERICA, SAN FRANCISCO, CA |
| **Cause:** | UNFAIR BUSINESS PRACTICE |
| **Where filed:** | SAN FANCISCO COUNTY SMALL CLAIMS COURT, SAN FRANCISCO, CA |
| **Date status attained:** | 01/04/2007 |
| **Date filed:** | 01/04/2007 |
| **Latest Info Received:** | 01/26/2007 |

If it is indicated that there are defendants other than the report subject, the lawsuit may be an action to clear title to property and does not necessarily imply a claim for money against the subject.


LIENS


A lienholder can file the same lien in more than one filing location. The appearance of multiple liens filed by the same lienholder against a debtor may be indicative of such an occurrence.

| | |
|---|---|
| **Amount:** | **$2,261 OTHER** |
| **Status:** | **Open** |
| **DOCKET NO.:** | 2006-MT-000552-Y59 |
| **Type:** | Local Tax |
| **Filed by:** | WINDSOR TOWNSHIP |
| **Against:** | BANK OF AMERICA, WEST SENECA, NY |
| **Where filed:** | YORK COUNTY PROTHONOTARY, YORK, PA |
| **Date status attained:** | 05/23/2006 |
| **Date filed:** | 05/23/2006 |
| **Latest Info Received:** | 07/18/2006 |

| | |
|---|---|
| **Amount:** | **$2,261 OTHER** |
| **Status:** | **Open** |
| **DOCKET NO.:** | 2006-MT-000553-Y59 |
| **Type:** | Local Tax |
| **Filed by:** | NEWBERRY TOWNSHIP |

D&B Business Information Report: BANK OF AMERICA NA    Page 15 of 18

| | |
|---|---|
| **Against:** | BANK OF AMERICA, WEST SENECA, NY |
| **Where filed:** | YORK COUNTY PROTHONOTARY, YORK, PA |
| | |
| **Date status attained:** | 05/23/2006 |
| **Date filed:** | 05/23/2006 |
| **Latest Info Received:** | 07/18/2006 |

| | |
|---|---|
| **Amount:** | **$1,277** |
| **Status:** | **Released** |
| **DOCKET NO.:** | DJ110752-06 |
| **Type:** | State Tax |
| **Filed by:** | STATE OF NEW JERSEY |
| **Against:** | BANK OF AMERICA NT&SA, SAN FRANCISCO, CA |
| **Where filed:** | SUPERIOR COURT OF NEW JERSEY, TRENTON, NJ |
| | |
| **Date status attained:** | 11/06/2006 |
| **Date filed:** | 05/08/2006 |
| **Latest Info Received:** | 11/13/2006 |

| | |
|---|---|
| **Amount:** | **$302** |
| **Status:** | **Open** |
| **DOCKET NO.:** | 2877/5628 |
| **Type:** | State Tax |
| **Filed by:** | STATE OF KANSAS |
| **Against:** | BANK OF AMERICA CORP, WICHITA, KS |
| **Where filed:** | SEDGWICK COUNTY REGISTER OF DEEDS, WICHITA, KS |
| | |
| **Date status attained:** | 04/27/2006 |
| **Date filed:** | 04/27/2006 |
| **Latest Info Received:** | 06/02/2006 |

| | |
|---|---|
| **Amount:** | **$112** |
| **Status:** | **Open** |
| **DOCKET NO.:** | 05CVD13289 |
| **Type:** | Judgment lien |
| **Filed by:** | HANS PLOTSENEDER |
| **Against:** | BANK OF AMERICA, CHARLOTTE, NC |
| **Where filed:** | MECKLENBURG COUNTY SUPERIOR COURT, CHARLOTTE, NC |
| | |
| **Date status attained:** | 10/31/2005 |
| **Date filed:** | 10/31/2005 |
| **Latest Info Received:** | 12/01/2005 |

| | |
|---|---|
| **Amount:** | **$2,376** |
| **Status:** | **Open** |
| **CASE NO.:** | 05-035392 |
| **Type:** | Judgment lien |
| **Filed by:** | TULARE COUNTY TAX COLLECTOR |
| **Against:** | BANK OF AMERICA, LOS ANGELES, CA |
| **Where filed:** | TULARE COUNTY RECORDER OF DEEDS, VISALIA, CA |
| | |
| **Date status attained:** | 04/06/2005 |
| **Date filed:** | 04/06/2005 |
| **Latest Info Received:** | 05/23/2005 |

| | |
|---|---|
| **Amount:** | **$255** |
| **Status:** | **Open** |
| **CASE NO.:** | 0410200396 |
| **Type:** | Judgment lien |
| **Filed by:** | COUNTY OF SACRAMENTO |
| **Against:** | BANK OF AMERICA COPRORATION (A CORPORATION) |
| **Where filed:** | SACRAMENTO COUNTY RECORDERS OFFICE, SACRAMENTO, CA |
| | |
| **Date status attained:** | 10/20/2004 |
| **Date filed:** | 10/20/2004 |
| **Latest Info Received:** | 12/06/2004 |

| | |
|---|---|
| **Amount:** | **$517** |
| **Status:** | **Open** |
| **CASE NO.:** | 20049539 |
| **Type:** | State Tax |
| **Filed by:** | STATE OF ARKANSAS |
| **Against:** | BANK OF AMERICA, LITTLE ROCK, AR |
| **Where filed:** | PULASKI COUNTY CIRCUIT COURT, LITTLE ROCK, AR |
| | |
| **Date status attained:** | 09/02/2004 |
| **Date filed:** | 09/02/2004 |
| **Latest Info Received:** | 09/24/2004 |

| | |
|---|---|
| **Amount:** | **$5,797** |
| **Status:** | **Open** |
| **CASE NO.:** | 04-2258443 |
| **Type:** | Federal Tax |
| **Filed by:** | IRS |
| **Against:** | BANK OF AMERICA NT & SA, LOS ANGELES, CA AND OTHERS |
| **Where filed:** | LOS ANGELES COUNTY RECORDER OF DEEDS, NORWALK, CA |
| | |
| **Date status attained:** | 09/01/2004 |
| **Date filed:** | 09/01/2004 |
| **Latest Info Received:** | 09/20/2004 |

| | |
|---|---|
| **Amount:** | **$12,215** |
| **Status:** | **Released** |
| **CASE NO.:** | 20046285 |
| **Type:** | State Tax |
| **Filed by:** | STATE OF ARKANSAS |
| **Against:** | BANK OF AMERICA, LITTLE ROCK, AR |
| **Where filed:** | PULASKI COUNTY CIRCUIT COURT, LITTLE ROCK, AR |
| | |
| **Date status attained:** | 10/15/2004 |
| **Date filed:** | 06/11/2004 |
| **Latest Info Received:** | 10/29/2004 |

UCC FILINGS

| | |
|---|---|
| **Collateral:** | All Negotiable instruments including proceeds and products - All Inventory including proceeds and products - All Account(s) including proceeds and products - All General intangibles(s) including proceeds and products - and OTHERS |
| **Type:** | Original |
| **Sec. party:** | NATIONSBANK NA, ORLANDO, FL |
| **Debtor:** | BANK OF AMERICA NA, ORLANDO, FL and OTHERS |
| **Filing number:** | 200000142782 |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, TALLAHASSEE, FL |
| | |
| **Date filed:** | 06/19/2000 |
| **Latest Info Received:** | 07/15/2000 |

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products - Assets including proceeds and products - Contract rights including proceeds and products |
| **Type:** | Original |
| **Sec. party:** | U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, CHICAGO, IL |
| **Debtor:** | BANC OF AMERICA FUNDING CORPORATION, CHARLOTTE, NC |
| **Filing number:** | 6414171 9 |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, DOVER, DE |
| | |
| **Date filed:** | 11/29/2006 |
| **Latest Info Received:** | 01/02/2007 |

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products - Inventory including proceeds and products - Account(s) including proceeds and products - Assets including proceeds and products - and OTHERS |

Case 1:07-cv-00159-GMS    Document 17-14    Filed 05/10/2007    Page 18 of 19
Case 2:07-cv-00042-JES-SPC    Document 36-4    Filed 04/20/2007    Page 18 of 19
D&B Business Information Report: BANK OF AMERICA NA                    Page 17 of 18

| | |
|---|---|
| **Type:** | Original |
| **Sec. party:** | SUNDBERG, DAVID JOHN MR, TENINO, WA |
| **Debtor:** | BANK OF AMERICA, CHARLOTTE, NC |
| **Filing number:** | 200629184499 |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, OLYMPIA, WA |
| **Date filed:** | 10/18/2006 |
| **Latest Info Received:** | 10/26/2006 |

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products - Assets including proceeds and products - Account(s) including proceeds and products - General intangibles(s) including proceeds and products - Contract rights including proceeds and products |
| **Type:** | Original |
| **Sec. party:** | WELLS FARGO BANK, N.A., COLUMBIA, MD |
| **Debtor:** | BANK OF AMERICA, N.A. |
| **Filing number:** | 20060099041B |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, RALEIGH, NC |
| **Date filed:** | 10/12/2006 |
| **Latest Info Received:** | 11/14/2006 |

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products - Account(s) including proceeds and products - General intangibles(s) including proceeds and products |
| **Type:** | Original |
| **Sec. party:** | BANC OF AMERICA COMMERCIAL MORTGAGE INC., CHARLOTTE, NC |
| **Assignee:** | LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR BANC OF AMERICA COMMERCIAL MORTGAGE INC., COMMERCIAL MORTGAGE PASS-THR, CHICAGO, IL |
| **Debtor:** | BANK OF AMERICA, N.A. |
| **Filing number:** | 2006088479 |
| **Filed with:** | FINANCE & REVENUE DEPT, WASHINGTON, DC |
| **Date filed:** | 07/05/2006 |
| **Latest Info Received:** | 08/22/2006 |

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products - Account(s) including proceeds and products - Assets including proceeds and products - Contract rights including proceeds and products |
| **Type:** | Original |
| **Sec. party:** | U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, CHICAGO, IL |
| **Debtor:** | BANC OF AMERICA FUNDING CORPORATION, CHARLOTTE, NC |
| **Filing number:** | 6225913 3 |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, DOVER, DE |
| **Date filed:** | 06/29/2006 |
| **Latest Info Received:** | 08/29/2006 |

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products |
| **Type:** | Original |
| **Sec. party:** | WELLS FARGO BANK, N.A., COLUMBIA, MD |
| **Debtor:** | BANK OF AMERICA, N.A. |
| **Filing number:** | 6224096 8 |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, DOVER, DE |
| **Date filed:** | 06/27/2006 |
| **Latest Info Received:** | 08/29/2006 |

| | |
|---|---|
| **Collateral:** | Negotiable instruments including proceeds and products |
| **Type:** | Original |
| **Sec. party:** | WELLS FARGO BANK, N.A., COLUMBIA, MD |
| **Debtor:** | BANK OF AMERICA, N.A. |
| **Filing number:** | 6224093 5 |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, DOVER, DE |
| **Date filed:** | 06/27/2006 |

D&B Business Information Report: BANK OF AMERICA NA                    Page 18 of 18

| | |
|---|---|
| Latest Info Received: | 08/29/2006 |

| | |
|---|---|
| Collateral: | Negotiable instruments including proceeds and products - Account(s) including proceeds and products - General intangibles(s) including proceeds and products |
| Type: | Original |
| Sec. party: | WELLS FARGO BANK, N.A., COLUMBIA, MD |
| Debtor: | BANK OF AMERICA N.A. |
| Filing number: | 20060062416J |
| Filed with: | SECRETARY OF STATE/UCC DIVISION, RALEIGH, NC |
| | |
| Date filed: | 06/23/2006 |
| Latest Info Received: | 07/11/2006 |

| | |
|---|---|
| Collateral: | Negotiable instruments including proceeds and products - Contract rights including proceeds and products |
| Type: | Original |
| Sec. party: | WELLS FARGO BANK, NATIONAL ASSOCIATION, COLUMBIA, MD |
| Debtor: | BANC OF AMERICA FUNDING CORPORATION, CHARLOTTE, NC |
| Filing number: | 6205229 8 |
| Filed with: | SECRETARY OF STATE/UCC DIVISION, DOVER, DE |
| | |
| Date filed: | 06/15/2006 |
| Latest Info Received: | 07/14/2006 |

There are additional UCC's in D&B's file on this company available by contacting 1-800-234-3867.

There are additional suits, liens, or judgments in D&B's file on this company available by contacting 1-800-234-3867.

The public record items contained in this report may have been paid, terminated, vacated or released prior to the date this report was printed.


GOVERNMENT ACTIVITY

**Activity summary**

| | |
|---|---|
| Borrower (Dir/Guar): | NO |
| Administrative debt: | NO |
| Contractor: | YES |
| Grantee: | NO |
| Party excluded from federal program(s): | NO |

**Possible candidate for socio-economic program consideration**

| | |
|---|---|
| Labor surplus area: | N/A |
| Small Business: | N/A |
| 8(A) firm: | N/A |

The details provided in the Government Activity section are as reported to Dun & Bradstreet by the federal government and other sources.

Copyright 2007 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber 263737613L

Exhibit 14

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay



# Keep the Change(TM). Save Automatically with everyday purchases. A Free Service = Only from Bank of America

## We'll match 100% of your Keep the Change savings for the first three months.(2)

**Automatic Savings**

When you enroll in Keep the Change, you don't even have to think about saving. We'll round up every Bank of America Visa® Check Card purchase to the nearest dollar and transfer the difference from your checking to your savings – automatically – for free.[1] It's that simple.

**Double Your Savings**

We'll match your Keep the Change savings for the first 3 months, to the penny. After that, we'll continue matching 5% a year – every year.[2] You could earn a match of up to $250 per year.

**Getting Started is Easy:**

Enroll now so you can start saving with Keep the Change.
- If you're a Bank of America customer, simply select the accounts you currently have below and click Submit.*
- If you're a new customer, just click Submit.



☐
Checking Account





☐
Check
Card



☐
Savings Account



*Rewards cards are not eligible for the match. Only personal accounts are  eligible for Keep the Change.
Money Manager and Small Business accounts are not eligible.

**Track your Keep the Change savings online**

See the amount you've saved – plus your earned match – at any time on your Online Banking statement.

Here's how it works



Privacy & Security
Bank of America, N.A. Member FDIC. Equal Housing Lender
© 2007 Bank of America Corporation. All rights reserved.

[1] Keep the Change Terms

When you enroll in our Keep the Change savings service, we round up the amount of any Visa® Check Card purchase made by you or a joint owner of your checking account to the next whole dollar amount, and transfer the amount in excess of the purchase price to your savings account.

We aggregate the round up from purchases that post to your checking account each business day and make a single transfer (the "Keep the Change" transfer) at the end of the business day. If on a business day you do not have sufficient available funds in your checking account, or if any transaction has overdrawn your checking account, we do not round up purchases posted on that business day and we cancel the Keep the Change transfer for that day.

If your Visa® Check Card purchase is subsequently cancelled or reversed, the corresponding Keep the Change transfer will remain in the savings account. We may cancel the Keep the Change service at any time.

[2] Keep the Change Matching Promotion

We match 100% of the amount of your Keep the Change transfers during the first three months after you enroll, and we will match 5% thereafter. The maximum total match is $250 per year.

The matching funds will be credited to your savings account annually, within 8 weeks after the month in which the anniversary of your enrollment in the Keep the Change savings service occurs. To receive the matching funds, your checking and savings accounts must be open and in good standing and you must still be enrolled in the Keep the Change savings service at the time the matching funds are credited. Purchases with co-branded or rewards Visa® Check Cards are not eligible for matching.

