## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BANK OF AMERICA, N.A. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-159 (GMS) |
| | ) | |
| SIP ASSETS, LLC AND | ) | |
| EVERY PENNY COUNTS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## BANK OF AMERICA, N.A.'S BRIEF IN RESPONSE AND OPPOSITION TO DEFENDANT EPC'S MOTION TO DISMISS

OF COUNSEL:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
Tel: (212) 906-1200
Fax: (212) 751-4864

David A. Nelson
Amanda J. Hollis
Jennifer Travers
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
Tel: (312) 876-7700
Fax: (312) 993-9767

Dated: May 24, 2007
797748/31292

Richard L. Horwitz (#2246)
Kenneth L. Dorsney (#3726)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6027
Fax: (302) 658-1192
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

*Attorneys for Plaintiff Bank of America, N.A.*

# **TABLE OF CONTENTS**

TABLE OF CITATIONS ........................................................................................ i

I.     NATURE AND STAGE OF THE PROCEEDING ........................................... 1

II.    SUMMARY OF ARGUMENT ......................................................................... 1

III.   FACTS ............................................................................................................. 3

IV.    ARGUMENT .................................................................................................... 6

       A.     Venue Is Proper ................................................................................... 6

              1.     Venue Is Proper Under 28 U.S.C. § 1391 ................................. 6

              2.     The Question of Whether SIP Is a Proper Party Is Not "Resolved" ........... 6

              3.     EPC Relies on the Same Overruled Standard as SIP in Arguing
                     that No Actual Controversy Exists ........................................... 11

              4.     This Case Falls Within an Exception to the First Filed Rule .... 14

              5.     Financial Disparity Is Not Considered in Venue Analysis ........ 15

       B.     Transfer Is not Appropriate Under 28 U.S.C. § 1404 ........................ 15

              1.     Legal Standard ........................................................................ 15

              2.     This Action Could Not Have Been Brought In Florida ............ 16

              3.     The Private and Public Interest Factors of 28 U.S.C. § 1404(a) Do
                     Not Support Transfer .............................................................. 17

                     a.     Trial Efficiency and the Interests of Justice ................. 18

                     b.     Convenience of the Parties and Location of Documents ......... 19

                     c.     Local Interests ............................................................. 20

                     d.     Whether Claims Arose Elsewhere ................................ 21

                     e.     Witness Factors ............................................................ 22

                     f.     Parties' Preferences ..................................................... 23

V.     CONCLUSION .............................................................................................. 24

## TABLE OF CITATIONS

*ADE Corp. v. KLA-Tencor Corp.,*
    138 F. Supp. 2d 565 (D. Del. 2001) ..................................................................17, 18

*Affymetrix, Inc. v. Synteni, Inc.,*
    128 F. Supp. 2d 192 (D. Del. 1998) ...........................................................................16

*Amana Refrigeration, Inc. v. Quadlux, Inc.,*
    172 F.3d 852 (Fed. Cir. 1999) ...................................................................................12

*Armstrong v. Pomerance,*
    423 A.2d 174 (Del. 1980) ..........................................................................................21

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.,*
    434 F.3d 1336 (Fed. Cir. 2006) ...................................................................................9

*Ballard Medical Products v. Concord Laboratories Inc.,*
    700 F. Supp. 796 (D. Del. 1988) ...............................................................................16

*Bergman v. Braini,*
    512 F. Supp. 972 (D. Del. 1981) ...............................................................................16

*CC Investors Corp. v. Raytheon Co.,*
    C.A. No. 03-114-JJF, 2003 WL 22937748 (D. Del. Nov. 25, 2003) ...............................16, 17

*C.R. Bard, Inc. v. Guidant Corp.,*
    997 F. Supp. 556 (D. Del. 1998) ...............................................................................16

*Camasso v. Dorado Beach Hotel Corp.,*
    689 F. Supp 384 (D. Del. 1988) ................................................................................16

*Continental Cas. Co. v. American Home Assurance Co.,*
    61 F. Supp. 2d 128 (D. Del. 1999) .............................................................................16

*Genentech, Inc. v. Eli Lilly and Co.,*
    998 F.2d 931 (Fed. Cir. 1993) ...................................................................................14

*Independent Wireless Telegraph Co. v. Radio Corp. Of America,*
    269 U.S. 459 (1926) ...................................................................................................9

*In re Yamaha Motor Co., Inc.,*
    1997 WL 575861 (Fed. Cir. 1997) .............................................................................12

*Katz v. Lear Siegler, Inc.,*
    909 F.2d 1459 (Fed. Cir. 1990) .................................................................................15

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
   342 U.S. 180 (1952) ................................................................................................14

*MedImmune, Inc. v. Genentech, Inc.*,
   127 S. Ct. 764 (2007) ...................................................................................11, 12, 13

*Oneida Indian Nation v. County of Oneida*,
   414 U.S. 661 (1974) ..................................................................................................7

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ................................................................................................19

*Sandisk Corp. v. STMicroelectronics, Inc.*,
   480 F.3d 1372 (Fed. Cir. 2007) .........................................................................12, 13

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (D. Del. 1970) .....................................................................................16

*Sony Electronics, Inc. v. Orion IP, LLC*,
   C.A. No. 05-255-GMS, 2006 WL 680657 (D. Del. Mar. 14, 2006) ........................19

*St. Clair Intellectual Property Consultants, Inc. v. Mirage Systems, Inc.*,
   419 F. Supp. 2d 620 (D. Del. 2006) ..........................................................................6

*Stein v. Chemtex Intern., Inc.*,
   C.A. No. 04-0001-SLR, 2004 WL 722252 (D. Del. March 31, 2004) ......................6

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
   57 F.3d 1054 (Fed. Cir. 1995) ............................................................................12, 13

*Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*,
   482 F.3d 1330 (Fed. Cir. 2007) .....................................................................11, 12, 13

*Textron Innovations Inc. v. The Toro Co.*,
   C.A. No. 05-486-GMS, 2005 WL 2620196 (D. Del. Oct. 14, 2005) ......................20

*Turn of the Century Solution, L.P. v. International Rectifier Corp.*,
   C.A. No. 05-816-SLR, 2006 WL 1653143 (D. Del. June 15, 2006) ..............3, 19, 20

## STATUTES

28 U.S.C. § 1391 ...........................................................................................2, 6, 7

28 U.S.C. § 1404 ........................................................................................6, 15, 17

## I.    NATURE AND STAGE OF THE PROCEEDING

Plaintiff Bank of America, N.A. ("BANA" or "Plaintiff") commenced this action against

Defendants Every Penny Counts, Inc. ("EPC") and SIP Assets, Inc. ("SIP") on March 20, 2007.

BANA seeks, among other things, a declaratory judgment that its Keep the Change ("KTC")

banking program does not infringe U.S. Patent No. 6,112,191 ("the '191 patent") and a

declaration as to who owns, has owned, and is entitled to enforce the '191 patent. Complaint

(D.I. 1). On May 2, 2007, Defendant SIP moved to dismiss this action under Rule 12(b)(1) of

the Federal Rules of Civil Procedure alleging this Court lacks subject matter jurisdiction. SIP's

Br. in Supp. of Mot. to Dismiss (D.I. 14) ("SIP Mem."). BANA filed an opposition to SIP's

motion on May 18, 2007. Br. in Opp'n of SIP's Mot. to Dismiss (D.I. 18). Defendant EPC now

has filed a motion to dismiss this action under Rule 12(b)(3) for improper venue or, in the

alternative, transfer it to the United States District Court for the Middle District of Florida.

EPC's Br. in Supp. of Mot. to Dismiss (D.I. 16) ("EPC Mem.").

## II.    SUMMARY OF ARGUMENT

The thrust of EPC's argument is that venue is improper because "SIP's verified answer

and motion to dismiss resolve the issues of SIP's ownership of and ability to assert claims

regarding the '191 patent" such that "SIP cannot and will not assert a claim for damages for

infringement of the '191 patent by the KTC program." *Id.* at 2, 13. EPC spends the bulk of its

brief repeating *its* "ruling" on SIP's motion to dismiss. Once EPC "resolves" SIP's motion it

argues that the issues in this action "mirror" the issues in the Florida action and BANA's

complaint should be dismissed in favor of that action. *Id.* at 11.

EPC's "reasoning" is circular and presumptuous. Nothing has been resolved with respect

to SIP's rights under the '191 patent, its ability to assert the '191 patent, or the Court's

jurisdiction over those issues. These issues are still in the process of being briefed in connection

with SIP's motion to dismiss and the Court, not EPC, will resolve whether it has jurisdiction over BANA's complaint against SIP. EPC cannot just rule in favor of its codefendant by declaring this open issue between two other parties "resolved."

Moreover, EPC's analysis of the issue is as flawed as SIP's because it too relies on overruled cases regarding declaratory judgment jurisdiction and never mentions the recent ***controlling*** Supreme Court and Federal Circuit cases setting forth the applicable test for determining whether jurisdiction is proper. There is no doubt EPC would like the Court to grant SIP's motion to dismiss. It knows that if the Court denies SIP's motion, then EPC's motion effectively is mooted because this case could not be transferred to Florida where there is no jurisdiction over one of the defendants.

EPC's other main argument is that dismissal is warranted because this action is merely a "ham-handed attempt by a multi-national corporation to deprive ... a struggling enterprise, EPC, of its chosen forum." *Id.* at 3. EPC's ad hominem attacks regarding BANA's and its counsel's intentions in bringing this action have no place in a venue analysis. BANA did not make up the facts underlying this action; they are evidenced in the 2004 SIP presentation of which EPC is well aware. BANA initiated this action in good faith in this Court because it is the only court that clearly can exercise personal jurisdiction over both EPC and SIP, the two parties that continue to make inconsistent representations to BANA concerning their rights under the '191 patent.

Significantly, although EPC spends more than a dozen pages presumptuously finding SIP's motion to dismiss meritorious and irrelevantly comparing its own financial status to that of the Bank of America, EPC wholly ignores the test for venue under 28 U.S.C. § 1391, which plainly is satisfied. Both EPC and SIP are Delaware corporations over whom this Court

2

indisputably has jurisdiction and where venue to sue these corporations indisputably is proper. EPC spends much time alleging that Delaware is an inconvenient forum but in the middle of 2005 EPC specifically chose Delaware as its corporate home. EPC could have incorporated in Florida but it clearly wanted the benefits of Delaware's corporate law -- apparently without the concurrent possibility of being sued in Delaware's courts. As Judges in this District repeatedly have stated, "a Delaware corporation enjoying all the benefits and protections of this state's laws … cannot credibly contend that litigation in the state is inconvenient." *Turn of the Century Solution, L.P. v. International Rectifier Corp.*, C.A. No. 05-186-SLR, 2006 WL 1653143, at *2 (D. Del. June 15, 2006) (slip copy) (Ex. A).

## III.    FACTS

Most of the pertinent facts are outlined in BANA's Response to SIP's Motion to Dismiss. (D.I. 18). For the Court's convenience the following is a limited summary of the facts that are most relevant to EPC's motion.

BANA filed this action as a result of EPC's and SIP's recent and inconsistent assertions of rights to the '191 patent. On January 25, 2007, EPC filed suit against BANA's indirect parent corporation, Bank of America Corporation ("BAC"),[1] for infringement of that patent in the Middle District of Florida. Compendium to EPC's Mem. (Ex. 1 to D.I. 17). In its complaint, EPC claimed to be the "sole owner" of the '191 patent as a result of a June 29, 2005 assignment from an alleged predecessor corporation it calls "Old EPC." *See id.* ¶ 3. EPC also claimed that it nevertheless had discussions with BAC concerning a potential license to the '191 patent in the fall of 2004, prior to its alleged acquisition of the patent. *Id.* ¶ 5. Just prior to EPC's alleged acquisition, and around the same time EPC allegedly had licensing discussions with BAC,

---

[1] BANA is a federally chartered national bank that is a subsidiary of NB Holdings Corp. Dec. J. Wilk (Ex. B), ¶ 3. NB Holdings Corp. is wholly owned by BAC. *Id.*

however, SIP represented that *it* had "fully acquired" the '191 patent. (Ex. A to D.I. 18).

Adding to the discrepancies, EPC alleged that Old EPC assigned the '191 patent to EPC *nine*

*months after* Old EPC allegedly was "reformed" as EPC. *See* Ex. 1 to D.I. 17, ¶ 2. There is no

record of any assignment of the '191 patent to EPC in the United States Patent and Trademark

Office.[2]

BANA, the operator of the accused "Keep The Change" ("KTC") banking program,

could not ignore EPC's suit against an affiliated Bank of America holding company alleging that

BANA's KTC product infringes the '191 patent. Nor could it ignore SIP's and EPC's

inconsistent assertions of rights to the '191 patent. Ownership of rights under the '191 patent is a

threshold issue that cannot be determined after infringement, validity, and enforceability of the

'191 patent is assessed. To do so would invite the possibility of a multiplicity of actions and

inconsistent judgments as well as a verdict in Florida that could be vitiated by a standing issue.