Earn a promotional match up to $250 per anniversary period for each checking account with the Keep the Change savings service. You will not receive the matching funds for: a) credits or other adjustments related to POS purchases, such as those for purchases that are cancelled or returned; b) purchases of cash-like items, such as money orders, traveler's checks, foreign currency, cashier's checks, gaming chips, and other similar instruments and things of value; c) account funding transactions including transfers to open or fund deposit, escrow, or brokerage accounts and purchases of stored value cards. We may terminate the matching promotion at any time without notice.

Savings accounts eligible to receive matching funds include Regular Savings, which requires a minimum opening balance of $100 and pays a variable Annual Percentage Yield that was 0.20% as of 05/01/07. This rate may change before the account is opened. Fees could reduce earnings.

The promotional matching funds will be reported to the IRS on Form 1099.

Keep the Change™ patent pending.

Exhibit 15

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

| | | |
|---|---|---|
| EVERY PENNY COUNTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:07-CV-00042-JES |
| | ) | Judge Steele |
| | ) | |
| BANK OF AMERICA CORPORATION, | ) | |
| BANK OF AMERICA, N.A., AND | ) | |
| VISA U.S.A. INC., | ) | |
| Defendants. | ) | |

### BANK OF AMERICA CORPORATION AND BANK OF AMERICA, N.A.'s
### MOTION TO DISMISS AND TRANSFER VENUE

Defendants Bank of America Corporation ("BAC") and Bank of America, N.A. ("BANA") hereby move this Court to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In addition, BAC moves the Court (and BANA moves the Court in the alternative) to transfer this case to the United States District Court for the District of Delaware because the Delaware court is the only court that can exercise jurisdiction over all desirable and necessary parties, and it is the only court with the ability to dispose of all the issues sought to be resolved in BANA's declaratory judgment action. A Memorandum of Law in Support of this Motion to Dismiss and Transfer Venue is filed herewith.

### MEMORANDUM OF LAW

**I.    INTRODUCTION AND FACTS**

On January 25, 2007 Every Penny Counts, Inc. ("EPC") filed this action against Bank of America Corporation ("BAC") and Visa U.S.A. Inc. ("Visa"). In its original Complaint, EPC claimed that it was the "holder of United States Patent Number 6,112,191" ("the '191

CH\927525.8

41567.1

**EXHIBIT**

tabbies®

patent") and that the "Keep The Change" program ("KTC"), a program it alleges BAC "launched," infringes this patent. Compl. ¶¶ 3, 8, 11.

EPC alleges that it is the sole owner of the '191 patent, and that it obtained ownership of the '191 patent[1] on June 29, 2005 from an entity it refers to as OLD EPC. *Id.* ¶ 3. Just a few months prior to that alleged assignment, however, a different entity, SIP Assets, LLC ("SIP") approached Bank of America, N.A. ("BANA"),[2] and in a presentation it prepared for BANA alleged that *it* had "fully acquired" the '191 patent ("SIP Presentation" (Ex. A)).[3] Until this case was filed, the SIP Presentation was the only communication BANA received concerning the '191 patent.

Two problems existed with EPC's original Complaint. First, EPC sued BAC, a holding company that did not and could not operate, establish, develop or launch KTC. Declaration of Allison L. Gilliam ("Gilliam Decl.") (Ex. B) ¶ 6. BAC is not a bank and cannot, therefore administer the KTC program. *Id.* ¶ 5, 6. Instead, BANA is the entity that offers KTC to customers and operates the program. Declaration of Jonathan Wilk ("Wilk Decl.") (Ex. C) ¶ 5. Second, the original Complaint alleged that Old EPC (the original assignee of the patent) assigned the '191 patent directly to EPC in June 2005, even though (i) the Complaint also alleged that Old EPC "reformed" into EPC in September 2004, almost one year before the

---

[1]    EPC asserts that the '191 patent originally issued to a New Jersey based company of the same name that reformed on September 2, 2004 to form EPC, the plaintiff in this action. Compl. ¶ 2.

[2]    BANA is a federally chartered national bank having its headquarters and principal place of business in Charlotte, North Carolina. Wilk Decl. ¶ 3, 4. BANA is a subsidiary of NB Holdings Corporation which, in turn is a direct, wholly-owned subsidiary of BAC. *Id.* ¶ 3.

[3]    EPC apparently knows about this communication from SIP to the Bank, as EPC seems to refer to these communications in its original Complaint. First Am. Compl. ¶ 5.

2

alleged assignment, Compl., Sec. III. ¶¶ 3, 4 (ii) SIP informed BANA that it owned all rights in

the '191 patent just before the alleged assignment, *see* Ex. A, and (iii) the United States Patent

and Trademark Office does not have a record of any assignment of the '191 patent since the

inventor's assignment of the patent to Old EPC on March 27, 1997, *see* U.S. P.T.O. Assignment

Records for U.S. Pat. No. 6,112,191 (Ex. D).

In an attempt to resolve these deficiencies and apparent inconsistencies, and to

address the charges made by EPC that KTC infringes the '191 patent, BANA filed a declaratory

judgment action to (1) resolve the fundamental issue of who owned and was entitled to enforce

the '191 patent, and (2) put an end to the allegations that the KTC program infringes any valid

claim of the '191 patent. BANA could not file such an action in this Court because this Court

does not have personal jurisdiction over SIP. Therefore, BANA commenced an action in the

United States District Court for the District of Delaware, the only court that had personal

jurisdiction over all parties based upon the facts known to BANA: EPC is incorporated in

Delaware and SIP is a limited liability company that was incorporated in Delaware.[4]

On March 21, 2007, apparently as a reaction to BANA's Delaware complaint,

EPC amended its complaint in this action to add "Bank of America, N.A., a Delaware

corporation," as a defendant.[5] EPC's First Amended Complaint still does not make any mention

of SIP. Moreover, despite the clear notice BANA provided to EPC in its Delaware complaint

that BANA, not BAC, operated and administered the KTC program, EPC included no allegations

that BANA made, used, sold, offered for sale, or imported the KTC offering that it accuses of

---

[4]     SIP was voided in 2006 for a delinquent tax status.

[5]     This entity named in EPC's First Amended Complaint does not exist. As noted above,
BANA is a federally chartered national banking institution. It is still unknown which
entity EPC intended to name. *See* First Am. Compl. ¶ 3.

3

infringing the '191 patent.  Instead, EPC still only alleges, wrongly, that BAC, the holding company, launched and established the KTC program.  First Am. Compl. ¶ 8.

BANA moves to dismiss this action against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Though EPC alleges that BANA "knew that EPC is the lawful owner of the ['191 patent], and knew or should have known that the 'Keep the Change Program' would infringe on the ['191 patent]," First Am. Compl. ¶ 11, these allegations, even if true, do not amount to patent infringement.  EPC never alleges that BANA actually did anything related to the accused KTC program that states a cause of action for patent infringement against BANA.

In addition, BAC moves the Court (and BANA moves the Court in the alternative) to transfer this case to the United States District Court for the District of Delaware because the Delaware court is the only court that can exercise jurisdiction over all desirable and necessary parties.  It also is the only court with the ability to dispose of all the issues sought to be resolved in BANA's declaratory judgment action.  Although EPC filed an action against BAC and Visa in this Court before BANA filed the declaratory judgment action in Delaware, this case is not the "first filed" action, as it does not include the same parties involved in the Delaware action and cannot resolve all of the issues raised in Delaware.  Instead, the issues in this case represent a subset of those presented in Delaware.  Because of this overlap and because most of the relevant witnesses and operative facts are located in or near Delaware and very few are located in Florida, the interests of convenience and justice warrant transfer to Delaware under 28 U.S.C. § 1404.

## II.    THIS ACTION SHOULD BE DISMISSED AS TO BANA PURSUANT TO RULE 12(B)(6)

"The question of whether a Rule 12(b)(6) motion to dismiss for failure to state a claim [is] properly granted is a purely procedural question not pertaining to patent law, to which

4

this court applies the law of the regional circuit...." *Spann v. Cobb County Pretrial Court Servs.*

*Agency*, 206 Fed. Appx. 910, 911 (11th Cir. 2006). According to the Eleventh Circuit, "[w]hen

the allegations in a complaint are vague and conclusory, and fail to set forth facts which, if

proved, would warrant the relief sought, it is proper to dismiss for failure to state a claim."

*Taylor By & Through Walker v. Ledbetter*, 818 F.2d 791, 817 (11th Cir. 1987).

"[W]hether a plaintiff failed to state a claim upon which relief can be granted

must be ascertained from the face of the complaint." *Spann*, 206 Fed. Appx. at 911. Although a

court ruling on a Rule 12(b)(6) motion accepts all well-pleaded factual allegations in the

complaint as true, mere conclusory allegations, unwarranted inferences and conclusions of law

presented as factual conclusions are not sufficient to defeat a motion to dismiss. *Berry v.*

*Coleman*, 172 Fed. Appx. 929, 932 (11th Cir. 2006); *Lambert v. United States*, 198 Fed. Appx.

835, 838 (11th Cir. 2006).

"To state a claim for patent infringement the plaintiff must allege that a person (1)

without authority, (2) makes, uses, offers to sell, sells, or imports any patented invention within

the United States, (3) during the term of the patent." *LG Elecs., Inc. v. Asustek Computers*, 126

F. Supp. 2d 414, 418 (E.D. Va. 2000); *see* 35 U.S.C. § 271(a) (2000). Although EPC claims that

the KTC program infringes the '191 patent, *see* First Am. Compl. ¶¶ 16-18, EPC's Complaint is

devoid of any allegations that BANA makes, uses, offers to sell, sells, or imports the KTC

program or any other product or method that falls within the scope of the '191 patent claims.

Similarly, EPC does not allege that BANA intended to encourage another person's infringement,

as would be required to show inducement of infringement under § 271(b), or knowingly sold a

device that constituted a material part of the allegedly infringing KTC program, as would be

required to show contributory infringement under § 271(c). In fact, EPC does not allege that

5

BANA does *anything* with respect to KTC or is connected to KTC in any way. The only facts

that EPC alleges with respect to BANA are that, "[u]pon information and belief," BANA "was

aware of" the '191 patent, "knew that EPC is the lawful owner of the" '191 patent, and "knew or

should have known that the 'Keep the Change Program' would infringe on the" '191 patent. *See*

First Am. Compl. ¶ 11. At most, these allegations amount to "unsupported conclusions of law or

of mixed law and fact" that cannot survive a motion to dismiss. *Lambert*, 198 Fed. Appx. at 838.

Even if such conclusory allegations were true, moreover, they would not satisfy the elements of

infringement recited in 35 U.S.C. § 271. Under any one of § 271(a), (b), or (c), mere knowledge

about a patent or a device does not constitute infringement.

The facts of this case are remarkably analogous to those of *Catapano v. Wyeth

Ayerst Pharm., Inc.*, 88 F. Supp. 2d 27. 31 (E.D. N.Y. 2000), where the court dismissed the

complaint for failure to state a claim for patent infringement. Like EPC, the plaintiff in

*Catapano* "failed to identify, by name or statutory section, the particular type of patent

infringement he is claiming," *i.e.*, "direct infringement under § 271(a), inducement of

infringement under § 271(b), [or] contributory infringement under § 271(c)." *Id.* at 29.

Moreover, "nothing in [the plaintiff's] complaint allege[d], much less suggest[ed], that the

Defendants are using or selling" the patented method, allegations that the court concluded were

required "to state a claim for direct patent infringement." *Id.* at 29-30. Furthermore, the

complaint "fail[ed] to allege that the Defendants specifically intend to encourage" infringement

or that Defendants "sell any [] material that constitutes a necessary component of his invention"

and therefore did not meet the pleading requirements for induced or contributory infringement,

respectively. *Id.* at 30. The court therefore held that "reading the complaint in the light most

favorable" to the plaintiff, "it fails to state any viable claim for patent infringement." *Id.* at 31.

6

The same facts exist here. EPC specifies neither the theory of infringement it is pursuing (*i.e.*, direct or indirect), nor alleges any facts that would support a claim for infringement under any of the available theories. EPC's failure to plead the requisite elements of infringement are especially remarkable given that BANA, by filing its complaint in Delaware, notified EPC that it is the owner and operator of the KTC program. Indeed, it appears that EPC filed its First Amended Complaint in response to the filing of the Delaware action, as it came only days after EPC was served with the Delaware complaint. Yet, EPC apparently still believes that BAC, a holding company, launched the KTC program and that it has no reasonable basis for alleging that BANA committed any of the acts that could support a claim for infringement. EPC only alleges that BANA knew about the allegedly infringing KTC program and the '191 patent. These allegations are insufficient to state a cause for relief against BANA and, as such, EPC's complaint against BANA should be dismissed. *See Phonometrics, Inc. v. Resinter North American Corp.*, 124 F.3d 229, 229 (Fed. Cir. 1997) (indicating the relationship between a parent and a subsidiary alone is not enough to render a subsidiary liable for a parent's conduct.); *Gillespie v. HSBC North America Holdings, Inc.*, No. 5:05-cv-362-OC-10GRJ, 2006 WL 2735135, at *5 (M.D. Fla. Sept. 25, 2006) ("It is also clear from the Amended Complaint that Gillespie has not made any allegations against HSBC North America other than to aver that it is the parent company of HSBC Nevada. Thus, it would appear that dismissal of HSBC North America is appropriate. Normally, a parent corporation is not liable for the acts of its subsidiaries.").

7

## III.    HIS ACTION IS NOT THE "FIRST FILED" BECAUSE SIP IS NOT A PARTY TO THE ACTION AND OWNERSHIP CANNOT BE RESOLVED

The law of the Federal Circuit governs the application of the first-to-file rule in

patent cases. *See Electronics for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1347 (Fed. Cir. 2005).

According to the Federal Circuit, "[a]s between a ***mirror-image*** declaratory judgment action and

an affirmative patent infringement action, the general rule favors the forum of the first-filed

action, whether or not it is the declaratory action." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d

931, 937-38 (Fed. Cir. 1993), *cert. denied, Regents of Univ. of Cal. v. Genentech, Inc.,* 510 U.S.

1140 (1994). "Exceptions [to the rule], however, are not rare, and are made when justice or

expediency requires, as in any issue of choice of forum." *Id.* at 937; *Electronics for Imaging,*

394 F.3d at 1347 ("We apply the general rule favoring the forum of the first-filed case, 'unless

considerations of judicial and litigant economy, and the just and effective disposition of disputes,

requires otherwise.'" ). The Supreme Court has cautioned against a "rigid mechanical solution"

to determining priority between multiple suits involving similar parties and issues including

application of an inflexible first-filed rule. *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342

U.S. 180, 184 (1952). That is particularly true where, as here, the "first-filed court" cannot assert

jurisdiction over all "necessary or desirable parties." *Genentech, Inc.*, 998 F.2d at 938.

As explained above, only the District of Delaware has jurisdiction over all parties in

interest, including SIP, and thus only that Court can resolve the threshold issue of who has the

right to assert and claim damages for infringement of the '191 patent. Because this central issue

of ownership cannot be resolved in the action filed by EPC, this is not an instance in which the

actions in Florida and Delaware are "mirror images" of each other. *See id.* Therefore, this case

should be transferred to Delaware, the only district where "disposition of one case would be

dispositive of the other." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990). In the

8

same vein, because only the Delaware Court is positioned to resolve issues of ownership of the

'191 patent, Delaware is the venue in which the claims asserted in this action can be resolved

most efficiently and economically.   Because all interested parties will be involved in the

Delaware action, the parties do not run the risks of inconsistent judgments and duplicative

litigation that would arise if SIP were not a party to the case. Thus, even if this action were

considered to be the "first-filed," "considerations of judicial and litigant economy, and the just

and effective disposition of disputes" would require that it be transferred to Delaware.

*Electronics for Imaging, Inc.*, 394 F.3d at 1347.

Finally, "[t]he first-filed rule does not supersede the inquiry into the balance of

convenience under § 1404(a) and a transfer justified under § 1404(a) [may be] proper even if the

action to be transferred was filed before a related action was filed in the transferee district."