Therefore there was an immediate need to settle the uncertainty arising from SIP and EPC's

inconsistent representations.[3]

The Middle District of Florida could not provide the relief BANA needed. That court

does not have personal jurisdiction over SIP, a Delaware corporation with its headquarters in

New York. No party, including SIP and EPC, has denied this important threshold fact. BANA

therefore initiated this action in Delaware because Delaware was the only jurisdiction that clearly

---

[2] Although recording patent assignments is not required, recordation is the norm, not the exception. Recording serves as a notice. If an assignment is not recorded within a certain time from its date, it can be void against a subsequent purchaser. *See* Ex. C (U.S. P.T.O., "Assignments and Licenses," *available a*t www.uspto.gov/web/offices/pac/doc/ general/assign.htm). Thus the failure to record Old EPC's assignment to EPC may mean that it never occurred or that it could be void.

[3] Likewise, in order for BANA to fairly prove its laches and estoppel defenses it needed discovery from the various current and prior claimants to rights under the '191 patent and a determination as to who had rights, when they had rights, and what legal impact those rights would have on BANA's rights and defenses.

had personal jurisdiction over both Defendants as well as the power to adjudge *all* of the parties' rights under the '191 patent.

On May 4, 2007, SIP moved to dismiss BANA's claims against it for lack of subject matter jurisdiction. (D.I. 14). In its motion, SIP admits that it prepared a presentation and proposal for BANA in the fall of 2004 regarding the '191 patent. *Id.* at 3. SIP also does not deny that it represented to BANA that it had "fully acquired" the rights to the '191 patent. SIP *argues,* however, that it never owned the '191 patent but was "only" an exclusive licensee of that patent for a certain period. *Id.* at 6. It concludes that BANA's declaratory judgment claims against it should be dismissed because BANA has no reasonable apprehension that SIP will sue it. *Id.* at 7.

Whether SIP officially is an "exclusive licensee" or an "owner" does not matter because both can sue for patent infringement. Moreover, SIP's *current contention* regarding its legal rights under the '191 patent is irrelevant. This is especially true given the facts suggesting that SIP's rights never were terminated[4] and that no court has determined the legal effect of the license agreement, its multiple "amendments," and other relevant documents.[5] Furthermore, SIP cannot simply divest the Court of jurisdiction created by its actions and representations by subsequently claiming that those representations were false. To do so, would allow a party to visit unacceptable uncertainty on another by merely making representations and subsequently

---

[4] If SIP's rights under the '191 patent were truly terminated, it would have no rights to reserve or "retain." But it expressly did so in its motion to dismiss. *See* SIP Mem. at 1, n. 1.

[5] After EPC made remarks to the press that SIP had "no claim" to the '191 patent, SIP wrote to EPC stating its intention to "disclose the existence and execution date of [a license agreement SIP and EPC entered into in April 2004 ("License Agreement")]." *See* D.I. 18 at Ex. G (Apr. 4, 2007 Corresp. fr. E. Grau to B. Burke). In this same correspondence, SIP referred to multiple "amendments" to that Agreement. Notably, although SIP has attached the License Agreement to its pleadings in this case, it has never disclosed any of these "subsequent amendments." *Id.*

disavowing them. Definitively resolving such uncertainty is the purpose of the Declaratory Judgment statute.

The "reasonable apprehension test" upon which SIP solely relies has expressly been overruled by the United States Supreme Court and, under the controlling test, there is a sufficient controversy that warrants declaratory judgment jurisdiction. SIP's motion is still being briefed by the parties.

EPC now has filed its own motion to dismiss this action, but under Rule 12(b)(3) for improper venue. EPC Mem. at *passim*. In the alternative, EPC requests that this action be transferred to the Middle District of Florida under 28 U.S.C. § 1404. *Id.*

## IV.    ARGUMENT

### A.    Venue Is Proper

#### 1.    Venue Is Proper Under 28 U.S.C. § 1391

EPC has failed to make any showing that the requirements of the applicable venue statute have not been satisfied. As the party moving for dismissal under Rule 12(b)(3), EPC "bears the burden of proving venue is improper." *St. Clair Intellectual Property Consultants, Inc. v. Mirage Systems, Inc.*, 419 F.Supp.2d 620, 623 (D. Del. 2006). "[T]he Federal Rules of Civil Procedure do not contain any specific venue provisions or requirements. A court, therefore, must determine whether venue is proper in accordance with the appropriate statutes when deciding a motion to dismiss for improper venue." *Stein v. Chemtex Intern., Inc.*, C.A. No. 01-0001-SLR, 2004 WL 722252, *1 (D. Del. March 31, 2004)(citing *Albright v. Gore*, C.A. No. 03-304-GMS, 2002 WL 1765340, *3 (D. Del. July 31, 2002) (citations omitted)).

BANA alleges venue is proper under 28 U.S.C. § 1391(b) and (c), which state, in pertinent part:

> b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in
>
> (1) *a judicial district where any defendant resides, if all defendants reside in the same State,*
>
> ...
>
> (c) For purposes of venue under this chapter, *a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. ....*

28 U.S.C. § 1391 (emphasis added).

EPC's motion never mentions this statute, much less explains why this Court has no power to hear BANA's action under its provisions. For this reason alone EPC's motion should be denied. No party could credibly contend that venue over a Delaware corporation is not proper in Delaware. There is no dispute that this judicial district has personal jurisdiction over EPC and SIP, which are both incorporated in Delaware. Therefore, under § 1391 (c) both EPC and SIP are deemed to reside in this District and venue is proper under §1391(b).

## 2. The Question of Whether SIP Is a Proper Party Is Not "Resolved"

The entire predicate for EPC's motion is *its conclusion* that "SIP is not a proper party in this declaratory judgment action." Indeed, EPC *only* argues that venue is improper in Delaware *if* SIP is not a party to the action. *See, e.g.*, EPC Mem. at 5 ("Thus, *as SIP is not a proper party to this action,* the first-filed rule vests this Court with discretion to dismiss, transfer or stay the instant action."). EPC could not credibly contend otherwise. If SIP's motion to dismiss is denied because BANA's complaint is held to be not "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy," *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974), this action

7

can only proceed here, because this is the only Court that has personal jurisdiction over both EPC and SIP.

Whether SIP is a proper party, however, is an issue that is squarely before the Court – not EPC. Instead of acknowledging that this is an open issue awaiting decision by the Court, EPC spends approximately 10 pages of its brief reciting and repeating *its conclusion* regarding a motion to which it is not even a party. For example, EPC states: "SIP is not a proper party to BANA's action for declaratory judgment," EPC Mem. at 20, "SIP's verified answer and motion to dismiss resolve the issues of SIP's ownership of and ability to assert claims regarding the '191 patent," *id.* at 2, "no actual controversy exists between BANA and SIP," *id.* at 4, "SIP cannot assert any claims against BANA on the '191 patent," *id.*, SIP "has no stake in the ownership of that patent," *id.*, and "SIP's pleadings… clearly establish this lack of ownership," *id.* EPC adds nothing to this analysis and offers no support for any of these conclusions, other than citations to arguments extracted from SIP's pleadings. *Id.* at *passim.* Regardless of whether EPC "fully agrees" with SIP, *id.* at 11, EPC's self-interested "spin" on SIP's pleadings and its motion to dismiss are no substitute for the Court's decision of SIP's motion.

In concluding that SIP's motion to dismiss should be granted, EPC relies exclusively on SIP's "verified" allegations that it never owned the patent in its answer and motion to dismiss. EPC Mem. at 5, 11, 16. These allegations, however, merely recite SIP's *current contentions.* There is no reason why the Court should now adopt SIP's current, litigation-inspired representations instead of the contemporaneous statements it made to BANA that it had "fully acquired" the '191 patent. The uncertainty caused by SIP's (and EPC's) shifting positions on this threshold issue is exactly why BANA needs this Court to resolve the issues raised in Plaintiff's Declaratory Judgment Complaint. The fact that SIP "verified" its self-interested

8

allegations does not make them more relevant than contemporaneously created evidence. If a party's verified understanding as to its legal interests could dispose of legal issues, as EPC seems to suggest, BANA could dispose of this and the Florida action by simply verifying that it does not infringe.

Even if SIP's allegations are accepted, they do not support EPC's conclusions. EPC represents that SIP "admits" in its motion to dismiss and answer that it "held no rights at all in the '191 patent during the time of the [alleged] infringement." *Id.* at 4. But SIP only admits that SIP was at least at one time an "exclusive licensee" of the '191 patent as a result of an April 2004 License Agreement ("License Agreement"). SIP says nothing regarding what rights it held at "the time of [alleged] infringement."[6] EPC also states that SIP "admits" that it is "not entitled to sue for any damages for infringement of the '191 patent by the KTC program." But even EPC acknowledges that "an exclusive licensee[] may be entitled to damages for patent infringement injuries." EPC Mem. at 16. For this reason, "exclusive licensee[s] are generally necessary parties to an infringement action." *Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459, 466 (1926); *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1344 (Fed. Cir. 2006) ("there must be joinder of any exclusive licensee"). Indeed SIP has ***only*** stated that it currently has no "***intention*** to assert any claims against BOA in connection with the '191 patent," SIP Mem. at 1 (emphasis added) and that it ***"retains its rights and privileges that arose during the time that it was a licensee of EPC."*** *Id.* at 1, n. 1.

SIP's undisputed interest in the '191 patent punches a large hole in EPC's theory that SIP has no "interest in the subject matter of this litigation." *Id.* at 2. In fact, that is the exact same

---

[6] Moreover, the License Agreement apparently was amended multiple times. *See* (Ex. G to D.I. 18) (email from SIP to EPC referring to multiple "subsequent amendments" to the "2004 License Agreement"). Those amendments have never been produced or provided to the Court.

position EPC took when it still contended that SIP was just a marketer of the '191 patent before *this action* caused it finally to admit that SIP had rights under the '191 patent.[7] EPC attempts to patch the hole by *now contending* that, "[w]hile SIP did enjoy exclusive licensee rights to the '191 patent at one point in time, that license terminated prior to the launch of the KTC program." *Id.* at 4.

As BANA pointed out in its opposition to SIP's motion to dismiss, whether and when SIP's exclusive license terminated is a significant factual question that also needs to be resolved by the Court. D.I. 18, at 12. Both SIP and EPC allege that termination occurred as a result of a letter from EPC's CEO to SIP. *Id.* at 14. However, the License Agreement apparently was entered into between SIP and *"Old EPC,"* a different entity from EPC and one that apparently still exists as a New Jersey corporation in good standing. *Id.* at 14-15. Thus, there are serious doubts as to whether a letter from EPC, who was not even a party to the License Agreement, can effectively terminate that license. *Id.* SIP and EPC cannot even agree as to how or when termination allegedly occurred. SIP asserts that termination occurred by letter of June 8, 2005, while EPC argues that it occurred by a different letter of April 15, 2005. *Id.* at 14. Likewise, EPC alleges that it conducted licensing discussions with BAC regarding the '191 patent at a time that it also admits it had no rights to do so because it had already granted SIP an exclusive license. *See* Ex. B to D.I. 18, ¶ 5.

EPC asserts that SIP is not a proper party because it alleges that the KTC program was not publicly launched until October of 2005. Infringement allegations are not limited to "public launching" and EPC has not limited its infringement and damages claims to the public launching

---

[7] In its comments to the press concerning BANA's complaint, EPC's President originally told the press that SIP had "no claim" to the '191 patent and that the only agreement between EPC and SIP was a "marketing agreement." *See* Ex. F to D.I. 18. Both EPC and SIP now admit that is not true.

of the KTC program. In fact, not surprisingly, the acts accused of infringement began prior to

the "public launch" of the accused KTC product. There is nothing stopping EPC or SIP from

accusing pre-launch activities of infringement, *including development activities and testing that*

*occurred during the period in which EPC contends SIP's exclusive license was in effect*.

These activities include tests run to demonstrate the functionality of the product as well as its

acceptance by the target market. *See* Flash Demonstration (Ex. D) (depicting marketing test used

in approximately October-November 2004). EPC can not divest the Court of jurisdiction and

venue simply by restricting *its current accusations* to events that occurred after it contends SIP's

exclusive rights ended. The fact that BANA performed acts now accused of infringement at a

time when EPC contends SIP was an exclusive licensee demonstrates why SIP must be part of

this action.