*Zimmer Enters., Inc. v. Atlandia Imps., Inc.*, No. 3:06-cv-038, 2007 WL 743800, at *3 (S.D.

Ohio) (quoting *Societe Generale v. Fla. Health Scis. Ctr., Inc.*, 2003 U.S. Dist. LEXIS 21502,

*24 (S.D.N.Y. Dec. 2, 2003)).  As will be discussed in the following section, even if the action

filed by EPC in Florida could resolve all necessary issues raised by the alleged infringement of

KTC, the considerations of 28 U.S.C. § 1404 strongly favor transfer of venue of instant action to

Delaware.

## IV.    THIS CASE SHOULD BE TRANSFERRED TO THE DISTRICT OF DELAWARE

### A.    LEGAL STANDARD

A district court may transfer any case for the convenience of parties or witnesses,

or in the interest of justice, as long as venue is proper in the transferee court. *See* 28 U.S.C. §

1404(a). The decision to transfer is a two-step process. The threshold question is whether the

9

plaintiff could have brought the action in the district to which the defendant is requesting

transfer. *Balloveras v. Purdue Pharma Co.*, No. 04-20360-CIV-Moreno, 2004 WL 1202854, at

*1 (S.D. Fla. May 19, 2004); *Continental Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 27

(1960). If this threshold is met, then "the only question to be decided is whether, on balance, the

convenience of the parties and the interest of justice weigh in favor of this Court retaining this

case or transferring it" to the other jurisdiction. *Jewelmasters, Inc. v. May Dep. Stores Co.*, 840

F. Supp. 893, 895 (S.D. Fla. 1993).

### B.    THIS ACTION COULD HAVE BEEN BROUGHT IN DELAWARE

This action originally could have been brought in the District of Delaware. The

District Court for the District of Delaware has the same federal question jurisdiction over this

matter as does this Court. *See* 28 US.C. § 1338(a) (providing that federal courts have exclusive

jurisdiction over all suits "arising under any Act of Congress relating to patents"). Because BAC

and Visa are both corporations organized and existing under the laws of the State of Delaware,

and because of BANA's business contacts in Delaware, venue is also proper in Delaware under §

1404(b), which provides that "[a]ny civil action for patent infringement may be brought in the

judicial district where the defendant resides…." and under § 1391(c), which provides that, "[f]or

purposes of venue under this chapter," a corporation "resides" in any district in which it is

subject to personal jurisdiction." Therefore, the threshold requirement for transfer is met. *See*

*Jewelmasters, Inc.*, 840 F. Supp. at 894-95.

### C.    THE PRIVATE AND PUBLIC INTEREST FACTORS OF 28 U.S.C. § 1404(A) SUPPORT TRANSFER TO THE DISTRICT OF DELAWARE

In determining whether to transfer this case to the District of Delaware, this Court

must also weigh the following factors: trial efficiency and the interests of justice; the

convenience of the witnesses; the location of relevant documents and the relative ease of access

10

CH\927525.8

41567.1

to sources of proof; the convenience of the parties; the locus of operative facts; the availability

of process to compel the attendance of unwilling witnesses; the relative means of the parties; a

forum's familiarity with the governing law; and the weight accorded a plaintiff's choice of

forum. *See, e.g., Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); *see*

*Adstep, Inc. v. Freeman Decorating Co.*, No. 3:02 CV 1002 J 21HTS, 2003 WL 25276323, at

*9 (M.D. Fla. Sept. 16, 2003). The balance of these factors weighs heavily in favor of

transferring this action to the District of Delaware.

### 1.     Trial efficiency and the interests of justice favor transfer.

Trial efficiency and the interests of justice are better served by transfer to

Delaware. This is an action for patent infringement in which EPC asserts that Defendants

infringe the '191 patent. Because this Court does not have jurisdiction over SIP[6], it is unable to

dispose of the threshold issue of which of EPC or SIP, each of whom has separately alleged that

it owns the '191 patent, has standing to maintain an action against Defendants for infringement

of the '191 patent. Resolving the issue of standing to sue is fundamental to any action. *Allen v.*

*Wright*, 468 U.S. 737, 750 (1984) (indicating Article III of the Constitution requires the litigant

to have standing in order "to invoke the power of a federal court . . . ."). That is particularly the

case here, where EPC refers to the communications in which SIP claimed to have acquired the

'191 patent in its complaint and alleges that these communications placed BAC and BANA on

notice of the patent. First Am. Compl. ¶ 5. Problems posed by the inability to implead potential

third parties such as those necessary to fully resolve the issues presented by the claims "clearly

support" litigating the case in the transferee district and have been found to be "a determinative

---

[6]     BANA and BAC note that Visa is also contesting personal jurisdiction. *See* Visa U.S.A.
Inc.'s Motion to Dismiss, or, in the Alternative, Transfer Venue.

11

factor" requiring transfer. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259 (1981); *Schmidt v. Leader Dogs for the Blind, Inc.*, 544 F. Supp. 42, 47 (D.C. Pa. 1982) ("Defendant's inability to implead or cross-claim herein against the medical defendants dismissed from this lawsuit is a determinative factor. All claims should be resolved in one trial; this can occur only in Michigan.").

        In addition, the interests of justice and judicial economy strongly favor transfer. Although the reverse is not the case given that Delaware is positioned to resolve the threshold issues of patent ownership and standing to sue, the issues in this action are identical to the issues to be decided in the declaratory judgment action filed Delaware in by BANA. The Delaware action concerns the same patent as this action and the alleged infringement of the same "Keep The Change" system is at issue in both actions. Moreover, "if the [Delaware] litigation results in a finding of non-infringement, that decision's collateral estoppel effect may very well be dispositive with respect to the present case." *Leviton Manuf. Co., Inc. v. Interline Brands Inc.*, No. 3:05-cv-123-J-33MCR, 2006 WL 2523137, at *2 (M.D. Fla. Aug. 30, 2006). Under these circumstances, transfer would serve the public and private interests in avoiding duplicative litigations—the possibility of which would lead to a waste of judicial resources and possible conflicting judgments. *See Adstep, Inc.*, 2003 WL 25276323, at *10 ("[t]ransfer of the entire case will allow the parties to avoid duplicative litigation and inconsistent results"). As this Court stated in *Adstep*, "why allow two courts to decide similar issues when one court can decide these issues more efficiently?" *Id.* This is especially true in a patent case like this. "Piecemeal litigation in the complex and technical area of patent and trademark law is especially undesirable. Rather, all of the parties' related patent and trademark infringement claims should be decided in the same court." *Smiths Indus. Med. Sys. v. Ballard Med. Prods.*,

12

728 F. Supp. 6, 7 (D. D.C. 1989); *Narco Avionics v. Sportsman's Mkt., Inc.*, Civ.A. No. 90-

8056, 1992 WL 74192, at *2 (E.D. Pa. 1992) (interest in trying all related issues in a single

action "is particularly germane to a patent case").

      2.    **The convenience of the parties and witnesses favors transfer.**

     "Consideration of the interest of justice, which includes judicial economy, 'may

be determinative to a particular transfer motion, even if the convenience of the parties and

witnesses might call for a different result.'" *Regents of University of California v. Eli Lilly &

Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (internal citations omitted). Nevertheless, the

convenience of the parties and witnesses also weighs in favor of transferring this action to the

District of Delaware. In deciding a motion to transfer, the convenience of non-party witnesses

takes precedence over the convenience of party witnesses. *See Cellularvision Tech. &

Telecomm., L.P. v. Cellco P'ship*, No. 06-60666-CIV, 2006 WL 2871858, at *3 (S.D. Fla. 2006)

("The convenience of non-party witnesses is an important, if not the most important, factor in

determining whether a motion for transfer should be granted."); *The Connecticut Indem. Co. v.

Palivoda*, No. 8:04CV1044T-24MSS, 2004 WL 3661069, at *6 (M.D. Fla. 2004) (considering

determinative of motion to transfer the factors that "when the witnesses, although in another

district, are employees of a party and their presence can be obtained by that party [and where

there is no showing that] witnesses will be unwilling to testify and that compulsory process

would be necessary."); *see generally*, 74 A.L.R.2d 16, § 16(b).

     In this case, the non-party witnesses will likely include employees of SIP, whose

principal place of business is in New York, which is much closer to Delaware than to Florida.

They will also include individuals who were involved in the prosecution of the '191 patent,

including members of the Leo Stanger firm in New Jersey, as well as the inventor of the patent

13

CH\927525.8

himself, who, at least at the time he applied for the patent, was also residing in New Jersey. Also, until recently, EPC was located in New Jersey. *See* First. Am. Compl. ¶¶ 1-2, Ex. B (stating that "Old EPC" was a New Jersey corporation); '191 patent (identifying assignee as "Every Penny Counts, Inc., Red Bank, N.J."). Therefore, it is much more likely that witnesses and relevant information are located in New Jersey, close to Delaware, than in Florida. Indeed, other than the filing of this suit and the recent move of EPC from New Jersey to Florida, it appears that the facts of this case have no connection to Florida at all.

The fact that EPC recently relocated to Florida does not change the result. EPC alleges that it acquired the patent from prior entities, none of whom are alleged to have any connection to Florida. A venue does not become instantly optimal because the plaintiff moves there after events took place elsewhere.

### 3. The availability of process to compel attendance of witnesses favors transfer.

As a related matter, it is much more likely that any unwilling witnesses could be compelled to attend hearings, depositions, and trial if this case were litigated in Delaware than if it remained in Florida. Under Rule 45(b)(2) of the Federal Rules of Civil Procedure, "a subpoena may be served at any place within the district of the court by which it is issued or at any place without the district that is within 100 miles of the place of the deposition, hearing, [or] trial, ...specified in the subpoena." Given that the Leo Stanger firm is located in New Jersey and SIP's principal place of business is located in New York, it is much more likely that their respective employees are subject to being subpoenaed within the territorial restrictions of the Rule. Along the same lines, these individuals would be much more conveniently deposed by Delaware counsel than Florida counsel.

14

CH\927525.8

4.    **The locus of operative facts favors transfer.**

The location of the operative facts in this case also favors transferring this action

to the District of Delaware, as the majority of factual events are concentrated geographically in

the Northeastern part of the United States. As mentioned above, the named inventor of the '191

patent, Bertram Burke, was a resident of Seabright, New Jersey when he applied for the '191

patent. *See* '191 patent. Also, on its face, the '191 patent indicates it was assigned to Old EPC,

which was incorporated in New Jersey and had its principal place of business in Red Bank, New

Jersey until late 2004. SIP, which represented to BANA that it owned the '191 patent, was also

incorporated in Delaware with a principal place of business in New York. All of these operative

facts involve locations close to Delaware.

In contrast, no operative facts in this case occurred in or around Florida. The

KTC program is a banking deposit savings product tied to debit cards provided by BANA to its

customers. The KTC program is administered by BANA out of Charlotte, North Carolina. Wilk

Decl. ¶ 5. The cards that are used by customers who participate in KTC are also issued by

BANA in North Carolina. *Id.* ¶ 6. Indeed, all of the processing that occurs with respect to KTC

occurs outside of Florida. *Id.* ¶ 7. Therefore, the locus of operative facts factor strongly favors

transfer. *See Broadcast Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, 79 U.S.P.Q.2d

1603, 1605 (D.C. Cal. 2006) ("In this case, the operative facts which form the basis for the

allegations in Plaintiffs' FAC occurred in the Southern District of New York, as the inventor of

the patent at issue resides in New York . . . . Unlike the Southern District of New York, the

forum chosen by Plaintiffs lacks a significant connection to the activities alleged in the FAC and

simply has no particular interest in the subject matter of this action.").

15

5.     **Transfer to Delaware would not prejudice EPC.**

If this case were transferred to Delaware, the parties' patent dispute would be in

very capable hands. Because so many corporations, like EPC, choose Delaware as their corporate

home and thereby subject themselves to the jurisdiction of the District of Delaware, that court

has handled a disproportionate share of patent litigation and has developed an expertise in

handling patent cases. As a result, the District of Delaware has developed procedures

specifically designed to ensure that patent infringement actions will be litigated efficiently. For

example, "given [its] significant docket of complex intellectual property cases," the court in

Delaware has appointed  Special Masters to "serve at the pleasure of the Judges of the Court" in

achieving the "prompt and efficient administration of justice in intellectual property cases to,

*inter alia,* manage discovery, conduct hearings on discovery disputes and rule on same, rule on

non-dispositive pretrial motions, and facilitate settlement." *See Sep. 15, 2004 Order, In re*

*Procedures to Govern the Appointment of Special Masters to Hear Discovery Disputes in*

*Intellectual Property Cases* (Ex. E). In addition, for example, Chief Judge Robinson has

promulgated special guidelines for the use of legal experts in patent cases. *See Guidelines:*

*Legal Expert Testimony in Patent Cases* (Ex. F); *see also, Uniform Jury Instructions for Patent*

*Cases in the United States District of Delaware* (March 1993) (Ex. G).

The Delaware case has been assigned to the Honorable Judge Sleet, who has

handled almost three hundred patent cases and who has developed specific procedures reflected

in his scheduling orders to administer such actions. For example, Judge Sleet's Scheduling

Orders routinely include deadlines by which a defendant shall inform a plaintiff whether it

intends to rely upon advice of counsel as a defense to willful infringement and by which it must

produce such opinions. *See, e.g., Rule 16 Scheduling Order, Colgate-Palmolive Co. v. Ranir,*

16

CH\927525.8

41567.1

*L.L.C.*, CA No. 06-417-GMS (D. Del.) (Ex. H); *Rule 16 Scheduling Order, Merck & Co., Inc. v. Apotex*, C.A. No. 06-230 (GMS) (D. Del.) (Ex. I). They also include specific procedures for pre-*Markman* discovery, including deadlines by which parties must exchange lists of terms to be construed and their proposed constructions, as well as deadlines by which the parties must compile a joint claim construction report. *Id.* Finally, it appears that a complex patent case before Judge Sleet routinely can be tried within 20-21 months from filing. *Id.*

Given the court's expertise in handling patent cases and the special procedures it has in place to assist their efficient resolution, EPC will not be prejudiced by the transfer of this case to Delaware. Significantly, the Assignment Agreement attached as Exhibit B to EPC's complaint, which purports to transfer the '191 patent from "Every Penny Counts, Inc. (NJ Corporation)" to EPC, expressly states that it "shall be governed by and construed in accordance with the domestic laws of the [sic] Delaware." As explained above, ownership of the '191 patent is at issue and to the extent that the transfer agreement need be construed (as seems likely given the inconsistent ownership assertions made by EPC and SIP), the Court most experienced with the construction of the domestic laws of the state of Delaware is the District of Delaware. EPC could have chosen the laws of its new geographical home, Florida, to govern the attempted assignment of the '191 patent, but it did not. Instead it chose the law of its corporate home and should not be heard to complain that Delaware is not a suitable forum to adjudicate ownership, infringement and validity of that patent. *See, e.g., Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962, 965 (D. Del. 1993) (finding that in choosing Delaware as its legal home, a company can not complain that another party has decided to sue it in Delaware). Thus, the District of Delaware's expertise in the governing law and EPC's previous selection of Delaware as its preferred forum, combined with the facts of this case where Delaware is the only

17

forum that can obtain jurisdiction over all desirable parties, strongly indicate that Delaware is the

right forum for this action.

> **6.     The weight accorded a plaintiff's choice of forum does not outweigh the other factors.**

"In the usual case, plaintiff's choice of forum is entitled to a measure of

deference.  However, less deference is accorded in cases where the chosen forum lacks any

significant connection with the claim." *Nolan Helmets S.p.A. v. Fulmer Helmets Inc.*, 37

U.S.P.Q.2d 1351, 1352 (S.D. Fla. 1995) (transferring patent infringement action against a

corporation based in another state that distributed the accused product in the forum state).  This

case has no connection to Florida, outside of EPC's allegation that it currently operates in

Florida.  There is no indication that any of these operations are relevant to the issues to be

resolved in this case and EPC has alleged no such connection.