> ### 3.    EPC Relies on the Same Overruled Standard as SIP in Arguing that No Actual Controversy Exists

EPC's opinion that "SIP is not a proper party in this declaratory judgment action" also is

based on the same overruled law as SIP's motion to dismiss. EPC contends that "SIP has

expressly disclaimed any intention to bring suit against BOA in connection with the '191

patent," and therefore "*BANA cannot have any objectively reasonable apprehension of SIP's*

*bringing an infringement suit*." *Id.* at 17. Although SIP has not so "disclaimed" any intention

to bring suit. Regardless, whether BANA has a "reasonable apprehension of suit" by SIP is not

the controlling test for declaratory judgment jurisdiction. As BANA explained in its response to

the identical argument recited in SIP's motion to dismiss, the reasonable apprehension of suit test

has been expressly "overruled" by the United States Supreme Court's recent decision in

*MedImmune v. Genentech*, 127 S. Ct. 764 (2007), and is no longer good law. *See Teva*

*Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330, 1339 (Fed. Cir.

2007) ("[B]ecause the Supreme Court in *MedImmune* cautioned that our declaratory judgment

'reasonable[-]apprehension-of-suit' test 'contradict[s]' and 'conflicts' with its precedent, these

Federal Circuit tests have been 'overruled by … an intervening … Supreme Court decision.'");

*Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("The Supreme

Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit

test.").

 Although it spends nearly ten pages stating and restating its conclusion that there is no

justiciable controversy between BANA and SIP, EPC fails to even mention *MedImmune* or either

of the two Federal Circuit opinions that have since interpreted *MedImmune* as overruling the

reasonable apprehension test advanced by EPC. *See Sandisk Corp.*, 480 F.3d at 1380; *Teva*

*Pharmaceuticals USA*, 482 F.3d at 1339. EPC instead relies on the Federal Circuit's pre-

*MedImmune* decision in *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed.

Cir. 1995), which found that a declaratory judgment defendant's promise not to sue the plaintiff

recited in motion papers was sufficient to divest the court of subject matter jurisdiction over the

plaintiff's declaratory judgment claims. The Federal Circuit's holding in *Super Sack*, however,

was expressly based on the ***overruled*** two-part reasonable apprehension test. *Super Sack*, 457

F.3d at 1059 ("Because ***Chase can have no reasonable apprehension*** that it will face an

infringement suit on the '796 and '652 patents with respect to past and present products, it fails

to satisfy the first part of our two-part test of justiciability."). The same is true for the other cases

cited by EPC. *See Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir.

1999) (determining no actual controversy existed because two-part reasonable apprehension test

was not met, citing *SuperSack*); *In re Yamaha Motor Co., Inc.*, 1997 WL 575861, at *3 (Fed. Cir.

1997) (holding that no controversy existed because "***CyberOptics can have no objectively***

*reasonable apprehension* that it will face an infringement suit"). Those decisions no longer are

good law and EPC, to the extent it chose to comment on SIP's motion, should have analyzed the

facts under the standard announced by the Supreme Court in *MedImmune* and applied by the

Federal Circuit in *Sandisk* and *Teva*.

Both EPC and SIP simply ignore the fact that the Supreme Court and the Federal Circuit

no longer apply a jurisdictional analysis based on a threat or apprehension of suit. Instead the

controlling test requires only the existence of a "definite and concrete" dispute which "touches

the legal relations of parties having adverse legal interests," *MedImmune*, 127 S. Ct. at 771, and

looks to whether a declaratory judgment would "settle the legal relations in dispute and afford

relief from uncertainty or insecurity," *Teva Pharmaceuticals USA, Inc.*, 482 F.3d at 1383. That

is exactly what BANA seeks.

Even if *Super Sack* were still good law, the facts here are different. Unlike the defendant

in *Super Sack*, SIP has not *promised* "not to sue [BANA] for infringement as to any claim of the

patents-in-suit based upon the products currently manufactured and sold by [BANA]." *Super

Sack*, 57 F.3d at 1056. SIP only has stated its current intent not to sue BANA, while expressly

reserving any rights under the '191 patent.[8]   SIP Mem. at 1, n. 1.

In fact, the circumstances here point out the weakness of the overruled *Super Sack*

analysis. Here we have two parties that have historically claimed rights to the '191 patent, one

(SIP) that showed up at BANA with a presentation representing that it fully acquired the '191

patent and advertising the fact that it had contingent fee lawyers ready to assert its patents, the

other (EPC) that asserted the '191 patent against a related Bank of America company and

---

[8] Notably even SIP does not cite *Super Sack* or its progeny or argue that it has promised never to
sue BANA for infringement of the '191 patent as was required when *Super Sack* still was good
law.

claiming it had obtained that patent from an alleged predecessor corporation. Even if SIP fulfilled the requirements under the old *Super Sack* analysis (which it has not) it would not change the fact that SIP's prior representations and current admissions raise uncertainties relating to BANA's legal rights and interests that need to be "settled." For example, it does nothing to address the issue of resolving which Defendant had rights for purposes of assessing laches, estoppel or willfulness. Given that there is uncertainty and a dispute regarding whether SIP's exclusive license ever was effectively and legally terminated, if SIP does do a full disclaimer of rights against KTC that could in and of itself dispose of this action, it could only occur in this Court where jurisdiction over SIP and its property rights are undeniable.

### 4.      This Case Falls Within an Exception to the First Filed Rule

EPC argues at length that "EPC's filing of the Florida suit on January 25, 2007 clearly precedes BANA's filing of this suit on March 20, 2007" and that the overlap between this action and the Florida action warrants dismissal of this action under the first-filed rule. EPC Mem. at 16. BANA does not dispute that the Florida action against BAC preceded this action. Nor does BANA dispute that, "as between a mirror image declaratory judgment action and an affirmative patent infringement action, the first-filed rule favors the forum of the first-filed action." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993), *cert denied sub nom, Regents of Univ. of Cal. v. Genentech, Inc.*, 510 U.S. 1140 (1994). The first-filed rule, however, is not a "rigid" one, *see Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 184 (1952), and exceptions are not rare. *Genentech*, 998 F.2d at 937. One of these clear exceptions exists where the "first filed court" cannot assert jurisdiction over all "necessary and desirable parties." *Genentech*, 998 F.2d at 938. That is the case here.

This case falls squarely within the *Genentech* exception. Although the Florida action contains *some* of the issues presented in this one, EPC itself concedes that it is only a "subset."

14

EPC Mem. at 12. Therefore, the Florida action is not a "mirror image" of this one. Moreover, only this Court can exercise jurisdiction over all parties in interest, including SIP, and therefore only this Court can resolve the issues which do not overlap with the ones pending in Florida – *e.g.*, who has the rights under the '191 patent. Under such circumstances, this case should remain in Delaware, the only district where "disposition of one case would be dispositive of the other." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990).

### 5.    Financial Disparity Is Not Considered In Venue Analysis

EPC's attempt to portray BANA as a Goliath whose decision to file this action was motivated by an intent to oppress "struggling" EPC deserves little attention. EPC Mem. at 3. Any financial disparity between EPC and BANA is irrelevant to the question of whether this case should be dismissed for improper venue. BANA did not create the facts which spurred the need for a declaration of rights to the '191 patent. Those facts were created, apparently, by SIP, Old EPC, and EPC. No one denies that SIP approached BANA multiple times concerning the '191 patent and represented that it had "fully acquired" that patent. No one denies that these representations are inconsistent with EPC's allegations concerning the chain of title to the '191 patent. Furthermore, no one disputes that this is the only District that can exercise jurisdiction over and bind SIP in order to put an end to that uncertainty. EPC's portrayal of the parties as big or small and ad hominem attacks on Plaintiff's and its counsel's motives do not assist this Court in performing the necessary analysis. EPC's motion should be decided on the merits.

### B.    Transfer Is not Appropriate Under 28 U.S.C. § 1404

#### 1.    Legal Standard

EPC argues that if this action is not dismissed for improper venue, it should alternatively be transferred under 28 U.S.C. § 1404. The decision as to whether an action should be transferred under § 1404 requires consideration of two steps: (1) could the suit have been

brought in the transferee district and (2) in which district would the proper administration of justice be best served. *Ballard Medical Products v. Concord Laboratories Inc.,* 700 F.Supp. 796, 798 (D. Del. 1988). The first step is ***not discretionary*** and a positive answer is a ***threshold requirement*** for transfer. *Id.* A court may only transfer an action to "[an]other district or division where [the action] might have been brought." *CC Investors Corp. v. Raytheon Co.*, C.A. No. 03-114-JJF, 2003 WL 22937748, *2 (D. Del. Nov. 25, 2003). For example, the "transferee district must have been able to assert personal jurisdiction over the defendant independent of the defendant's consent." *Id.* (citing *Hoffman v. Blaski,* 363 U.S. 335, 343-44 (1960); *Affymetrix, Inc. v. Synteni, Inc.,* 128 F.Supp.2d 192, 194 n. 1 (D. Del. 1998)). Furthermore, "[t]he moving party bears the burden of proving that the action "properly could have been brought in the first instance in the transferee district." *Id.* (citing 17 *Moore's Federal Practice* § 111.12[3]).

Even if the first threshold requirement is met, transfer is not to be liberally granted. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (D. Del. 1970). The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Braini*, 512 F. Supp. 972, 973 (D. Del. 1981). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 567 (D. Del. 2001). The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F.Supp. 556, 562 (D. Del. 1998); *Continental Cas. Co. v. American Home Assurance Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999).

### 2.    This Action Could Not Have Been Brought In Florida

The threshold, non-discretionary requirement for transfer to the Middle District of Florida is not met here. BANA could not have brought this action in Florida because Florida

cannot exercise personal jurisdiction over SIP. Neither SIP nor EPC allege that SIP is subject to personal jurisdiction in Florida. EPC merely contends that "this action could have been brought in the Middle District of Florida" because EPC resides in that District and because, it asserts, "SIP is not a proper party to BANA's action for declaratory judgment." EPC Mem. at 20. But EPC is not free to recast this action as one without SIP as a party in order to make it fit the requirements for transfer.

In order to meet its burden, EPC needed to at least show that this action could have been brought in Florida because the Middle District of Florida has jurisdiction over all the defendants. EPC cannot meet that burden by merely removing defendants that could not have been sued in Florida until the only defendant remaining is one that could have been sued in Florida. EPC has failed to make any allegation or showing that Florida could exercise jurisdiction over one of the defendants, and therefore the inquiry ends and EPC's motion to transfer must be denied. *See Camasso v. Dorado Beach Hotel Corp.*, 689 F.Supp 384, 386 (D. Del. 1988) (refusing to transfer the case when the target forum could not exercise personal jurisdiction over one of the defendants); *CC Investors Corp. v. Raytheon Co.*, C.A. No. 03-114-JJF, 2003 WL 22937748, *2 (D. Del. Nov. 25, 2003) ("the Court concludes that the Defendants' Motion to transfer should be denied because the Defendants have failed to present sufficient evidence demonstrating that the instant action could have originally been filed in Ohio.").

### 3. The Private and Public Interest Factors of 28 U.S.C. § 1404(a) Do Not Support Transfer

Even if this Court decides that this action somehow could have been brought in the Middle District of Florida, EPC still bears the burden of showing that certain private and public interest factors "strongly support" transfer. *ADE Corp.*, 138 F.Supp.2d at 567. EPC argues that the following factors favor transfer: (1) trial efficiency and the interests of justice; (2) the

17

convenience of the parties and the location of documents; (3) the parties' preferences; (4) "witness factors"; (5) local interests; and (6) whether the claims arose elsewhere.   EPC Mem. at 21-28 (citing *Juarma [sic]*[9] *v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995)).  As explained below, none of these factors favor transfer to Florida, and in some cases, they strongly favor Delaware.

### a.    Trial Efficiency and the Interests of Justice

EPC argues that the interest in "trial efficiency and the interests of justice" favor transfer, but only because the Florida action is ahead by "nearly 3 months" and has seen more "substantive pleadings."  EPC Mem. at 21.  EPC then criticizes this Court for the "lack of progress made thus far in this forum."  EPC Mem. at 22.  The only reason why the Florida action is that far ahead of this one is because BANA voluntarily granted EPC a 30-day extension of the deadline to respond to the complaint.  As a condition to the extension, EPC expressly agreed that it would not use such agreement as "a basis to argue for Florida over Delaware."  *See* April 5, 2007 Corresp. fr. H. Kauget to D. Nelson (Ex. E).  EPC's exploitation of the time disparity violates the spirit of that agreement.