> **7.     The remaining factors are neutral.**

The remaining factors that are considered in connection with a motion to transfer

under 28 U.S.C. § 1404(a) are neutral.  All parties to this case are corporations. Therefore, any

difference in cost between conducting litigation in Delaware as opposed to Florida presumably

will not be the cause of any financial hardship. *See Aeroquip Corp. v. Deutsch Co.*, 887 F. Supp.

293, 295 (S.D. Ga. 1995) (granting transfer, "the Court acknowledges the relative ease with

which major corporations can transport information, materials, and witnesses several thousand

miles."). Similarly, because the accused system was developed and is controlled outside of

Delaware or Florida, "[t]he bulk of the evidence in dispute is likely to come from Defendants[']

documents," located in North Carolina. *See Jewelmasters, Inc.*, 840 F. Supp. at 896. Thus, "the

location of relevant documents and the relative ease of access to sources of proof" do not weigh

in favor of either jurisdiction. *See id.*  Therefore, the preceding factors are neutral.

18

## V.    CONCLUSION

Due to EPC's failure to allege any facts that would support a claim for patent infringement against BANA, this action should be dismissed as to BANA pursuant to Rule 12(b)(6). Moreover, based upon this Court's inability to gain jurisdiction over SIP, the Delaware action is the only action situated to dispose of all the issues in these two actions. Moreover, the § 1404(a) factors weigh heavily in favor of transferring this action to the District of Delaware. Accordingly, this case should be transferred to the District of Delaware.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished **via electronic filing and overnight delivery** this 6th day of April 2007, to Counsel for Plaintiff, Harvey S. Kauget and Karl J. Brandes, Phelps Dunbar, LLP, 100 South Ashley Drive, Suite 1900, Tampa, Florida 33602-5311 and **via electronic filing only** to Brent B. Barriere, David L. Patron and Harry M. Barton, Phelps Dunbar LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana 70130.

/s/ James S. Grodin
James S. Grodin
Florida Bar No. 0655181
jgrodin@foley.com
Anat Hakim
ahakim@foley.com
Florida Bar No. 0018127
**FOLEY & LARDNER LLP**
111 North Orange Avenue, Suite 1800
Orlando, FL 32801-2386
Telephone: (407) 423-7656
Facsimile: (407) 648-1743

Attorneys for Defendants
Bank of America Corporation and Bank of
America, N.A.

19

CH\927525.8

Exhibit 16

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

**PETSCHAUER and FRANCISCO**

CER11FIED PUBLIC ACCOUNTANTS

215 Morris Avenue

Spring Lake, New Jersey 07762

TEL: (732) 449-0700

FAX: (732) 449-1777

FREDERICK J. PEfSCHAUER, CPA

PAULA. FRANCISCO, CPA

Every Penny Counts, Inc
Cape Coral, Florida

We have compiled the accompanying balance sheet of
Every Penny Counts, Inc as of December 31, 2006 and the related
statement of income and accumulated deficit for the year then ended,
in accordance with Statements on Standards for Accounting and Review
Services issued by the American Institute of
Certified Public Accountants.

A compilation is limited to presenting in the form of financial
statements information that is the representation of management. We
have not audited or reviewed the accompanying financial statements
and, accordingly, do not express an opinion or any other form of
assurance on them.

Management has elected to omit substantially all of the
disclosures, and the statement of cash flows required by generally
accepted accounting principles. If the omitted disclosures and the
statement of cash flows were included in the financial statements,
they might influence the user's conclusions about the company's
financial position, results of operations and it's cash flows.
Accordingly, these financial statements are not designed for those
who are not informed about such matters.

February 10,  2007                   *Petschauer + Francisco*

1

Every Penny Counts, Inc
Balance Sheet
December 31, 2006
(See Accountants' Compilation Report)

ASSETS

Current assets

| | |
|---|---|
| Cash | $ 199,852 |
| Total current assets | 199,852 |
| Equipment | 37,023 |
| less accumulated depreciation | 34,007 |
| Net Value | 3,016 |
| Deferred patent and other costs | 15,000 |
| Total assets | $ 217,868 |

LIABILITIES and STOCKHOLDERS' EQUITY

Current liabilities

| | |
|---|---|
| Legal fees payable | $ 40,000 |
| Florida Corporation tax payable | 1,420 |
| Total current liabilities | 41,420 |
| Payable to stockholder | 37,776 |
| Total liabilities | 79,196 |

Stockholders' equity

| | |
|---|---|
| Common stock (16,000,000 shares authorized; 16,000,000 shares issued and outstanding) | 473,360 |
| Accumulated deficit | (334,688) |
| Total stockholders' equity | 138,672 |
| Total liabilities and stockholders' equity | $ 217,868 |

2

Every Penny Counts, Inc
Statement of Income and Accumulated Deficit
for the year ended
December 311 2006
(See Accountants' Compilation Report)

| | |
|---|---:|
| Patent royalty income | $ 500,000 |
| Total income | 500,000 |
| Expenses | |
| Officers compensation | 140,000 |
| Payroll taxes | 8,215 |
| Auto | 6,439 |
| Bank fees | 516 |
| Consultant | 9,985 |
| Insurance | 27,295 |
| Internet | 440 |
| Office expense | 20,203 |
| Professional fees | 178,830 |
| Rent | 23,603 |
| Telephone | 3,688 |
| Travel and entertainment | 39,368 |
| Membership fees | 4,858 |
| Utilities | 2,235 |
| Patent costs | 1,700 |
| Total expenses | 467,525 |
| Net income before provision for state income taxes | 32,475 |
| Provision for state income taxes | 1,420 |
| Net income | 31,055 |
| Accumulated deficit, beginning of year | (365,743) |
| Accumulated deficit, end of year | $(334,688) |

3

Exhibit 17

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

**Florida Department of State, Division of Corporations**

# Corporations Online
*www.sunbiz.org*    **Public Inquiry**

## Foreign Profit

### BANK OF AMERICA CORPORATION

#### PRINCIPAL ADDRESS
100 N TRYON ST
CHARLOTTE NC 28255
Changed 04/24/2002

#### MAILING ADDRESS
401 N TRYON ST
NC1-021-02-20
CHARLOTTE NC 28255
Changed 05/01/2001

| Document Number | FEI Number | Date Filed |
|---|---|---|
| F98000005807 | 560906609 | 10/16/1998 |
| **State** | **Status** | **Effective Date** |
| DE | ACTIVE | NONE |
| **Last Event** | **Event Date Filed** | **Event Effective Date** |
| REINSTATEMENT | 11/28/2000 | NONE |

## Registered Agent

| Name & Address |
|---|
| C T CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION FL 33324 |

## Officer/Director Detail

| Name & Address | Title |
|---|---|
| LEWIS, KENNETH D
401 N TRYON ST NC1-021-02-20
CHARLOTTE NC 28255 | P/D |
| COKER, CHARLES W
401 N TRYON ST NC1-021-02-20
CHARLOTTE NC 28255 | DIR |

**EXHIBIT**

tabbies*
_____

| | |
|---|---|
| MROZ, GREG S<br>401 N TRYON ST NC1-021-02-20<br><br>CHARLOTTE NC 28255 | SVP |
| MOSTYN, WILLIAM J III<br>401 N TRYON ST NC1-021-02-20<br><br>CHARLOTTE NC 28255 | SEC |
| DD MOLINA, ALVARO G<br>401 N TRYON ST NC1-021-02-20<br><br>CHARLOTTE NC 28255 | CFO |
| SPANGLER, MEREDITH R<br>401 N TRYON ST NC1-021-02-20<br><br>CHARLOTTE NC 28255 | D |

## Annual Reports

| Report Year | Filed Date |
|---|---|
| 2005 | 01/05/2005 |
| 2006 | 04/18/2006 |
| 2007 | 04/29/2007 |

| Previous Filing | Return to List | Next Filing |
|---|---|---|

View Events
View Name History

## Document Images

Listed below are the images available for this filing.

04/18/2006 -- ANNUAL REPORT
01/05/2005 -- ANNUAL REPORT
04/20/2004 -- ANNUAL REPORT
02/13/2003 -- ANNUAL REPORT
04/24/2002 -- ANNUAL REPORT
05/01/2001 -- ANNUAL REPORT
11/28/2000 -- REINSTATEMENT
06/11/1999 -- Name Change
05/19/1999 -- ANNUAL REPORT
10/16/1998 -- Foreign Profit

**THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT**

| Corporations Inquiry | Corporations Help |
|---|---|

Exhibit 18

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

## Bank of America, National Association

101 South Tryon Street
Charlotte, NC 28255

Bank Branch Offices

| | | | |
|---|---|---|---|
| Total Domestic Offices: | 5785 | Total Foreign Offices: | 225 |
| Total Offices: | 6010 | Primary Federal Regulator: | Office of the Comptroller of the Currency |

U.S. Offices

| State | Number of Offices | State | Number of Offices |
|---|---|---|---|
| Arizona | 172 | Arkansas | 50 |
| California | 993 | Connecticut | 175 |
| Delaware | 2 | District Of Columbia | 30 |
| Florida | 679 | Georgia | 228 |
| Idaho | 21 | Illinois | 73 |
| Iowa | 15 | Kansas | 61 |
| Maine | 40 | Maryland | 195 |
| Massachusetts | 308 | Missouri | 130 |
| Nevada | 86 | New Hampshire | 39 |
| New Jersey | 415 | New Mexico | 53 |
| New York | 387 | North Carolina | 199 |
| Oklahoma | 45 | Oregon | 88 |
| Pennsylvania | 116 | Rhode Island | 49 |
| South Carolina | 126 | Tennessee | 87 |
| Texas | 481 | Virginia | 206 |
| Washington | 236 | | |

Questions, Suggestions & Requests

**Home   Contact Us   Search   Help   SiteMap   Forms**
**Freedom of Information Act (FOIA) Service Center   Website Policies   USA.gov**

EXHIBIT
_____

Exhibit 19

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay



FEDERAL DEPOSIT
INSURANCE CORPORATION



Advanced Search

| HOME | DEPOSIT INSURANCE | CONSUMER PROTECTION | INDUSTRY ANALYSIS | REGULATION & EXAMINATIONS | ASSET SALES | NEWS & EVENT |

## Summary of Deposits

| SOD Home | Find Office | Market Share Selection | Summary Tables | Charts and Graphs | SOD Publications | Download | Institution Directory | SOD Help |

Printer Friendly Version

Go Back
How To Save This Report

Offices and Deposits of all FDIC-Insured Institutions

## Deposit Market Share Report

Deposits as of: June 30, 2006 ▼

Sorted by: Market Share ▼

Run Report

| Selected Market | | | | | June 30, 2006 | | | | |
|---|---|---|---|---|---|---|---|---|---|
| State: | County: | City: | Zip Code: | | | | | | |
| FLORIDA | ALL | ALL | ALL | | Outside of Market | | Inside of Market | | |
| FLORIDA | ALL | ALL | ALL | | | | | | |
| Institution Name | CERT | State (Hqtrd) | Bank Class | State/ Federal Charter | No. of Offices | Deposits ($000) | No. of Offices | Deposits ($000) | Market Share |
| BANK OF AMERICA NA | 3510 | NC | N | Federal | 5,060 | 494,698,532 | 721 | 69,208,312 | 19.04% |
| WACHOVIA BANK NATIONAL ASSN | 33869 | NC | N | Federal | 2,355 | 243,015,759 | 781 | 63,332,241 | 17.43% |
| SUNTRUST BANK | 867 | GA | SM | State | 1,230 | 82,581,329 | 528 | 35,374,972 | 9.73% |
| WASHINGTON MUTUAL BANK | 32633 | NV | SA | Federal | 1,919 | 197,697,671 | 248 | 12,230,313 | 3.37% |
| AMSOUTH BANK | 26800 | AL | SM | State | 443 | 25,700,975 | 246 | 10,069,449 | 2.77% |
| COLONIAL BANK NATIONAL ASSN | 9609 | AL | N | Federal | 137 | 6,519,626 | 164 | 9,723,063 | 2.68% |
| WORLD SAVINGS BANK FSB | 27076 | CA | SA | Federal | 235 | 52,263,997 | 51 | 9,057,410 | 2.49% |
| REGIONS BANK | 12368 | AL | SM | State | 1,244 | 48,892,599 | 153 | 8,338,423 | 2.29% |
| BANKUNITED FSB | 32247 | FL | SA | Federal | 0 | 0 | 73 | 6,014,740 | 1.66% |
| OHIO SAVINGS BANK FSB | 29776 | OH | SA | Federal | 41 | 5,313,224 | 15 | 5,875,358 | 1.62% |
| FIFTH THIRD BANK | 993 | MI | SM | State | 658 | 33,001,628 | 91 | 5,386,870 | 1.48% |
| CITIBANK FSB | 28251 | VA | SA | Federal | 101 | 18,405,254 | 39 | 5,183,058 | 1.43% |
| OCEAN BANK | 24156 | FL | NM | State | 0 | 0 | 21 | 4,954,062 | 1.36% |
| BANKATLANTIC | 30559 | FL | SA | Federal | 0 | 0 | 80 | 3,855,103 | 1.06% |
| BRANCH BANKING&TRUST CO | 9846 | NC | NM | State | 819 | 47,420,841 | 99 | 3,825,292 | 1.05% |
| MERCANTILE BANK | 27515 | FL | NM | State | 0 | 0 | 69 | 3,583,405 | 0.99% |
| FIDELITY FEDERAL BANK&TRUST | 30614 | FL | SA | Federal | 0 | 0 | 52 | 3,386,666 | 0.93% |
| NORTHERN TR BANK OF FL NA | 24185 | FL | N | Federal | 0 | 0 | 29 | 3,255,227 | 0.90% |
| COMMERCEBANK NATIONAL ASSN | 22953 | FL | N | Federal | 2 | 190,775 | 14 | 3,063,862 | 0.84% |
| EVERBANK | 34775 | FL | SA | Federal | 0 | 0 | 4 | 3,026,895 | 0.83% |
| RIVERSIDE NB OF FLORIDA | 24067 | FL | N | Federal | 0 | 0 | 53 | 2,545,615 | 0.70% |
| THIRD FS&LA OF CLEVELAND | 30012 | OH | SA | Federal | 26 | 4,912,346 | 14 | 2,497,009 | 0.69% |
| HARBOR FEDERAL SAVINGS BANK | 29307 | FL | SA | Federal | 0 | 0 | 40 | 2,247,624 | 0.62% |
| CITY NB OF FLORIDA | 20234 | FL | N | Federal | 0 | 0 | 19 | 2,067,566 | 0.57% |
| COMPASS BANK | 19048 | AL | SM | State | 372 | 20,781,077 | 42 | 2,026,844 | 0.56% |
| R-G CROWN BANK | 32337 | FL | SA | Federal | 3 | 139,286 | 30 | 1,906,128 | 0.52% |
| CAPITAL CITY BANK | 9622 | FL | SM | State | 13 | 420,438 | 55 | 1,743,602 | 0.48% |
| SEACOAST NATIONAL BANK | 131 | FL | N | Federal | 0 | 0 | 41 | 1,635,079 | 0.45% |
| ORION BANK | 22427 | FL | SM | State | 0 | 0 | 17 | 1,511,496 | 0.42% |
| MELLON UNITED NATIONAL BANK | 21837 | FL | N | Federal | 0 | 0 | 15 | 1,507,106 | 0.41% |
| RAYMOND JAMES BANK FSB | 33893 | FL | SA | Federal | 0 | 0 | 1 | 1,448,404 | 0.40% |
| HSBC BANK USA NATIONAL ASSN | 57890 | DE | N | Federal | 421 | 74,219,782 | 15 | 1,368,538 | 0.38% |
| PEOPLES FIRST COMMUNITY BANK | 32167 | FL | SA | Federal | 0 | 0 | 32 | 1,327,202 | 0.37% |
| BANCO POPULAR NORTH AMERICA | 34967 | NY | SM | State | 124 | 7,348,503 | 18 | 1,218,157 | 0.34% |
| RBC CENTURA BANK | 33184 | NC | SM | State | 238 | 9,070,697 | 37 | 1,193,391 | 0.33% |
| LYDIAN PRIVATE BANK | 35356 | FL | SA | Federal | 0 | 0 | 3 | 1,170,043 | 0.32% |
| SAFRA NB OF NEW YORK | 26876 | NY | N | Federal | 1 | 1,800,932 | 2 | 1,076,958 | 0.30% |