Moreover, a three-month difference in the schedule is irrelevant to whether this case should be transferred.  All that has occurred in Florida is a small amount of discovery, which can be used in either action.  Furthermore, the only "substantive pleadings" filed in the Florida action relate to the very issues of transfer and dismissal currently being considered by this Court.  *See* Florida Docket (Ex. F).

Finally, the fact that the Florida court has set what EPC characterizes as an "aggressive schedule" also has no bearing.  This Court has not even had an opportunity to set its own

---

[9] Throughout its brief, EPC refers to this case as "Juarma."  The proper spelling, however, is "Jumara."

schedule, so there is no basis for suggesting that the Florida action will be faster than this one.
More importantly, the biggest waste of the parties' and the various Courts' resources would
occur if it was discovered that EPC and BANA were litigating in vain because EPC lacked
standing or because SIP could subject EPC to duplicative litigation. The fact that the Florida
court has set a relatively fast schedule for *trial of a subset of the issues in this case* may only
mean that the parties are litigating in vain faster. Certainly the fact that the Florida action is a
couple of months "ahead" does not override the jurisdictional and other substantive reasons why
this action should proceed here.

In contrast, the interests of justice and efficiency would be best served if this action
remained in Delaware. If SIP is not made a party to an action involving EPC's infringement
claims against BANA, there is a substantial risk that BANA might be subjected to duplicative
litigation and inconsistent judgments in the future. Problems such as these have been found to be
a "determinative factor" in the venue analysis. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235,
259 (1981). If this action stays in Delaware, this risk will be eliminated because SIP is and will
remain a party. Therefore, this factor strongly favors Delaware.

### b.    Convenience of the Parties and Location of Documents

EPC also argues that it "would face great inconvenience in litigating in Delaware as it
conducts none of its operations in Delaware and is engaged in prosecuting its infringement
claims in Florida." EPC Mem. at 26-27. EPC, however, is incorporated under the laws of
Delaware. Therefore, its "complaints about litigating here are outweighed by the fact that [it]
has enjoyed the benefits and protections of incorporation in Delaware and that the state has an
interest in litigation regarding companies incorporated within its jurisdiction." *Turn of the
Century Solution,* C.A. No. 05-186-SLR, 2006 WL 1653143, at *3; *see Sony Electronics, Inc. v.
Orion IP, LLC*, C.A. No. 05-255-GMS, 2006 WL 680657, at *2 (D. Del. Mar. 14, 2006)

(attached as Ex. G); *Textron Innovations Inc. v. The Toro Co.*, C.A. No. 05-486-GMS, 2005 WL 2620196, at *2 (D. Del. Oct. 14, 2005) (attached as Ex. H) ("Further, having received the benefits of Delaware incorporation, Toro cannot now complain that another corporation has chosen to sue it here.").

EPC also ignores that Delaware would be much more convenient for SIP. SIP is a Delaware corporation with headquarters in New York, which is much closer to Delaware than to Florida.

Furthermore, whether this action proceeds in Delaware or Florida, the location of the parties, documents, and third party witnesses will remain the same. The only time that the difference in the distance between EPC's current employees and Florida on the one hand, and the distance between EPC's current employees and Delaware on the other, will matter will be at trial when those employees will likely have to travel in order to attend. The weight of these limited travel costs cannot overcome the legitimate reasons why this action should proceed in Delaware.

### c.    Local Interests

EPC also contends that "the local interest of the Florida court in deciding this case weighs in favor of transfer." EPC Mem. at 23. The only "local interest" EPC mentions, however, is Florida's general interest in regulating companies that do business within its jurisdiction. There is no reason why that interest deserves any more weight than Delaware's recognized "interest in litigation regarding companies incorporated within its jurisdiction," including both EPC and SIP. *Turn of the Century Solution*, C.A. No. 05-186-SLR, 2006 WL 1653143, at *3. Moreover, this case concerns alleged patent infringement and patent rights. "[I]t is well settled that patent rights are not considered state or local matters and do not implicate local interests." *Textron Innovations Inc.*, 2005 WL 2620196 at *3. "[T]herefore," there is "no strong local interest in litigating in the transferee forum."

Delaware also has a significant interest in this case because it will require the interpretation and application of Delaware law. One of the principal agreements alleged to be in the chain of title to the '191 patent was a June 29, 2005 assignment agreement between Old EPC to EPC. This agreement states that it "shall be governed by and construed in accordance with the domestic laws of [] Delaware." (Ex. H to D.I. 18). A court will need to construe this agreement in order to address several threshold issues in this case, including whether EPC has standing to sue for infringement, and to adjudicate BANA's declaratory judgment claims concerning who has rights to enforce the '191 patent. Therefore, this factor disfavors transfer. *See e.g.*, *Armstrong v. Pomerance*, 423 A.2d 174, 178 (Del. 1980) (explaining that allowing substantial questions of Delaware law to be resolved in other courts "might create excessive uncertainty about the meaning of the Delaware law as a result of too many forums interpreting it since there would be no certiorari process available to the Delaware Supreme Court to resolve conflicts").

### d.    Whether Claims Arose Elsewhere

EPC asserts that "several connections between BANA's infringement of the '191 patent and Florida exist." The accused KTC system, however, has no connections to Florida. The KTC program is administered by BANA in Charlotte, North Carolina. *See* Wilk Decl. (Ex. B), ¶ 5. The cards that are used by customers who participate in KTC are also issued by BANA in North Carolina. *Id.* ¶ 6. Indeed, all of the processing that occurs with respect to KTC occurs outside of Florida. *Id.* ¶ 7. Therefore, the facts which form the basis for EPC's infringement allegations have no connection to Florida.

EPC points to the fact that EPC and its President currently reside in Florida. But EPC only recently moved to Florida from New Jersey in 2005 and, in any event, their place of residence did not give rise to EPC's infringement claims. Moreover, there is no reason why EPC

21

and its President's physical residence in Florida is more relevant to EPC's infringement claims than the fact that both of SIP and EPC are incorporated in Delaware.

Lastly, EPC contends that its President's isolated meetings with a single BANA employee, Brian Sloan, in Florida justify transfer. According to Mr. Sloan, Bertram Burke had a corporate and personal banking account with BANA and Mr. Sloan was Mr. Burke's and EPC's loan officer. To the best of his knowledge, the only "meetings" to which EPC could be referring are meetings associated with those accounts. *See* Decl. B. Sloan (Ex. I), ¶ 6.[10]

EPC's dubious contentions regarding its alleged licensing negotiations with a BANA loan officer also are belied by its contrary contention that SIP had exclusive rights to the '191 patent at the time of the alleged meetings. Mr. Burke alleges that his meetings with Mr. Sloan occurred "after [EPC] relocate[ed] to Cape Coral, Florida" in October 2004. *See* Ex. B to EPC Mem., ¶¶ 4-5. EPC also contends, however, that SIP was the exclusive licensee to the '191 patent at least as of April 2004 and that that those exclusive rights were not terminated until at least May 2005, if at all. Therefore, EPC's purported "license negotiations" with a BANA loan officer would have fallen precisely during the period when only SIP allegedly had the right to license the '191 patent.

### e.     Witness Factors

EPC argues that certain considerations it labels as "witness factors" support transfer of this case to Florida. The convenience of witnesses, however, is not considered in the *Jumara* analysis EPC relies upon unless witnesses cannot be compelled to attend trial in one of the two jurisdictions. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). EPC does not identify any witnesses that could not be compelled to testify in Delaware. In contrast, there

---

[10] The only substantive meetings BANA apparently ever had about the '191 patent were with SIP in 2004, when SIP was the exclusive licensee.

are likely multiple witnesses that could not be compelled to testify if this action were transferred to Florida. For example, the Leo Stanger firm that prosecuted the '191 patent is located in New Jersey and SIP's principal place of business is located in New York. It is much more likely that their respective employees and former employees are subject to the subpoena power of this Court than Florida.

### f.    Parties' Preferences

Lastly, EPC argues that, as the plaintiff in the first-filed Florida action, its preference merits transfer of this action to Florida. Like all of the other factors, however, EPC's mere preference for Florida cannot overcome the insurmountable jurisdictional problems and risk of duplicative litigation BANA will face if this action is transferred there. BANA cannot in good faith plead its current claims against SIP in Florida knowing that the Middle District has no jurisdiction over it. That is the reason why it initiated its action here. Thus, for the same reasons that this case warrants an exception to the first-filed rule, EPC's preference for Florida should not carry the day. Significantly, SIP has not joined EPC's motion to dismiss for improper venue or transfer. Its failure to do so implicitly acknowledges that if this Court has subject matter jurisdiction over BANA's claims against SIP, Delaware is the appropriate forum for this action.

## V.    CONCLUSION

For the reasons stated above, BANA respectfully submits that EPC's motion be denied.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
Tel: (212) 906-1200
Fax: (212) 751-4864

By:  */s/ Kenneth L. Dorsney*
     Richard L. Horwitz (#2246)
     Kenneth L. Dorsney (#3726)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE 19801
     Tel:  (302) 984-6027
     Fax: (302) 658-1192
     rhorwitz@potteranderson.com
     kdorsney@potteranderson.com

David A. Nelson
Amanda J. Hollis
Jennifer Travers
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
Tel: (312) 876-7700
Fax: (312) 993-9767

*Attorneys for Plaintiff Bank of America, N.A.*

Dated:  May 24, 2007
797748 / 31292

24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Kenneth L. Dorsney, hereby certify that on May 24, 2007, the attached document was

hand delivered to the following persons and was electronically filed with the Clerk of the Court

using CM/ECF which will send notification to the registered attorney(s) of record that the

document has been filed and is available for viewing and downloading:

David L. Finger
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801
dfinger@delawgroup.com

Kurt M. Heyman
Patricia L. Enerio
Proctor Heyman LLP
1116 West Street
Wilmington, DE 19801
kheyman@proctorheyman.com
penerio@proctorheyman.com

*/s/ Kenneth L. Dorsney*
Richard L. Horwitz
Kenneth L. Dorsney
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

788394 / 31292

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 1653143 (D.Del.)
**(Cite as: 2006 WL 1653143 (D.Del.))**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
TURN OF THE CENTURY SOLUTION, L.P.,
Plaintiff,
v.
INTERNATIONAL RECTIFIER CORPORATION,
Defendant.
**No. Civ. 05-816-SLR.**

June 15, 2006.
Jack B. Blumenfeld, Morris, Nichols, Arsht &
Tunnell,Wilmington, DE, for Plaintiff.

Richard L. Horwitz, Kenneth Laurence Dorsney,
Potter Anderson & Corroon, LLP, Wilmington, DE,
for Defendant.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 15th day of June, 2006,
having considered defendant's motion to transfer and
the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer (D.I.9)
is denied, for the reasons that follow:

1. Introduction. On November 29, 2005, plaintiff
Turn of the Century Solution, L.P. ("TOCS") filed a
complaint for patent infringement against defendant
International Rectifier Corporation ("IRC"). (D.I.1)
The patents-in-suit are U.S. Patent No. 5,600,836 and
U.S. Patent No. 5,835,909 (collectively "patents-in-
suit"). (Id.) TOCS contends that IRC conceded
infringement of the patents-in-suit during its defense
of a 2004 California state breach of contract case.
[FN1] IRC filed an answer and asserted several
affirmative defenses. (D.I.6) IRC then filed this
motion to transfer to the Central District of
California. (D.I.9, 10) TOCS opposes the motion
(D.I.12) and IRC has filed its reply. (D.I.14)

> FN1. Anthony Sneed v. Niel Armstrong and
> International Rectifier Corporation, Los
> Angeles Superior Court Case No. BC
> 296142.

2. Background. TOCS is a Pennsylvania limited
partnership with its principal place of business in
Ambler, Pennsylvania. (D.I. 1 at ¶ 1) It has no
employees and its annual revenue has never exceeded
$500,000 during its decade of existence. (D.I. 12 at 6)

3. IRC is a Delaware corporation with its principal
place of business in El Segundo, California. (D.I. 1 at
¶ 2) IRC has 6,000 employees in twenty countries
and at least four states and had a revenue of over one
billion dollars in fiscal 2005. (D.I. 12 at 6) IRC does
not have any offices or employees in Delaware. (D.I.
10 at 1)

4. In 2004, IRC was sued for breach of a Non-
Disclosure Agreement by Anthony Sneed for its
purported use of Sneed's Y2K remediation. (D.I. 11
at 2) IRC defended the Sneed case by showing that
the Y2K remediation it used was a technique
previously described in the patents-in-suit. (Id.)
TOCS alleges that IRC's description of its Y2K
remediation technique during its defense of the Sneed
case was a concession to infringing on the patents-in-
suit. IRC indicates that its four witnesses to testify in
the Sneed case regarding its Y2K remediation
technique are also "percipient to the facts showing
non-infringement in this case." (Id.) All four
witnesses currently reside in California, and only two
of the four are currently IRC employees. (Id. at 2-3)

5. Standard of Review. Under 28 U.S.C. § 1404(a),
a district court may transfer any civil action to any
other district where the action might have been
brought for the convenience of parties and witnesses
and in the interests of justice. Congress intended
through § 1404 to place discretion in the district
court to adjudicate motions to transfer according to
an individualized, case-by-case consideration of
convenience and the interests of justice. Stewart
Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct.
2239, 101 L.Ed.2d 22 (1988); Affymetrix, Inc. v.
Synteni, Inc., 28 F.Supp.2d 192, 208 (D.Del.1998).