EXHIBIT

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| TIB BANK | 21435 | FL | NM | State | 0 | 0 | 17 | 1,020,936 | 0.28% |
| GIBRALTAR PRIVATE B&T CO | 32212 | FL | SA | Federal | 0 | 0 | 6 | 935,503 | 0.26% |
| BANK OF PENSACOLA | 20830 | FL | NM | State | 0 | 0 | 11 | 927,966 | 0.26% |
| M&I MARSHALL&ILSLEY BANK | 1020 | WI | SM | State | 285 | 25,739,074 | 12 | 879,709 | 0.24% |
| COMMERCIAL BANK OF FLORIDA | 22813 | FL | SM | State | 0 | 0 | 14 | 877,895 | 0.24% |
| FLORIDA COMMUNITY BANK | 5672 | FL | NM | State | 0 | 0 | 10 | 858,495 | 0.24% |
| GREAT FLORIDA BANK | 57719 | FL | NM | State | 0 | 0 | 18 | 857,428 | 0.24% |
| SYNOVUS BANK OF TAMPA BAY | 34172 | FL | NM | State | 0 | 0 | 13 | 820,852 | 0.23% |
| TOTALBANK | 21468 | FL | NM | State | 0 | 0 | 14 | 812,238 | 0.22% |
| PROSPERITY BANK | 24963 | FL | NM | State | 0 | 0 | 20 | 749,989 | 0.21% |
| CITRUS&CHEMICAL BANK | 17283 | FL | NM | State | 0 | 0 | 10 | 731,620 | 0.20% |
| IRONSTONE BANK | 34340 | FL | SA | Federal | 38 | 918,809 | 12 | 713,549 | 0.20% |
| BANK OF TAMPA | 21031 | FL | NM | State | 0 | 0 | 9 | 709,287 | 0.20% |
| INTERVEST NATIONAL BANK | 35011 | NY | N | Federal | 1 | 795,132 | 5 | 706,339 | 0.19% |
| U S CENTURY BANK | 57369 | FL | NM | State | 0 | 0 | 12 | 701,313 | 0.19% |
| CITIZENS FIRST BANK | 33440 | FL | NM | State | 0 | 0 | 8 | 668,384 | 0.18% |
| UNITED HERITAGE BANK | 57108 | FL | NM | State | 0 | 0 | 11 | 630,822 | 0.17% |
| WHITNEY NATIONAL BANK | 18538 | LA | N | Federal | 127 | 7,161,599 | 23 | 611,798 | 0.17% |
| CNLBANK | 34427 | FL | NM | State | 0 | 0 | 6 | 605,043 | 0.17% |
| VANGUARD BANK&TRUST CO | 11290 | FL | NM | State | 0 | 0 | 12 | 589,294 | 0.16% |
| FIRSTBANK FLORIDA | 32049 | FL | SA | Federal | 0 | 0 | 11 | 585,520 | 0.16% |
| COAST BANK OF FLORIDA | 35397 | FL | NM | State | 0 | 0 | 20 | 548,362 | 0.15% |
| BAC FLORIDA BANK | 21265 | FL | NM | State | 0 | 0 | 1 | 547,763 | 0.15% |
| FIRST COMMERCIAL BANK OF FL | 34965 | FL | SM | State | 0 | 0 | 8 | 546,276 | 0.15% |
| CENTURY BANK A FSB | 32267 | FL | SA | Federal | 0 | 0 | 9 | 541,130 | 0.15% |
| INDIAN RIVER NATIONAL BANK | 26018 | FL | N | Federal | 0 | 0 | 9 | 540,964 | 0.15% |
| FIRST STB OF THE FL KEYS | 17509 | FL | NM | State | 0 | 0 | 13 | 522,992 | 0.14% |
| TRANSATLANTIC BANK | 25580 | FL | SM | State | 0 | 0 | 7 | 500,961 | 0.14% |
| FEDERAL TRUST BANK | 32580 | FL | SA | Federal | 0 | 0 | 7 | 497,423 | 0.14% |
| PENINSULA BANK | 26563 | FL | NM | State | 0 | 0 | 11 | 475,586 | 0.13% |
| COCONUT GROVE BANK | 8018 | FL | SM | State | 0 | 0 | 4 | 468,280 | 0.13% |
| WAUCHULA STATE BANK | 8021 | FL | NM | State | 0 | 0 | 7 | 466,555 | 0.13% |
| BEACH COMMUNITY BANK | 57131 | FL | NM | State | 0 | 0 | 8 | 450,580 | 0.12% |
| FLORIDA CHOICE BANK | 34954 | FL | NM | State | 0 | 0 | 6 | 439,431 | 0.12% |
| BANK LEUMI USA | 19842 | NY | NM | State | 11 | 2,890,847 | 3 | 430,384 | 0.12% |
| FIRST FSB OF FLORIDA | 31313 | FL | SA | Federal | 0 | 0 | 8 | 418,989 | 0.12% |
| RIVERSIDE BK GULF COAST | 34563 | FL | SM | State | 0 | 0 | 13 | 406,195 | 0.11% |
| FIRST NATIONAL BANK&TRUST CO | 35217 | FL | N | Federal | 0 | 0 | 3 | 393,617 | 0.11% |
| JPMORGAN CHASE BANK NA | 628 | OH | N | Federal | 2,669 | 434,361,013 | 10 | 390,987 | 0.11% |
| GRAND BANK&TRUST OF FLORIDA | 34776 | FL | NM | State | 0 | 0 | 5 | 383,153 | 0.11% |
| COMMUNITY BANK OF FL INC | 21258 | FL | NM | State | 0 | 0 | 13 | 381,243 | 0.10% |
| INTERNATIONAL BK OF MIAMI NA | 19040 | FL | N | Federal | 0 | 0 | 2 | 380,402 | 0.10% |
| FIRST NB OF FLORIDA | 25155 | FL | N | Federal | 0 | 0 | 8 | 376,601 | 0.10% |
| INTERCREDIT BANK NA | 25258 | FL | N | Federal | 0 | 0 | 5 | 366,729 | 0.10% |
| WAKULLA BANK | 21777 | FL | NM | State | 0 | 0 | 15 | 358,797 | 0.10% |
| GULFSTREAM BUSINESS BANK | 35092 | FL | NM | State | 0 | 0 | 2 | 357,338 | 0.10% |
| BUSEY BANK NATIONAL ASSN | 34642 | FL | N | Federal | 0 | 0 | 8 | 354,050 | 0.10% |
| FIRST STATE BANK | 27364 | FL | NM | State | 0 | 0 | 6 | 352,158 | 0.10% |
| ATLANTIC COAST BANK | 45826 | GA | SA | Federal | 4 | 206,147 | 8 | 348,361 | 0.10% |
| HELM BANK | 32718 | FL | NM | State | 0 | 0 | 1 | 346,466 | 0.10% |
| BANK OF ST PETERSBURG | 26280 | FL | SM | State | 0 | 0 | 6 | 339,813 | 0.09% |
| FIRST NB OF CENTRAL FLORIDA | 26297 | FL | N | Federal | 0 | 0 | 6 | 338,095 | 0.09% |
| BANK OF FLORIDA SOUTHWEST | 35106 | FL | NM | State | 0 | 0 | 3 | 332,254 | 0.09% |
| UNITED SOUTHERN BANK | 15465 | FL | NM | State | 0 | 0 | 12 | 328,851 | 0.09% |
| FIRST NATIONAL BANK&TRUST | 17580 | FL | N | Federal | 0 | 0 | 13 | 323,936 | 0.09% |
| FIRST GUARANTY B&T JACKSONVI | 16579 | FL | NM | State | 0 | 0 | 6 | 322,868 | 0.09% |
| FIRST SOUTHERN BANK | 27044 | FL | SM | State | 0 | 0 | 6 | 319,325 | 0.09% |
| FIRST FLORIDA BANK | 35105 | FL | SM | State | 0 | 0 | 4 | 317,565 | 0.09% |
| EASTERN NATIONAL BANK | 20026 | FL | N | Federal | 0 | 0 | 5 | 315,786 | 0.09% |
| CENTERSTATE BANK OF FL NA | 33555 | FL | N | Federal | 0 | 0 | 12 | 314,598 | 0.09% |
| PUBLIC BANK | 23410 | FL | NM | State | 0 | 0 | 8 | 311,288 | 0.09% |
| COMMUNITY BANK OF NAPLES NA | 35088 | FL | N | Federal | 0 | 0 | 5 | 311,230 | 0.09% |
| ISRAEL DISCOUNT BANK OF NY | 19977 | NY | NM | State | 4 | 4,697,531 | 3 | 310,932 | 0.09% |
| STERLING BANK | 32536 | FL | SM | State | 0 | 0 | 4 | 301,531 | 0.08% |
| TERRABANK NATIONAL ASSN | 26442 | FL | N | Federal | 0 | 0 | 3 | 296,004 | 0.08% |
| FLORIDA CAPITAL BANK NA | 26323 | FL | N | Federal | 0 | 0 | 8 | 292,132 | 0.08% |
| FIRST CMTY BANK OF AMERICA | 32270 | FL | SA | Federal | 0 | 0 | 6 | 292,025 | 0.08% |
| PACIFIC NATIONAL BANK | 26299 | FL | N | Federal | 0 | 0 | 1 | 291,158 | 0.08% |