6. The burden of establishing the need to transfer
rests with the movant "to establish that the balance of
convenience of the parties and witnesses strongly
favors the defendants." Bergman v. Brainin, 512
F.Supp. 972, 973 (D.Del.1981) (citing Shutte v.
Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970).
"Unless the balance is strongly in favor of a transfer,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1653143 (D.Del.)
**(Cite as: 2006 WL 1653143 (D.Del.))**

Page 2

the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp.*, 138 F.Supp.2d 565, 567 (D.Del.2001); *Shutte*, 431 F.2d at 25.

**\*2** 7. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F.Supp. 556, 562 (D.Del.1998); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*, 2001 WL 1617186 (D.Del. Nov.28, 2001); *Continental Cas. Co. v. American Home Assurance Co.*, 61 F.Supp.2d 128, 131 (D.Del.1999). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F.Supp. 973, 976 (D.Del.1993).

8. The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.*, the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

9. The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

10. Discussion. IRC asserts that the most compelling

reason to transfer the case is that its four key witnesses reside in California, and two of the four are third-party witnesses not within the subpoena power of the court. (D.I. 10 at 5) IRC further argues that its burden and expense would be greatly reduced by litigating in California, where the witnesses and evidence are located and where the alleged infringement occurred. (*Id.* at 7) IRC also contends that plaintiff's choice of forum should be given little deference because plaintiff has "no alleged connection to Delaware." (*Id.* at 5)

11. TOCS opposes the motion to transfer on several grounds. TOCS first points out that its principal place of business is only 33 miles from Wilmington, Delaware in Ambler, Pennsylvania, so its choice of forum should be afforded deference because Delaware is considered its "home turf." (D.I. 12 at 4) TOCS contends that it had legitimate reasons to file suit in Delaware based on its geographic proximity and past experiences with this jurisdiction. (*Id.* at 4-5) Further, since IRC is a Delaware corporation enjoying all the benefits and protections of this state's laws, it cannot credibly contend that litigation in the state is inconvenient. (*Id.* at 5)

**\*3** 12. Weighing the arguments against the *Jumara* balancing test, the court finds that the asserted advantages of moving the case to the Central District of California are insufficient to warrant a transfer. Defendant's complaints about litigating here are outweighed by the fact that IRC has enjoyed the benefits and protections of incorporation in Delaware and that the state has an interest in litigation regarding companies incorporated within its jurisdiction.

13. IRC has demonstrated that it would be more costly and more inconvenient for its four main witnesses from the *Sneed* case to provide testimony in Delaware. Considering that discovery can be conducted at any location convenient to the parties and their employees, the only event that will take place in Delaware is the trial. The travel expenses and inconveniences incurred for that purpose, by a Delaware defendant conducting world-wide business, is not overly burdensome. Regarding IRC's two witnesses outside of the court's subpoena power, IRC has not attempted to show that either would be unwilling to travel to Delaware to testify. Rather, IRC merely speculates that the time required for cross-country travel would be too burdensome for these two witnesses to be able to testify in Delaware. [FN2] (D.I. 14 at 4)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1653143 (D.Del.)
**(Cite as: 2006 WL 1653143 (D.Del.))**

Page 3

> FN2. From a practical standpoint, much of the testimony presented at trial these days is presented via recorded depositions, as opposed to witnesses traveling and appearing live. There certainly is no obstacle to IRC's embracing this routine trial practice.

14. IRC devotes much of its argument to showing why the plaintiff's choice of forum should be given little or no deference by the court. IRC first downplays the significance of the court's "home turf" rule and then contends that the location of the alleged infringement is the preferred forum for litigation. (D.I. 14 at 4-6) In doing so, IRC relies almost exclusively on cases outside this jurisdiction while ignoring the case law within this jurisdiction that gives great deference to the plaintiff's choice of forum. *See, e.g., C.R. Bard, Inc.,* 997 F.Supp. at 562.

15. Conclusion. For the reasons stated, defendant's motion to transfer (D.I.9) is denied.

Not Reported in F.Supp.2d, 2006 WL 1653143 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| EVERY PENNY COUNTS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:07-CV-00042-JES |
| | ) Judge Steele |
| | ) |
| BANK OF AMERICA CORPORATION, | ) |
| BANK OF AMERICA, N.A., AND | ) |
| VISA U.S.A. INC., | ) |
| Defendants. | ) |

## DECLARATION OF JONATHAN WILK

Jonathan Wilk, states as follows:

1.    My name is Jonathan Wilk.  I am a Senior Vice President and Officer of Bank of America, N.A. ("BANA").

2.    I have personal knowledge of the facts set forth herein and am competent to testify with respect thereto.

3.    One of several subsidiaries owned by NB Holdings Corporation is the federally chartered national bank known as Bank of America, N.A.  NB Holdings Corporation is wholly owned by Bank of America Corporation.

4.    BANA has its headquarters and principal place of business in Charlotte, North Carolina.

5.    BANA is the entity which offers and operates the "Keep The Change" program ("KTC"). KTC is a banking deposit savings product tied to debit cards provided by BANA to its customers.  BANA administers KTC from Charlotte, North Carolina.

6.     The debit cards that KTC customers use are issued by BANA in North Carolina. When a customer swipes a debit card at a point of sale, information concerning this transaction is routed to BANA in North Carolina.

7.     None of the processing that is performed as part of KTC occurs within the State of Florida.

I declare under penalty of perjury that the foregoing is true and correct.

_Jonath Wilk_

Jonathan Wilk of Bank of America, N.A.

# EXHIBIT C

Assignments and Licenses



**United States Patent and Trademark Office**                    PATENTS

Home  Site Index  Search  FAQ  Glossary  Guides  Contacts  eBusiness  eBiz alerts  News  Help

Patents > Guidance, Tools & Manuals > General Information Concerning Patents > Assignments and Licenses

A patent is personal property and may be sold to others or mortgaged; it may be bequeathed by a will, and it may pass to the heirs of a deceased patentee. The patent law provides for the transfer or sale of a patent, or of an application for patent, by an instrument in writing. Such an instrument is referred to as an assignment and may transfer the entire interest in the patent. The assignee, when the patent is assigned to him or her, becomes the owner of the patent and has the same rights that the original patentee had.

The statute also provides for the assignment of a part interest, that is, a half interest, a fourth interest, etc., in a patent. There may also be a grant which conveys the same character of interest as an assignment but only for a particularly specified part of the United States. A mortgage of patent property passes ownership thereof to the mortgagee or lender until the mortgage has been satisfied and a retransfer from the mortgagee back to the mortgagor, the borrower, is made. A conditional assignment also passes ownership of the patent and is regarded as absolute until canceled by the parties or by the decree of a competent court.

An assignment, grant, or conveyance of any patent or application for patent should be acknowledged before a notary public or officer authorized to administer oaths or perform notarial acts. The certificate of such acknowledgment constitutes prima facie evidence of the execution of the assignment, grant, or conveyance.

**Recording of Assignments**

The Office records assignments, grants, and similar instruments sent to it for recording, and the recording serves as notice. If an assignment, grant, or conveyance of a patent or an interest in a patent (or an application for patent) is not recorded in the Office within three months from its date, it is void against a subsequent purchaser for a valuable consideration without notice, unless it is recorded prior to the subsequent purchase.

An instrument relating to a patent should identify the patent by number and date (the name of the inventor and title of the invention as stated in the patent should also be given). An instrument relating to an application should identify the application by its application number and date of filing, the name of the inventor, and title of the invention as stated in the application should also be given. Sometimes an assignment of an application is executed at the same time that the application is prepared and before it has been filed in the Office. Such assignment should adequately identify the application, as by its date of execution and name of the inventor and title of the invention, so that there can be no mistake as to the application intended. If an application has been assigned and the assignment is recorded, on or before the date the issue fee is paid, the patent will be issued to the assignee as owner. If the assignment is of a part interest only, the patent will be issued to the inventor and assignee as joint owners.

**Joint Ownership**

Patents may be owned jointly by two or more persons as in the case of a patent granted to joint inventors, or in the case of the assignment of a part interest in a patent. Any joint owner of a patent, no matter how small the part interest, may make, use, offer for sale and sell and import the invention for his or her own profit provided they do not infringe another's patent rights, without regard to the other owners, and may sell the interest or any part of it, or grant licenses to others, without regard to the other joint owner, unless the joint owners have made a contract governing their relation to each other. It is accordingly dangerous to assign a part interest without a definite

agreement between the parties as to the extent of their respective rights and their obligations to each other if the above result is to be avoided.

The owner of a patent may grant licenses to others. Since the patentee has the right to exclude others from making, using, offering for sale or selling or importing the invention, no one else may do any of these things without his/her permission. A patent license agreement is in essence nothing more than a promise by the licensor not to sue the licensee. No particular form of license is required; a license is a contract and may include whatever provisions the parties agree upon, including the payment of royalties, etc.

The drawing up of a license agreement (as well as assignments) is within the field of an attorney at law. Such attorney should be familiar with patent matters as well. A few States have prescribed certain formalities to be observed in connection with the sale of patent rights.

>> see **Search Patent Assignments**



**KEY**: 🖥=online business system  💲=fees  📠=forms  🔧=help  ⚖=laws/regulations  📖=definition (glossary)

*The* **Inventors Assistance Center** *is available to help you on patent matters.Send questions about USPTO programs and services to the* **USPTO Contact Center (UCC).** *You can suggest USPTO webpages or material you would like featured on this section by E-mail to the* **webmaster@uspto.gov.** *While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.*

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Last Modified: 05/13/2004 09:29:21

Assignments and Licenses



# EXHIBIT D




## Sample and Methodology

- ◆ **Respondents were recruited from the Socratic Forum® and partnership panels and were screened in real-time to ensure they met the following criteria.**
    - – Between 18 and 64 years old;
    - – Primary or share in the financial decision making;
    - – Annual household income of at least $50k;
    - – Reside within the 30 Bank of America Legacy and Fleet footprint states;
    - – Additional screening criteria specific to each of the subgroups outlined below.

- ◆ **Data for this report was collected between October 28th and November 11th, 2004.**
- ◆ **A total of 1,636 interviews were collected.**
- ◆ **The sample distribution is as follows.**

*Data for total sample is weighted based on customer status, mothers, gender, income and ethnicity.*

| Cell | Description | Sample Size |
|------|-------------|-------------|
| | Total | 1636 |
| | **Bank of America Customers** | **672** |
| 1 | Northeast: District of Columbia, Maryland, Connecticut, Massachusetts, Maine, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island | 102 |
| 2 | Southeast: Arkansas, Florida, Georgia, North Carolina, South Carolina, Tennessee, Virginia | 128 |
| 3 | Midwest: Iowa, Illinois, Kansas, Missouri, Oklahoma | 94 |
| 4 | Southwest: Arizona, New Mexico, Nevada, Texas | 123 |
| 5 | California | 123 |
| 6 | Northwest: Idaho, Oregon, Washington | 102 |
| | **Non-Customers** | **964** |
| 7 | Northeast | 155 |
| 8 | Southeast | 128 |
| 9 | Midwest | 146 |
| 10 | Southwest | 211 |
| 11 | California | 191 |
| 12 | Northwest | 133 |
| | **Over sample (distributed within the geography cells above)** | |
| | Moms with kids 0-3 years old | 218 |
| | Moms with kids >3 years old | 407 |
| | Acculturated Hispanics | 200 |

**Bank of America.**

## Flash Demonstration and Savings Calculator

- ◆ **A flash-based demonstration of the Round Up service was presented to each respondent.**
- ◆ **Respondents also used an interactive calculator to configure their ideal Round Up product and estimate their savings.**
- ◆ **Sample screenshots of the respondent experience appear below.**







Bank of America

# EXHIBIT E

**Travers, Jennifer (CH)**

| | |
|---|---|
| **From:** | Harvey Kauget (7886 TA) [kaugeth@phelps.com] |
| **Sent:** | Thursday, April 05, 2007 12:45 PM |
| **To:** | Nelson, David (CH); Cherny, Steven (NY) |
| **Cc:** | JGrodin@foley.com; Paige Provenzano (7875 TA); Hollis, Amanda (CH); Travers, Jennifer (CH) |
| **Subject:** | RE: Responsive Pleading in FL Case and Extension of Time in Delaware Case |

Yes, I'm agreeing not to use the extension as a basis to argue for Florida over Delaware.
Therefore, do you agree to the extension?