| Bank | Cert | ST | Class | Charter | | | | Deposits | Pct |
|---|---|---|---|---|---|---|---|---|---|
| TALLAHASSEE STATE BANK | 21866 | FL | NM | State | 0 | 0 | 3 | 290,207 | 0.08% |
| TRUSTMARK NATIONAL BANK | 4988 | MS | N | Federal | 150 | 5,927,571 | 8 | 289,898 | 0.08% |
| BANKFIRST | 27550 | FL | NM | State | 0 | 0 | 7 | 286,739 | 0.08% |
| 1ST NATIONAL BANK&TRUST | 26744 | FL | N | Federal | 0 | 0 | 8 | 285,380 | 0.08% |
| OLD FLORIDA BANK | 34801 | FL | NM | State | 0 | 0 | 4 | 283,528 | 0.08% |
| FIRST KENSINGTON BANK | 35327 | FL | NM | State | 0 | 0 | 11 | 281,251 | 0.08% |
| PREMIER BANK | 33992 | FL | NM | State | 0 | 0 | 6 | 280,170 | 0.08% |
| PREMIER AMERICAN BANK | 57147 | FL | NM | State | 0 | 0 | 3 | 279,266 | 0.08% |
| PINEBANK NATIONAL ASSN | 33437 | FL | N | Federal | 0 | 0 | 1 | 274,921 | 0.08% |
| LANDMARK BANK NATIONAL ASSN | 34832 | FL | N | Federal | 0 | 0 | 1 | 272,681 | 0.08% |
| PLATINUM BANK | 34620 | FL | NM | State | 0 | 0 | 5 | 272,677 | 0.08% |
| COMMUNITY BANK OF BROWARD | 57300 | FL | NM | State | 0 | 0 | 9 | 270,509 | 0.07% |
| FARMERS&MERCHANTS BANK | 11286 | FL | NM | State | 1 | 32,018 | 7 | 268,203 | 0.07% |
| BANK OF COMMERCE | 35451 | FL | NM | State | 0 | 0 | 2 | 266,481 | 0.07% |
| INTERAUDI BANK | 24516 | NY | NM | State | 1 | 620,224 | 1 | 266,190 | 0.07% |
| COMMUNITY B&T OF FLORIDA | 34683 | FL | NM | State | 0 | 0 | 6 | 265,969 | 0.07% |
| MARINE BANK | 33996 | FL | SM | State | 0 | 0 | 8 | 265,434 | 0.07% |
| COMERICA BANK | 983 | MI | SM | State | 379 | 42,815,972 | 8 | 265,298 | 0.07% |
| CYPRESS COQUINA BANK | 35108 | FL | NM | State | 0 | 0 | 5 | 265,268 | 0.07% |
| ESPIRITO SANTO BANK | 21220 | FL | NM | State | 0 | 0 | 1 | 263,388 | 0.07% |
| HIGHLANDS INDEPENDENT BANK | 26428 | FL | NM | State | 0 | 0 | 5 | 260,567 | 0.07% |
| COMMERCE BANK NATIONAL ASSN | 21140 | PA | N | Federal | 341 | 34,215,979 | 8 | 259,919 | 0.07% |
| BANKTRUST | 26979 | FL | NM | State | 0 | 0 | 8 | 259,212 | 0.07% |
| JACKSONVILLE BANK | 34941 | FL | NM | State | 0 | 0 | 5 | 256,592 | 0.07% |
| FLORIDA GULF BANK | 57085 | FL | NM | State | 0 | 0 | 5 | 250,540 | 0.07% |
| FIRST FEDERAL BK OF N FL | 28886 | FL | SA | Federal | 0 | 0 | 8 | 250,408 | 0.07% |
| MERCHANTS&SOUTHERN BANK | 18116 | FL | NM | State | 0 | 0 | 10 | 250,206 | 0.07% |
| SUN AMERICAN BANK | 27126 | FL | SM | State | 0 | 0 | 8 | 249,872 | 0.07% |
| COASTAL COMMUNITY BANK | 9619 | FL | NM | State | 0 | 0 | 7 | 245,623 | 0.07% |
| INTERNATIONAL FINANCE BANK | 24823 | FL | NM | State | 0 | 0 | 4 | 244,940 | 0.07% |
| BAY CITIES BANK | 35066 | FL | NM | State | 0 | 0 | 6 | 239,994 | 0.07% |
| CENTERSTATE BANK WEST FL NA | 32699 | FL | N | Federal | 0 | 0 | 8 | 239,854 | 0.07% |
| FIRST CITY BANK OF FLORIDA | 16748 | FL | NM | State | 0 | 0 | 5 | 239,447 | 0.07% |
| FIRST COMMUNITY BANK | 27066 | FL | SM | State | 0 | 0 | 10 | 238,884 | 0.07% |
| BANK OF FLORIDA | 57360 | FL | NM | State | 0 | 0 | 3 | 236,809 | 0.07% |
| HEMISPHERE NATIONAL BANK | 22846 | FL | N | Federal | 0 | 0 | 5 | 235,195 | 0.06% |
| BAY BANK&TRUST CO | 15169 | FL | NM | State | 0 | 0 | 5 | 232,099 | 0.06% |
| CITIZENS BANK&TRUST | 5673 | FL | NM | State | 0 | 0 | 8 | 231,816 | 0.06% |
| PEOPLES CMTY BK W COAST | 35144 | FL | NM | State | 0 | 0 | 3 | 229,580 | 0.06% |
| LANDMARK BANK OF FLORIDA | 35244 | FL | SM | State | 0 | 0 | 5 | 228,539 | 0.06% |
| CENTERSTATE BANK CNTL FL NA | 27581 | FL | N | Federal | 0 | 0 | 6 | 226,802 | 0.06% |
| INTERAMERICAN BANK A FSB | 31823 | FL | SA | Federal | 0 | 0 | 5 | 226,378 | 0.06% |
| 1ST UNITED BANK | 35408 | FL | SM | State | 0 | 0 | 6 | 225,224 | 0.06% |
| FIDELITY BANK OF FLORIDA | 33198 | FL | N | Federal | 0 | 0 | 2 | 223,033 | 0.06% |
| LIBERTY SAVINGS BANK FSB | 32242 | OH | SA | Federal | 37 | 977,422 | 7 | 222,548 | 0.06% |
| CORNERSTONE COMMUNITY BANK | 34948 | FL | NM | State | 0 | 0 | 7 | 222,201 | 0.06% |
| SUPERIOR BANK | 17750 | AL | SA | Federal | 22 | 923,437 | 7 | 221,932 | 0.06% |
| ENCORE BANK | 30297 | TX | SA | Federal | 11 | 693,136 | 5 | 221,105 | 0.06% |
| FIRST CMTY BANK OF SW FL | 34943 | FL | NM | State | 0 | 0 | 2 | 220,733 | 0.06% |
| METRO BANK OF DADE COUNTY | 25172 | FL | SM | State | 0 | 0 | 6 | 219,277 | 0.06% |
| 1ST NB OF SOUTH FLORIDA | 3564 | FL | N | Federal | 0 | 0 | 6 | 218,327 | 0.06% |
| OCALA NATIONAL BANK | 26538 | FL | N | Federal | 0 | 0 | 3 | 217,822 | 0.06% |
| VISION BANK | 5668 | FL | NM | State | 0 | 0 | 8 | 217,344 | 0.06% |
| BANK OF INVERNESS | 5676 | FL | NM | State | 0 | 0 | 6 | 214,704 | 0.06% |
| REGENT BANK | 26713 | FL | NM | State | 0 | 0 | 7 | 212,739 | 0.06% |
| EXECUTIVE NATIONAL BANK | 20711 | FL | N | Federal | 0 | 0 | 4 | 212,549 | 0.06% |
| SIGNATURE BANK | 35234 | FL | NM | State | 0 | 0 | 7 | 211,962 | 0.06% |
| HEARTLAND NATIONAL BANK | 35052 | FL | N | Federal | 0 | 0 | 4 | 210,306 | 0.06% |
| CONTINENTAL NB OF MIAMI | 21578 | FL | N | Federal | 0 | 0 | 6 | 206,743 | 0.06% |
| FLORIDA CITIZENS BANK | 34869 | FL | NM | State | 0 | 0 | 8 | 203,404 | 0.06% |
| EAGLE NATIONAL BANK OF MIAMI | 17715 | FL | N | Federal | 0 | 0 | 4 | 202,822 | 0.06% |
| TRANSCAPITAL BANK | 35050 | FL | NM | State | 0 | 0 | 2 | 202,314 | 0.06% |
| CHARLOTTE STATE BANK | 27086 | FL | NM | State | 0 | 0 | 5 | 198,935 | 0.05% |
| INDEPENDENT BANKERS BK OF FL | 24642 | FL | SM | State | 0 | 0 | 1 | 189,958 | 0.05% |
| COMMUNITY BANK OF MANATEE | 34092 | FL | NM | State | 0 | 0 | 3 | 189,728 | 0.05% |
| FIRST NB OF SOUTH MIAMI | 17093 | FL | N | Federal | 0 | 0 | 1 | 188,727 | 0.05% |
| OCEANSIDE BANK | 34284 | FL | NM | State | 0 | 0 | 4 | 183,511 | 0.05% |
| FIRST COAST COMMUNITY BANK | 27075 | FL | NM | State | 0 | 0 | 2 | 181,245 | 0.05% |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| MONTICELLO BANK | 32472 | FL | SA | Federal | 0 | 0 | 2 | 180,860 | 0.05% |
| COLUMBIA COUNTY BANK | 5677 | FL | NM | State | 0 | 0 | 4 | 172,771 | 0.05% |
| ENTERPRISE NB OF PALM BEACH | 32917 | FL | N | Federal | 0 | 0 | 2 | 172,335 | 0.05% |
| FIRST NB OF NASSAU COUNTY | 35049 | FL | N | Federal | 0 | 0 | 1 | 171,833 | 0.05% |
| INDEPENDENT NATIONAL BANK | 27344 | FL | N | Federal | 0 | 0 | 5 | 171,713 | 0.05% |
| FIRST PRIORITY BANK | 57523 | FL | NM | State | 0 | 0 | 1 | 168,553 | 0.05% |
| FIRST BANK OF CLEWISTON | 9620 | FL | NM | State | 0 | 0 | 5 | 168,372 | 0.05% |
| SUNSHINE STATE FS&LA | 30750 | FL | SA | Federal | 0 | 0 | 5 | 165,765 | 0.05% |
| BANK OF BONIFAY | 14246 | FL | NM | State | 0 | 0 | 3 | 162,426 | 0.04% |
| BANK BREVARD | 34258 | FL | NM | State | 0 | 0 | 3 | 161,544 | 0.04% |
| FIRST BANK OF MIAMI | 34182 | FL | NM | State | 0 | 0 | 5 | 160,698 | 0.04% |
| PILOT BANK | 27045 | FL | SM | State | 0 | 0 | 6 | 155,798 | 0.04% |
| FIRST NB OF CRESTVIEW | 17557 | FL | N | Federal | 0 | 0 | 2 | 155,711 | 0.04% |
| AMERICAN NATIONAL BANK | 26398 | FL | N | Federal | 0 | 0 | 1 | 155,239 | 0.04% |
| CITIZENS BANK OF OVIEDO | 16442 | FL | NM | State | 0 | 0 | 4 | 154,204 | 0.04% |
| FIRST CITRUS BANK | 34899 | FL | NM | State | 0 | 0 | 4 | 153,660 | 0.04% |
| CENTERBANK JACKSONVILLE NA | 35542 | FL | N | Federal | 0 | 0 | 1 | 153,068 | 0.04% |
| AMERICAN BANKING CO | 20504 | GA | NM | State | 30 | 1,059,833 | 2 | 151,843 | 0.04% |
| FLAGSHIP NATIONAL BANK | 35044 | FL | N | Federal | 0 | 0 | 3 | 147,405 | 0.04% |
| PERKINS STATE BANK | 134 | FL | NM | State | 0 | 0 | 6 | 145,989 | 0.04% |
| HERITAGE BANK OF FLORIDA | 35009 | FL | NM | State | 0 | 0 | 2 | 141,406 | 0.04% |
| FIRST AMERICAN BANK NA | 34288 | FL | N | Federal | 0 | 0 | 5 | 140,796 | 0.04% |
| UNITED STATES TRUST CO NA | 34061 | NY | N | Federal | 25 | 6,801,020 | 4 | 140,146 | 0.04% |
| FIRST COML BK OF TAMPA BAY | 27583 | FL | NM | State | 0 | 0 | 2 | 140,031 | 0.04% |
| EDISON NATIONAL BANK | 34489 | FL | N | Federal | 0 | 0 | 3 | 139,927 | 0.04% |
| MARCO COMMUNITY BANK | 57586 | FL | SM | State | 0 | 0 | 1 | 139,846 | 0.04% |
| HERITAGE BANK OF NORTH FL | 26680 | FL | NM | State | 0 | 0 | 2 | 139,579 | 0.04% |
| TURNBERRY BANK | 32280 | FL | SA | Federal | 0 | 0 | 4 | 138,991 | 0.04% |
| SUNSHINE STATE CMTY BANK | 35478 | FL | NM | State | 0 | 0 | 3 | 137,222 | 0.04% |
| EQUITABLE BANK | 26903 | FL | SM | State | 0 | 0 | 5 | 136,540 | 0.04% |
| DESJARDINS BANK NA | 33565 | FL | N | Federal | 0 | 0 | 3 | 136,238 | 0.04% |
| HORIZON BANK | 35061 | FL | SM | State | 0 | 0 | 3 | 135,283 | 0.04% |
| OLDE CYPRESS COMMUNITY BANK | 28864 | FL | SA | Federal | 0 | 0 | 3 | 134,598 | 0.04% |
| FIRST PEOPLES BANK | 34870 | FL | NM | State | 0 | 0 | 4 | 134,523 | 0.04% |
| SYNOVUS BANK OF JACKSONVILLE | 57725 | FL | NM | State | 0 | 0 | 1 | 134,289 | 0.04% |
| ENGLEWOOD BANK | 27205 | FL | NM | State | 0 | 0 | 6 | 134,016 | 0.04% |
| PARK AVENUE BANK | 19797 | GA | SM | State | 15 | 724,951 | 1 | 133,996 | 0.04% |
| VALRICO STATE BANK | 27536 | FL | NM | State | 0 | 0 | 4 | 133,319 | 0.04% |
| FIRST NB OF MOUNT DORA | 3579 | FL | N | Federal | 0 | 0 | 11 | 133,083 | 0.04% |
| GULF COAST COMMUNITY BANK | 57564 | FL | NM | State | 0 | 0 | 4 | 132,132 | 0.04% |
| STONEGATE BANK | 57934 | FL | NM | State | 0 | 0 | 2 | 129,958 | 0.04% |
| MILLENNIUM BANK | 34946 | FL | NM | State | 0 | 0 | 4 | 128,289 | 0.04% |
| PALM BANK | 57456 | FL | NM | State | 0 | 0 | 3 | 127,255 | 0.04% |
| FREEDOM BANK | 57930 | FL | NM | State | 0 | 0 | 2 | 126,573 | 0.03% |
| PUTNAM STATE BANK | 27405 | FL | NM | State | 0 | 0 | 4 | 126,181 | 0.03% |
| ROYAL PALM BANK OF FLORIDA | 57096 | FL | NM | State | 0 | 0 | 3 | 126,167 | 0.03% |
| SUNCOAST BANK | 35046 | FL | SM | State | 0 | 0 | 3 | 125,219 | 0.03% |
| OPTIMUMBANK | 35430 | FL | NM | State | 0 | 0 | 3 | 122,114 | 0.03% |
| AMERICAN ENTERPRISE BK OF FL | 57709 | FL | NM | State | 0 | 0 | 1 | 121,303 | 0.03% |
| MANATEE RIVER COMMUNITY BANK | 34852 | FL | SA | Federal | 0 | 0 | 2 | 120,110 | 0.03% |
| PEOPLES NATIONAL BANK | 26687 | FL | N | Federal | 0 | 0 | 3 | 119,823 | 0.03% |
| SANIBEL CAPTIVA CMTY BANK | 57425 | FL | NM | State | 0 | 0 | 2 | 119,391 | 0.03% |
| COASTAL BANK | 34898 | FL | SA | Federal | 0 | 0 | 4 | 117,796 | 0.03% |
| GULF STATE COMMUNITY BANK | 20340 | FL | NM | State | 0 | 0 | 5 | 117,055 | 0.03% |
| OLD HARBOR BANK | 57537 | FL | NM | State | 0 | 0 | 4 | 116,150 | 0.03% |
| FIRST STATE BANK OF ARCADIA | 21163 | FL | NM | State | 0 | 0 | 2 | 115,043 | 0.03% |
| DRUMMOND COMMUNITY BANK | 32737 | FL | NM | State | 0 | 0 | 6 | 110,858 | 0.03% |
| TCM BANK NATIONAL ASSN | 34535 | FL | N | Federal | 0 | 0 | 1 | 110,690 | 0.03% |
| CITRUS BANK NATIONAL ASSN | 32918 | FL | N | Federal | 0 | 0 | 6 | 110,045 | 0.03% |
| BEACH BANK | 35051 | FL | NM | State | 0 | 0 | 2 | 109,269 | 0.03% |
| BANK OF NAPLES | 35396 | FL | NM | State | 0 | 0 | 1 | 108,530 | 0.03% |
| FIRST NB NORTHWEST FLORIDA | 25122 | FL | N | Federal | 0 | 0 | 2 | 108,477 | 0.03% |