Yes, I'm fine with you filing before 5 PM today.


>Sincerely,
>Harvey S. Kauget

-----Original Message-----
From: DAVID.NELSON@lw.com [mailto:DAVID.NELSON@lw.com]
Sent: Thursday, April 05, 2007 1:41 PM
To: Harvey Kauget (7886 TA); Steven.Cherny@lw.com
Cc: JGrodin@foley.com; Paige Provenzano (7875 TA); Amanda.Hollis@lw.com;
Jennifer.Travers@lw.com
Subject: RE: Responsive Pleading in FL Case and Extension of Time in Delaware Case

Harvey:

I don't think I understand your response on the extension. Are you agreeing not to use the
extension as a basis to argue for Florida over Delaware?

On the timing, I am basis the service time on the information we have from Jim Grodin
concerning when he was served.  I will track that down if you think it is necessary.  If
you are fine with us filing today, then we will just drop the discussion of who is correct
on this issue.

Dave Nelson.

-----Original Message-----
From: Harvey Kauget (7886 TA) [mailto:kaugeth@phelps.com]
Sent: Thursday, April 05, 2007 12:26 PM
To: Nelson, David (CH); Cherny, Steven (NY)
Cc: JGrodin@foley.com; Paige Provenzano (7875 TA); Hollis, Amanda (CH); Travers, Jennifer
(CH)
Subject: RE: Responsive Pleading in FL Case and Extension of Time in Delaware Case

Dave:

I'm not sure where you are getting the time of "after 5 PM."  If you look at the attached
automated email from the Court, it clearly states that the Amended Complaint was filed at
4:38 PM and sent electronically at 4:39 PM.  If you want to continue this discussion of
how you missed the date, then please provide the automated email from the Court showing a
later time of filing.  FYI, if your email server was delaying the delivery of the email,
this is not a reason for stating service was
after 5 PM.

In regard to the Delaware action, we are not using the extension to gain any advantage
over the action.  However, we reserve all rights to argue that the Florida action should
take precedence over the Delaware action.
Please confirm the 30 day extension.

>Sincerely,
>Harvey S. Kauget

1

# EXHIBIT F

Electronic Case Filing | U.S. District Court - Middle District of Florida

 

Query • Reports • Utilities • Logout

TRLSET

# U.S. District Court
## Middle District of Florida (Ft. Myers)
## CIVIL DOCKET FOR CASE #: 2:07-cv-00042-JES-SPC

Every Penny Counts, Inc. v. Bank of America Corporation et al    Date Filed: 01/25/2007
Assigned to: Judge John E. Steele                              Jury Demand: Plaintiff
Referred to: Magistrate Judge Sheri Polster Chappell    Nature of Suit: 830 Patent
Cause: 35:271 Patent Infringement                 Jurisdiction: Federal Question

## Plaintiff

**Every Penny Counts, Inc.**          represented by    **Brent B. Barriere**
Phelps Dunbar LLP
365 Canal St., Suite 2000
New Orleans, LA 70130
504/566-1311
Fax: 504/568-9130
Email: brent.barriere@phelps.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David L. Patron**
Phelps Dunbar LLP
365 Canal St., Suite 2000
New Orleans, LA 70130
504/566-1311
Fax: 504/568-9130
Email: patrond@phelps.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harry M. Barton**
Phelps Dunbar LLP
365 Canal St., Suite 2000
New Orleans, LA 70130
504/566-1311
Fax: 504/568-9130
Email: bartonh@phelps.com
*LEAD ATTORNEY*

Electronic Case Filing | U.S. District Court - Middle District of Florida

*ATTORNEY TO BE NOTICED*

**Harvey S. Kauget**
Phelps Dunbar LLP
100 S Ashley Drive
Suite 1900
Tampa, FL 33602-5311
813/472-7886
Fax: 813/472-7570
Email: harvey.kauget@phelps.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Karl Joseph Brandes**
Phelps Dunbar, LLP
Suite 1900
100 S Ashley Dr
Tampa, FL 33602-5315
813/472-7550
Fax: 813/472-7570
Email: brandesk@phelps.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bank of America Corporation**                 represented by    **Anat Hakim**
Foley & Lardner, LLP
111 North Orange Avenue
Suite 1800
Orlando, Fl 32801-2386
407/423-7656
Fax: 407/648-1743
Email: ahakim@foley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James S. Grodin**
Foley & Lardner, LLP
111 N. Orange Ave., Suite 1800
P.O. Box 2193
Orlando, FL 32801
407/244-3273
Fax: 407/648-1743

Email: jgrodin@foley.com
*LEAD ATTORNEY*

**Amanda Hollis**
Latham & Watkins
Sears Tower
233 S. Wacker Drive
Suite 5800
Chicago, IL 60606
Email: amanda.hollis@lw.com
*ATTORNEY TO BE NOTICED*

**David Aaron Nelson**
Latham and Watkins, LLP
Sears Tower, Suite 5800
233 South Wacker Dr.
Chicago, IL 60606
312-876-7700
Fax: 312-993-9767
Email: david.nelson@lw.com
*ATTORNEY TO BE NOTICED*

**Jennifer Travers**
Latham & Watkins
Sears Tower
233 S. Wacker Drive
Suite 5800
Chicago, IL 60606
Email: jennifer.travers@lw.com
*ATTORNEY TO BE NOTICED*

**Steven C. Cherny**
Latham & Watkins
885 Third Avenue
New York, NY 10022
Email: steven.cherny@lw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Visa USA, Inc.**
*TERMINATED: 04/20/2007*

represented by **James S. Grodin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Hollis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Aaron Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Travers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven C. Cherny**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bank of America, N.A.**

represented by **Anat Hakim**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James S. Grodin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Hollis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Aaron Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Travers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven C. Cherny**
(See above for address)

Electronic Case Filing | U.S. District Court - Middle District of Florida

*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/25/2007 | 1 | COMPLAINT seeking damages and permanent injunctive relief for patent infringement against Bank of America Corporation, Visa USA, Inc. ; jury demand (Filing fee $ 350 receipt number F008950) filed by Every Penny Counts, Inc.. (Attachments: # 1 Exhibit A - United States Patent # 2 Exhibit B - Asset Acquisition Agreement)(slu) (Entered: 01/26/2007) |
| 01/25/2007 |  | Summons issued as to Bank of America Corporation. (slu) (Entered: 01/26/2007) |
| 01/26/2007 | 2 | STANDING ORDER: Filing of documents that exceed twenty-five pages. Signed by All Divisional Judges on 8/28/06. (slu) (Entered: 01/26/2007) |
| 01/29/2007 |  | Summons issued as to Visa USA, Inc.. (js) (Entered: 01/29/2007) |
| 01/29/2007 | 3 | RELATED CASE ORDER AND NOTICE of designation under Local Rule 3.05 - track 2. Notice of pendency of other actions due by 2/9/2007. Signed by Judge All Divisional Judges on 1/29/2007. (LAG, ) (Entered: 01/29/2007) |
| 01/29/2007 | 4 | INTERESTED PERSONS ORDER. Certificate of interested persons and corporate disclosure statement due by 2/9/2007. Signed by Judge All Divisional Judges on 1/29/2007. (LAG, ) (Entered: 01/29/2007) |
| 01/30/2007 | 5 | CERTIFICATE of interested persons and corporate disclosure statement re 4 Interested persons order by Every Penny Counts, Inc.. (Kauget, Harvey) (Entered: 01/30/2007) |
| 01/30/2007 | 6 | NOTICE of pendency of related cases re 3 order of compliance to Local Rule by Every Penny Counts, Inc. Related case(s): N (Kauget, Harvey) (Entered: 01/30/2007) |
| 01/30/2007 | 7 | MOTION for Brent B. Barriere, David L. Patron and Harry M. Barton to appear pro hac vice by Every Penny Counts, Inc.. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F)(Kauget, Harvey) Motions referred to Magistrate Judge Sheri Polster Chappell. (Entered: 01/30/2007) |

| 02/01/2007 | 8 | ORDER granting 7 the Motion of EPC, Inc. For Admission Pro Hac Vice of Brent B. Barriere, David L. Patron and Harry M. Barton. See Order for details. Signed by Judge Sheri Polster Chappell on 1/31/2007. (lmh, ) (Entered: 02/01/2007) |
| --- | --- | --- |
| 02/01/2007 | 9 | MOTION for Brent B. Barriere, David L. Patron and Harry M. Barton to appear pro hac vice by Every Penny Counts, Inc.. (js) Motions referred to Magistrate Judge Sheri Polster Chappell. Modified on 2/2/2007 COUNSEL called to notify clerk's office that this is a duplicate of document 7(js). (Entered: 02/02/2007) |
| 02/05/2007 | 10 | ORDER denied as moot 9 the Plaintiff Motion of EPC, Inc., for Admission Pro Hac Vice of Brent B. Barriere, David L. Patron, and Harry M. Barton. Signed by Judge Sheri Polster Chappell on 2/5/2007. (lmh, ) (Entered: 02/05/2007) |
| 02/14/2007 | 11 | RETURN of service executed on February 1, 2007 by Every Penny Counts, Inc. as to Bank of America Corporation. (Attachments: # 1 Attachment 1)(Kauget, Harvey) (Entered: 02/14/2007) |
| 02/14/2007 | 12 | RETURN of service executed on January 31, 2007 by Every Penny Counts, Inc. as to Visa USA, Inc.. (Attachments: # 1 Attachment 1) (Kauget, Harvey) (Entered: 02/14/2007) |
| 02/20/2007 | 13 | MOTION for extension of time to file answer or otherwise plead re 1 Complaint, by all defendants. (Grodin, James) Motions referred to Magistrate Judge Sheri Polster Chappell. (Entered: 02/20/2007) |
| 02/21/2007 | 14 | INTERESTED PERSONS ORDER. Certificate of interested persons and corporate disclosure statement due by 3/5/2007 as to the defendants. Signed by All Divisional Judges on 2/21/2007. (js) (Entered: 02/21/2007) |
| 02/21/2007 | 15 | ORDER granting 13 the Defendants' Motion for Extension of Time of Thirty Days from the Respective Due Dates to Answer of Otherwise Plead. VISA U.S.A., Inc., shall have up to and including MARCH 22, 2007 to respond to the Plaintiff's Complaint. The Bank of America Corp., shall have up to and including MARCH 23, 2007 to respond to the Plaintiffs Complaint. Signed by Judge Sheri Polster Chappell on 2/21/2007. (lmh, ) (Entered: 02/21/2007) |
| 02/27/2007 | | Case Reassigned to Judge Marcia Morales Howard. New case number: 2:07-cv-42-FtM-34SPC. Judge Unassigned Judge no longer assigned to the case. (js) (Entered: 02/27/2007) |

| 03/01/2007 | 16 | ORDER OF RECUSAL. Signed by Judge Marcia Morales Howard on 3/1/2007. (JLW) (Entered: 03/01/2007) |
|---|---|---|
| 03/02/2007 | | Case reassigned to Judge John E. Steele. New case number: 2:07-cv-42-FtM-29SPC. Judge Marcia Morales Howard no longer assigned to the case. (kma) (Entered: 03/02/2007) |
| 03/05/2007 | 17 | ORDER to comply with the administrative procedures regarding electronic filing. Signed by All Divisional District Judges on 3/5/2007. (Attachments: # 1)(LAG, ) (Entered: 03/05/2007) |
| 03/05/2007 | 18 | CERTIFICATE of interested persons and corporate disclosure statement re 14 Interested persons order by Visa USA, Inc.. (Grodin, James) (Entered: 03/05/2007) |
| 03/05/2007 | 19 | CERTIFICATE of interested persons and corporate disclosure statement re 14 Interested persons order by Bank of America Corporation. (Grodin, James) (Entered: 03/05/2007) |
| 03/21/2007 | 20 | AMENDED COMPLAINT against all defendants with Jury Demand filed by Every Penny Counts, Inc.. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D)(Kauget, Harvey) (Entered: 03/21/2007) |
| 03/23/2007 | | Summons issued as to Bank of America, N.A.. (slu) (Entered: 03/23/2007) |
| 03/23/2007 | 21 | NOTICE re 17 Order to comply with electronic filing - counsel, Brent B. Barriere, Harry M. Barton and David L. Patron, have complied. (LAG, ) (Entered: 03/23/2007) |
| 03/30/2007 | 22 | MOTION for Steven C. Cherny to appear pro hac vice by all defendants. (Grodin, James) Motions referred to Magistrate Judge Sheri Polster Chappell. (Entered: 03/30/2007) |
| 03/30/2007 | 23 | MOTION for Jennifer L. Travers to appear pro hac vice by all defendants. (Grodin, James) Motions referred to Magistrate Judge Sheri Polster Chappell. (Entered: 03/30/2007) |
| 03/30/2007 | 24 | MOTION for Amanda J. Hollis to appear pro hac vice by all defendants. (Grodin, James) Motions referred to Magistrate Judge Sheri Polster Chappell. (Entered: 03/30/2007) |
| 03/30/2007 | 25 | MOTION for David A. Nelson to appear pro hac vice by all defendants. (Grodin, James) Motions referred to Magistrate Judge Sheri Polster Chappell. (Entered: 03/30/2007) |