| MACKINAC SAVINGS BANK FSB | 33925 | FL | SA | Federal | 0 | 0 | 3 | 108,130 | 0.03% |
| INDEPENDENT COMMUNITY BANK | 34649 | FL | NM | State | 0 | 0 | 1 | 106,619 | 0.03% |
| FRIENDS BANK | 35376 | FL | NM | State | 0 | 0 | 2 | 105,149 | 0.03% |
| FLORIDA BUSINESS BANK | 35304 | FL | NM | State | 0 | 0 | 1 | 104,143 | 0.03% |
| VALLEY BANK | 21793 | FL | NM | State | 0 | 0 | 2 | 102,394 | 0.03% |
| INTERCONTINENTAL BANK | 57214 | FL | NM | State | 0 | 0 | 1 | 101,242 | 0.03% |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| BANK OF ST AUGUSTINE | 34413 | FL | SA | Federal | 0 | 0 | 2 | 101,143 | 0.03% |
| SECURITY BANK NATIONAL ASSN | 23156 | FL | N | Federal | 0 | 0 | 7 | 98,980 | 0.03% |
| SOFISA BANK FLORIDA | 34643 | FL | NM | State | 0 | 0 | 3 | 98,838 | 0.03% |
| CENTRAL FLORIDA STATE BANK | 57186 | FL | NM | State | 0 | 0 | 3 | 97,360 | 0.03% |
| FIRST NATIONAL BANK OF PASCO | 26829 | FL | N | Federal | 0 | 0 | 3 | 97,126 | 0.03% |
| UNION CREDIT BANK | 35599 | FL | NM | State | 0 | 0 | 1 | 93,669 | 0.03% |
| ORLANDO NATIONAL BANK | 24244 | FL | N | Federal | 0 | 0 | 3 | 90,920 | 0.03% |
| ALARION BANK | 57845 | FL | NM | State | 0 | 0 | 3 | 90,801 | 0.02% |
| COMMUNITY NB SARASOTA CNTY | 27183 | FL | N | Federal | 0 | 0 | 4 | 90,641 | 0.02% |
| BANK OF TALLAHASSEE | 57211 | FL | NM | State | 0 | 0 | 3 | 89,857 | 0.02% |
| MARINE BANK&TRUST CO | 34233 | FL | NM | State | 0 | 0 | 2 | 89,754 | 0.02% |
| CNL BANK FIRST COAST | 58045 | FL | NM | State | 0 | 0 | 1 | 88,577 | 0.02% |
| PEOPLESSOUTH BANK | 21292 | GA | NM | State | 10 | 266,236 | 4 | 87,608 | 0.02% |
| COMMUNITY NB OF BARTOW | 25266 | FL | N | Federal | 0 | 0 | 1 | 87,035 | 0.02% |
| SOUTHERN COMMERCE BANK | 26970 | FL | NM | State | 0 | 0 | 1 | 86,499 | 0.02% |
| FIRST BANK OF JACKSONVILLE | 27573 | FL | NM | State | 0 | 0 | 1 | 84,929 | 0.02% |
| PLUS INTERNATIONAL BANK | 57083 | FL | NM | State | 0 | 0 | 1 | 84,165 | 0.02% |
| PINNACLE BANK | 34908 | FL | NM | State | 0 | 0 | 2 | 83,455 | 0.02% |
| COMMUNITY BANK OF CAPE CORAL | 57796 | FL | NM | State | 0 | 0 | 2 | 83,211 | 0.02% |
| RIVERSIDE BANK OF CENTRAL FL | 57164 | FL | SM | State | 0 | 0 | 4 | 83,174 | 0.02% |
| HANCOCK BANK OF FLORIDA | 57819 | FL | NM | State | 0 | 0 | 5 | 82,911 | 0.02% |
| FIRST GULF BANK NA | 26342 | FL | N | Federal | 8 | 406,905 | 4 | 82,820 | 0.02% |
| FIRST AMERICA BANK | 57722 | FL | NM | State | 0 | 0 | 2 | 82,453 | 0.02% |
| LIBERTY BANK | 58135 | FL | SA | Federal | 0 | 0 | 3 | 81,807 | 0.02% |
| INTEGRITY BANK | 57604 | FL | NM | State | 0 | 0 | 1 | 80,662 | 0.02% |
| FIRST BANK OF INDIANTOWN | 18149 | FL | NM | State | 0 | 0 | 4 | 80,548 | 0.02% |
| HARRIS BANK NATIONAL ASSN | 24960 | AZ | N | Federal | 8 | 273,801 | 4 | 80,165 | 0.02% |
| MAINSTREET CMTY BANK OF FL | 57598 | FL | NM | State | 0 | 0 | 3 | 79,463 | 0.02% |
| FIRST HOME BANK | 34997 | FL | NM | State | 0 | 0 | 2 | 79,366 | 0.02% |
| FLAGLER BANK | 35218 | FL | SM | State | 0 | 0 | 2 | 77,258 | 0.02% |
| TRUSTCO BANK | 31945 | NY | SA | Federal | 70 | 2,554,903 | 14 | 76,762 | 0.02% |
| GREAT EASTERN BANK OF FL | 33872 | FL | NM | State | 0 | 0 | 2 | 76,642 | 0.02% |
| CENTERSTATE BANK MID FLORIDA | 57334 | FL | NM | State | 0 | 0 | 3 | 75,937 | 0.02% |
| HOME FED BK OF HOLLYWOOD | 34652 | FL | SA | Federal | 0 | 0 | 1 | 75,319 | 0.02% |
| PARADISE BANK | 58030 | FL | SM | State | 0 | 0 | 2 | 74,990 | 0.02% |
| EUROBANK | 26725 | FL | NM | State | 0 | 0 | 3 | 73,159 | 0.02% |
| BANK OF FLORIDA TAMPA BAY | 57814 | FL | NM | State | 0 | 0 | 2 | 72,874 | 0.02% |
| J P MORGAN TRUST CO NA | 34696 | CA | N | Federal | 29 | 8,325 | 4 | 72,634 | 0.02% |
| SURETY BANK | 33026 | FL | NM | State | 0 | 0 | 2 | 72,098 | 0.02% |
| FIRST NB OF WAUCHULA | 18136 | FL | N | Federal | 0 | 0 | 1 | 70,795 | 0.02% |
| KEY WEST BANK | 34684 | FL | SA | Federal | 0 | 0 | 1 | 70,632 | 0.02% |
| BRISTOL BANK | 35045 | FL | NM | State | 0 | 0 | 1 | 70,567 | 0.02% |
| TRI-COUNTY BANK | 26966 | FL | NM | State | 0 | 0 | 2 | 69,993 | 0.02% |
| CENTURY BANK OF FLORIDA | 35558 | FL | SM | State | 0 | 0 | 1 | 69,817 | 0.02% |
| COMMUNITY BANK OF THE SOUTH | 35212 | FL | NM | State | 0 | 0 | 3 | 69,060 | 0.02% |
| ONEUNITED BANK | 23966 | MA | NM | State | 7 | 301,184 | 2 | 68,909 | 0.02% |
| LIBERTY BANK | 57912 | FL | NM | State | 0 | 0 | 1 | 68,092 | 0.02% |
| HILLSBORO BANK | 34747 | FL | NM | State | 0 | 0 | 1 | 66,354 | 0.02% |
| BAYSIDE SAVINGS BANK | 57669 | FL | SA | Federal | 0 | 0 | 1 | 65,852 | 0.02% |
| CYGNET PRIVATE BANK | 57653 | FL | NM | State | 0 | 0 | 1 | 63,477 | 0.02% |
| ORANGE BANK OF FLORIDA | 57960 | FL | NM | State | 0 | 0 | 3 | 62,512 | 0.02% |
| WARRINGTON BANK | 17193 | FL | NM | State | 0 | 0 | 3 | 61,143 | 0.02% |
| HOMOSASSA SPRINGS BANK | 20317 | FL | NM | State | 0 | 0 | 1 | 60,068 | 0.02% |
| CITIZENS BANK OF PERRY | 17880 | FL | NM | State | 0 | 0 | 2 | 60,001 | 0.02% |
| BANK OF THE SOUTH | 19125 | FL | NM | State | 0 | 0 | 2 | 58,274 | 0.02% |
| SOUTHEASTERN BANK | 5685 | GA | NM | State | 13 | 281,339 | 3 | 58,029 | 0.02% |
| CITIZENS BANK WAKULLA | 27067 | FL | NM | State | 0 | 0 | 3 | 57,603 | 0.02% |
| NORTHWEST SAVINGS BANK | 28178 | PA | SB | State | 156 | 5,431,395 | 2 | 56,409 | 0.02% |
| GULFSTREAM COMMUNITY BANK | 35344 | FL | SA | Federal | 0 | 0 | 1 | 54,468 | 0.01% |
| DUNNELLON STATE BANK | 16458 | FL | NM | State | 0 | 0 | 1 | 54,403 | 0.01% |
| COMMERCE NATIONAL BANK&TRUST | 57429 | FL | N | Federal | 0 | 0 | 1 | 53,878 | 0.01% |
| PEOPLES STATE BANK | 34702 | FL | NM | State | 0 | 0 | 1 | 53,069 | 0.01% |
| HERNANDO COUNTY BANK | 27135 | FL | NM | State | 0 | 0 | 2 | 52,650 | 0.01% |
| M&I BANK FSB | 28923 | NV | SA | Federal | 2 | 908,034 | 3 | 52,648 | 0.01% |
| CRYSTAL RIVER BANK | 17295 | FL | NM | State | 0 | 0 | 2 | 51,791 | 0.01% |
| ANCHOR COMMERCIAL BANK | 57931 | FL | NM | State | 0 | 0 | 1 | 51,172 | 0.01% |
| GULFSOUTH PRIVATE BANK | 58073 | FL | NM | State | 0 | 0 | 1 | 51,099 | 0.01% |
| FLORIDIAN COMMUNITY BANK INC | 57382 | FL | NM | State | 0 | 0 | 1 | 50,750 | 0.01% |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| LAFAYETTE STATE BANK | 16396 | FL | NM | State | 0 | 0 | 3 | 50,593 | 0.01% |
| BANK OF VENICE | 57386 | FL | NM | State | 0 | 0 | 1 | 50,371 | 0.01% |
| EAST COAST COMMUNITY BANK | 34439 | FL | NM | State | 0 | 0 | 2 | 50,249 | 0.01% |
| FIRST EAST SIDE SAVINGS BANK | 28144 | IL | SA | Federal | 1 | 63,576 | 1 | 50,147 | 0.01% |
| NATBANK NATIONAL ASSN | 33959 | FL | N | Federal | 0 | 0 | 2 | 48,857 | 0.01% |
| PNC BANK NATIONAL ASSN | 6384 | PA | N | Federal | 829 | 58,086,813 | 2 | 47,992 | 0.01% |
| BANK OF BELLE GLADE | 18930 | FL | NM | State | 0 | 0 | 2 | 47,841 | 0.01% |
| COMMUNITY STATE BANK | 17734 | FL | NM | State | 0 | 0 | 2 | 47,743 | 0.01% |
| MADISON CNTY CMTY BANK | 35056 | FL | NM | State | 0 | 0 | 1 | 45,991 | 0.01% |
| FIRST NAVY BANK | 21284 | FL | SM | State | 0 | 0 | 1 | 45,581 | 0.01% |
| HUNTINGTON NATIONAL BANK | 6560 | OH | N | Federal | 416 | 24,212,573 | 2 | 44,526 | 0.01% |
| PATRIOT BANK | 57789 | FL | NM | State | 0 | 0 | 2 | 44,331 | 0.01% |
| PEOPLES BANK OF GRACEVILLE | 21692 | FL | NM | State | 0 | 0 | 1 | 43,407 | 0.01% |
| BISCAYNE BANK | 57973 | FL | NM | State | 0 | 0 | 1 | 42,319 | 0.01% |
| FREEDOM BANK OF AMERICA | 57945 | FL | NM | State | 0 | 0 | 2 | 41,478 | 0.01% |
| BAY FINANCIAL SB FSB | 32251 | FL | SA | Federal | 0 | 0 | 1 | 41,463 | 0.01% |
| OCULINA BANK | 57559 | FL | NM | State | 0 | 0 | 2 | 39,374 | 0.01% |
| DELTA NATIONAL BANK&TRUST CO | 26633 | NY | N | Federal | 1 | 170,263 | 1 | 38,525 | 0.01% |
| GATEWAY BANK OF FLORIDA | 58176 | FL | NM | State | 0 | 0 | 1 | 36,460 | 0.01% |
| PRIME BANK | 57832 | FL | NM | State | 0 | 0 | 1 | 33,896 | 0.01% |
| CORTEZ COMMUNITY BANK | 57625 | FL | NM | State | 0 | 0 | 1 | 33,179 | 0.01% |
| BBU BANK | 57815 | FL | NM | State | 0 | 0 | 1 | 33,164 | 0.01% |
| PARTNERS BANK | 57959 | FL | SA | Federal | 0 | 0 | 1 | 32,886 | 0.01% |
| SUNRISE BANK | 58029 | FL | SM | State | 0 | 0 | 2 | 32,413 | 0.01% |
| BANK OF JACKSON COUNTY | 14794 | FL | NM | State | 0 | 0 | 2 | 31,709 | 0.01% |
| FLORIDA BANK OF COMMERCE | 58081 | FL | NM | State | 0 | 0 | 2 | 28,613 | 0.01% |
| FIRST BK OF THE PALM BEACHES | 58152 | FL | NM | State | 0 | 0 | 1 | 26,173 | 0.01% |
| AMERICANFIRST BANK | 57724 | FL | NM | State | 0 | 0 | 1 | 25,605 | 0.01% |
| SOUTHBANK A FSB | 33848 | FL | SA | Federal | 0 | 0 | 1 | 25,581 | 0.01% |
| UNITED BANK | 58 | AL | NM | State | 12 | 260,520 | 2 | 25,320 | 0.01% |
| COMMERCE BANK OF SW FL | 58016 | FL | NM | State | 0 | 0 | 1 | 23,122 | 0.01% |
| FLORIDIAN BANK | 58173 | FL | NM | State | 0 | 0 | 1 | 21,595 | 0.01% |
| OMNI NATIONAL BANK | 22238 | GA | N | Federal | 7 | 413,706 | 1 | 16,761 | 0.00% |
| AMERIBANK INC | 6782 | WV | SA | Federal | 9 | 124,533 | 1 | 15,017 | 0.00% |
| RELIANCE BANK FSB | 58129 | FL | SA | Federal | 0 | 0 | 1 | 14,237 | 0.00% |
| PARISH NATIONAL BANK | 19783 | LA | N | Federal | 14 | 669,914 | 1 | 13,133 | 0.00% |
| SOUTHSHORE COMMUNITY BANK | 58056 | FL | NM | State | 0 | 0 | 1 | 12,591 | 0.00% |
| LEGACY BANK OF FLORIDA | 58247 | FL | NM | State | 0 | 0 | 3 | 12,357 | 0.00% |
| NATURE COAST BANK | 57773 | FL | NM | State | 0 | 0 | 1 | 11,527 | 0.00% |
| WILMINGTON TRUST FSB | 33911 | MD | SA | Federal | 1 | 28,182 | 3 | 11,312 | 0.00% |
| FLAGSHIP COMMUNITY BANK | 58113 | FL | NM | State | 0 | 0 | 1 | 10,991 | 0.00% |
| PROVIDENCE BANK | 58043 | FL | NM | State | 0 | 0 | 1 | 10,701 | 0.00% |
| URBAN TRUST BANK | 31390 | FL | SA | Federal | 0 | 0 | 1 | 10,588 | 0.00% |
| FIRST CAPITAL BANK | 58034 | FL | NM | State | 0 | 0 | 1 | 9,971 | 0.00% |
| CAPITALSOUTH BANK | 22130 | AL | SM | State | 7 | 328,136 | 1 | 8,263 | 0.00% |
| BANK OF CORAL GABLES | 58131 | FL | NM | State | 0 | 0 | 1 | 7,980 | 0.00% |
| ARMED FORCES BANK NA | 4666 | KS | N | Federal | 49 | 642,778 | 2 | 6,089 | 0.00% |
| OLD SOUTHERN BANK | 58182 | FL | SM | State | 0 | 0 | 1 | 5,161 | 0.00% |
| UNION STATE BANK | 5602 | AL | NM | State | 13 | 283,790 | 1 | 3,990 | 0.00% |
| MIDSOUTH BANK N A | 2777 | AL | N | Federal | 6 | 252,300 | 1 | 3,967 | 0.00% |
| SHARE PLUS FEDERAL BANK | 57760 | TX | SA | Federal | 8 | 146,458 | 1 | 3,952 | 0.00% |
| FIRST TENNESSEE BANK NA | 4977 | TN | N | Federal | 239 | 21,706,801 | 1 | 575 | 0.00% |
| RELIANCE BANK | 35123 | MO | NM | State | 16 | 640,402 | 1 | 102 | 0.00% |
| BANK OF NEW YORK TRUST CO NA | 23472 | CA | N | Federal | 5 | 2,416 | 2 | 4 | 0.00% |
| MODERN BANK NATIONAL ASSN | 22398 | NY | N | Federal | 2 | 174,927 | 1 | 0 | 0.00% |
| BANCO POPULAR NATIONAL ASSN | 35208 | FL | N | Federal | 1 | 17,354 | 1 | 0 | 0.00% |
| **Number of Institutions in the Market: 365** | | | | **TOTALS** | 21,532 | 2,064,614,550 | 5,310 | 363,415,173 | 100.00 |