| | | |
|---|---|---|
| 04/02/2007 | 26 | ORDER granting 22 the Motion for Admission Pro Hac Vice. Steven C. Cherny, of the law firm Latham & Watkins, 885 Third Avenue, New York, New York 10022, shall be admitted pro hac vice on behalf of the Defendants. Signed by Judge Sheri Polster Chappell on 4/2/2007. (lmh, ) (Entered: 04/02/2007) |
| 04/02/2007 | 27 | ORDER granting 23 the Motion for Admission Pro Hac Vice. Jennifer Travers, Esq., of the law firm Latham & Watkins, Sears Tower, 233 S. Wacker Drive, Suite 5800, Chicago, Illinois, 60606, shall be admitted pro hac vice on behalf of the Defendants. Signed by Judge Sheri Polster Chappell on 4/2/2007. (lmh, ) (Entered: 04/02/2007) |
| 04/02/2007 | 28 | ORDER granting 24 the Motion for Admission Pro Hac Vice. Amanda Hollis, Esq., of the law firm Latham & Watkins, Sears Tower, 233 S. Wacker Drive, Suite 5800, Chicago, Illinois, 60606, shall be admitted pro hac vice on behalf of the Defendants. Signed by Judge Sheri Polster Chappell on 4/2/2007. (lmh, ) (Entered: 04/02/2007) |
| 04/02/2007 | 29 | ORDER granting 25 the Motion for Admission Pro Hac Vice. David Nelson, Esq., of the law firm Latham & Watkins, Sears Tower, 233 S. Wacker Drive, Suite 5800, Chicago, Illinois, 60606, shall be admitted pro hac vice on behalf of the Defendants. Signed by Judge Sheri Polster Chappell on 4/2/2007. (lmh, ) (Entered: 04/02/2007) |
| 04/05/2007 | 30 | CASE MANAGEMENT REPORT. (Kauget, Harvey) (Entered: 04/05/2007) |
| 04/05/2007 | 31 | ANSWER and affirmative defenses to amended complaint by Bank of America Corporation.(Grodin, James) (Entered: 04/05/2007) |
| 04/05/2007 | 32 | MOTION to Dismiss for Lack of Jurisdiction by Visa USA, Inc.. (Attachments: # 1 Affidavit Affidavit of Jack Yang in Support of Motion# 2 Exhibit Complaint# 3 Exhibit Scheduling Order# 4 Exhibit Scheduling Order)(Grodin, James) (Entered: 04/05/2007) |
| 04/06/2007 | 33 | MOTION to dismiss by Bank of America, N.A., Bank of America Corporation. (Attachments: # 1 Exhibit Part 1 of Exhibit A# 2 Errata Part 2 of Exhibit A# 3 Exhibit Exhibit B# 4 Exhibit Exhibit C# 5 Exhibit Exhibit D# 6 # 7 Exhibit Exhibit F# 8 Exhibit Part 1 of Exhibit G# 9 Exhibit Part 2 of Exhibit G# 10 Exhibit Exhibit H# 11 Exhibit Exhibit I)(Grodin, James) (Entered: 04/06/2007) |
| 04/19/2007 | 34 | NOTICE of Voluntary Dismissal by Every Penny Counts, Inc. (Attachments: # 1 Exhibit A)(Kauget, Harvey) INCORRECT PDF Modified on 4/20/2007 (js, ). (Entered: 04/19/2007) |

| 04/19/2007 | 35 | NOTICE of Voluntary Dismissal by Every Penny Counts, Inc. (Attachments: # 1 Exhibit A)(Kauget, Harvey) (Entered: 04/19/2007) |
| --- | --- | --- |
| 04/20/2007 | 36 | RESPONSE in opposition re 33 MOTION to dismiss *and Transfer Venue* filed by Every Penny Counts, Inc.. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5)(Kauget, Harvey) (Entered: 04/20/2007) |
| 04/23/2007 | 37 | ORDER dismissing defendant VISA USA, Inc. without prejudice with each party to bear their own attorney's fees and costs. The Clerk shall withhold the entry of judgment until the conclusion of the case but terminate this defendant on the docket. The Clerk shall terminate as moot 32 VISA USA Inc.'s Motion to dismiss or to transfer venue. Signed by Judge John E. Steele on 4/23/2007. (RKM) (Entered: 04/23/2007) |
| 04/25/2007 | 38 | CASE MANAGEMENT AND SCHEDULING ORDER. Signed by Judge Sheri Polster Chappell on 4/25/2007. (LAG, ) (Entered: 04/25/2007) |
| 04/25/2007 | 39 | MOTION for leave to file *Reply to Plaintiff's Response to Motion to Dismiss* by Bank of America, N.A., Bank of America Corporation. (Attachments: # 1 Exhibit 1)(Grodin, James) (Entered: 04/25/2007) |
| 04/30/2007 | 40 | CERTIFICATE of compliance *with Rule 26 Disclosures* by Bank of America Corporation. (Grodin, James) (Entered: 04/30/2007) |
| 04/30/2007 | 41 | CERTIFICATE of compliance *with Rule 26 Disclosures* by Bank of America, N.A.. (Grodin, James) (Entered: 04/30/2007) |
| 05/01/2007 | 42 | RESPONSE in opposition re 39 MOTION for leave to file *Reply to Plaintiff's Response to Motion to Dismiss* filed by Every Penny Counts, Inc.. (Attachments: # 1 Exhibit A)(Kauget, Harvey) (Entered: 05/01/2007) |
| 05/02/2007 | 43 | ORDER denying 39 the Bank of America, N.A. and the Bank of America Corporations Motion for Leave to file a Preply to Every Penny Counts, Inc.'s Opposition to BAC/BANA's Motion to Dismiss and Transfer Venue. Signed by Judge Sheri Polster Chappell on 5/2/2007. (lmh, ) (Entered: 05/02/2007) |
| 05/07/2007 | 44 | STIPULATION *re Selection of Mediator* by Every Penny Counts, Inc.. (Kauget, Harvey) (Entered: 05/07/2007) |

Electronic Case Filing | U.S. District Court - Middle District of Florida

| 05/07/2007 | 45 | MEMORANDUM in opposition re 43 Order on motion for leave to file, filed by Bank of America, N.A., Bank of America Corporation. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F)(Grodin, James) (Entered: 05/07/2007) |
| 05/17/2007 | 46 | RESPONSE re 45 Memorandum in opposition filed by Every Penny Counts, Inc.. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C) (Kauget, Harvey) (Entered: 05/17/2007) |

### PACER Service Center

#### Transaction Receipt

05/23/2007 17:28:42

| PACER Login: | lw0099 | Client Code: | 043250-0002 |
| Description: | Docket Report | Search Criteria: | 2:07-cv-00042-JES-SPC |
| Billable Pages: | 5 | Cost: | 0.40 |

# EXHIBIT G

Westlaw.

Not Reported in F.Supp.2d                                                              Page 1
Not Reported in F.Supp.2d, 2006 WL 680657 (D.Del.)
**(Cite as: 2006 WL 680657 (D.Del.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
SONY ELECTRONICS, INC., Sony Computer
Entertainment America, Inc., Sony
Pictures Entertainment, Inc., Sony Connect, Inc.,
Sony Online Entertainment,
Inc., Sony Corporation of America, Sony BMG
Music Entertainment, Inc., Sony
Ericsson Mobile Communications (USA), Inc.,
Plaintiffs,
v.
ORION IP, LLC, Defendant.
**No. C.A. 05-255(GMS).**

March 14, 2006.
Josy W. Ingersoll, Young, Conaway, Stargatt &
Taylor, Wilmington, DE, for Plaintiffs.

Donald E. Reid, Morris, Nichols, Arsht & Tunnell,
Wilmington, DE, for Defendant.

*MEMORANDUM*

SLEET, J.

**\*1** On November 23, 2004, Orion IP, LLC
("Orion"), a Delaware corporation headquartered in
Texas, filed a patent infringement suit in the United
States District Court for the Eastern District of Texas
against fifteen individual defendants, none of whom
are parties to this action. However, on February 10,
2005, Orion amended its complaint to add additional
parties, including Sony Corporation of America
("SCA"). On April 7, 2005, SCA responded by filing
an answer in the Texas action asserting the
affirmative defenses of non-infringement and
invalidity as to both patents in suit. Then, on May 2,
2005, SCA and seven other so-called non-SCA
plaintiffs filed an action in this court seeking a
declaratory judgment of non-infringement and
invalidity with respect to the same patents as those
asserted against SCA in the Texas action. However,
although the patents at issue are the same, the
potentially-infringing products of the non-SCA
plaintiffs--their websites--are allegedly different than
the accused SCA website. Presently before the court
is Orion's motion to either dismiss or stay this case

under the first-filed rule, or alternatively, to transfer it
to the Eastern District of Texas pursuant to 28
U.S.C.A. § 1404(a) (1993). (D.I.11.)

Generally speaking, the first-filed rule is as simple as
its name suggests: "[w]here two patent lawsuits
involving the same claims are filed in different
jurisdictions, the Federal Circuit requires that the
first-filed action be given preference absent special
circumstances." *Corixa Corp. v. IDEC Pharm. Corp.,*
No. 01-615-GMS, 2002 WL 265094, at \*1 (D.Del.
Feb.25, 2002). The present case presents a small
complication, however, because only one of the
plaintiffs in this action is a defendant in the Texas
action. But, that complication is not too difficult to
overcome because "Civil Procedure Rule 21 permits
any claim against a party to be severed and proceeded
with separately." *Triangle Conduit & Cable Co. v.
Nat'l Elec. Prods. Corp.,* 125 F.2d 1008, 1009 (3d
Cir.1942). Moreover, "Rule 21 permits a court to
sever claims *sua sponte.*" *United States v. AMTRAK,*
No. 86-1094, 2004 U.S. Dist. LEXIS 10867, at \*21
(E.D. Pa. June 15, 2004). That being the case, and
there being no discernable prejudice in severing
SCA's claims against Orion, the court will exercise its
power to do so. As a result, the court is confronted
with a declaratory judgment action by SCA alone, the
inverse of which (i.e., an infringement action) was
filed about three months earlier in Texas. Therefore,
pursuant to the first-filed rule, SCA must be
dismissed from this case. *Cf. Triangle Conduit,* 125
F.2d at 1009 (holding that this district was under a
duty to enjoin a patent-holding defendant in a
declaratory judgment action from pursuing an
infringement action in another district against the
declaratory judgment plaintiff, even though the
infringement action in the other district would
proceed against other parties in the absence of the
declaratory judgment plaintiff).

**\*2** With SCA out of the case, the court must still
decide the fate of the non-SCA plaintiffs. Orion first
argues that, like SCA itself, the non-SCA plaintiffs
are subject to the first-filed rule under the holding of
*Corixa,* where this court granted a motion to transfer
a patent infringement action, based on the first-filed
rule, to a district where a previous declaratory
judgment action had been filed, even though one of
the plaintiffs in the patent infringement action was
not a defendant in the declaratory judgment action.
2002 WL 265094, at \*1-\*2. However, that plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 680657 (D.Del.)
**(Cite as: 2006 WL 680657 (D.Del.))**

Page 2

was a licensee of a defendant in the declaratory judgment action, and could therefore request permission to join that action after the transfer. *Id.* at *2. In this case, the non-SCA plaintiffs cannot be licensees of SCA because SCA is not the patentee. Moreover, the "accused products" in this action are the websites of the non-SCA plaintiffs, which are allegedly different than the SCA website accused in the Texas action. Thus, *Corixa* is distinguishable, and the first-filed rule does not apply to the non-SCA plaintiffs.