Questions, Suggestions & Requests

**Home    Contact Us    Search    Help    SiteMap    Forms**
Freedom of Information Act (FOIA) Service Center    Website Policies    USA.gov

http://www2.fdic.gov/sod/sodMarketRpt.asp?barItem=2                    5/1/2007

Exhibit 20

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay





FDIC **FEDERAL DEPOSIT INSURANCE CORPORATION**

Advanced Search

| HOME | DEPOSIT INSURANCE | CONSUMER PROTECTION | INDUSTRY ANALYSIS | REGULATION & EXAMINATIONS | ASSET SALES | NEWS & EVENT |

## Summary of Deposits

| SOD Home | Find Office | Market Share Selection | Summary Tables | Charts and Graphs | SOD Publications | Download | Institution Directory | SOD Help |

Printer Friendly Version

Go Back
How To Save This Report

Offices and Deposits of all FDIC-Insured Institutions
## Deposit Market Share Report

Deposits as of: June 30, 2006 ▾

Sorted by: Market Share ▾

Run Report

| Institution Name | CERT | State (Hqtrd) | Bank Class | State/ Federal Charter | No. of Offices | Deposits ($000) | No. of Offices | Deposits ($000) | Market Share |
|---|---|---|---|---|---|---|---|---|---|
| ING BANK FSB | 35489 | DE | SA | Federal | 0 | 0 | 1 | 46,440,495 | 30.17% |
| CHASE BANK USA NATIONAL ASSN | 23702 | DE | N | Federal | 0 | 0 | 3 | 27,103,494 | 17.61% |
| FIA CARD SERVICES NA | 33318 | DE | N | Federal | 0 | 0 | 2 | 26,558,684 | 17.25% |
| LEHMAN BROTHERS BANK FSB | 30890 | DE | SA | Federal | 1 | 7,206 | 1 | 16,383,538 | 10.64% |
| DISCOVER BANK | 5649 | DE | NM | State | 0 | 0 | 2 | 13,454,953 | 8.74% |
| WILMINGTON TRUST CO | 680 | DE | NM | State | 0 | 0 | 44 | 7,637,234 | 4.96% |
| PNC BANK DELAWARE | 679 | DE | NM | State | 1 | 107,714 | 40 | 2,358,796 | 1.53% |
| CITIBANK DELAWARE | 24029 | DE | NM | State | 0 | 0 | 1 | 2,122,473 | 1.38% |
| CITICORP TRUST BANK FSB | 18708 | DE | SA | Federal | 0 | 0 | 1 | 1,835,469 | 1.19% |
| WACHOVIA BANK OF DELAWARE NA | 33931 | DE | N | Federal | 1 | 530,319 | 24 | 1,825,383 | 1.19% |
| WILMINGTON SVG FUND SOCIETY | 17838 | DE | SA | State | 2 | 15,155 | 23 | 1,578,682 | 1.03% |
| CITIZENS BANK | 57281 | DE | NM | State | 0 | 0 | 26 | 1,347,080 | 0.88% |
| AIG FEDERAL SAVINGS BANK | 35267 | DE | SA | Federal | 0 | 0 | 1 | 940,447 | 0.61% |
| BCORP BANK | 35444 | DE | NM | State | 0 | 0 | 1 | 907,101 | 0.59% |
| ARTISANS BANK | 17123 | DE | SB | State | 0 | 0 | 11 | 516,797 | 0.34% |
| COMMERCE BANK NATIONAL ASSN | 21140 | PA | N | Federal | 341 | 33,998,574 | 8 | 477,324 | 0.31% |
| MERCANTILE PENINSULA BANK | 11652 | DE | NM | State | 30 | 1,021,832 | 8 | 426,285 | 0.28% |
| COUNTY BANK | 33009 | DE | NM | State | 0 | 0 | 9 | 290,990 | 0.19% |
| DELAWARE NATIONAL BANK | 22837 | DE | N | Federal | 0 | 0 | 13 | 263,072 | 0.17% |
| APPLIED CARD BANK | 34193 | DE | NM | State | 0 | 0 | 1 | 239,173 | 0.16% |
| FIRST NB OF WYOMING | 4819 | DE | N | Federal | 0 | 0 | 6 | 232,825 | 0.15% |
| DEUTSCHE BANK TR CO DELAWARE | 26392 | DE | NM | State | 0 | 0 | 1 | 178,676 | 0.12% |
| CHRISTIANA BANK&TRUST CO | 33875 | DE | NM | State | 0 | 0 | 2 | 164,080 | 0.11% |
| SUN NATIONAL BANK | 26240 | NJ | N | Federal | 72 | 2,504,054 | 7 | 102,265 | 0.07% |
| BANK OF DELMARVA | 8810 | DE | NM | State | 6 | 156,985 | 4 | 84,984 | 0.06% |
| BANK OF NEW YORK DELAWARE | 24867 | DE | NM | State | 0 | 0 | 1 | 80,836 | 0.05% |
| MBNA AMERICA DELAWARE NA | 34680 | DE | N | Federal | 0 | 0 | 1 | 75,300 | 0.05% |
| FELTON BANK | 12700 | DE | NM | State | 0 | 0 | 2 | 60,855 | 0.04% |
| FIRST BANK OF DELAWARE | 34929 | DE | NM | State | 0 | 0 | 2 | 56,750 | 0.04% |
| MELLON BANK NATIONAL ASSN | 7946 | PA | N | Federal | 21 | 7,820,211 | 1 | 35,649 | 0.02% |
| CHEVY CHASE BANK FSB | 32324 | VA | SA | Federal | 258 | 10,661,599 | 2 | 32,307 | 0.02% |
| DELAWARE STERLING B&T CO | 57896 | DE | NM | State | 0 | 0 | 1 | 25,777 | 0.02% |
| ADVANTA NATIONAL BANK | 18664 | DE | N | Federal | 0 | 0 | 1 | 18,674 | 0.01% |
| CALVIN B TAYLOR BK BERLIN MD | 5874 | MD | NM | State | 9 | 286,568 | 1 | 16,741 | 0.01% |
| MANUFACTURERS&TRADERS TR CO | 588 | NY | SM | State | 682 | 35,210,516 | 1 | 16,602 | 0.01% |
| FIRST SHORE FS&LA | 30680 | MD | SA | Federal | 7 | 232,232 | 1 | 15,851 | 0.01% |
| HSBC BANK USA NATIONAL ASSN | 57890 | DE | N | Federal | 435 | 75,574,974 | 1 | 13,346 | 0.01% |
| MERCANTILE COUNTY BANK | 13779 | MD | NM | State | 17 | 745,770 | 1 | 10,698 | 0.01% |

Selected Market — State: DELAWARE   County: ALL   City: ALL   Zip Code: ALL

June 30, 2006 — Outside of Market / Inside of Market



EXHIBIT

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| COMMUNITY BANK DELAWARE | 58311 | DE | NM | State | 0 | 0 | 1 | 8,035 | 0.01% |
| FORT SILL NATIONAL BANK | 16416 | OK | N | Federal | 32 | 225,078 | 2 | 5,880 | 0.00% |
| BARCLAYS BANK DELAWARE | 57203 | DE | NM | State | 0 | 0 | 1 | 520 | 0.00% |
| BANK OF NEW CASTLE | 27575 | DE | NM | State | 0 | 0 | 1 | 500 | 0.00% |
| JLB SERVICE BANK | 57306 | DE | NM | State | 0 | 0 | 1 | 0 | 0.00% |
| Number of Institutions in the Market: 43 | | | | TOTALS | 1,915 | 169,098,787 | 262 | 153,944,551 | 100.00 |

dw05

**Home    Contact Us    Search    Help    SiteMap    Forms**
Freedom of Information Act (FOIA) Service Center    Website Policies    USA.gov

Exhibit 21

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

## INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION
## FROM BANK OF AMERICA N.A.'S INITIAL DISCLOSURES

| INDIVIDUAL | SUBJECT(S) OF INFORMATION |
|---|---|
| Faith Tucker<br>208 Forest Dr.<br>Thomasville, NC 27360 | Development of the Keep the Change program. |
| Sherri Strott<br>218 Lantana Dr.<br>Orlando, FL 32807-4449 | Development of the Keep the Change program. |
| Carrie Williams<br>3602 Newchurch Cir.<br>Charlotte, NC 28269-7702 | Development of the Keep the Change program. |
| Karen Lewy<br>EPC could not determine witness's location. | Development of the Keep the Change program. |
| Daniel Carretta<br>7 Sunrise Point LN.<br>Clover, S.C. 29710 | Development of the Keep the Change program. |
| Thomas Hancock<br>2228 Chesterfiled Ave.<br>Charlotte, NC 28205-6016 | Development and operation of the Keep the Change program. |
| Charles R. Liu<br>4208 Black Sycamore Dr.<br>Charlotte, NC 28226-4300 | Development of the Keep the Change program. |
| David Soliday<br>3916 Balmoral Ave.<br>Harrisburg, NC 28075-5604 | Current operation of the Keep the Change program. |
| Sean Hunter<br>7111 Sythe Ct.<br>Charlotte, NC 28226-3800 | Current operation of the Keep the Change program. |
| William S. Fowler<br>19106 Ruffner Dr.<br>Cornelius, NC 28031-9369 | Marketing. |
| Kelley Sue Semmelroth<br>2235 Flagstick Dr.<br>Matthews, NC 28104-0629 | Marketing. |

**EXHIBIT**

tabbies

| | |
|---|---|
| Scott F. Liese<br>8020 Shaker Pond Ln.<br>Waxhaw, NC 28173-9813 | Finance. |
| Jason B. Albert<br>EPC could not determine witness's location. | Finance. |
| Steve Gerrell<br>EPC could not determine witness's location. | Development and operation of the Keep the Change program. |
| Steve Kirk<br>210 Jenkins St.<br>Locust, NC 28097-9505 | Development and operation of the Keep the Change program. |
| Daniel Kushner<br>EPC could not determine witness's location. | Development of the Keep the Change program. |
| Ellerton J. Castor<br>21 Mattawang Dr.<br>Somerset, NJ 08873-4649 | Ownership of the '191 patent |
| Patrick Phillips<br>168 Southhaven Dr.<br>Mooresville, NC 28117-7563 | Ownership of the '191 patent. |
| Bertram v. Burke<br>1434 SW 51st LN<br>Cape Coral, FL 33914-7474 | The invention, ownership and prosecution of the '191 patent, Plaintiff's delay in filing this suit, and other information relevant to the infringement, validity and enforceability of the '191 patent and damages for any infringement. |
| Leo Stranger<br>PO Box 1455<br>Summit, NJ 07902-1455 | Prosecution of the '191 patent. |
| Ray Edwards<br>4741 Central Ave. #230<br>Kansas City, MO | Ownership and right to enforce the '191 patent. |
| Edward Grau<br>SIP Assets, LLC<br>1466 Broadway, Suite 1200<br>New York, NY 10036 | Ownership and right to enforce the '191 patent. |
| Brian Sloan<br>361 Bess Rd.<br>Statesville, NC 28625-9540 | EPC's alleged offer to license the '191 patent to Bank of America, N.A. |

NO.99780805.1

| Sheri Lemon<br>EPC could not determine witness's location. | Development of the Keep the Change program. |
|---|---|
| Cheryl McNair<br>5903 Newhall Rd.<br>Durham, NC 27713-2617 | Development of the Keep the Change program. |
| Mark Lewis<br>2816 Robyns Glen Dr.<br>Charlotte, NC 28269-0663 | Development of the Keep the Change program. |
| Amy Brady<br>3810 Brookwood Rd.<br>Charlotte, NC 28215-8732 | Development of the Keep the Change program. |

- 3 -

Exhibit 22

to Defendant Every Penny Counts, Inc.'s Opening Brief

in Support of its Motion to Dismiss, Transfer Venue or Stay

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | | |
|---|---|---|
| **EVERY PENNY COUNTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2:07-CV-00042-JES** |
| | ) | **Judge Steele** |
| | ) | |
| **BANK OF AMERICA CORPORATION AND** | ) | |
| **BANK OF AMERICA, N.A.** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## INITIAL DISCLOSURES OF BANK OF AMERICA, N.A. PURSUANT TO RULE 26(a)(1)

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Bank of America, N.A. ("BANA") makes the below Initial Disclosures. These Initial Disclosures are based on information reasonably available to BANA at this time. BANA's investigation into these matters is ongoing. BANA reserves the right to supplement or amend these Initial Disclosures as discovery and investigation proceed. Additionally, these Initial Disclosures are made with the understanding that BANA cannot anticipate all the positions that it or Every Penny Counts, Inc. ("EPC") may take in this case.

BANA makes these Initial Disclosures without waiving in any manner: (1) the right to object on any basis permitted by law to the use of any Initial Disclosure information contained herein for any purpose in any subsequent proceeding in this or any other action; and (2) the right to object on any basis permitted by law to any discovery request or proceeding involving or related to the subject matter of these Initial Disclosures.

**EXHIBIT**

tabbies®

_____

| | |
|---|---|
| Steve Gerrell<br>Contact through Latham & Watkins LLP | Development and operation of the Keep the Change program. |
| Steve Kirk<br>Contact through Latham & Watkins LLP | Development and operation of the Keep the Change program. |
| Daniel Kushner<br>Contact through Latham & Watkins LLP | Development of the Keep the Change program. |
| Ellerton J. Castor<br>Contact through Latham & Watkins LLP | Ownership of the '191 patent. |
| Patrick Phillips<br>Contact through Latham & Watkins LLP | Ownership of the '191 patent. |
| Bertram Burke<br>Cape Coral, Florida | The invention, ownership, and prosecution of the '191 patent, Plaintiff's delay in filing this suit, and other information relevant to infringement, validity, and enforceability of the '191 patent and damages for any infringement. |
| Leo Stanger<br>PO Box 1455<br>Summit, NJ 07902-1455<br>Phone: (908) 277-8588 | Prosecution of the '191 patent. |
| Ray Edwards<br>4741 Central Avenue #230<br>Kansas City, MO | Ownership of and right to enforce the '191 patent. |
| Edward Grau<br>SIP Assets, LLC<br>1466 Broadway, Suite 1200<br>New York, NY 10036<br>(646) 662-2366 | Ownership of and right to enforce the '191 patent. |
| Brian Sloan<br>Contact through Latham & Watkins LLP. | EPC's alleged offer to license the '191 patent to BANA. |
| Sheri Lemon<br>Contact through Latham & Watkins LLP | Development of the Keep the Change program. |
| Cheryl McNair<br>Contact through Latham & Watkins LLP | Development of the Keep the Change program. |
| Mark Lewis<br>Contact through Latham & Watkins LLP | Development of the Keep the Change program. |
| Amy Brady<br>Contact through Latham & Watkins LLP | Development of the Keep the Change program. |

B.   **Rule 26(a)(1)(B)—A copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to disputed facts alleged with particularity in the pleadings.**

**RESPONSE:**

BANA has not yet fully completed the investigation of facts relating to this case and has not yet completed a review of all the documents in possession of BANA or known to exist and expects to supplement the following in the future.

| Description of Category | Location |
|---|---|
| Documents regarding the development, operation, design, and financials of the Keep the Change program. | Bank of America, N.A. 101 S. Tryon St. Charlotte, NC 28255 |
| Exhibits attached to BANA and BAC's Motion to Dismiss or Transfer Venue. | Not applicable |
| Prior art references. | Latham & Watkins LLP |
| File wrappers for '191 patent and priority applications. | U.S. Patent and Trademark Office |

C.   **Rule 26(a)(1)(C)—A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.**

**RESPONSE:**

BANA does not claim any damages at this time.  However, BANA reserves the right to amend or supplement this response.

D.   **Rule 26(a)(1)(D)—For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

**RESPONSE:**

     BANA is not aware of any applicable insurance coverage at this time.  BANA will supplement this response if and when such a determination is made.

Dated: April 30, 2007

Respectfully submitted,

<u>/s/ James S. Grodin</u>
**James S. Grodin**
Florida Bar No. 0655181
jgrodin@foley.com
Anat Hakim
ahakim@foley.com
Florida Bar No. 0018127
Foley & Lardner LLP
111 North Orange Avenue, Suite 1800
Orlando, Florida 32801-2386
Tel: 407.423.7656
Fax: 407.648.1743

Attorneys for Defendant
Bank of America, N.A.

## CERTIFICATE OF SERVICE

**I HERBY CERTIFY** that a true and correct copy of the foregoing has been furnished **via facsimile and electronic** filing this 30th day of April 2007, to Counsel for Plaintiff, 1900, Tampa, Florida 33602-5311 and **via electronic filing only** to Brent B. Barriere, David L. Patron and Harry M. Barton, Phelps Dunbar LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana 70130.

/s/ James S. Grodin_____
**James S. Grodin**
Florida Bar No. 0655181
jgrodin@foley.com
Anat Hakim
ahakim@foley.com
Florida Bar No. 0018127
Foley & Lardner LLP
111 North Orange Avenue, Suite 1800
Orlando, Florida 32801-2386
Tel: 407.423.7656
Fax: 407.648.1743

Attorneys for Defendants
Bank of America, N.A. and
Bank of America Corporation

<u>CERTIFICATE OF SERVICE</u>

I, David L. Finger, hereby certify that on this 10th day of May, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send electronic notification to the following counsel of record:

**Richard L. Horwitz, Esq.**
Potter Anderson & Corroon, LLP
1313 N. Market St., Hercules Plaza, 6th Fl.
P.O. Box 951
Wilmington, DE 19899-0951

**Kurt M. Heyman, Esq.**
Proctor Heyman LLP
1116 West Street
Wilmington, DE 19801

/s/ David L. Finger_____
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE  19801-1155
(302) 884-6766