Orion's next argument is that the action should be transferred pursuant to § 1404(a). In *Jumara v. State Farm Insurance Co.,* the Third Circuit outlined six private interests and six public interests relevant to such a transfer. The private interests are:

(1) The plaintiff's forum preference as manifested in the original choice;
(2) The defendant's preference;
(3) Whether the claim arose elsewhere;
(4) The convenience of the parties as indicated by their relative physical and financial condition;
(5) The convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and
(6) The location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

55 F.3d 873, 879 (3d Cir.1995). Aside from Orion's preference for Texas and the non-SCA plaintiffs' preferences for Delaware, none of the other private interests are particularly relevant. Orion disagrees, and argues that convenience weighs in favor of transfer. Although Texas may indeed be more convenient for Orion, all of the non-SCA plaintiffs (and Orion) are incorporated in Delaware--a fact that certainly weighs against transfer. At best, then, the private interests are a wash.

The public interests outlined in *Jumara* include:

(1) The enforceability of the judgment;
(2) Practical considerations that could make the trial easy, expeditious, or inexpensive;
(3) The relative administrative difficulty in the two fora resulting from court congestion;
(4) The local interest in deciding local controversies at home;
(5) The public policies of the fora; and
(6) The familiarity of the trial judge with the applicable state law in diversity cases.
*Id.* at 879-80. Here, Orion argues that although it and the remaining plaintiffs are all Delaware corporations, the local interest favors Texas because Orion has offices in that state. In *Corixa,* three parties

were Delaware corporations, and yet, that fact did not weigh against transferring the case to California because the "patents deal[t] with the treatment of lymphoma, .... [which] has far-reaching implications [beyond Delaware's borders]." 2002 WL 265094, at *4. By the same token, the fact that Orion has offices in Texas does not weigh in favor of transfer where the patents deal with technology used in internationally-accessible websites. Orion also argues that because litigation involving the same patents is already underway in Texas, judicial resources will be saved granting a transfer. Although there may be some efficiency to be gained by consolidating certain aspects of discovery, Orion ignores the possibility that collateral issues specific to any one of the many unrelated parties involved in both cases may create inefficiencies that would not arise if the proceedings remained separate. *See Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 739 (1st Cir.1977) ("Nor are we fully convinced of the propriety of using another customer suit of another manufacturer, which, incidentally, may have very different collateral issues, as a magnet to draw a suit to a jurisdiction where it otherwise should not be."). Moreover, simply because Orion initiated an action in Texas involving one set of parties, it should not be able to "bootstrap itself into staying there" when subsequent litigation arises involving a different set of parties. *Id.*

*3 In short, the *Jumara* interests do not weigh in favor of transfer, and therefore, Orion's motion must be denied as to the non-SCA plaintiffs.

*ORDER*
IT IS HEREBY ORDERED THAT:

1. Orion's motion to dismiss (D.I.11) be GRANTED in part and DENIED in part; and

2. The claims of SCA against Orion be SEVERED and DISMISSED.

Not Reported in F.Supp.2d, 2006 WL 680657 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT H

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)
**(Cite as: 2005 WL 2620196 (D.Del.))**

C
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
TEXTRON INNOVATIONS INC., Plaintiff,
v.
THE TORO COMPANY, Defendants.
**No. Civ.A. 05-486 GMS.**

Oct. 14, 2005.
Edmond D. Johnson, The Bayard Firm, Richard L.
Horwitz, Potter Anderson & Corroon, LLP,
Wilmington, DE, for Plaintiff.

Richard L. Horwitz, David Ellis Moore, Potter
Anderson & Corroon, LLP, Wilmington, DE, for
Defendants.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

*1 On July 12, 2005, the plaintiff, Textron
Innovations Incorporated ("TII") filed the above-
captioned action against The Toro Company
("Toro"), alleging infringement of United States
Patent Nos. 6,047,530,6,336,311, and 6,336,312,
which are directed to a gang type rotary mower.
Presently before the court is Toro's motion to transfer
this action to the District of Minnesota, pursuant to
28 U.S.C. § 1404(a). For the following reasons the
court will deny the motion.

II. BACKGROUND

On July 12, 2005, TII filed the present patent
infringement action involving technology related to
the rotary mower used to cut golf course roughs. TII
is the subsidiary of Textron Inc., and the assignee of
the three patents in suit. (*See* D.I. 6, at 1 n. 1; D.I. 19,
at 2.) TII is incorporated in Delaware and maintains
its headquarters in Providence, Rhode Island. (D.I. 1
¶ 3.) Toro is a Delaware corporation that maintains
its headquarters in Bloomington, Minnesota. (*Id.* ¶
4.) Toro's allegedly infringing products are
manufactured in Tomah, Wisconsin. (D.I. 6, at 3.)

On August 15, 2005, Toro filed a separate action in
Minnesota against Textron, Inc. and Jacobsen, a
division of Textron, Inc., alleging that their products
infringe two Toro patents relating to hydraulic drive
system technology for riding mowers. The following
day, Toro filed this motion to transfer venue to the
District of Minnesota.

III. DISCUSSION

Pursuant to Section 1404(a), the court may transfer a
civil action "for the convenience of parties and
witnesses, in the interest of justice, ... to any other
district ... where it might have been brought." 28
U.S.C. § 1404(a). It is the movant's burden to
establish the need to transfer, and "the plaintiff's
choice of venue [will] not be lightly disturbed." *Truth
Hardware corp. v. Ashland Prods., Inc.*, No. C.A. 02-
1541 GMS, 2003 WL 118005, at *1 (quoting *Jumara
v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d
Cir.1995)). In other words, "unless the balance of
convenience strongly favors a transfer in favor of
defendant, the plaintiff's choice of forum should
prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25
(3d Cir.1970).

When considering a motion to transfer, the court
must determine "whether on balance the litigation
would more conveniently proceed and the interest of
justice be better served by transfer to a different
forum." *Jumara*, 55 F.3d at 879. This inquiry requires
"a multi-factor balancing test," embracing not only
the statutory criteria of convenience of the parties and
the witnesses and the interest of justice, but all
relevant factors, including certain private and public
interests. *Id.* at 875. These private interests include
the plaintiff's choice of forum; the defendant's
preference; whether the claim arose elsewhere; the
convenience of the parties; the convenience of the
expected witnesses; and the location of books and
records, to the extent that they could not be produced
in the alternative forum. [FN1] *Id* at 879. Among the
relevant public interests are: "the enforceability of the
judgment; practical considerations that could make
the trial easy, expeditious, or inexpensive; the relative
administrative difficulty in the two fora resulting
from court congestion; the local interest in deciding
local controversies at home; [and] the public policies
of the fora." *Id.* at 879-80.

FN1. The first three of these private interest

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)
(Cite as: 2005 WL 2620196 (D.Del.))

Page 2

factors collapse into other portions of the *Jumara* analysis. Thus, the court will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192 (D.Del.1998).*

**\*2** Upon consideration of the relevant factors, the court finds that Toro has not met its burden of demonstrating that transfer is appropriate. First, the court concludes that convenience of parties factor weighs in favor of maintaining the action in Delaware. The court will afford less deference to TII's choice of Delaware as a forum because it is not its "home turf," or principal place of business. *See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc., 775 F.Supp. 759, 764 (D.Del.1991).* However, it is not appropriate to disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum. *See Joint Stock Soc'y v. Heublein, Inc., 936 F.Supp. 177, 187 (D.Del.1996).* In the present case, the fact that Toro is incorporated in Delaware is a rational and legitimate reason for TII choosing to sue it in Delaware. *See Stratos Lightwave, Inc. v. E20 Communications, Inc.,* No. Civ. A. 01-309-JJF, 2002 WL 500920, at \*2 (D.Del. Mar.26, 2002). Further, having received the benefits of Delaware incorporation, Toro cannot now complain that another corporation has chosen to sue it here. *See id.* Indeed, it is difficult for the court to find any inconvenience to Toro when it has previously chosen this forum in order to litigate its own patent infringement claims against Textron. *See Toro Company v. Textron, Inc., 499 F.Supp. 241 (D.Del.1980).* Thus, the convenience of the parties weighs in favor of maintaining this action in Delaware.

The court also finds that the location of books and records weighs against granting Toro's motion to transfer. Toro contends that its books and records necessary for litigation are in Minnesota. A court should consider the location of books and records in its analysis. However, it must only do so to the extent that the files could not be produced in the alternative forum. *Jumara, 55 F.3d at 879.* Here, Toro does not suggest that its documents could not be produced in Delaware. Accordingly, this factor does not weigh in favor of the transfer.

Toro also contends that non-party witness convenience weighs in favor of a transfer. According to the briefs, Toro plans to rely on testimony from two original inventors of the patents in-suit, three retired employees, and an employee of a local golf course. The two inventors do not reside within the subpoena power of Delaware or Minnesota. However, they have both stated, in sworn declarations, that they are willing to appear in Delaware for depositions and trial. (D.I. 19, at 3.) Thus, any inconvenience to the inventors weighs in favor of maintaining the action in Delaware.

As for the other witnesses, Toro has elected to rely upon retired and, therefore, "third-party" employees that do not reside within the subpoena power of Delaware. In support of its motion, Toro insists that due to personal circumstances, travel to Delaware is extremely inconvenient for its third-party witnesses. (D.I. 6, at 4-6.) The court is not persuaded by this argument, and finds Toro's reliance on former employees, rather than its current employees, questionable. Further, as this court has previously held, a flight to Delaware is not an onerous task warranting transfer. *Truth Hardware Corp. v. Ashland Prods., Inc.,* No C.A. 02-1541 GMS, 2003 WL 118005, at \*2 (D. Del. Jan 13, 2003). Moreover, Toro has not asserted that the identified witnesses are the only individuals capable of testifying as to the technology of the accused products. Nevertheless, if necessary, TII has agreed to take witness depositions in Minnesota. (*See* D.I. 19, at 23.) For these reasons, the court concludes the convenience of the witnesses does not favor transfer in this case.

**\*3** Finally, the court finds that the public interest factors do not weigh strongly in favor of transfer to Minnesota. First, Toro's pending litigation in Minnesota was filed after TII initiated this lawsuit, and involves different patents. Thus, the court believes that this is not a relevant consideration in favor of transfer. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc., 77 F.Supp.2d 505, 513 (D.Del.1999)* (refusing to give "any weight whatsoever" to a mirror image action filed by the defendant). Additionally, the court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer. Finally, it is well settled that patent rights are not considered state or local matters and do not implicate local interests. *Jones Pharma, Inc. v. KV Pharm. Co.,* No. Civ. A. 03-786 JJF, 2004 WL 323109, at \* 3 (D.Del. Feb.17, 2004). The court, therefore, finds no strong local interest in litigating in the transferee forum. Accordingly, the court concludes that public interest factors do not favor transfer in the instant case.

*ORDER*

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 3
Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)
**(Cite as: 2005 WL 2620196 (D.Del.))**

   1. The defendant's Motion to Transfer the Case to the United States District Court for the District of Minnesota (D.I.5) is DENIED.

 Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BANK OF AMERICA, N.A.,

              Plaintiff,

        v.                             C. A. No. 07-159 (GMS)

SIP ASSETS, LLC and
EVERY PENNY COUNTS, INC.

              Defendants.

## DECLARATION OF BRIAN SLOAN

I, Brian Sloan, state as follows:

1.     My name is Brian Sloan. I am a resident of Fort Myers, Florida.

2.     I have personal knowledge of the facts set forth herein and am competent to testify with respect thereto.

3.     My employer is Bank of America, N.A. ("BANA"). I have worked at one of BANA's branch offices in Fort Myers, Florida since 1993.

4.     During 2004-2005, I was a loan officer at BANA's business banking division. My responsibilities as a loan officer included assisting BANA business customers and prospective business customers with obtaining business loans and other banking services.

5.     Bertram Burke was one of BANA's clients during that time. Mr. Burke maintained his personal accounts as well as one or more business accounts on behalf of Every Penny Counts, Inc. ("EPC") at BANA.

6.    The only meetings I recall having with Mr. Burke concerned BANA's bank services, as well as his personal and EPC business accounts.

7.    Mr. Burke occasionally mentioned a patent pertaining to EPC's business and occasionally sent some unsolicited materials regarding that patent to me. I am aware of no reason why Mr. Burke would have chosen to discuss these items with me but for the fact that I handled his personal and business accounts at the bank.

I declare under penalty of perjury that the foregoing is true and correct.

Mr. Brian Sloan